# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF KENTUCKY
# LEXINGTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| GenCanna Global USA, Inc., *et al.*, | ) Case No. 20-50133-grs |
| Debtors. | ) Adversary No. _____ |
| Specialty Oils Extraction Manufacturer, LLC, | ) **ADVERSARY COMPLAINT FOR FRAUD** |
| Plaintiff, | ) Honorable Gregory R. Schaaf |
| v. | |
| GenCanna Global USA, Inc., | |
| Defendant. | |

Plaintiff, for its cause of action against Defendant, alleges that:

## I. PARTIES

1. Plaintiff Specialty Oils Extraction Manufacturer, LLC ("SOE") is, and at all relevant times was, a Delaware limited liability company with its principal place of business in Darlington, South Carolina. SOE is a company that processes industrial hemp and uses it to produce industrial hemp crude oil and post-proceeding products including but not limited to cannabidiol ("CBD") distillate, isolate, and/or other legal cannabinoids.

2. Defendant and Debtor GenCanna Global USA, Inc. ("GenCanna") is, and at all relevant times was, a Delaware corporation with its principal place of business in Winchester, Kentucky.

## II.    JURISDICTION AND VENUE

3. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157(b)(1) because GenCanna is a bankrupt debtor and this adversary proceeding is a core proceeding involving and affecting property of GenCanna and the administration of its bankruptcy estate.

4. The Court has supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to SOE's claims occurred in Lexington and Winchester, Kentucky, which are located within this District and Division.

## III.    FACTS

### THE PARTIES ENTER INTO A LETTER OF INTENT

6. On October 13, 2019, SOE entered into a binding letter of intent (the "LOI") with GenCanna. Under the terms of the LOI, SOE agreed to process an initial run of industrial hemp biomass supplied by GenCanna, to produce industrial hemp crude oil and post-proceeding products including but not limited to CBD distillate, isolate, and/or other legal cannabinoids. The LOI contains a confidentiality clause and is not attached to this Complaint. All material terms of the LOI to this Complaint are therefore alleged *in haec verba* in order to preserve confidentiality of the parties.

7. As consideration for performance under the LOI, SOE would be entitled to 25% of the proceeds of the refined products, and GenCanna would keep the remaining 75%, with GenCanna to pay any and all commissions, marketing, and other costs associated with bringing the processed products to retail and other markets for sale. Under the LOI, SOE further agreed to provide its processing services exclusively to GenCanna, and no other industrial hemp suppliers or growers, for a period of 150 days.

8. Pursuant to the LOI, GenCanna promised to provide equipment and expertise as needed by SOE necessary to process the biomass supplied by GenCanna into hemp crude oil and post-proceeding products including but not limited to CBD distillate, isolate, and/or other legal cannabinoids. Under the terms of the LOI, GenCanna further promised to assist SOE in its financing efforts by introducing it to sources of capital and partnership opportunities.

9. GenCanna and SOE expressly made the following, reciprocal warranty under the LOI: "The Parties will disclose any actual or threatened litigation that could affect the ability of either Party to perform under the terms of this Agreement, along with any commissioned market studies/projections." This obligation was a material and continuing obligation under the terms of the LOI.

10. Under the LOI, SOE agreed to process an Initial Run of 2 million pounds of hemp biomass.

11. On or about December 12, 2019, the parties entered into that certain First Amendment to the Binding Letter of Intent (the "First Amendment"). Under the terms of the First Amendment, SOE agreed to continue processing hemp biomass beyond the Initial Run of 2 million pounds, but was under no obligation to complete the processing of all hemp biomass

delivered by GenCanna and, in the event that the Parties were unable to reach terms on a final processing agreement, SOE would stop processing hemp biomass.

12. In performance of its obligations under the LOI and the First Amendment, SOE processed millions of pounds of Hemp Biomass for GenCanna, at a cost to SOE of approximately $53,325 per operational day.

13. In performance of its obligations under the LOI to meet the expectations and standards of GenCanna, at GenCanna's direction SOE spent at least $2,210,000 improving its facility and building out its post-processing lab.

14. In performance of its obligations under the LOI, GenCanna delivered tens of millions of pounds of hemp biomass to SOE, which continues to be stored in SOE's secure storage facility.

