UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | ) | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GenCanna Global USA, Inc., *et al.*,[1] | ) | Case No. 20-50133-grs |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | Honorable Gregory R. Schaaf |
| | ) | |

**EMERGENCY MOTION OF THE
DEBTORS AND DEBTORS IN POSSESSION TO ENFORCE THE
AUTOMATIC STAY IMPOSED UNDER 11 U.S.C. § 362 AND FOR SANCTIONS**

GenCanna Global USA, Inc. ("GenCanna") and its affiliated debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") hereby move the Court (the "Motion"), pursuant to sections 105(a), 362 and 365 of title 11 of the United States Code (the "Bankruptcy Code"), for an order enforcing the automatic stay as to Specialty Oil Extractors, LLC ("SOE"). In further support of the Motion, the Debtors respectfully state as follows:

**PRELIMINARY STATEMENT**

1. At the first day hearing in these cases, the Debtors discussed the importance of their contractual relationship with SOE. With the construction of the Debtors' Mayfield, Kentucky drying and processing center not able to be completed in time to handle the Debtors' 2019 hemp harvest, the Debtors entered into a relationship with SOE, a third party processing company in South Carolina, to handle processing a large portion of the Debtors' 2019 harvest.

---

[1] The Debtors in these chapter 11 bankruptcy cases are (with the last four digits of their federal tax identification numbers in parentheses): GenCanna Global USA, Inc. (0251); GenCanna Global, Inc. (N/A); and Hemp Kentucky LLC (2600).

1

13073076 v4

2.  More specifically, the Debtors contracted with SOE to process the Debtors' green (undried/wet) chopped industrial hemp biomass (the "Biomass") from raw stage to crude hemp oil, and later to isolate/distillate and other products. Notwithstanding its knowledge of the bankruptcy filing and the existence of an executory contract between the Debtors and SOE, SOE has refused to process any Biomass as required under its executory contract since February 18.

3.  The Debtors have had numerous discussions with SOE and its principals in an effort to reach a resolution, but to no avail. SOE's actions are an intentional violation of the automatic stay, and are causing serious harm to the Debtors' ability to generate revenues and continue operating.

4.  The Debtors' respectfully request an order enforcing the automatic stay as to SOE, compelling SOE to perform its processing services under its executory contracts pending a decision by the Debtors to assume or reject such contracts, and requiring SOE to cease and desist from taking any other actions in violation of the automatic stay.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

**A.   General Background**

6.  On January 24, 2020, certain creditors filed an involuntary chapter 11 petition for relief under the Bankruptcy Code against GenCanna. On February 5, 2020, Debtors GenCanna Global, Inc. and Hemp Kentucky LLC each filed a voluntary chapter 11 petition for relief under the Bankruptcy Code. On February 6, 2020, GenCanna consented to the involuntary petition, and an order for relief was subsequently entered.

7. The Debtors' chapter 11 cases (the "Cases") are being jointly administered for procedural purposes only.

8. The Debtors are continuing to operate their business and manage their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9. On February 18, 2020, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors [Docket No. 135].

10. A description of the Debtors' business and the events leading to the filing of these Cases is set forth in the *Declaration of James Alt in Support of Chapter 11 Filings and First Day Motions* [Docket No. 44].

**B.     The SOE Contracts**

11. GenCanna, SOE and MGG Investment Group LP as collateral agent (the "Collateral Agent") are parties to that certain Collateral Access Agreement dated as of December 20, 2019 (the "Collateral Access Agreement"), a true and correct copy of which is attached hereto as **Exhibit A**.[2] The Collateral Access Agreement provided for, among other things, the rights of the Collateral Agent to access its collateral in connection with SOE's agreement to store and process the Debtors' Biomass into finished product pursuant to a Binding Letter of Intent dated October 13, 2019 (the "Letter of Intent"). A true and correct copy of the Letter of Intent is attached hereto as **Exhibit B**.

12. GenCanna and SOE commenced their business relationship and SOE began receiving and processing hemp from GenCanna based on the Letter of Intent. The terms of the

---

[2] The Debtors note that they have filed a *Motion of the Debtors and Debtors in Possession to Seal Exhibits to the Debtors' Emergency Motion to Enforce the Automatic Stay Imposed Under 11 U.S.C. § 362 and For Sanctions* contemporaneously herewith, by which the Debtors request that Exhibits A, B, and C to the Motion be filed under seal.

