**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GenCanna Global USA, Inc., *et al.*,[1] | ) | Case No. 20-50133-grs |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Honorable Gregory R. Schaaf |
| | ) | |

**ORDER APPROVING BIDDING PROCEDURES IN CONNECTION WITH THE DEBTORS' BIDDING PROCESS AND GRANTING RELATED RELIEF**

Upon the *Debtors' Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with the Debtors' Proposed Bidding Process; (II) Approving the Transaction Ultimately Selected as the Highest and Best Alternative Through the Bidding Process, Including a Possible Sale of Assets Free and Clear of Liens, Claims and Encumbrances; and (III) Granting Related Relief* (the "Motion");[2] the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); venue being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having reviewed the Motion and having held a hearing in respect thereof on March 4, 2020; and it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other

---

[1] The Debtors in these chapter 11 bankruptcy cases are (with the last four digits of their federal tax identification numbers in parentheses): GenCanna Global USA, Inc. (0251); GenCanna Global, Inc. (N/A); and Hemp Kentucky LLC (0816).

[2] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion or the Bidding Procedures, as applicable.

13129218 v3

parties in interest; and the Debtors having provided adequate and appropriate notice of the Motion under the circumstances; and after due deliberation and sufficient cause appearing therefor;

THE COURT HEREBY FINDS THAT:

    A.    To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

    B.    This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

    C.    Good and sufficient notice of the Motion, the Bidding Procedures, and the relief sought in the Motion has been given under the circumstances, and no other or further notice is required except as set forth herein. A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to all parties in interest.

    D.    The bases for relief requested in the Motion are: (i) sections 363, 365, 503 and 507 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"); (ii) Rules 2002(a)(2), 6004, 6006, and 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); and (iii) Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedures of the United States Bankruptcy Court for the Eastern District of Kentucky (the "Local Rules").

    E.    The Debtors have articulated good and sufficient business reasons for this Court to grant the relief requested in the Motion, as modified by this Order, including, without limitation, to approve the Bidding Procedures. Such good and sufficient business justification, which was set forth in the Motion and on the record at the hearing, are incorporated herein by reference and, *inter alia*, form the basis for the Court's findings of fact and conclusions of law herein.

IT IS HEREBY ORDERED THAT:

1. The Motion is granted as provided herein.

2. Except as specifically set forth in paragraph 23 hereof, all objections to the relief requested in the Motion that have not been withdrawn, waived or settled as announced to this Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

3. The Bidding Procedures attached hereto as **Exhibit 1** are hereby approved, and shall govern all aspects of the Bidding Process, including the submission of bids and proceedings relating to the efforts of the Debtors, with the assistance of Jefferies and the Debtors' other advisors, to investigate all available transaction alternatives to maximize value in these cases.

4. The Debtors, in consultation with the DIP Secured Parties, the Prepetition Secured Parties, the Committee and the Office of the United States Trustee (the "Consultation Parties"), may modify the Bid Procedures as they deem necessary or appropriate to facilitate the Bidding Process. Notice of any material modifications must be filed with the Court as soon as practicable, and parties in interest shall be entitled to object to any such material modifications.

5. The Debtors are hereby authorized, but not directed, with the consent of each of the Consultation Parties, to designate a Stalking Horse and to offer such Stalking Horse any or all of the Stalking Horse Protections as the Debtors deem necessary or appropriate in their business judgment ("Stalking Horse Designation"). A Stalking Horse Designation can be made by the Debtors at any time during the Bidding Process, but in no event later than the Stalking Horse Designation Deadline, before which time the Debtors shall file a notice of any such designation with the Bankruptcy Court. If a Stalking Horse Designation is made with the consent of the Consultation Parties, the Court reserves the right to consider the reasonableness of such designation at the Transaction Hearing. In addition, if the Debtors choose to make a Stalking

Horse Designation, and a Consultation Party does not consent to such designation, then the Debtors may request by motion that this Court approve its Stalking Horse Designation and seek an expedited hearing in respect thereof, subject to any objections thereto.

