**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

IN RE

**GENCANNA GLOBAL USA, INC.,** *et al;.*

DEBTORS

CASE NO. 20-50133

CHAPTER 11
JOINTLY ADMINISTERED

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Debtors' Emergency Motion for Entry of an Order Enforcing the Voting Agreement Governing Constitution of Parent's Board or, in the Alternative, (I) Enforcing the Automatic Stay, (II) Voiding Unauthorized Use of Estate Property and (III) Blocking Other Unauthorized Actions to Replace the Debtors' Board Members and Management [ECF No. 1011] and the Objection and Response of MariMed, Inc. [ECF No. 1013]. A hearing was held on June 29, 2020, and the matter was taken under submission to consider arguments of counsel and the need for evidence. [ECF No. 1021.]

Additional evidence is unnecessary. The record shows a clear violation of the automatic stay by the attempted removal and replacement of certain members of the board of directors of the Debtors GenCanna Global Inc. ("GenCanna Parent") and its subsidiary GenCanna Global USA, Inc. ("GenCanna USA") by MariMed, Inc. and the MNF Partners, LLC (collectively, the "Violating Shareholders"). 11 U.S.C. §§ 362(a)(3) and (a)(6). The actions taken in the Consents executed by the Violating Shareholders and the newly appointed directors are therefore void.

1

**I.     RELEVANT FACTS AND PROCEDURAL HISTORY.**

    **A.     The Bankruptcy Filing.**

On January 24, 2020, three creditors filed an involuntary chapter 11 petition against GenCanna USA. [ECF No. 1.] GenCanna USA consented to the involuntary petition on February 6, 2020. [ECF No. 37.]

On February 5, 2020, GenCanna Parent and one of its other wholly owned subsidiaries, Hemp Kentucky, LLC, also filed voluntary chapter 11 petitions for relief. An order jointly administering the three cases was entered on February 6, 2020. [ECF No. 89.] GenCanna Parent, GenCanna USA, and Hemp Kentucky, LLC are referred to collectively herein as the "Debtors."

    **B.     The § 363 Sale.**

The Board of Directors of GenCanna Parent and GenCanna USA admitted in their corporate resolutions that a chapter 11 reorganization is in their best interests. [Case No. 20-50133, ECF No. 38-1; Case No. 20-50211, ECF No. 2.] Consistent with these resolutions, on February 18, 2020, the Debtors filed Debtors' Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with the Debtors Bidding Process; (II) Approving the Transaction Ultimately Selected as the Highest and Best Alternative Through the Bidding Process, Including a Possible Sale of Assets Free and Clear of Liens, Claims and Encumbrances under Section 363(f); and (III) Granting Related Relief. [ECF No. 136 (the "Sale Motion").] The Sale Motion sought approval of a bidding process for a sale of substantially all of the Debtors' assets and indicated the Debtors would also "explore and identify any and all available transactions that will maximize value and help facilitate the Debtors' efforts to reorganize

through these Cases." [*Id*. at 5, ¶ 14.] The Sale Motion was granted on March 6, 2020. [ECF No. 304.]

On April 27, 2020, the Debtors filed a Notice Regarding Status of Bids. [ECF No. 682.] The Notice reported that MGG GenCanna Acquisition Corp. ("Acquisition Corp.") submitted a qualified bid to purchase substantially all of the Debtors' assets for not less than $75 million (the "Purchase Offer"). Acquisition Corp. is owned by funds and accounts managed by the Debtors' senior secured lender, MGG Investment Group, LP ("MGG"). The Notice also reported receipt of a proposal by GenCanna Holdings, Inc. (the "Plan Sponsor") for a plan of reorganization (the "Plan Offer"). The Debtors committed to continue negotiations to examine the viability of the Plan Offer. [*Id*.]

