## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
## LEXINGTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| OGGUSA, Inc., *et al.*, | ) Case No. 20-50133-grs |
| | ) |
| Debtors. | ) |
| | ) |
| | ) **OBJECTION OF SPECIALTY OIL** |
| | ) **EXTRACTORS MANUFACTURER, LLC** |
| | ) **TO ADEQUACY OF DISCLOSURE** |
| | ) **STATEMENT [DOCKET DOC. NO 1164]** |
| | ) |
| | ) Honorable Gregory R. Schaaf |

Comes now Specialty Oil Extractors Manufacturer, LLC ("SOE"), by counsel, and for its Objection to the Disclosure Statement of OGGUSA, Inc., f/k/a GenCanna Global USA, Inc. ("GCG Parent"), OGG, Inc., f/k/a GenCanna Global, Inc. ("GCG Opco") and Hemp Kentucky, LLC ("Hemp KY"), as debtors and debtors in possession (each, a "Debtor," and collectively, the "Debtors"), [Docket No. 1164] (the "Disclosure Statement") states as follows:

## **INTRODUCTION**

1.  SOE is a company that processes industrial hemp and uses it to produce industrial hemp crude oil and products including but not limited to cannabidiol ("CBD") distillate, isolate, and/or other legal cannabinoids ("Product"). It holds a valid Hemp Processor's License, which was issued under South Carolina law.

2. On January 27, 2020, SOE and the Debtor signed a Biomass Processing Agreement. The Biomass Processing Agreement is silent as to the timeline for SOE to manufacture salable products. It is likewise silent as to the type of product that SOE is to manufacture, and the specification for any such product..

3. During this bankruptcy, SOE has stored millions of pounds of hemp biomass, and large amounts of crude oil and distillate, at its facilities, to the benefit of the Debtors. SOE has filed a proof of claim, Claim No. 0000010051, for both an administrative claim, and as a general unsecured creditor. SOE has also filed its Application for Allowance and Payment of Administrative Expense Claim [Docket. No. 1033]. SOE is therefore entitled to vote on the Plan.

4. On April 13, 2020, SOE filed its Limited Objection to Notice of Proposed Cure Amount [Docket No. 572] (the "Cure Objection") setting forth its objection to the Debtors' proposed cure amounts to be paid upon any assumption of the Debtors' alleged contract with SOE. On April 21, 2020, SOE filed its Objection to Assumption & Assignment of Executory Contract [Docket No. 649] (the "Assumption Objection") objecting to assumption of the: i) January 27, 2020 Biomass Processing Agreement on the grounds that it is unenforceable having been fraudulently procured and lacks the essential terms necessary to be an enforceable contract; and ii) LOI absent SOE's consent on the grounds that it is terminable by SOE.

5. The Court entered an Agreed Order for Adequate Protection between GenCanna and SOE on April 24, 2020, which provides, among other things:

> Upon any sale, transfer or other disposition of Product (as that term is defined in the Collateral Access Agreement), whatever ownership rights that SOE has in such Product under the terms of its agreements with GenCanna Global USA, Inc. ("GenCanna") will attach to the proceeds of such sale or transfer to the same extent, and with the same validity and priority, as such rights existed immediately prior to such sale or transfer.

[Docket No. 669, at ¶ 2.] The Agreed Order further provides, "Any sale of the Debtors' ownership interest in the Product through their bidding process to a successful bidder will not extinguish any ownership interest held by SOE in such Product." [*Id.* at ¶ 4.]

6. On May 19, 2020, the Bankruptcy Court entered a Sale Order approving the sale of substantially all of the Debtors' assets to GenCanna Acquisition Corporation [Docket No. 850]. Lacking the requisite licenses to possess hemp, GAC and the Debtors entered into a Transition Services Agreement ("TSA"), under the terms of which GAC would pay the Debtors to continue operating so that the hemp licenses held by the Debtors could be utilized to possess and process hemp for the benefit of GAC.

7. SOE has been working with the Debtors and GAC to enable the Debtors to remove the unprocessed hemp biomass from SOE's facilities, utilizing the Debtors hemp licenses. The Debtors, SOE and GAC have also been negotiating terms under which SOE may consent to assumption and assignment of the above agreements or amendments thereto.

8. GAC has not yet procured its own hemp licenses.

## THE DISCLOSURE STATEMENT DOES NOT CONTAIN ADEQUATE INFORMATION

9. A disclosure statement in support of a Chapter 11 plan must contain "adequate information" to allow creditors and parties-in-interest to make an informed decision regarding the merits, or lack thereof, of the proposed plan. Section 1125(a)(1) of the Bankruptcy Code defines "adequate information" as:

> . . . information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable ... a hypothetical investor of the relevant class to make an informed judgment about the plan. . .. 11 U.S.C. § 1125(a)(1).

