**PUNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| OGGUSA, Inc., *et al.*,[1] | ) Case No. 20-50133-grs |
| Debtors. | ) (Jointly Administered) |
| | ) Honorable Gregory R. Schaaf |

**DEBTORS' OBJECTION TO RENOTICED
EMERGENCY MOTION OF THE UNITED STATES TRUSTEE CO CONVERT CASE**

OGGUSA, Inc. (f/k/a GenCanna Global USA, Inc.) ("OGGUSA") and its affiliated debtors and debtors in possession in these cases (collectively, the "Debtors"), by and through their undersigned counsel, hereby object (the "Objection") to the *Renotice of the Emergency Motion of the United States Trustee to Convert Case* [Docket No. 848] (the "Renotice") filed by the United States Trustee ("Trustee"), which renoticed for hearing the Trustee' *Emergency Motion of the United States Trustee to Convert Case* [Docket No. 1197] (the "Motion"), and respectfully state as follows:

**PRELIMINARY STATEMENT**

1. The Trustee seeks to convert these cases to chapter 7 on the basis that the current insurance coverage on the Debtors' real property located at 1895 Clintonville Road in Paris, Kentucky (the "Paris Property") is inadequate. The Debtors maintain that they have "appropriate" insurance coverage in place under the circumstances, and that the Trustee has failed to carry its burden to demonstrate any "cause" for conversion to chapter 7. Further, to the extent that material

---

[1] The Debtors in these chapter 11 bankruptcy cases are (with the last four digits of their federal tax identification numbers in parentheses): OGGUSA, Inc. (0251); OGG, Inc. (N/A); and Hemp Kentucky, LLC (0816).

1

"cause" relating to insurance coverage may be found, conversion at this stage would be inappropriate, without benefit, and irreparably harmful to the bankruptcy estates. The Motion and Renotice are without merit and should be denied.

## BACKGROUND

2. On May 18, 2020, the Trustee initially filed the Motion seeking conversion of the above-captioned chapter 11 cases (the "Chapter 11 Cases") to cases under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") on the basis that one of the debtors' many insurance policies had expired.

3. Specifically, and as relevant here, the Trustee sought conversion of the Chapter 11 Cases pursuant to section 1112(b)(4) of the Bankruptcy Code based on its contention that, following the expiration of one the Debtors' property insurance policies, the Debtors no longer had adequate insurance in place on the Paris Property, such that there was a risk to the bankruptcy estate or the public.

4. On May 22, 2020, the Debtors filed their initial *Objection to Emergency Motion of the United States Trustee to Convert Case* [Docket No. 856] (the "Initial Objection") asserting that the Debtors have appropriate insurance in place and rejecting that any "cause" existed for conversion of the Chapter 11 Cases.

5. The Motion was initially noticed for hearing on June 18, 2020, but such hearing was continued by the agreement of the parties.

6. As set forth in the Initial Objection, the Paris Property consists of approximately 25 acres of real property which is primarily farm land, but which also contains greenhouses and other buildings. The Paris Property is subject to a mortgage in favor of Kentucky Bank securing a

mortgage loan with an outstanding principal balance of approximately $1.9 million.[2] There are no ongoing business operations on the Paris Property.

7. The Debtors' prior property insurance policy for the Paris Property expired by its terms on May 5, 2020. As set forth in the *Debtors' Response to the Trustee's Notice of Expiration of Commercial Property Insurance* [Docket No. 803] and the Initial Objection, the prior insurance provider declined to extend its existing policy. The Debtors worked diligently and used their best efforts to obtain replacement insurance coverage for the Paris Property, themselves and through their insurance brokers, but the Debtors experienced significant challenges in obtaining insurance for the Paris Property. The Debtors brokers' contacted at least 20 insurance carriers, but were told that there was no interest in providing insurance given the Debtors' pending Chapter 11 Cases and involvement with hemp and CBD. The Debtors also reached out to Kentucky Bank, through counsel, to see if Kentucky Bank had or would consider obtaining insurance coverage given their mortgage interest in the Paris Property.