### NEGOTIATION OF THE FINAL PROCESSING AGREEMENT

15. In January of 2020, and during the 150-day period while the terms of the LOI were still in effect, SOE and GenCanna began negotiating to enter into a long-term Biomass Processing Agreement (the "Biomass Processing Agreement"), resulting in the execution of the Biomass Processing Agreement by SOE and GenCanna on January 27, 2020. During these negotiations and up to the execution of the Biomass Processing Agreement, GenCanna never disclosed to SOE that the involuntary petition had been filed against it.

16. On or about January 13, 2020, GenCanna's representatives, including but not limited to Matty Mangone Miranda, Jim Alt, and Gary Broadbent, travelled to South Carolina to meet with SOE's management team to discuss final terms for a Processing Agreement.

17. On January 14, 2020, the management teams of the parties met for an all-day meeting to discuss the key terms of the Processing Agreement and to try and narrow the issues

presented by GenCanna's proposed revisions to the Processing Agreement, which differ in many material aspects from the financial terms set forth in the LOI. At no point in time during that meeting, or any time thereafter, did GenCanna advise that it was considering an insolvency proceeding, or that an involuntary insolvency proceeding had been threatened.

18. Between January 22 and January 24, 2020, SOE's management team went to meet GenCanna executives at its headquarters for three consecutive days to try to work out the contract points. On January 24, 2020, SOE's managers left GenCanna's headquarters after noon, at approximately 12:40 p.m.

19. Prior to SOE's managers leaving on Friday, January 24, 2020, Mr. Mangone Miranda took a short break to take a phone call and, upon returning to the meeting room, informed SOE that GenCanna's lender, MGG, was not going to release the next scheduled tranche of capital due to GenCanna's failure to produce "deliverables," among which was a signed Processing Agreement with SOE.

20. According to Mr. Mangone Miranda, without release of the next tranche of capital from MGG, GenCanna would be unable to make its next scheduled payment to its farmers, due on Monday January 27, 2020.

21. On January 25, 2020, Mr. Mangone Miranda sent a text message to SOE's executive, Don Palmer, to request an update on the status of the Processing Agreement, stating: "Can you get me an eta on redlines? Working all day standing by thanks"

22. That same day, Mr. Palmer responded at 11:12 a.m. to advise Mr. Mangone Miranda: "Eta for redline is 6-7 pm EST Today. Tyler is at a family function this AM but will turn it out thereafter. I am available till maybe 11 pm."

23.       Thereafter, also on January 25, 2020, at 4:34 pm Mr. Mangone Miranda sent Mr. Palmer another text message, stating: "Getting on board call now.  Giving update.  Pls confirm redline schedule still on track.  Super important to me pls.  Thank You"

24.       In response, at 7:04 p.m., Mr. Palmer responded: "OK I see Tyler Emailed the draft 30 minutes ago & you have it."

25.       The next day, Sunday January 26th, at 10:35 am Mr. Mangone Miranda sent a text to Mr. Palmer to advise that he was: "Meeting Gary at noon to review, follow up soon after."

26.       Thereafter, on January 26th at 1:47 p.m. Mr. Mangone Miranda texted Mr. Palmer to inquiry: "you free?  With Gary, Can you get you and Tyler on call?"  Mr. Palmer responded with: "Yes, need about 15 minutes to complete my notes to Tyler."  The parties then held a lengthy phone call to discuss the key points of the Processing Agreement.

27.       Following the telephone call to discuss the Processing Agreement, and the subsequent exchange of drafts, at 3:31 pm Mr. Mangone Miranda again inquired when the parties would be ready to talk.

28.       After another phone call, and further exchange of drafts of the Processing Agreement, on Sunday January 26th at 11:31 p.m., Mr. Mangone Miranda sent a text to Mr. Palmer to state: "Contract coming back to you."

29.       In the draft sent back on Sunday January 26th, close to midnight, GenCanna deleted a provision which had stated: "Each Party represents that it is not at imminent risk of material default under any loan or monetary obligation that would endanger either Party's ability to perform under the terms of this Agreement."  Earlier in the day, GenCanna had deleted a provision from the Processing Agreement which would have allowed the parties to conduct due diligence.