Letter of Intent were later incorporated into a more formal and detailed Biomass Processing Agreement dated as of January 27, 2020, by and between GenCanna and SOE (the "Processing Agreement"), a true and correct copy of which is attached hereto as **Exhibit C**.

13. Pursuant to the Processing Agreement, GenCanna owes various obligations to SOE, including as described in section 2.1 of the Processing Agreement, and SOE owes various obligations to GenCanna, including as described in section 2.2 of the Processing Agreement.

14. Among other things, upon receiving Biomass from GenCanna, SOE is obligated to store it appropriately and utilize commercially-reasonable efforts to timely process the Biomass. Processing Agreement, §§ 2.2(b) and (c).

15. Since the Debtors' Cases were commenced, SOE maintains possession of the majority of the Debtors' harvest / Biomass. SOE processed the Debtors' Biomass postpetition from February 7 through February 13. However, since February 18, SOE has refused to process any bales of Biomass, in part due to prepetition amounts owing under the Processing Agreement. The Debtors have had numerous discussions with SOE's principals in an effort to get them to perform consensually, but to no avail. Furthermore, not only have the Debtors assured SOE that they have sufficient funding under their postpetition financing facility to pay for all postpetition services, and that such amounts are included in the postpetition budget, SOE has still refused to perform.

16. SOE's counsel has advised that SOE intends to "challenge" the enforceability of the Processing Agreement for various reasons. The Debtors reserve all rights in that regard.

17. Notwithstanding the Debtors' continuing efforts to work with SOE to resolve their disputes, on February 24, 2020, SOE filed a complaint to initiate Adversary Proceeding No. 20-05006-grs within these chapter 11 cases.

13073076 v4

**RELIEF REQUESTED**

18. The Debtors respectfully seek an order enforcing the automatic stay as to SOE pursuant to sections 105(a), 362 and 365 of the Bankruptcy Code, and compelling SOE to perform its obligations under the Processing Agreement.

19. The Debtors further request that the Bankruptcy Court sanction SOE for its deliberate violation of the automatic stay, including by awarding the Debtors legal fees and costs for bringing this Motion.

**BASIS FOR RELIEF**

**A.    SOE Has Violated the Automatic Stay.**

20. The filing of a bankruptcy petition automatically creates an automatic stay applicable to all entities in respect of the actions identified in section 362(a) of the Bankruptcy Code. 11 U.S.C. § 362(a). The automatic stay is a fundamental protection that provides a debtor with a breathing spell from creditors. *Cox v. Specialty Vehicle Sols., LLC*, 715 Fed. Appx. 443, 447 (6th Cir. 2017). The stay's protection is automatic and mandatory, and the debtor does not need to take an action to invoke the stay's protection. *Elder-Beerman Stores Corp. v. Thomasville Furniture Indus. (In re Elder-Beerman Stores Corp.)*, 195 B.R. 1019, 1023 (Bankr. S.D. Ohio 1996). Having knowledge of a bankruptcy filing "is the legal equivalent of knowledge of the automatic stay." *Henderson v. AutoBarn Atlanta, Inc. (In re Henderson)*, 2011 Bankr. LEXIS 387, *12 (Bankr. E.D. KY. 2011).

21. Among other things, automatic stay prohibits (1) the commencement or continuation of a legal proceeding that was commenced or could have been commenced prepetition; (2) any act to obtain possession of, or exercise control over, property of the estate; and (3) any act to collect a prepetition debt owing by the debtor. 11 U.S.C. §§ 362(a)(1), (3), and (6).

22. "Court have consistently held that contract rights are property of the estate, and that therefore those rights are protected by the automatic stay." *Elder-Beerman, supra*, at 1023-24, citing cases.

23. Here, SOE has knowledge of the Debtors' bankruptcy Cases, and therefore has knowledge of the automatic stay. *In re Henderson*, 2011 Bankr. LEXIS 387 at *12. SOE has refused to perform its obligations under the Processing Agreement, in part because the Debtors' owe SOE a prepetition debt under the Processing Agreement. SOE's willful and deliberate refusal to perform its obligations, despite inquires and explanations from the Debtors' business and legal teams, is seemingly an attempt to recover a prepetition debt and an act to control the Debtors' contract rights under the Processing Agreement. As such, SOE has knowingly violated the automatic stay.