6. Within five (5) days after entry of the Bidding Procedures Order, the Debtors shall serve a notice of the entry of this Bidding Procedures Order and a copy of this Bidding Procedures Order on the core service list maintained by the Debtors' claims and noticing agent, which includes all parties who have appeared in these Cases to date, and on all Potential Transaction Counterparties identified by Jefferies who have not already declined participation in the process. The Debtors shall also cause a copy of this Bidding Procedures Order to be posted in the Data Room.

7. Within seven (7) business days of entry of this Bidding Procedures Order, the Debtors will send a notice of the entry of this Bidding Procedures Order, with all applicable deadlines set by this Bidding Procedures Order listed in the notice itself, to all other parties in the Debtors' consolidated mailing matrix.

8. In addition, no later than April 1, 2020, the Debtors will (a) publish a notice of sale one time in *The New York Times* (national edition), as well as one time in a local newspaper and/or one time in an industry publication, as determined by the Debtors and their advisors, and (b) mail a copy of the same notice of sale by first-class mail to all of the Debtors' creditors that have filed proofs of claim in these Cases or whose claims are listed by the Debtors in their schedules of liabilities (to the extent such parties did not already receive the notice described in paragraph 7 above) and (c) publish the notice of sale on the Debtors' website hosted by Epiq Corporate Restructuring, LLC ("Epiq"). The notice shall provide that any party that wishes to obtain a copy of this Motion or the Bid Procedures Order may do so by making such a request in writing to Epiq

13129218 v3

at:

    GenCanna Global, Inc.
    c/o Epiq Corporate Restructuring LLC
    PO Box 4419
    Beaverton, OR 97076-4419

or by accessing the Epiq website at https://dm.epiq11.com/GenCanna.

9. On or before April 1, 2020, the Debtors shall file an Assumption Notice that identifies the Proposed Cure Amounts. The Debtors shall promptly serve the Assumption Notice on the counterparties to the contracts and leases listed thereon, and such counterparties shall have **14 days from the date of service** of the Assumption Notice to file a written objection with the Bankruptcy Court to the Proposed Cure Amount ("Cure Objection"). Any party who fails to timely file a Cure Objection shall be forever barred from objecting to the Proposed Cure Amounts or from challenging the sufficiency of such amounts on any basis. Furthermore, such party shall be deemed to have consented to the Proposed Cure Amounts. All other objections to assumption and assignment of a particular contract or lease (i.e., those objections that are **not** based on a cure amount) are reserved for consideration at the Transaction Hearing, and are subject to the selection of the Successful Bid(s) and Backup Bid.

10. The deadline for submitting a final and binding Bid in accordance with the Bidding Procedures is no later than **5:00 p.m. (EST) on April 17, 2020.**

11. If more than one Qualified Bid is timely received, the Debtors will conduct an auction on **April 20, 2020 at 10:00 a.m. (EST)** (the "Auction Date") at the offices of Debtors' counsel located at 300 West Vine Street, Suite 1200, Lexington, Kentucky 40507, or such other location as may be determined by the Debtors and communicated to Qualified Bidders.

12. Any objections to the proposed transaction contemplated by the Successful Bid(s) and/or the Backup Bid (other than objections to proposed cure amounts for contracts or leases to

be assumed and assigned) shall be filed with the Bankruptcy Court and served so as to be received no later than **11:59 p.m. (Eastern Time) on April 21, 2020** (the "Transaction Objection Deadline") on (a) the United States Trustee; (b) counsel to the Debtors, Benesch, Friedlander, Coplan & Aronoff, LLP, 222 Delaware Avenue, Suite 801, Wilmington, Delaware 19801 (Attn: Michael Barrie and Jennifer Hoover), Benesch, Friedlander, Coplan & Aronoff, LLP, 200 Public Square, Suite 2300, Cleveland, OH 44114 (Attn: Elliot Smith), and Dentons, 3500 PNC Tower, 101 South Fifth Street, Louisville, Kentucky, 40202 (Attn: James R. Irving); (c) counsel to the Committee; (d) counsel to the DIP Secured Parties and the Prepetition Secured Parties,[3] Schulte Roth & Zabel LLP, 919 Third Avenue, New York, New York 10022 (Attn: Adam C. Harris, Esq. and Kristine Manoukian, Esq.); and (e) counsel to any Stalking Horse (collectively, the "Notice Parties").