The Plan Sponsor was formed by the related entities MariMed, Inc. and MariMed Hemp, Inc. (collectively with the Plan Sponsor, the "MariMed Parties"), and is a wholly owned subsidiary of MariMed Hemp, Inc. [ECF No. 754 at ¶ 6, Sec. A at 8.] The MariMed Parties claim they are each a creditor, equity security holder, and party-in-interest. [ECF No. 718.] The record confirms MariMed, Inc. holds the largest equity interest in GenCanna Parent, but there is no indication it is a creditor. [ECF No. 754 at ¶ 6, Sec. A at 10.] Also, MariMed Hemp, Inc. is the largest unsecured creditor of GenCanna USA with a claim of approximately $34 million, but an equity interest is not shown. [*Id*.; ECF No. 677; Proof of Claim No. 79-1.] Robert Fireman is the President and Chief Executive Officer of the MariMed Parties. He is also a member of the Board of Directors of GenCanna Parent and GenCanna USA. [ECF No. 754 at ¶¶ 2, 4.]

At a hearing on April 30, 2020, the MariMed Parties were told they had to provide real proof they had financial backing for the Plan Offer. [ECF No. 763.] But their alleged proof only amounted to "expressions of hope" that funds would become available. [ECF No. 800 at 4.] The

Plan Sponsor was unable to make the required deposit or provide proof of its financial ability to perform under the Plan Offer, so the Debtors opted to proceed with the Purchase Offer.

Multiple objections to the proposed sale were filed, including one from the MariMed Parties. [ECF No. 718.] The MariMed Parties sought to present testimony at the sale hearing from Robert Fireman [ECF No. 754], Michael Falcone [ECF No. 755], and Rene Gulliver [ECF No. 759]. But it was ultimately determined that MariMed Inc., as an equity interest holder, had no standing because it would receive no recovery under its own Plan Offer or the Purchase Offer. [ECF No. 800 at 2-3.] The offer of evidence from the MariMed Parties was also declined because MariMed Hemp, Inc.'s unsecured claim was disputed, contingent, and unliquidated and the issues posed were already adequately represented by the Unsecured Creditors Committee.[1] [*Id*. at 3.]

The Purchase Offer was approved at the conclusion of an evidentiary hearing and an Order approving the sale was entered on May 19, 2020. [ECF Nos. 814-15, 850.] The Order approving the sale made the following findings:

> The Debtors solicited bids for the Purchased Assets and proposals for alternative transactions (including proposals for a plan of reorganization for the Debtors) and the bid submitted pursuant to the APA was the highest and best offer for the Purchased Assets. No other bid or proposal submitted to the Debtors contained the committed financing necessary to consummate the transaction contemplated thereby.

[ECF No. 850 at 5, ¶ H.] The sale closed on May 29, 2020. [ECF No. 889.]

### C.    **Extension of the Debtors' Exclusivity Period.**

On May 15, 2020, the Debtors moved to extend the exclusivity period to file a chapter 11 plan and disclosure statement. [ECF No. 843.] The Debtors represented that they have pursued

---

[1] Despite this decision, the Unsecured Creditors Committee was given permission to call these witnesses. The Committee ultimately decided not to present their testimony.

negotiations for a plan of reorganization since the conversion to a voluntary proceeding in early February. [*Id.* at 3, ¶ 10.] Further, the Debtors believe they will ultimately present a consensual plan of reorganization. After entry of a bridge order [ECF No. 895] and a hearing on June 18, 2020 [ECF No. 976], the request was granted [ECF No. 983]. The MariMed Parties did not file an objection or raise an issue with the request at the June 18 hearing.

        **D.**      **Election of the New Directors.**

The Violating Shareholders own approximately 52% of the shares of GenCanna Parent. On June 24, 2020, MariMed Inc., through Fireman, and MNF Partners, LLC, through Michael Falcone, signed a Consent of Required Majority of Shareholders ("Shareholder Consent") that removed Stephen Pully, Steve Bevan, and Matty Mangone-Miranda from the GenCanna Parent Board of Directors and elected Rene Gulliver as replacement director. [ECF No. 1011-1, Exh. A at 4.] The Shareholder Consent further resolved to "immediately dismiss the current Chapter 11 bankruptcy proceeding of the Corporation." [*Id.* at 5.]