10. "... [T]he precise information required will be governed by the facts and circumstances presented in each case." *In re Cardinal Congregate I*, 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990) (listing factors and gathering authorities). "Generally, the disclosure statement should set forth 'all those factors presently known to the plan proponent that bear upon the success of failure of the proposals contained in the plan.'" *In re Jeppson,* 66 B.R. 269, 292 (Bankr. D. Utah 1986) (quoting In re The Stanley Hotel, 13 B.R. 926, 929 (Bankr. D. Colo. 1981). Put simply, a creditor should be able to discern three things from a Disclosure Statement: (i) what it will get, (ii) when it will get it, and (iii) the conditions precedent to distribution. *In re Fretti,* 128 B.R. 16 (Bankr. D.N.H. 1991).

11. The Disclosure Statement contains insufficient information as to how the TSA will be handled if the Plan is confirmed and, consequently, what will happen with respect to the large amounts of hemp biomass, THC-rich hemp crude oil, and THC-rich distillate, which belong to GAC, but which have been shipped under the Debtors' licenses, back to the Debtors. The Disclosure Statement provides no explanation as to how the Wind Down Trust is going to handle the TSA or the disposition of the Debtors' hemp licenses. Section 4.03.3 discusses the Wind Down Trust and the liquidation of assets and the distribution of assets, but fails to discuss how and whether OGG will continue to perform under the TSA once the Trust has been created. Further, under Section 4.03.4, the Plan Administrator is vested with authority necessary to dissolve the Debtors, again, without mention as to how a dissolution will affect performance under the TSA, or how the disposition of OGG hemp licensing will be dealt with (the licenses being a non-transferrable asset under Kentucky law).

12. The Plan states that all contracts are to be rejected, unless assumed. Section 6.7(f) of the Order (I) Approving the Sale of Certain of the Debtors' Assets Free and Clear of all

Liens…(II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases…. [Docket No. 850], however, provided that GAC would have 90 days following the Closing Date within which to designate certain contracts, including SOE's for assumption.  That 90 day period has not yet run, so that neither SOE nor similarly situated contract parties now know whether or not their contracts are to be assumed or rejected under the Plan.  Moreover, the amount of rejection damages which may result from a possible rejection of such contracts could have a dramatic impact on any recovery for general unsecured creditors under the Plan.  Without the above information, SOE, similarly situated contract parties, and the general unsecured creditors all lack meaningful information required to evaluate the Plan.

13. Finally, there is no meaningful way for SOE to vote on a Plan without first understanding how its obligations to the Debtors and to GAC will be altered by the Plan and SOE's rights, obligations, and liabilities which may accrue with respect to the hemp biomass and related products in SOE's possession.  SOE is amenable to turnover of all hemp biomass and GAC's seventy-five percent (75%) share of the THC-rich products in its possession once GAC has obtained requisite licensure (assuming it is able to procure such a license).  However, absent such licensure, SOE cannot be ordered to violate the law of multiple states by turning possession of such products and materials over to an unlicensed entity.

14. Section 1.03 tables re: treatment of claims and interests are blank, providing creditors entitled to vote on the plan with no information as to how much of the claims are estimated to be allowed, and what their recovery would be under a Chapter 7, depriving creditors of the opportunity to meaningfully evaluate their potential recoveries and outcomes under different plan scenarios.

15. Section 1.05.2 fails to inform the Voting Classes as to the actual Voting Deadline.

5

16. Section 1.06.1 fails to inform creditors of the deadline to file Objections to the Confirmation of the Plan.

WHEREFORE, Specialty Oil Extractors Manufacturer, LLC respectfully requests:

A. That this objection be sustained;

B. That the Disclosure Statement be disapproved; and

C. Such further relief as is just and proper.

Respectfully submitted,

*/s/ Elizabeth Lee Thompson*
Elizabeth Lee Thompson (KY Bar No. 70680)
STITES & HARBISON PLLC
250 West Main Street, Suite 2300
Lexington, KY 40507-1758
Telephone: (859) 226-2300
Email: ethompson@stites.com

and

Tyler R. Dowdall, Esq.
Christopher Nelson
EPPORT, RICHMAN & ROBBINS, LLP
1875 Century Park East, Suite 800
Los Angeles, CA 90067
Telephone: (310) 785-0885
Facsimile: (310) 785-0787
Email: tdowdall@erlaw.com
cnelson@erlaw.com

*Counsel for Specialty Oil Extractors Manufacturer, LLC*

## **CERTIFICATE OF SERVICE**

In accordance with the Order Establishing Notice Procedures, Master Service List, and Related Relief [DE 99], this document has been electronically filed and served via the Court's ECF System on August 11, 2020.

*/s/ Elizabeth Lee Thompson*

SP137L:200665:752939:1:LEXINGTON