8. Subsequent to the filing of the Motion, on or around May 26, 2020, Kentucky Bank obtained force placed insurance coverage of approximately $1.9 million on the Paris Property.

9. The Debtors thereafter obtained a new appraisal of the Paris Property. The appraisal estimates that the value of the land of the Paris Property is $251,600. The appraisal further provides an estimated value for the land and improvements upon the Paris Property between $1,971,600, based on a sales comparison approach, and $2,415,000, based on a cost approach.

10. The Debtors have retained a real estate broker, and have listed and are actively marketing the Paris Property for sale.

---

[2] See, Declaration of James Alt in Support of Chapter 11 Filings and First day Motions, at ¶ 36.

11. On August 13, 2020, the Trustee filed the Renotice, setting the Motion for hearing on August 20, 2020 and seeking conversion pursuant to 1112(b)(4)(C) on the grounds that the Paris Property is not adequately protected, and supporting certain of aspects of the Committee's *Motion to Convert Pursuant to 11 U.S.C. § 1112* [Docket No. 1161] the ("Committee Conversion") pertaining to the Debtors settlement with MGG.

## ARGUMENT

A. **The Debtors Have Appropriate Insurance in Place; There Is No "Cause" for Conversion.**

12. The Trustee independently seeks to convert this case for "cause" based on its contention that the Debtors do not have adequate insurance in place covering the Paris Property, such that there is a risk to the bankruptcy estate or the public. Motion, ¶¶ 10-11; Renotice, ¶¶ 5-6. Pursuant to section 1112(b)(1) of the Bankruptcy Code, conversion of a chapter 11 case must be "for cause." 11 U.S.C. § 1112(b)(1). The Trustee relies on section 1112(b)(4) of the Bankruptcy code in seeking to demonstrate the requisite "cause" for conversion. *Id.* Section 1112(b)(4) of the Bankruptcy Code provides a list of circumstances, acts, or omissions that may serve as possible "cause" for conversion or dismissal under section 1112(b)(1). 11 U.S.C. § 1112(b)(4). Among such examples of possible "cause" are "failure to maintain appropriate insurance that poses a risk to the estate or to the public" and "failure to comply with an order of the court." 11 U.S.C. § 1112(b)(4)(C) and (E). The Trustee asserts that the Debtors' current insurance is not "appropriate" for purposes of section 1112(b)(4)(C), and further asserts that the Debtors have failed to comply with the Court's chapter 11 operating order requiring the Debtors to maintain "appropriate" insurance. Motion, ¶ 10; Renotice, ¶ 7.

13. Contrary to the Trustee's assertions, the Debtors submit that they do have appropriate insurance in place with respect to both their business and property of the bankruptcy

4

estate, including the Paris Property. The Trustee has failed to carry its burden to demonstrate requisite "cause" for conversion.

14.     The parameters of what constitutes "appropriate" insurance coverage for purposes of section 1112(b)(4)(C) are not set out in the Bankruptcy Code – the Bankruptcy Code does not define or elaborate upon the definition of "appropriate."[3]  Critically, the Bankruptcy Code does not specify that the estimated value of all property of the estate must be fully insured.  If Congress had intended to require that a chapter 11 debtor at all times maintain insurance on the full estimated value of all property of the bankruptcy estate, it could have included such express requirement in the Bankruptcy Code or specified a failure to do so as grounds for conversion or dismissal under section 1112(b)(4).  Instead, the Bankruptcy Code requires only maintenance of "appropriate" insurance.

15.     Applying the ordinary meaning of the term "appropriate," one bankruptcy court has stated its belief that the term refers to "something that is suitable or fitting." *DeAngelis v. KC's Pub, LLC (In re KC's Pub, LLC)*, 428 B.R. 612, 616 (Bankr. M.D. Pa. 2010). "I believe use of the word 'appropriate' to modify insurance connotes the intention that the surrounding circumstances of the Chapter 11 case be considered." *Id*. at 617. Factors to be considered in determining whether a debtor has "appropriate" insurance in place include: (i) applicable requirements under other federal or state laws; (ii) the debtor's size and the complexity of the case; (iii) the debtor's financial wherewithal to purchase insurance; (iv) the existence of or lack of pre- or post-petition uninsured claims against the debtor; (v) any steps taken by the debtor to reduce the risk of claims; and (vi) the best interests of creditors. *Id*.