30. On Monday, January 27th, at approximately 3:00 a.m., the parties signed the Processing Agreement.

31. The involuntary bankruptcy petition in the instant bankruptcy action was filed on January 24, 2020, at 2:49 p.m. Plaintiff is informed and believes that GenCanna was aware that the case had been filed on the date of its filing, and that GenCanna's President, Steve Bevin, received a call from a Kentucky politician informing him of the action shortly after its filing, and prior to its service upon him.

32. SOE had no inkling that the involuntary bankruptcy had been filed, and remained ignorant of its filing until January 29, 2020. At no point in time did GenCanna expressly inform SOE in writing that the involuntary proceeding had been filed. At no point in time prior to January 27, 2020, did GenCanna make any written disclosure to SOE about any actual or threatened litigation which may affect GenCanna's ability to perform under the terms of the LOI, as amended.

33. On January 29, 2020, SOE first discovered that an involuntary proceeding had been initiated against GenCanna. GenCanna did not affirmatively tell SOE, in writing, orally, or by any other means, that the involuntary proceeding had been filed.

34. On January 29, 2020, GenCanna's in-house attorney informed SOE that GenCanna was considering agreeing to the insolvency petition. SOE encouraged GenCanna to fight the involuntary proceeding.

### KEY TERMS OF PROCESSING AGREEMENT

35. The terms of the Biomass Processing Agreement provided that SOE would process the industrial hemp biomass supplied by GenCanna to produce industrial hemp crude oil and post-processing products including but not limited to CBD distillate, isolate, and/or other

legal cannabinoids.  As with the LOI, the consideration for the Biomass Processing Agreement, SOE would be entitled to 25% of the proceeds of the refined products, and GenCanna would keep the remainder, with GenCanna to pay any and all commissions, marketing, and other costs associated with bringing the processed products to retail and other markets for sale.  As with the LOI, GenCanna promised to provide equipment and expertise as needed by SOE necessary to process the biomass supplied by GenCanna, and GenCanna further promised to assist SOE in its financing efforts by introducing it to sources of capital and partnership opportunities.

36.    Under the terms of the Biomass Processing Agreement, SOE agreed only to provide services to GenCanna and to those third parties for whom it had been processing industrial hemp products prior to entering into the Biomass Processing Agreement, for a period of two years.  This provision limited, and continues to limit, SOE's ability to generate new revenue or otherwise seek lucrative business opportunities for its services for as long as the Biomass Processing Agreement remains in effect.

37.    Under the terms of the Biomass Processing Agreement, SOE not only agreed to process 18.5 million pounds of biomass at a target rate of 300,000 pounds per day—requiring it to invest heavily into its processing plant, post-processing lab, and to hire a substantial workforce to meet production requirements—but it also agreed to open a west coast facility in Arizona to processing GenCanna biomass grown on the west coast of the United States.  The preparations for the Arizona facility will require a significant commitment and outlay of funds from SOE, and will require a larger outlay in the future, which GenCanna has been unable and unwilling to fund.

38.    Throughout its negotiations with SOE, GenCanna represented that it would be financially capable of meeting its commitments, and that it would be able to provide the biomass, equipment, funding connections, and logistical support necessary to ensure that SOE could

process the biomass provided by GenCanna and receive its share of the payments from the finished products without undue delay.

39. GenCanna further represented that the reason the Processing Agreement needed to be executed quickly was that if the agreement was not in place by Monday, January 27, 2020, MGG would not release funds to GenCanna to enable GenCanna to pay its farmers which were purportedly due on January 27, 2020. In reality, GenCanna knew of the involuntary proceeding, was contemplating its own insolvency proceeding and contemplating consenting to the involuntary proceeding, and wanted the Processing Agreement to be in place in order to materially increase the value of its assets. GenCanna created a false narrative to SOE to induce SOE to work through the weekend and execute the Processing Agreement before SOE could discover the existence of the involuntary proceeding, which it did on January 29, 2020,

40. Had SOE been aware of the involuntary bankruptcy petition and filing against GenCanna, it would never have agreed to enter into the Biomass Processing Agreement. Had SOE been aware of the depth of GenCanna's financial problems, it would never even have entered the LOI, or taken on the ambitious expansion of its processing plant. SOE further would have been able to contract with other industrial hemp growers and could have generated regular and substantial revenue at its existing facility.