**B.      SOE is Required to Perform Under its Agreements with the Debtors Pending the Debtors' Decision to Assume or Reject the Agreements.**

24. A debtor also has the ability to determine whether to assume or reject an executory contract during the bankruptcy. 11 U.S.C. § 365(a). In a chapter 11 case, a debtor may decide whether to assume or reject an executory contact at any time before the confirmation of a plan. 11 U.S.C. § 365(d)(2). Pending the debtor's decision to assume or reject a contract, it is beyond question that the non-debtor counterparty is required to continue performing its obligations under the executory contract. *See*, *In re Mirant Corp.*, 303 B.R. 319, 328 (Bankr. N.D. Tex. 2003) ("Furthermore, there is overwhelming authority to the effect that other parties to a contract with the debtor must perform under a contract with the debtor prior to the debtor's decision to assume or reject.").

25. As one Circuit Court has explained:

> The Bankruptcy Code prescribes a set course of treatment for
> executory contracts. Acting in the debtor's interest, the trustee,

13073076 v4

> 'subject to the court's approval, may assume or reject any executory contract … of the debtor.' Ordinarily, the debtor need not commit itself to assumption or rejection of such a contract until a reorganization plan is confirmed. In the meantime, the executory contract remains in effect and creditors are bound to honor it.

*In re Public Serv. Co.*, 884 F.2d 11, 14 (1st Cir. 1989).

26. In addition, section 365(e)(1)(B) of the Bankruptcy Code prohibits counterparties to contracts with a debtor from unilaterally terminating contracts because of a debtor's bankruptcy filing. Section 365(e)(l)(B) of the Bankruptcy Code provides, subject to certain limited exceptions, that:

> [n]otwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified, and any right or obligation under such contract or lease may not be terminated or modified, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on . . . the commencement of a case under this title.

11 U.S.C. § 365(e)(1)(B). Thus, section 365(e) of the Bankruptcy Code invalidates so-called "*ipso facto*" provisions, which provide for the termination of a contract upon a bankruptcy filing. Section 365 of the Bankruptcy Code provides that any right or obligation under an executory contract many not be terminated or modified at any time after the commencement of the case solely because of an *ipso facto* provision.

27. Here, the Processing Agreement is an executory contract as it has material obligations outstanding on both sides of the contract. As an executory contract, GenCanna has the right to decide whether to assume or reject the Processing Agreement, and has up until confirmation of a plan of reorganization to make that decision. In the meantime, SOE is obligated to honor the Processing Agreement and continuing performing, provided that the Debtors pay for postpetition performance.

C.  **The Debtors' Contract Rights Remain Property of the Estate Notwithstanding SOE's Intention of Challenging the Processing Agreement.**

28. Section 541 of the Bankruptcy Code governs property of the bankruptcy estate. Property of the estate includes, among other things, all legal or equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1). "The term 'property of the estate' is broad and far-reaching." *Elswick v. Miller (In re Elswick)*, 2012 U.S. Dist. LEXIS 81098, *5-6 (E.D. Ky. June 12, 2012). As noted above, a debtor's contracts rights are included in property of the estate. *Elder-Beerman, supra*, at 1023-24, citing cases.

29. Here, at most, any claim or challenge that SOE might assert as to the Processing Agreement is unproven, and subject to being litigated to a final judgment. Until then, GenCanna's rights under the Processing Agreement remain property of the bankruptcy estate. Any effort by SOE to unilaterally terminate the Processing Agreement or cease performing postpetition pursuant to the terms of the Processing Agreement is a blatant stay violation.

30. The existence of a dispute as to the enforceability of a particular contract does not render the contract automatically void and negate the contract rights as they presently exist. If that were so, a bankruptcy estate could be deprived of valuable contract rights simply on the basis of mere allegations by the non-debtor counterparty that the contract is unenforceable. As courts have held, "[o]rdinarily, the debtor need not commit itself to assumption or rejection of [an executory] contract until a reorganization plan is confirmed. 11 U.S.C. § 365(d)(2). In the meantime, the executory contract remains in effect and creditors are bound to honor it." *See In re Public Service Co. of New Hampshire*, 884 F.2d 11, 14-15 (1st Cir. 1989) Unless and until the contract is successfully disputed, challenged, or otherwise determined by a final non-appealable order to be unenforceable, the status quo must remain and the bankruptcy estate must not be deprived of its contractual rights.