13.  A final hearing in respect of the Successful Bid(s) and Backup Bid will be conducted by the Bankruptcy Court on a date to be set by further order of the Bankruptcy Court (the "Transaction Hearing").

14.  The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Bidding Procedures Order.

15.  Notwithstanding anything to the contrary contained in this Bidding Procedures Order or otherwise, any right of the DIP Secured Parties and/or the Prepetition Secured Parties to consent to the sale of any portion of their collateral, including, without limitation, any assets on

---

[3] For the purposes of this Order, "DIP Secured Parties" and "Prepetition Secured Parties" shall have the meanings ascribed to such terms in the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, and 507 (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims and (B) Adequate Protection to Prepetition Lenders; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 82] (as may be amended, modified, or supplemented in accordance therewith and any final order authorizing the Debtors to obtain postpetition financing, the "Interim DIP Order").

13129218 v3

terms and conditions acceptable to the DIP Secured Parties and/or the Prepetition Secured Parties (as applicable) are hereby expressly preserved and not modified, waived or impaired in any way by the Bidding Procedures or this Bidding Procedures Order. For the avoidance of doubt, nothing in this Bidding Procedures Order or the Bidding Procedures shall amend, modify, or impair any provision of the Interim DIP Order or any final order approving such financing, or the rights of the Debtors, the Committee, the DIP Secured Parties or the Prepetition Secured Parties.

16. The failure to include or reference a particular provision of the Bidding Procedures specifically in this Bidding Procedures Order shall not diminish or impair the effectiveness or enforceability of such provision.

17. In the event of any inconsistencies between this Bidding Procedures Order, any asset purchase agreement, the Motion and/or the Bidding Procedures, this Bidding Procedures Order shall govern in all respects.

18. Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Rules are satisfied by such notice.

19. Notwithstanding Bankruptcy Rule 6004 or otherwise, this Bidding Procedures Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.

20. This Bankruptcy Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Bidding Procedures Order.

21. Any right of the Prepetition Secured Parties to credit bid pursuant to section 363(k) of the Bankruptcy Code shall be subject to the challenge rights of the Committee as provided for in the Interim DIP Order and any final order approving the Debtors' postpetition financing facility.

22. All parties in interest reserve their rights to object to the approval of the transaction selected as the Successful Bid and/or the Backup Bid.

23. Notwithstanding anything to the contrary herein, the dates and deadlines approved herein, and set forth in the Bidding Procedures, are only tentative dates that are subject to change in the event that the Milestones are extended in conjunction with the Court's consideration of the Debtors' request for an order approving the relief granted in the Interim DIP Order on a final basis. All objections to the Milestones that were timely filed by the February 28, 2020 objection deadline are preserved and shall be heard at the final hearing in respect of the DIP financing.

Tendered by:

*/s/ James R. Irving*
James R. Irving
DENTONS BINGHAM GREENEBAUM LLP
3500 PNC Tower
101 South Fifth Street
Louisville, Kentucky 40202
Telephone: (502) 587-3606
Facsimile: (502) 587-3695
Email: james.irving@dentons.com
*Proposed Counsel to the Debtors*

Seen and Agreed:

*/s/ Taft A. McKinstry*
FOWLER BELL PLLC
300 West Vine Street, Suite 600
Lexington, Kentucky 40507
Telephone:    (859) 252-6700
E-mail:    TMcKinstry@fowlerlaw.com
*Counsel to MGG Investment Group LP*

-and-

*/s/ Laura Day DelCotto*
DELCOTTO LAW GROUP PLLC
200 North Upper Street
Lexington, Kentucky 40507
Telephone:    (859) 231-5800
E-mail:    ldelcotto@dlgfirm.com
*Proposed Counsel to the Committee*

13129218 v3

---

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Friday, March 6, 2020**
(grs)

# Exhibit 1

## Bidding Procedures

13129218 v3

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF KENTUCKY
# LEXINGTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| GenCanna Global USA, Inc., *et al.*,[4] | ) Case No. 20-50133-grs |
| Debtors. | ) (Jointly Administered) |
| | ) Honorable Gregory R. Schaaf |

## BIDDING PROCEDURES FOR DEBTORS' ASSETS

On January 24, 2020, Pinnacle, Inc., Crawford Sales, Inc., and Integrity / Architecture, PLLC filed an involuntary petition under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Kentucky (the "Court") against GenCanna Global USA, Inc. (the "Alleged Debtor"). On February 5, 2020, the Debtors GenCanna Global, Inc. and Hemp Kentucky LLC filed with the Court voluntary chapter 11 petitions for relief under the Bankruptcy Code. On February 6, 2020, the Alleged Debtor consented to the involuntary petition for relief under chapter 11 of the Bankruptcy Code that was filed with the Court, and the Court subsequently entered the order for relief under chapter 11 of the Bankruptcy Code with respect to the Alleged Debtor.