Fireman, Falcone, and Gulliver, as directors of GenCanna Parent, also simultaneously executed a Consent of Board of Directors ("Director Consent") that took actions for GenCanna Parent and GenCanna USA. [*Id.* at 8.] Fireman was appointed Chairman of the Board of GenCanna Parent and Gulliver was named President/Chief Executive Officer. [*Id.* at 10.] The Board directed Gulliver to pursue dismissal of the GenCanna Parent bankruptcy case and gave him the right to replace all of the Debtors' professionals. [*Id.* at 10-11.]

Regarding GenCanna USA, the new directors removed Pully, Bevan, and Mangone-Miranda from the subsidiary's Board of Directors and named Gulliver as a replacement director. [*Id.* at 8.] Further, Gulliver was instructed to develop, prepare, and present a proposed plan of liquidation for GenCanna USA within 30 days. [*Id.* at 10-12.]

On June 25, 2020, Fireman sent a letter to Pully, Bevan, Mangone-Miranda, and the Debtors' professionals informing them of the actions in the Consents. [ECF No. 1011-1, Exh. A. at 2-3.] The Debtors filed the underlying Motion the next day, arguing that the actions taken by the Violating Shareholders breach a Voting Rights Agreement, violate the automatic stay, and are an unauthorized use of estate property. [ECF No. 1011.] The Debtors argue that the removal and replacement of members of the Boards of Directors is an attempt to seize control of the Debtors and disrupt settlement negotiations with MGG that will advance a plan of liquidation.

The Violating Shareholders filed a response and argue the Court lacks jurisdiction over the shareholder dispute or should abstain from hearing the matter. [ECF No. 1013.] They also claim the Voting Agreement is fraudulent and this is the next chapter in a battle between creditors, the Debtors' senior management, and MGG over two things: control and money. [*Id.*]

The Debtors' request to shorten notice for the hearing on the Motion was granted.[2] [ECF No. 1020.] The hearing was conducted at 10:00 a.m. on June 29, 2020. [ECF No. 1018.] The matter was taken under submission and the parties were asked to return two days later. [ECF No. 1023.] After a review of the record, it was determined another hearing was unnecessary. [ECF No. 1025.]

## II.    JURISDICTION.

This Court has jurisdiction to decide the dispute. The issue is whether the Violating Shareholders' efforts to derail the reorganization process and control claim negotiations through the equity interests impermissibly interferes with administration of the estate. Actions that affect

---

[2] The obvious impact of a change in governance to the continuing resolution of these bankruptcy cases necessitated immediate action. The Violating Shareholders' Objection suggested this was unwarranted, but any argument that the immediate response of the Debtors was unexpected strains credibility. Further, the Violating Shareholders' complaint that it was not contacted before the filing ignores its own surprise tactics regarding the attempted changes in governance.

administration of the estate are part of the core jurisdiction of a bankruptcy court. 28 U.S.C. §§ 1334(b) and 157(b)(2)(A); *Manville Corp. v. Equity Security Holders Comm. (In re Johns-Manville Corp.)*, 801 F.2d 60, 64 (2d Cir. 1986). Ultimately, the Violating Shareholders ignored the automatic stay, which is also a proceeding within a bankruptcy court's core jurisdiction. 28 U.S.C. § 157(b)(2)(G).

Abstention might have merit if this was a situation similar to *Manville*, discussed infra. But the facts of this case are quite different. *Manville* was a large operating case with an equity committee that was pursuing a return for its constituency. Here, substantially all assets are sold and the Violating Shareholders cannot expect a recovery. MariMed Hemp, Inc. is the largest unsecured creditor and the only benefit to the Violating Shareholders' action affects this interest. Abstention is not appropriate when there is such a direct assault on administration of the case.