---

[3] The Court's chapter 11 operating order similarly does not define "appropriate" insurance.

5

16.     Here, the Debtors have maintained and continue to maintain appropriate insurance coverage.  As set forth in the Debtors' Initial Objection and the chart summarizing the Debtors' insurance coverage attached thereto as Exhibit A, the Debtors have, throughout the Chapter 11 Cases, maintained a comprehensive package of casualty and property insurance through multiple insurance providers.  The Debtors continue to maintain all insurance coverage which remains prudent and applicable following the sale of substantially all of the Debtors' assets to MGG, while the Debtors operate under the Transition Services Agreement with GenCanna Acquisition Corp.

17.     Furthermore, following the expiration of the Debtors' prior insurance policy for the Paris Property, the Debtors and their brokers worked diligently and used their best efforts to obtain replacement insurance the Paris Property, but were unsuccessful due to the Debtors' pending Chapter 11 Cases and the Debtors' involvement with hemp and CBD.  The Debtors also reached out to Kentucky Bank to discuss its interest in obtaining insurance coverage given its mortgage interest in the Paris Property.  Thereafter, Kentucky Bank obtained force placed insurance coverage of approximately $1.9 million on the Paris Property (the "Current Insurance")

18.     Although the Current Insurance may not cover the full estimated value of the Paris Property based on the recent appraisal, the Current Insurance, in combination the Debtors' other casualty and property insurance coverage, constitutes "appropriate" insurance under the circumstances as the Debtors actively market the Paris Property for sale.  Given the difficulties the Debtors have experienced in attempting to find replacement coverage, additional supplemental insurance coverage for the Paris Property in excess of the Current Insurance may not be obtainable by the Debtors.  As discussed more fully in the Initial Objection, in the face of such challenges, the Debtors have proceeded in the same fashion as a chapter 7 trustee would with respect to the Paris Property – namely, by (i) contacting Kentucky Bank so that it may insure its own secured

interest in the Paris Property, and (ii) attempting to liquidate the property as quickly as possible in a reasonable manner. *See* Initial Objection ¶¶ 17-21.

19.     Moreover, Debtors submit that any chapter 7 trustee could be expected to have the same challenges in attempting to obtain additional insurance for Paris Property as the Debtors have been experiencing. The Trustee's argument in the Motion is barebones and conclusory in this regard, providing no support for its statement that "the chapter 7 trustee will be able to purchase the necessary insurance to protect the public and the bankruptcy estate." Motion, ¶ 11. This is not a scenario where a debtor does not have any insurance in place at all or failed to make any good faith effort to obtain insurance. Given the Current Insurance, the Debtors' other existing coverage, and the uncertainty regarding the potential for either the Debtors or a chapter 7 trustee to obtain any additional insurance on the Paris Property, it cannot be said that there has been any "failure to maintain appropriate insurance that poses a risk to the estate or the public."

20.     Indeed, the relevant *KC's Pub* factors support the conclusion that the insurance coverage on the Paris Property is "appropriate." *See In re KC's Pub, LLC*, 428 B.R. at 616. Foremost, there is no law or regulation (similar to automobile insurance requirements or worker's compensation insurance requirements) requiring that the Debtors maintain property insurance on the Paris Property or with respect to which the Debtors are not in compliance. Second, although the Chapter 11 Cases have been contentious, the Debtors are seeking to confirm a plan of liquidation following a sale of substantially all of their assets, the Chapter 11 Cases are in a late stage, and the gap in insurance at issue pertains only to single asset of the bankruptcy estate. Third, there are no uninsured claims against the Paris Property. Fourth, the Debtors worked diligently to try to obtain replacement insurance for the Paris Property, the Current Insurance was obtained, there are no ongoing business operations at the Paris Property, and the Debtors are working to sell

the Paris Property. Finally, a conversion to chapter 7 as the Debtors pursue confirmation of a value-maximizing plan is not in the best interest of the bankruptcy estates and would cause irreparable harm and loss of value. *See id.*