41. As of the date of filing, GenCanna has failed to provide the promised equipment, and has failed to provide assurances that SOE will be remunerated in timely fashion in order to ensure that SOE can pay its employees, vendors and other creditors in timely fashion to ensure that it can remain in operation.

42. GenCanna has also failed to introduce SOE to a single source of financing or partnership, and by virtue of its bankruptcy filing, has made an effective introduction to financiers effectively impossible.

## IV.    COUNTS

### COUNT ONE

### Breach of Contract

43. SOE realleges and incorporates all preceding paragraphs above.

44. SOE had an enforceable agreement that affirmatively required GenCanna to disclose any litigation that could affect its ability to perform its obligations under the LOI.  This was a material term of the LOI.

45. On information and belief, GenCanna materially breached its obligations under the LOI with SOE by failing to disclose to SOE that the involuntary bankruptcy petition had been filed against GenCanna even though it was aware that the involuntary petition had been filed.

46. As a result of GenCanna's breach, SOE has been damaged and is entitled to rescission of the LOI and Biomass Processing Agreement, as well as just compensation for all losses and/or damages sustained and as permitted by law, which exceed the jurisdictional limits of this Court, in an amount to be determined at trial.

### COUNT TWO

### VIOLATION OF SECTION 363(c)

47. SOE realleges and incorporates all preceding paragraphs above.

48. The Biomass Processing Agreement was entered into on January 27, 2020, three days after the involuntary bankruptcy petition.

49. Under 11 U.S.C. § 363(c), a transaction outside of the ordinary course of business entered into by a Chapter 11 Debtor-in-Possession requires court approval after notice and hearing. In re Roth American, Inc., 975 F.2d 949 (3rd Cir. 1992); In re Lavigne, 114 F.3d 379 (2d Cir. 1997); In re Carled, Inc., 91 F.3d 811 (6th Cir. 1996).

50. The Biomass Processing Agreement was not approved by this Court and is, therefore, void and of no effect.

## COUNT THREE

### Fraud

51. SOE realleges and incorporates all preceding paragraphs above.

52. On information and belief, GenCanna made representations that were false or recklessly made, and concealed material facts from SOE. On information and belief, GenCanna knew that it was financially incapable of meeting its obligations under the Biomass Processing Agreement, but induced SOE to enter into the Biomass Processing Agreement anyway, in conscious disregard of SOE's rights, out of a desire to get SOE to commit significant resources exclusively and irrevocably to GenCanna.

53. On information and belief, GenCanna made the following false representations and omissions to SOE:

    a. Failing to inform SOE about GenCanna's financial condition, inducing SOE to enter into the Biomass Processing Agreement;

    b. Making affirmative false representations about GenCanna's financial condition between January 22 and January 24, wherein Mr. Mangone Miranda represented to SOE that GenCanna was not at risk of default such that its business operations would be halted, and was sufficiently

        financially stable such that it would be able to perform under the terms of any agreement with SOE and

    c.    Making false representations on or about January 25 and 26, wherein Mr. Mangone Miranda represented to SOE that in the absence of a fully-executed Processing Agreement GenCanna would not be able to obtain a multi-million tranche of capital from MGG in the absence of which GenCanna would default in the performance of its payment obligations to its farmers, when in reality GenCanna knew that the involuntary bankruptcy petition had been filed, was contemplating its own bankruptcy petition, and needed the Processing Agreement to be in place prior to such insolvency proceedings to increase the value of its assets.

54.    At the time of these disclosures and/or omissions, GenCanna had a duty to disclose its financial information accurately because that information would have been considered material by any reasonable contracting party, and to otherwise make truthful representations to SOE.

55.    These representations and omissions were each material to SOE because they were important to SOE's consideration of whether to enter into the Biomass Processing Agreement, and specifically, whether SOE would commit the significant resources necessary to undertake its obligations under the Biomass Processing Agreement.