13073076 v4

31. The heart of the automatic stay is the breathing spell it affords to a debtor from actions by a creditor to, among other things, collect prepetition debts and exercise control over property of the estate. That is precisely what SOE is doing in refusing to perform its contractual obligations.

32. Furthermore, as noted above, SOE had signed a binding Letter of Intent with GenCanna on or about October 13, 2019. The terms were set forth in greater detail in the subsequent Processing Agreement that was signed on or about January 27, 2019. Even if SOE seeks to challenge the Processing Agreement, such challenge doesn't extend back to the Letter of Intent, which was in effect since October of last year. SOE was generally performing its contractual obligations under those agreements prepetition. Only now that the bankruptcy cases have been commenced has SOE raised an argument as to the enforceability of such agreements. In effect, SOE is attempting to get out of its contracts because of the Debtors' insolvency and the commencement of these cases. Such an effort runs contrary to the requirements of the Bankruptcy Code. 11 U.S.C. § 365(e).

33. And finally, the Debtors have the ability to pay SOE for its postpetition performance through the Debtors' postpetition DIP financing facility, and such payments are reflected in the DIP budget. As such, SOE will not be harmed if it is required to continue performing its contractual obligations postpetition, pending any challenge SOE may pursue relative to the terms of the contracts.

### NOTICE

34. **PLEASE TAKE NOTICE** that the Debtors are requesting an expedited preliminary hearing on the Motion on Tuesday, February 25, 2020 at 9:00 a.m. (Eastern Time) before the Honorable Gregory R. Schaaf, at the U.S. Bankruptcy Court for the Eastern District of Kentucky, located at 100 East Vine Street, 2nd Floor Courtroom, Lexington, Kentucky 40507.

13073076 v4

The Debtors intend to request that an evidentiary hearing on the Motion be set for Friday, February 28, 2020.

36. The Debtors provided a draft of this motion to counsel for SOE on Friday morning, February 21, 2020, and noted in the cover email that the Debtors would file the same in the event a resolution could not be reached, and that the Debtors would seek to shorten notice for a hearing to occur on the Motion on Tuesday, February 25.

36. Over the weekend, discussions continued with SOE and its counsel as to the possibility of a consensual resolution. On Sunday evening, February 23, 2020, the Debtors' counsel sent a follow up email to counsel for SOE asking as to the status of the situation, and advising again that the Debtors intended to file the Motion on Monday if no resolution was reached. On Monday (earlier today), counsel for SOE advised that SOE was proceeding with "challenging" the contract. Accordingly, this Motion was filed.

37. The Debtors respectfully submit that, with this background, notice of the Motion and the potential for an emergency hearing on Tuesday, February 25, 2020 was sufficient under the circumstances.

[*remainder of page intentionally left blank*]

13073076 v4

WHEREFORE, the Debtor respectfully seek entry of an order granting the relief requested herein, and such other and further relief as the Court deems just and proper.

Dated: February 24, 2020

Respectfully submitted,

/s/ James R. Irving
James R. Irving
April A. Wimberg
Christopher B. Madden
DENTONS BINGHAM GREENEBAUM LLP
3500 PNC Tower
101 South Fifth Street
Louisville, Kentucky 40202
Telephone:    (502) 587-3606
Facsimile:     (502) 540-2215
E-mail:         james.irving@dentons.com
                    april.wimberg@dentons.com
                    chris.madden@dentons.com

*Proposed Counsel for the Debtors*

Michael J. Barrie (*pro hac vice*)
Jennifer R. Hoover (*pro hac vice*)
BENESCH, FRIEDLANDER, COPLAN, &
ARONOFF LLP
222 Delaware Avenue, Suite 801
Wilmington, DE 19801
Telephone:    (302) 442-7010 Phone
E-mail:         mbarrie@beneschlaw.com
                    jhoover@beneschlaw.com

-and-

Elliot M. Smith (*pro hac vice*)
BENESCH, FRIEDLANDER, COPLAN, &
ARONOFF LLP
200 Public Square, Suite 2300
Cleveland, OH 44114
Telephone:    (216) 363-4500
E-mail:         esmith@beneschlaw.com

*Proposed Counsel for the Debtors*

13073076 v4