On February [__], 2020, the Court entered an order approving these bidding procedures [Docket No. [__]] (these "Bidding Procedures," and such order, the "Bidding Procedures Order"). The Court will have jurisdiction with respect to any dispute that may arise with respect to these Bidding Procedures.

These Bidding Procedures set forth the process (the "Bidding Process") by which the Debtors are authorized to conduct an auction for the sale (the "Sale") of their assets (the "Auction") pursuant to section 363 of the Bankruptcy Code, a chapter 11 plan, or otherwise, to determine the Successful Bidder(s) (as defined below), or a refinancing of the Debtors indebtedness (together, with any Sale, a "Proposed Transaction").

---

[4] The Debtors in these chapter 11 bankruptcy cases are (with the last four digits of their federal tax identification numbers in parentheses): GenCanna Global USA, Inc. (0251); GenCanna Global, Inc. (N/A); and Hemp Kentucky LLC (0816).

13129218 v3

## Bidding Process

A.  **Due Diligence**:  Upon execution of a confidentiality agreement, each potential bidder will receive a copy of the CIP and will be given access to the Data Room, and will be provided with various financial data and other relevant and confidential information, subject to the Debtors' right to exclude such access for competitive concerns.  The Debtors, in consultation with the Consultation Parties (as defined below), reserve the right to determine whether a potential bidder should be provided a copy of the CIP and access to the Data Room based upon, among other things, a review of the financial capability of the potential bidder to consummate a transaction.  Any such bidder who is provided a CIP and Data Room access shall be deemed an "Acceptable Bidder."

B.  **Final Bid Deadline**:  Any Acceptable Bidder that desires to make a proposal, solicitation, or offer (each a "Bid") shall submit such Bid so as to be **actually received** by Jefferies on or before **5:00 p.m. (EST) on April 17, 2020** (the "Bid Deadline").

C.  **Qualified Bid Requirements**:  The Debtors will determine, after consultation with the Consultation Parties (as defined below) and with the reasonable consent of the DIP Secured Parties and the Prepetition Secured Parties, and subject to the Bidding Procedures and the requirements set forth herein, whether a Bid is a qualified bid (a "Qualified Bid") and, ultimately, a successful bid.  At minimum, to be a Qualified Bid, a Bid must be timely and submitted in writing with all required information and supporting documentation, and include the following (collectively, the "Bid Requirements"):

a.  a Bid for a sale transaction must include an executed asset purchase agreement (an "APA"), blacklined to show changes from the form APA, clearly setting forth (i) the proposed purchase price, and (ii) any conditions for closing, and stating that the Bid is irrevocable as set forth below;

b.  a Bid that requires the assumption and assignment of any executory contract or unexpired lease must identify with particularity each and every unexpired lease or executory contract (each, an "Assumed Contract") to be assumed and assigned, include an executed assumption and assignment agreement, and state that the bidder will responsible for all cure costs;

c.  a Bid must identify the structure proposed for undertaking the Proposed Transaction, including, if the Proposed Transaction is a Sale, the specific assets of the Debtors being acquired and liabilities being assumed, the proposed steps to accomplish such acquisition, and any financial, legal, or tax considerations upon which the Bid's structure relies;

d.  if a Bid contemplates the Sale of less than all assets, the Bid must identify whether or not the bidder is willing to aggregate its Bid into any acceptable consolidated Bid with other potential bidders;

e.  a Bid must be final and binding, and shall not be contingent upon any further due diligence investigation, any material adverse change, the receipt of financing, or approval by any board of directors, shareholders, or other entity;