### III. DISCUSSION.

#### A. Bankruptcy Courts Generally Do Not Interfere with Equity Voting Rights Unless There is Clear Abuse.

The right of equity to control governance generally exists during bankruptcy. The leading case on this issue is *Manville Corp. v. Equity Security Holders Comm. (In re Johns-Manville Corp.)*, 801 F.2d 60, 64 (2d Cir. 1986). In *Manville*, the equity interests were represented by an equity committee. *Id*. at 61. They were dissatisfied with settlement negotiations and filed suit in Delaware state court to compel a shareholders meeting to replace directors. *Id.* at 63. The Debtor filed suit in the bankruptcy court seeking an injunction and the bankruptcy court granted summary judgment to the Debtor *sua sponte*. *Id.* The district court affirmed and the equity committee appealed to the Second Circuit Court of Appeals. *Id.*

The Second Circuit first determined the bankruptcy court had jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(A) and the right to act pursuant to 11 U.S.C. § 105(a). *Id*. at 63-64. The

Second Circuit agreed that an action by the equity committee that might undo the chance for reorganization, and thereby affect the administration of the estate, is within the bankruptcy court's purview. *Id.* The Second Circuit further acknowledged that equity's right to govern is "ordinarily uncompromised by reorganization" and use of the bankruptcy court's equitable power "should not be lightly employ[ed]." *Id.* at 64. It concluded that a shareholder's right to call a meeting may only be impaired if equity is guilty of "clear abuse." *Id.*

But the rights enjoyed by equity are abused when their exercise is taken for an improper purpose.

### B.   A Shareholder May Not Use Its Equity Voting Rights To Improve Its Position as a Creditor In Violation of the Automatic Stay.

Based on the ruling in *Manville* and other cases that follow its holding, it is generally understood that the exercise of a shareholder's voting rights is not prohibited by the automatic stay. *In re Marvel Entertainment Group, Inc.*, 209 B.R. 832, 838 (D. Del. 1997). But a party that abuses its equity voting rights merely to enhance its position as a creditor violates the automatic stay. 11 U.S.C. § 362(a); *In re Country Estates Nursing Home, Inc.*, 268 B.R. 316, 320-21 (Bankr. D. Mass. 2001) (an exercise of voting rights to enforce a lien to collect a debt violates §§ 362(a)(3) and (4)); *In re Bicoastal Corp.*, Case No. 89-8198-8P1, 1989 Bankr. LEXIS 2046, at *16-17 (Bankr. M.D. Fla. Nov. 21, 1989) (a stockholder who acts to obtain control of management to assure its debt is repaid violates the automatic stay).

The § 362(a) automatic stay is broad and "extends to virtually all formal and informal actions against property of the bankruptcy estate." *In re Smith*, 876 F.2d 524, 525 (6th Cir. 1989). If the stay applies to a creditor's action and the action does not fall within an exception, the creditor has violated the stay.

Equity voting rights are property of the estate. 11 U.S.C. § 541(a)(1); *see also Caymus Ventures, LLC v. Jundanian (In re Jundanian)*, Bankr. No. 10-2513-TJC, Adv. No. 11-00185, 2012 WL 1098544, at *5 (Bankr. D. Md. March 30, 2012). A shareholder that uses its equity voting rights to improve its position as a creditor is acting to exercise control over property of the estate and attempting to collect on its claim in violation of the stay. 11 U.S.C. §§ 362(a)(3) (prohibiting any act to "exercise control over property of the estate") and 362(a)(6) (prohibiting any act to "collect, assess or recover a claim against the debtor"); *Country Estates*, 268 B.R. at 320-21; *Bicoastal Corp.*, 1989 Bankr. LEXIS 2046 at *15-16.

The Violating Shareholders violated the automatic stay when they exercised their shares to appoint new directors for GenCanna Parent and GenCanna USA. Despite the claims to the contrary, the Violating Shareholders no longer had any expectation of a recovery and no equity interest to protect. Only the creditor interests have a chance at recovery.