21.  Aside from citing to section 1112 of the Bankruptcy Code, the Trustee has not offered any support for its assertion that a small gap between the estimated value of the Paris Property and the Current Insurance is a "failure to maintain appropriate insurance" under 1112(b)(4)(C), nor has the Trustee identified any specific risk to the bankruptcy estate or the public regarding the idle Paris Property facility and farmland. Even assuming that the term "appropriate" as used in section 1112(b)(4)(C) *did* require all property of the estate to be insured at its full value, the gap in insurance coverage on the Paris Property would still be insufficient to serve as "cause" for conversion. Bankruptcy courts have applied a materiality standard in considering whether cause exists for purposes of section 1112(b)(4) of the Bankruptcy Code. *See, e.g.*, *Id.* at 618; *In re Sunnyland Farms, Inc.*, 517 B.R. 263, 266-268 (Bankr. D. N.M. 2014); *In re Melendez Concrete Inc.*, 2009 Bankr. LEXIS 2925, *17-19 (Bankr. D. N.M. Sept. 15, 2009); *In re Keener*, 2017 Bankr. LEXIS 3798, *16-17 (Bankr. N.D. Iowa Nov. 2, 2017).

22.  Based on the Debtors' recent appraisal, the majority of the value of the Paris Property – or $1,971,600 based on the sales comparison approach – lies in the greenhouse and other improvements upon the Paris Property.[4] The Current Insurance covers all but $171,600 of such value (based on the $1.8 million coverage amount cited by the Trustee). These are large and Complex Chapter 11 Cases, with scheduled assets and liabilities each over $200 million. The Debtors have made significant progress in the Chapter 11 Cases notwithstanding the contentious nature of the proceedings, and have worked diligently to maximize the value of their bankruptcy

---

[4] There is little to no risk of loss with respect to the idle farm land of the Paris Property, which carries an estimated value of $251,600 based on the recent appraisal.

8

estates. The Debtors are now seeking to confirm a plan of liquidation and, in the interim, are actively trying to sell the Paris Property. The Trustee fails to establish that any risk to the estate arising from an estimated $171,600 of uninsured value in the Paris Property poses a material risk to the bankruptcy estate which would require conversion at this stage. Indeed, applying the materiality standard, the Debtors' maintenance of idled improvements upon the Paris Property, which improvements may be insured at less than their appraised value by $171,600, does not pose a risk to the state sufficiently material to constitute "cause" for conversion to chapter 7 under section 1112(b)(4)(C) of the Bankruptcy Code as the Debtors actively seek to sell the Paris Property and confirm a plan of liquidation. *See id*.

23. For the foregoing reasons, and the Trustee has failed to meet its burden of establishing requisite "cause" for conversion under section 1112(b)(1) of the Bankruptcy Code. The Debtors respectfully request that the Motion therefore be denied.

**B. Should the Court Find "Cause" May Exist Due to the Debtors' Insurance Coverage, Conversion Would be Inappropriate Under Section 1112(b)(2) of the Bankruptcy Code**.

24. The Debtors maintain that no "cause" for conversion to chapter 7 relating to the Debtors' insurance coverage exists. However, to the extent that the Court finds that such "cause" may exist under section 1112(b)(4)(C) of the Bankruptcy Code, conversion to chapter 7 would still be inappropriate under Section 1112(b)(2) of the Bankruptcy Code. Section 1112(b)(2) provides, in relevant part:

> (2) The court may not convert a case under this chapter to a case under chapter 7
> … if the court finds and specifically identifies unusual circumstances establishing that converting … the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—
> > (A) there is a reasonable likelihood that a plan will be confirmed … within a reasonable period of time; and
> > (B) the grounds for converting or dismissing the case include an act or omission of the debtor …

9

> (i) for which there exists a reasonable justification for the act or omission; and
>
> (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2).