56.    On information and belief, GenCanna and its executives, including Matty Magone Miranda, knew that their affirmative false representations were false at the time they made them. On information and belief, GenCanna and Mr. Mangone Miranda knew that the involuntary bankruptcy petition against GenCanna would cause SOE not to enter into the Biomass

Processing Agreement, and their failure to disclose, and concealment of, the existence of the involuntary bankruptcy petition against GenCanna would cause SOE to enter into the Biomass Processing Agreement.

57. SOE justifiably relied on the false statements and omissions of GenCanna and Mr. Mangone Miranda on behalf of GenCanna, to its detriment.

58. Had the aforementioned misrepresentations and omissions not been made, SOE would have acted in a different manner. Specifically, SOE would have:

   a. Not entered into the Biomass Processing Agreement;

   b. Not committed the resources, including plant expansion and taking the formative financial steps to add a new plant in Arizona, required under the Biomass Processing Agreement;

   c. Entered into biomass processing agreements with other industrial hemp growers and suppliers; and

   d. Not committed resources into the negotiations surrounding the Biomass Processing Agreement.

59. As a direct and proximate consequence of GenCanna's conduct, SOE has suffered harm for which it is entitled to recover compensatory damages, the exact amount of which shall be determined at trial, but which exceed the jurisdictional limits of this Court.

## COUNT FOUR

### Promissory Estoppel

60. SOE realleges and incorporates all preceding paragraphs above.

61. GenCanna made several promises and commitments to SOE, including but not limited to, disclosing information about any litigation that could affect GenCanna's ability to perform the terms of the LOI and the Biomass Processing Agreement.

62. GenCanna's actions and promises induced SOE to commit to a plant expansion, the scouting of a new location, and the hiring of several new employees, and not to seek biomass processing opportunities with other industrial hemp growers and suppliers.

63. SOE relied on GenCanna's promises and commitments, to its detriment.

64. GenCanna and its representatives should have reasonably expected that SOE would rely upon their representations, and forcing SOE to bear the burden of these commitments without recompense would result in injustice.

65. As a result of GenCanna's actions and promises, SOE has sustained damages and is entitled to just compensation for all of their losses to the fullest extent permitted by law, in an amount in excess of the jurisdictional limits of this Court, to be determined at trial.

## COUNT FIVE

### Punitive Damages

66. SOE realleges and incorporates all preceding paragraphs above.

67. The above-detailed acts of GenCanna were malicious, fraudulent, willful and wanton.

68. As a direct and proximate result of GenCanna's willful and malicious conduct, SOE has suffered harm for which it is entitled to recover punitive damages, the exact amount of which must be determined at trial.

### JURY TRIAL DEMAND

69. SOE demands a jury trial on all claims and issues.

## PRAYER FOR RELIEF

SOE respectfully prays that Defendant GenCanna be cited to appear and answer and that SOE be granted the following damages and other relief:

    a.    For a determination that the Processing Agreement is void and of no effect;

    b.    Money damages as pleaded above;

    c.    Prejudgment and post-judgment interest as provided by law

    d.    Punitive damages;

    e.    Their reasonable costs expended herein, including reasonable attorneys' fees;

    f.    For a trial by jury on all issues of fact; and

    g.    All such other relief, in law or in equity, to which SOE may be justly entitled.

Dated this 24th day of February, 2020.

Respectfully submitted,

*/s/ Elizabeth Lee Thompson*
Elizabeth Lee Thompson (Ky Bar No. 70680)
STITES & HARBISON PLLC
250 West Main Street, Suite 2300
Lexington, KY 40507-1758
Telephone: (859) 226-2300
Email: ethompson@stites.com

and

Tyler R. Dowdall (*Pro Hac Vice pending*)
Christopher Nelson (*Pro Hac Vice pending*)
Epport, Richmond & Robbins, LLP
1875 Century Park East, Suite 800
Los Angeles, CA 90067
Telephone: (310) 785-0885
Facsimile: (310) 785-0787
Email: tdowdall@erlaw.com
    Cnelson@erlaw.com

*Counsel for Specialty Oils Extraction Manufacturer, LLC*