f.     a Bid must include evidence, including financial statements (or such other form of financial disclosure and credit-quality support or enhancement reasonably acceptable to the Debtors in consultation with the Consultation Parties (as defined below)) sufficient to establish the financial wherewithal of the interested party to complete the contemplated transactions and, to the extent the interested party will rely upon the financial wherewithal of an affiliate, bid partner, or other sponsor (whether because the party is a newly-formed entity or otherwise (each, a "Sponsor"), evidence sufficient to establish the financial wherewithal and intent of the Sponsor to provide appropriate financial support;

g.     a Bid must contain financial and/or other information that will allow the Debtors, in consultation with the Consultation Parties (as defined below), to make a reasonable determination as to the bidder's financial and other capabilities to provide adequate assurance of future performance under section 365 of the Bankruptcy Code in a form requested by the Debtors to allow the Debtors to serve on counterparties to any contracts or leases being assigned in connection with the proposed sale that have requested, in writing, such information;

h.     a Bid must disclose the identity of the bidder's organization and principals;

i.     a Bid must include an acknowledgement and representation that the bidder (a) has relied solely upon its own independent review, investigation and/or inspection of any documents and/or assets to be acquired and liabilities to be assumed in making its bid; (b) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding any assets to be acquired or liabilities to be assumed or the completeness of any information provided in connection therewith, including by the Debtors, their professionals or any of their respective professionals and advisors, except as expressly stated in the APA or other transaction documentation; (c) is a sophisticated party capable of makings its own assessments in respect of making its Bid; and (d) has had the benefit of independent legal advice in connection with its Bid;

j.     a Bid must contain full details of the proposed number of employees of the Debtors who will become employees of the bidder and the proposed terms and conditions of employment to be offered to those employees;

k.     a Bid must (a) include an acknowledgement and representation that the bidder will assume the obligations of each of the Debtors under all executory contracts, unexpired leases, and licenses proposed to be assigned; (b) contains the bidder's agreement to pay all related cure costs; and (c) indicate which of these executory contracts, unexpired leases, and licenses, if any, the bidder must be permitted to assume as a condition of closing (for the avoidance of doubt, the Successful Bidder will be responsible for paying all cure costs for an assumed and assigned executory contract or lease);

l.     a Bid must provide for closing of the transaction no later than May 1, 2020;

  m.  a Bid must include evidence of authorization and approval from the Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery, and closing of the transaction;

  n.  a Bid for a sale transaction must include a cashier's check or be accompanied by a wire transfer payable or delivered to the Debtors, their counsel, or other agreed upon escrow agent, in an amount equal to ten percent (10%) of the total purchase price in the APA (excluding any value associated with assumed liabilities, leases or contracts; the "Deposit");

  o.  a Bid must disclose any agreements or understandings between the bidder and any third party with respect to the assets to be acquire or with respect to any possible transaction involving the Debtors.

  p.  a Bid must acknowledge in writing (a) that the bidder has not engaged in any collusion with respect to any Bids, specifying that it did not agree with any bidder or potential bidders to control price; and (b) that the bidder agrees not to engage in any collusion with respect to any Bids, the Auction, or any Proposed Transaction;

  q.  a Bid must constitute a good faith, *bona fide* offer to consummate a Proposed Transaction; and

  r.  a Bid must submit the bidder to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, the Auction, the construction and enforcement of these Bidding Procedures, and the Proposed Transaction documents and the closing, as applicable.

  D. **Evaluation of Qualified Bids**: The Debtors will determine the sufficiency of any submitted Bid, after consultation with the Consultation Parties, and they reserve the right to consider late Bids in their discretion and to waive any of the requirements for a Bid to be a Qualified Bid in consultation with the Consultation Parties. The Debtors shall as promptly as practicable notify bidders of their selection as a qualified bidder (each a "Qualified Bidder") and that their Bid is a "Qualified Bid."

  E. **Stalking Horse Bids**: The Debtors reserve the right, with the consent of the Consultation Parties, to enter into an agreement with a stalking horse (a "Stalking Horse") and provide such Stalking Horse with certain stalking horse protections the "Stalking Horse Protections"). The Debtors are under no obligation, however, to choose a Stalking Horse or to offer any of the Stalking Horse Protections.