    **C.**    **The Violating Shareholders Affected Creditor Interests In Violation of the Automatic Stay.**

        **1.**    **The Violating Shareholders Are Not Acting To Further Their Equity Positions.**

In this case, equity has no hope of recovery. It was previously found that there was "almost no chance" that equity interest holders would receive any return under the reorganization plan proposed by the MariMed Parties or through a sale of assets. [ECF No. 800 at 4.] The Debtors have now sold substantially all their assets and the absence of recovery for equity interests is confirmed. The Violating Shareholders even admit that the shares of GenCanna USA held by GenCanna Parent have "zero or inconsequential value." [ECF No. 1013 at 13, ¶ 46.] There is no legitimate argument that the attempt to change governance was done to assist the equity interests held by the Violating Shareholders.

The actions taken were an attempt to enhance the position of MariMed Hemp, Inc. as a creditor of GenCanna USA.  The Consents identify some "Remaining Assets" available for liquidation.  The only other significant asset involves the disputed lender liability claims against MGG.  The Violating Shareholders' Objection shows this is the creditor's real concern.  [*See id.* at 4 (the Violating Shareholders fear a settlement with MGG for substantially less than the $20+ million estimate of "some parties").]

Using an equity position that has no chance of recovery to object to a settlement that is not even filed is an obvious attempt to exercise control over the case and enhance the creditor interests.  Further, this also suggests clear abuse of the governance process that would warrant action in this Court if an injunction was requested.  For now, that analysis is not required.

### 2. The Violating Shareholders' Actions Will Increase, Not Reduce, Costs.

The Violating Shareholders argue the change in governance is "a serious effort to cut expenses, especially professional expenses, and to maximize the liquidation of the remaining assets of the Debtors for the benefit of the creditors."  [ECF No. 1013 at 4.]  Finding this assertion disingenuous is the kindest characterization possible.

The Violating Shareholders have not described any malfeasance or other justification for removal of management or other professionals.  Questions at the sale hearing alluded to conflicts with the professional management, but the testimony did not back up the claims.  The oral ruling at the end of the sale hearing found that the testifying professionals acted independently and were dedicated to maximation of the value of the Debtors' estate.  [ECF No. 982 at 193.]

The Violating Shareholders instead suggest the change will result in cost savings.  This claim has no support.  A new governing board, new day-to-day management, and new

professionals would have a steep learning curve, which means significant additional time and new expenses. Also, the Debtors would lose the benefit of the substantial fees already incurred.

The Debtors primary remaining obligation is to confirm a plan that likely provides for a simple liquidation process. So equity's alleged concern for large future fees is not reasonable. And if past fees are a concern, the proper reaction is an objection to a fee application, not a wholesale change in governance. The direction to the new boards at this late stage will only derail the ongoing reorganization process and interfere with administration of the Debtors' estates.

### 3. The Timing of the Violating Shareholder's Actions Proves an Ill Intent.

The MariMed entities have been active in the bankruptcy cases since their inception, but the Violating Shareholders have not previously attempted to change the corporate governance of the Debtors. Fireman voted against the bankruptcy proceedings, but he did not otherwise attempt to affect corporate governance until these cases entered the home stretch. [ECF No. 1011-1, Exh. A at 8.] The timing is additional proof the Violating Shareholders are not pursuing the change in governance for a legitimate reason.

## III. CONCLUSION.

The attempt to change governance of the Debtors is an exercise of control over the Debtors' estates and assets and an attempt to improve the position of a prepetition creditor. These actions violate the automatic stay and the attempts to reconstitute the board of directors of the Debtors are invalid and voidable. *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 911 (6th Cir. 1993).

The Violating Shareholders have options. They may ask for relief from the automatic stay if they can show cause. Also, the Violating Shareholders, or at least their creditor interests,

may move for dismissal or object to a proposed plan or settlement when filed.  They also have standing to object to professional fees at the appropriate time.  But the attempt to accomplish any of these actions through equity's voting rights is backdoor gamesmanship by a creditor that has no place in these bankruptcy cases.

Based on the foregoing, it is ORDERED the Debtors' Emergency Motion is GRANTED. The actions taken in the Consents are hereby declared VOID.  If the Debtors still wish to pursue fees and costs, they must file a request with appropriate supporting documentation.

12

_____
**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Thursday, July 2, 2020**
(grs)