25.     The Debtors submit that each of the elements of section 1112(b)(2) is met in these Chapter 11 Cases. These are large and complex cases with over which have been highly contentious and further complicated by litigation at every stage. The Debtors have filed and are seeking confirmation of a proposed plan of liquidation which the Debtors maintain will maximize the value of their bankruptcy estates and recovery by all creditors. The Debtors are also actively seeking to sell the Paris Property while they pursue confirmation of the plan. As set forth in the Disclosure Statement, conversion of the Chapter 11 Cases is not in the best interests of creditors and the estates. The Debtors have thus far been unable to obtain supplemental insurance coverage for the Paris Property during the pendency of the Chapter 11 Cases. It is unclear whether such coverage can be obtained by either the Debtors or a chapter 7 trustee prior to any plan confirmation or sale of the Paris Property, but the Debtors will nonetheless continue their good faith efforts to do so. Under these circumstances, however, conversion of the Chapter 11 Cases based on the status of insurance on the Paris Property would be inappropriate pursuant to section 1112(b)(2) of the Bankruptcy Code.

26.     The Debtors reserve all rights to seek such a determination under section 1112(b)(2). In the event that the Court finds there may be "cause" for conversion relating to the Debtors insurance coverage on the Paris Property, the Debtors respectfully request that the Court hold a further hearing on whether dismissal is appropriate under section 1112(b)(2) of the Bankruptcy Code.

**C.     The Motion and Renotice Should be Denied Insofar as the Trustee Supports the Committee Conversion Motion.**

27.     In addition to requesting conversion based on a lack of adequate insurance coverage, the Trustee states in the Renotice that it supports the Committee Conversion Motion. Renotice, ¶ 9. The Trustee notes it is specifically concerned about "the Debtors' decision to seek approval of its settlement with MGG under Federal Rule of Bankruptcy Procedure 9019," but the Trustee does not appear to seek conversion on any grounds relating thereto. *Id*. To the extent that the Trustee supports the Committee Conversion Motion, the Debtors incorporate herein by reference the *Debtors' Objection to the Motion to Convert Pursuant to 11 U.S.C. 1112* [Docket No. 1226] (the "Objection to Committee Conversion Motion"). For the reasons set forth in the Objection to Committee Conversion Motion, the Debtors respectfully request that the Court deny the instant Motion and Renotice insofar as it supports or joins the Committee Conversion Motion.

[*remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court deny the Motion and grant such other relief to the Debtors as may be just and proper.

Dated: August 18, 2020                                              Respectfully submitted,

| | |
|---|---|
| /s/ James R. Irving | Michael J. Barrie (*pro hac vice*) |
| James R. Irving | Gregory W. Werkheiser (*pro hac vice*) |
| April A. Wimberg | BENESCH, FRIEDLANDER, COPLAN, & |
| Christopher B. Madden | ARONOFF LLP |
| DENTONS BINGHAM GREENEBAUM LLP | 222 Delaware Avenue, Suite 801 |
| 3500 PNC Tower | Wilmington, DE 19801 |
| 101 South Fifth Street | Telephone:   (302) 442-7010 Phone |
| Louisville, Kentucky 40202 | E-mail:   mbarrie@beneschlaw.com |
| Telephone:   (502) 587-3606 |           jhoover@beneschlaw.com |
| Facsimile:   (502) 540-2215 | |
| E-mail:   james.irving@dentons.com | -and- |
|           april.wimberg@dentons.com | |
|           chris.madden@dentons.com | Elliot M. Smith (*pro hac vice*) |
| | BENESCH, FRIEDLANDER, COPLAN, & |
| *Counsel for the Debtors* | ARONOFF LLP |
| | 200 Public Square, Suite 2300 |
| | Cleveland, OH 44114 |
| | Telephone:   (216) 363-4500 |
| | E-mail:   esmith@beneschlaw.com |
| | |
| | *Counsel for the Debtors* |