If the Debtors identify a Stalking Horse, the Debtors will file a notice with the Court and serve such notice on all other Qualified Bidders identifying the Stalking Horse and the terms of the Stalking Horse Bid, including any Stalking Horse Protections that have been agreed to, by the Stalking Horse Designation Deadline. If a Stalking Horse Designation is made with the consent of the Consultation Parties, the Court reserves the right to consider the reasonableness of such designation at the final hearing in respect of the Successful Bidder transaction. In the absence of obtaining the consent of the Consultation Parties, if the Debtors seek to designate a Stalking Horse

and grant Stalking Horse Protections, the Debtors shall be entitled to file an expedited motion for such authority, and to seek an expedited hearing in respect thereof.

F. **The Auction**: If more than one Qualified Bid is received, an auction may be conducted on **April 20, 2020 at 10:00 a.m. (EST)** (the "Auction Date") at the offices of Debtors' counsel, or such other location as may be determined by the Debtors and communicated to Qualified Bidders. Qualified Bidders at the Auction will be informed of the terms of the previous Bids made by other Qualified Bidders, including the identity of the Qualified Bid that the Debtors determine is the highest or best Bid received by the Bid Deadline. Each Qualified Bidder at the Auction shall confirm that it has not engaged in any collusion with regard to the bidding or any sale of assets to be acquired. Any assets to be acquired shall be sold free and clear of all liens, claims, and encumbrances to the fullest extent allowed under section 363(f) of the Bankruptcy Code.

G. **Auction Procedures**: At the auction, the Debtors reserve the right to disclose procedures that will govern the conduct of the auction, including any minimum overbid requirements. The Debtors reserve the right to modify such procedures in any way, subject to the reasonable consent of the Consultation Parties. The auction may be adjourned or cancelled as the Debtors, after consultation with the Consultation Parties, deem appropriate. Reasonable notice of such adjournment and the time and place for the resumption of the auction or cancellation shall be given to all participants.

H. **Selection of Successful Bid(s):** At the conclusion of the auction, and subject to Court approval following the auction, the successful Bid or Bids (the "Successful Bid(s)," and, the bidder(s) who made such Successful Bid(s), the "Successful Bidder(s)") shall be selected and announced by the Debtors in consultation with the Consultation Parties. The Debtors also reserve the right to select a successful backup Bid in their sole discretion (the "Backup Bid"). As soon as practicable thereafter, the Debtors shall file with the Bankruptcy Court a notice of the Successful Bid(s) and the Backup Bid. The Successful Bid(s) and the Backup Bid are binding upon the bidders who made them, and such parties shall be obligated to close such transactions subject to approval of the transaction by the Bankruptcy Court (and in the case of the Backup Bid, only in the event the Successful Bid(s) fail to close).

I. **Backup Bid**: If the Successful Bidder(s) fails to consummate the transaction, breaches the APA or other applicable transaction documents, or otherwise fails to perform, upon consultation with the Consultation Parties, the Debtors may consummate the proposed transaction with the Backup Bidder, in their sole discretion and without the need for further Court approval.

J. **Right to Credit Bid:** Any Qualified Bidder who has a valid and perfected lien on any of the Debtors' assets (a "Secured Creditor") shall have the right to credit bid all or a portion of such Secured Creditor's allowed secured claims pursuant to section 363(k) of the Bankruptcy Code; *provided*, that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured; *provided*, that a credit bid shall not constitute a Qualified Bid if the Bid does not include a cash component sufficient to pay in full, in cash, all claims for which there are valid, perfected, and unavoidable liens on any of the assets included in such Bid that are senior in priority to those of the party seeking to credit bid (unless such senior lien holder consents to alternative treatment). Pursuant to the DIP Order, the DIP

Secured Parties have the right to credit bid some or all of their claims in the DIP Collateral (as defined in the DIP Order) to the extent permitted by section 363(k) of the Bankruptcy Code. Notwithstanding the foregoing, the right of the Prepetition Secured Parties to credit bid is subject to the Committee's challenge rights as set forth in the DIP Order.

K. **Transaction Hearing**: The hearing in respect of the Successful Bid(s) and Backup Bid (the "Transaction Hearing") will be conducted by the Bankruptcy Court on a date to be set by further order of the Bankruptcy Court. At the Transaction Hearing, the Debtors will request that the Court enter the order approving the transaction (the "Transaction Approval Order"). The Bankruptcy Court shall also determine: (a) any cure required under 11 U.S.C. § 365(b) if the affected landlord or contract party timely filed an objection to the Debtors' proposed cure of any unexpired lease or executory contract to be assumed and assigned, and (b) if applicable, whether the Debtors have demonstrated adequate assurance of future performance under 11 U.S.C. § 365.

L. **"As Is, Where Is"**: The proposed transfer of any of the Debtors' assets will be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents, or estates, except to the extent set forth in the APA of the Successful Bidder(s) (or other applicable transaction documentation) as accepted by the Debtors and approved by the Court. Except as otherwise provided in the APA (or other applicable transaction documentation), all of the Debtors' rights, title, and interests in and to the assets will be transferred free and clear of all liens, claims, and encumbrances in accordance with section 363(f) of the Bankruptcy Code. All such liens, claims and encumbrances will attach to the net cash proceeds of the transaction.

By submitting a Bid, each bidder will be deemed to acknowledge and represent that it (a) has had an opportunity to conduct adequate due diligence regarding the Proposed Transaction prior to making its Bid; (b) has relied solely on its own independent review, investigation, and inspection of any document including, without limitation, executory contracts and unexpired leases, in making its Bid; and (c) did not rely on or receive from any party any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, with respect to the Proposed Transaction or the completeness of any information provided in connection with a Proposed Transaction or the Auction.

M. **Consultation Parties**: The term "Consultation Parties" shall mean (a) the DIP Secured Parties and the Prepetition Secured Parties,[5] and their counsel, (b) the official committee of unsecured creditors (the "Committee") and the Committee's counsel, and (c) the Office of the United States Trustee; *provided*, however, that the Office of the United States Trustee shall **only** be a Consultation Party for purposes of (i) the designation of any stalking horse and the granting of any stalking horse protections; and (ii) any material modification of these Bidding Procedures, and for no other purposes. For the avoidance of doubt, the Debtors are **not** required to consult

---

[5] For the purposes of these Bidding Procedures, "DIP Secured Parties" and "Prepetition Secured Parties" shall have the meanings ascribed to such terms in the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, and 507 (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims and (B) Adequate Protection to Prepetition Lenders; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 82] (as may be amended, modified, or supplemented in accordance therewith and any final order authorizing the Debtors to obtain postpetition financing, the "Interim DIP Order").

with the Office of the United States Trustee regarding: (i) the decision to grant a particular bidder access to the Data Room or provide a particular bidder with a copy of the CIP; (ii) the determination or evaluation of a Qualified Bid; or (iii) the selection of any Successful Bid or Backup Bid.  The Debtors shall consult with the Consultation Parties as required by these Bidding Procedures.  Any failure to specifically identify consultation rights in any section of these Bidding Procedures shall not limit or otherwise impair the rights of the Consultation Parties to consult with the Debtors.

N. **Modification of Bid Procedures**:  The Debtors reserve the right to modify the Bidding Procedures, in consultation with the Consultation Parties, to the extent the Debtors reasonably determine may be necessary to promote an efficient process.  The Debtors shall file a notice of any material modifications, and parties in interest shall have the right object to the same.

O. **Damages for Failure to Close**:  If the Successful Bidder(s) fail to consummate the transaction in accordance with the terms of its Successful Bid(s) and applicable APA: (a) the Debtors will retain the Deposit of such bidder, to the extent provided by the APA, and (b) the Debtors will maintain the right to pursue all available remedies against such bidder.

P. **Reservation of Rights**:  Notwithstanding the Debtors' designation of a Stalking Horse and/or receipt of any Qualified Bids for any particular transaction, the Debtors may continue to negotiate and solicit Bids.  The Debtors reserve the right, after consultation with the Consultation Parties, to enter into agreements for the sale of their assets or other transactions without further notice to any party, which agreements, if any, will be subject to higher or otherwise better Bids at the Auction.  Formal approval of a Bid will not occur unless and until the Court enters an order approving and authorizing the Debtors to consummate the transaction.

The Debtors reserve the right to implement additional procedural rules, after consultation with the Consultation Parties, provided such additional rules are not inconsistent with these Bidding Procedures.

###