## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
## LEXINGTON DIVISION

------------------------------------------------------------- x

In re:

OGGUSA, Inc., *et al.*[1]

         Debtors.

------------------------------------------------------------- x

Chapter 11

Case No. 20-50133-grs

(Jointly Administered)

Honorable Gregory R. Schaaf


## DEBTORS' AMENDED JOINT PLAN OF LIQUIDATION

 */s/ James R. Irving*
James R. Irving
April A. Wimberg
Christopher B. Madden
DENTONS BINGHAM GREENEBAUM LLP
3500 PNC Tower
101 South Fifth Street
Louisville, Kentucky 40202
Telephone: (502) 587-3606
E-mail:  james.irving@dentons.com
      april.wimberg@dentons.com
      chris.madden@dentons.com

Michael J. Barrie
William M. Alleman, Jr.
Gregory W. Werkheiser
BENESCH, FRIEDLANDER, COPLAN, & ARONOFF LLP
1313 North Market Street, Suite 1201
Wilmington, DE 19801
Telephone: (302) 442-7010
E-mail:  mbarrie@beneschlaw.com
      walleman@beneschlaw.com
      gwerkheiser@beneschlaw.com

-and-

Elliot M. Smith
BENESCH, FRIEDLANDER, COPLAN, & ARONOFF LLP
200 Public Square, Suite 2300
Cleveland, OH 44114
Telephone: (216) 363-4500
E-mail:  esmith@beneschlaw.com

*Counsel for the Debtors*

Dated: August 18, 2020

---

[1] The Debtors in these chapter 11 bankruptcy cases are (with the last four digits of their federal tax identification numbers in parentheses): OGGUSA, Inc., f/k/a GenCanna Global USA, Inc. (0251); OGG, Inc., f/k/a GenCanna Global, Inc. (N/A); and Hemp Kentucky, LLC (0816).

# TABLE OF CONTENTS

**Page**

ARTICLE I: DEFINED TERMS AND RULES OF INTERPRETATION..................................................1

    A.    Defined Terms .......................................................................................................1

    B.    Rules of Interpretation ..........................................................................................1

    C.    Computation of Time.............................................................................................2

    D.    Governing Law......................................................................................................2

    E.    Reference to Monetary Figures..............................................................................2

ARTICLE II: UNCLASSIFIED CLAIMS ........................................................................................2

    A.    Administrative Claims; Administrative Claim Bar Date .......................................2

    B.    DIP Claims............................................................................................................2

    C.    Professional Fee Claims........................................................................................2

    D.    Priority Tax Claims...............................................................................................4

    E.    Gap Period Claims ................................................................................................4

ARTICLE III: CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS....................5

    A.    Classification of Claims and Interests...................................................................5

    B.    Treatment and Voting of Claims and Interests .....................................................6

    C.    Special Provision Governing Unimpaired Claims .................................................9

    D.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ....................................................................................................................9

    E.    Subordinated Claims...........................................................................................10

    F.    Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes ............10

    G.    Controversy Concerning Impairment ..................................................................10

ARTICLE IV: MEANS FOR IMPLEMENTATION OF THE PLAN....................................................10

    A.    Settlement of Claims and Interests .....................................................................10

    B.    Substantive Consolidation ..................................................................................11

    C.    Plan Administrator and the Wind-Down Trust....................................................12

    D.    Dissolution of the Debtors; Deemed Resignations ..............................................18

    E.    Cancellation of Existing Securities and Agreements ...........................................19

    F.    Corporate Action.................................................................................................19

    G.    Effectuating Documents; Further Transactions ...................................................19

    H.    Exemptions from Certain Taxes and Fees ...........................................................20

    I.    Privileges as to Certain Causes of Action ...........................................................20

    J.    Preservation of Retained Causes of Action..........................................................20

ARTICLE V: TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES............21

**TABLE OF CONTENTS**
(continued)

A.    Rejection of Executory Contracts and Unexpired Leases ...............................................21

B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases ....................21

C.    Modifications, Amendments, Supplements, Restatements and Other Agreements .........22

D.    Reservation of Rights; Preservation of Preexisting Obligations to Debtors ...................22

E.    Insurance Policies ........................................................................................................22

ARTICLE VI: PROVISIONS GOVERNING AND DISTRIBUTIONS ...................................................23

A.    Timing and Calculation of Amounts to Be Distributed .....................................................23

B.    Distributions on Account of Obligations to Multiple Debtors ..........................................24

C.    Distributions Generally ..................................................................................................24

D.    Rights and Powers of Disbursing Agent .........................................................................24

E.    Delivery of Distributions and Undeliverable or Unclaimed Distributions .....................25

F.    Reserves for Disputed Claims .........................................................................................26

G.    Distributions on Account of Claims or Interests Allowed After the Effective Date ........26

H.    Compliance with Tax Requirements ...............................................................................27

I.    Allocations Between Principal and Accrued Interest ......................................................27

J.    No Postpetition Interest on Claims .................................................................................27

K.    Foreign Currency Exchange Rate ...................................................................................27

L.    Setoffs and Recoupment .................................................................................................28

M.    Claims Paid or Payable by Third Parties .........................................................................28

N.    No Payment Over Full Amount .......................................................................................29

ARTICLE VII: PROCEDURES FOR RESOLVING CONTINGENT, ...................................................29

UNLIQUIDATED AND DISPUTED CLAIMS ...................................................................................29

A.    Allowance of Claims ......................................................................................................29

B.    Claims Administration Responsibilities .........................................................................29

C.    Estimation of Claims ......................................................................................................30

D.    Adjustment to Claims Without Objection ........................................................................30

E.    Time to File Objections to Claims ...................................................................................30

F.    Disallowance of Claims ..................................................................................................30

G.    Amendments to Claims ...................................................................................................31

H.    No Distribution or Payments Pending Allowance ...........................................................31

I.    Distributions and Payments After Allowance .................................................................31

ARTICLE VIII: SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ...........31

A.    Settlement, Compromise and Release of Claims and Interests .........................................31

**TABLE OF CONTENTS**
(continued)

Page

B.  Release of Liens ................................................................................................32

C.  Debtor Release ................................................................................................32

D.  Third-Party Release ........................................................................................34

E.  Exculpation ......................................................................................................35

F.  Injunction ........................................................................................................36

G.  Protection Against Discriminatory Treatment ................................................37

H.  Document Retention ........................................................................................37

I.  Term of Injunction or Stays ............................................................................37

J.  Subordination Rights ......................................................................................37

ARTICLE IX: CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ......38

A.  Conditions Precedent to the Effective Date ....................................................38

B.  Waiver of Conditions ......................................................................................38

C.  Substantial Consummation ..............................................................................38

D.  Effect of Failure of Conditions ......................................................................38

ARTICLE X: MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN ....39

A.  Modifications and Amendments ......................................................................39

B.  Effect of Confirmation on Modifications ........................................................39

C.  Revocation or Withdrawal of Plan ..................................................................39

ARTICLE XI: RETENTION OF JURISDICTION ..............................................................39

ARTICLE XII: MISCELLANEOUS PROVISIONS ............................................................42

A.  Immediate Binding Effect ..............................................................................42

B.  Additional Documents ....................................................................................42

C.  Payment of Statutory Fees ..............................................................................42

D.  UCC and Cessation of Fee and Expense Payment..........................................42

E.  Reservation of Rights......................................................................................43

F.  Successors and Assigns ..................................................................................43

G.  Notices ............................................................................................................43

H.  Entire Agreement ............................................................................................45

I.  Exhibits ..........................................................................................................46

J.  Non-Severability of Plan Provisions ..............................................................46

K.  Closing of Chapter 11 Cases ..........................................................................46

L.  Conflicts..........................................................................................................46

## DEBTORS' AEMNDED JOINT PLAN OF LIQUIDATION

OGGUSA, Inc. (f/k/a GenCanna Global USA, Inc.), OGG, Inc. (f/k/a GenCanna Global, Inc.), and Hemp Kentucky, LLC, as debtors and debtors in possession herein, hereby respectfully propose the following amended joint plan of liquidation under chapter 11 of the Bankruptcy Code.

## ARTICLE I
## DEFINED TERMS AND RULES OF INTERPRETATION

### A.    Defined Terms

All capitalized terms used herein and not otherwise defined have the meanings given to them in the Definitions attached hereto as Appendix 1 or, if not defined in Appendix 1, then as defined in the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq*., unless the context clearly requires otherwise.

### B.    Rules of Interpretation

For purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan; (6) unless otherwise specified, all references herein to exhibits are references to exhibits to this Plan or the Plan Supplement, as applicable; (7) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (8) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (13) any effectuating provisions may be interpreted by the Debtors or Plan Administrator in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall be conclusive; (14) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be

evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; (15) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (16) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; and (17) except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Wind-Down Trust shall mean the Debtors and the Wind-Down Trust, as applicable, to the extent the context requires.

## C.    Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

## D.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided, however*, that corporate or limited liability company governance matters relating to those Debtors not incorporated in Delaware shall be governed by the laws of the state of incorporation or formation of the applicable Debtor.

## E.    Reference to Monetary Figures

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

**ARTICLE II**
**UNCLASSIFIED CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Claims, Professional Fee Claims, Priority Tax Claims, and Gap Period Claims have not been classified and, thus, are excluded from Classes of Claims and Interests set forth in Article III.

## A.    Administrative Claims; Administrative Claim Bar Date

1.     Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Plan Administrator, as applicable, to the extent an Allowed Administrative Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Cases, each Holder of an Allowed Administrative Claim (other than Holders of Professional

13711145 v2

Fee Claims) will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of the unpaid portion of such Allowed Administrative Claim in accordance with the following: (a) if such Administrative Claim is Allowed on or prior to the Effective Date, no later than 45 days after the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (b) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (c) at such time and upon such terms as may be agreed upon by the Holder of such Allowed Administrative Claim and the Debtors or the Plan Administrator, as applicable; or (d) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

2.      Except for Professional Fee Claims (which are addressed in Article II.C and unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Plan Administrator no later than the Administrative Claim Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order. Objections to such requests must be Filed and served on the Plan Administrator (if the Plan Administrator is not the objecting party) and the requesting party on or before the Administrative Claim Objection Deadline. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with, an order of the Bankruptcy Court that becomes a Final Order.

3.      Except for Professional Fee Claims, Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not file and serve such a request on or before the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Estates, the Wind-Down Trust, the Plan Administrator, or the property of any of the foregoing, and such Administrative Claims shall be deemed released as of the Effective Date without the need for any objection from the Debtors or the Plan Administrator or any notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

**B.     DIP Claims**

In accordance with the MGG Settlement Agreement, all remaining DIP Claims shall be deemed satisfied, compromised, settled, and released as set forth in this Plan and the MGG Settlement Agreement.

**C.     Professional Fee Claims**

1.      <u>Final Fee Applications and Payment of Professional Fee Claims</u>

13711145 v2

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than 45 days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court orders. The Plan Administrator (or the authorized signatories to the Professional Fee Escrow Account, after consultation with the Plan Administrator) shall pay to each Holder of an Allowed Professional Feel Claim the unpaid amount of such Holder's Allowed Professional Fee Claim from funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claim is Allowed by entry of an order of the Bankruptcy Court, which order has not thereafter been vacated, reversed or stayed as to such Professional Fee Claim.

    2.      <u>Professional Fee Escrow Account</u>

As soon as is reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. No Liens, claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way. Funds held in the Professional Fee Escrow Account shall not be considered property of the Estates, the Debtors, the Plan Administrator, or the Wind-Down Trust.

The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Debtors or the Plan Administrator, as applicable, from the funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by an order of the Bankruptcy Court; provided that the Debtors' and the Plan Administrator's obligations to pay Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Fee Escrow Account and such Allowed Professional Fee Claims shall also be payable from the Wind-Down Trust Assets. When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account shall promptly be paid to the Wind-Down Trust without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

    3.      <u>Professional Fee Escrow Amount</u>

        13711145 v2

Each Professional shall provide a reasonable and good-faith estimate of such Professional's unpaid fees and expenses incurred and projected to be outstanding as of the Confirmation Date, and shall deliver such estimate to the Debtors no later than five (5) days before the anticipated Confirmation Hearing; *provided, however,* that such estimate shall not be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims and such Professionals are not bound to any extent by the estimates. If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional. The total aggregate amount so estimated as of the Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account, provided that the Plan Administrator shall use Cash from the Wind-Down Trust to increase the amount of the Professional Fee Escrow Account to the extent fee applications are Filed after the Effective Date in excess of the amount held in the Professional Fee Escrow Account based on such estimates.

4.      Post-Confirmation Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and occurrence of the Effective Date incurred by the Debtors after the Confirmation Date. The Debtors and the Plan Administrator, as applicable, shall pay within ten business days after submission of a detailed invoice to the Debtors or the Plan Administrator, as applicable, such reasonable claims for compensation or reimbursement of expenses incurred by the Professionals of the Debtors or Plan Administrator, as applicable. If the Debtors or Plan Administrator, as applicable, disputes the reasonableness of any such invoice, the Debtors or the Plan Administrator, as applicable, or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code and any related Bankruptcy Rules in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or the Plan Administrator, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

**D.      Priority Tax Claims**

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

**E.      Gap Period Claims**

4                                    13711145 v2

Except to the extent that a Holder of an Allowed Gap Period Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of, and in exchange for, each Allowed Gap Period Claim, each Holder of such Allowed Gap Period Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(A) of the Bankruptcy Code.

**ARTICLE III**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

**A.    Classification of Claims and Interests**

Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and Distributions pursuant to the Plan and in accordance with section 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or an Interest is classified in a particular Class only to the extent that such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. A Claim also is classified in a particular Class for the purpose of receiving Distributions under the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against each Debtor pursuant to the Plan is as set forth in the table immediately below. If Substantive Consolidation is not approved or the Debtors withdraw their request for Substantive Consolation, the Plan shall apply as a separate Plan for each Debtor, and the classification of Claims and Interests set forth herein shall apply separately to each Debtor. Certain of the Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and such Claims shall be treated as set forth in Article III.F hereof. All of the potential Classes for the Debtors are set forth herein.

If Substantive Consolidation is not approved or the Debtors' request for Substantive Consolidation is withdrawn, then for all purposes under the Plan, each Class will contain sub-Classes for each of the Debtors. Voting tabulations for recording acceptances or rejections of the Plan shall be conducted on a Debtor-by-Debtor basis as set forth above.

As set forth in Article IV.B hereof, the Debtors are requesting that their Estates be substantively consolidated for the purposes of voting, Confirmation, Consummation, and implementation of Distributions pursuant to the Plan.  If the Bankruptcy Court approves Substantive Consolidation as part of the Confirmation Order or otherwise, then the sub-Classes identified in the table below shall be disregarded for such purposes.

13711145 v2

| | | | | |
|---|---|---|---|---|

**Plan Classification Table**

**Key to sub-Classes: A = OGUSA, Inc. (f/k/a GenCanna Global USA, Inc.); B = OGG, Inc. (f/k/a GenCanna Global, Inc.); and C = Hemp Kentucky, LLC**

| Class | sub-Classes[2] | Claim | Status | Voting Rights |
|---|---|---|---|---|
| 1 | A, B & C | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | A, B & C | Other Secured Claims | Impaired | Entitled to Vote |
| 3 | A & B | MGG Subordinated Claims | Impaired | Entitled to Vote |
| 4 | A, B & C | Unsecured Claims | Impaired | Entitled to Vote |
| 5 | A, B & C | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 6 | A, B & C | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 7 | A, B & C | Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

**B.     Treatment and Voting of Claims and Interests**

Subject to Article IV hereof, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, and release of, and in exchange for, such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors and the Holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such Holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

     1.    <u>Class 1 (Other Priority Claims)</u>

        a.    *Classification:* Class 1 consists of all Allowed Other Priority Claims.

        b.    *Treatment:* Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for such Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall receive, at the option of the Debtors or the Plan Administrator, as applicable:

           i.    payment in full in Cash of the unpaid portion of its Allowed Other Priority Claim on the  later of the Effective Date and such date

---

[2] Sub-Classes are subject to elimination in the event that Substantive Consolidation is approved.

13711145 v2

such Other Priority Claim becomes an Allowed Other Priority Claim; or

ii.     such other treatment rendering such Holder's Allowed Other Priority Claim Unimpaired.

c.     *Voting:*   Class 1 is Unimpaired under the Plan. Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of an Other Priority Claims are not entitled to vote to accept or reject the Plan.

2.     <u>Class 2 (Other Secured Claims)</u>

a.     *Classification:* Class 2 consists of all Allowed Other Secured Claims.

b.     *Treatment:* Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment or as otherwise ordered by the Bankruptcy Court, in full and final satisfaction, compromise, settlement, and release of and in exchange for such Allowed Other Secured Claim, each Holder of an Allowed Other Secured Claim shall receive, at the option of the Debtors or the Plan Administrator, as applicable:

i.     on the first applicable Distribution Date as determined pursuant to Article VI.A hereof, payment in full in Cash of such Holder's Allowed Other Secured Claim;

ii.     on the first applicable Distribution Date as determined pursuant to Article VI.A hereof, receipt of the collateral securing any such Allowed Other Secured Claim;

iii.     in the event that the Debtors or the Plan Administrator, as applicable, sells the property encumbered by the Liens securing such Allowed Other Secured Claim free and clear of such Liens, the Holder of such Allowed Other Secured Claim shall be entitled to receive the net proceeds of the sale of such property until such Allowed Other Secured Claim is paid in full; or

iv.     such other treatment rendering such Holder's Allowed Other Secured Claim Unimpaired.

c.     *Voting:*   Class 2 is Impaired under the Plan. Holders of Allowed Other Secured Claims are entitled to vote to accept or reject the Plan.

3.     <u>Class 3 (MGG Subordinated Claims)</u>

a.     *Classification:* Class 3 consists of all MGG Subordinated Claims.

13711145 v2

b.     *Allowance:* Pursuant to the MGG Settlement Agreement, the MGG Subordinated Claims have been Allowed in the aggregate amount of $27,016,182.27, but are subordinated in rights of payment and priority to Allowed General Unsecured Claims.

c.     *Treatment:* On the Effective Date and in accordance with the terms of the MGG Settlement Agreement, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Allowed MGG Subordinated Claim, each Holder of an Allowed MGG Subordinated Claim shall be deemed to receive on account of its Allowed MGG Subordinated Claim its Trust Ratable Share of Beneficial Interests, *provided* that such Beneficial Interests shall, as a result of the subordination of the Allowed MGG Subordinated Claims to the prior payment in full of all Allowed General Unsecured Claims (but not GCG Parent Control Claims) pursuant to the MGG Settlement Agreement, be turned over to the Holders of Allowed General Unsecured Claims based upon their respective GUC Ratable Shares.

d.     *Voting:*   Class 3 is Impaired under the Plan. The Holders of the MGG Subordinated Claims are entitled to vote to accept or reject the Plan.

4.     <u>Class 4 (Unsecured Claims)</u>

a.     *Classification:* Class 4 consists of all Allowed Unsecured Claims.

b.     *Treatment:* Except to the extent that a Holder of an Allowed Unsecured Claim agrees to less favorable treatment, on the first applicable Distribution Date as determined pursuant to Article VI.A hereof, in full and final satisfaction, compromise, settlement, and release of and in exchange for such Allowed Unsecured Claim, each Holder of an Allowed Unsecured Claim shall receive on account of such Allowed Unsecured Claim against a Debtor, its Trust Ratable Share of the Beneficial Interests in the Wind-Down Trust.

c.     *Voting:*   Class 4 is Impaired under the Plan. Holders of Allowed Unsecured Claims are entitled to vote to accept or reject the Plan.

5.     <u>Class 5 (Intercompany Claims)</u>

a.     *Classification:* Class 5 consists of all Intercompany Claims.

b.     *Treatment:* Holders of Intercompany Claims shall not receive any Distribution or other payments, or retain any property, on account of such Intercompany Claims. On or after the Effective Date, the Plan Administrator may reconcile such Intercompany Claims as may be advisable in order to avoid the incurrence of any past, present, or future tax or similar liabilities by the Debtors.

13711145 v2

      c.    *Voting:*   Class 5 is Impaired under the Plan. Holders of Intercompany Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

6.    <u>Class 6 (Section 510(b) Claims)</u>

      a.    *Classification:* Class 6 consists of all Section 510(b) Claims.

      b.    *Treatment:* Section 510(b) Claims, if any, shall be cancelled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and holders of Section 510(b) Claims will not receive any Distribution or other payments, or retain any property, on account of such Section 510(b) Claims.

      c.    *Voting:*   Class 6 is Impaired under the Plan. Holders of Intercompany Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Section 510(b) Claims are not entitled to vote to accept or reject the Plan.

7.    <u>Class 7 (Interests)</u>

      a.    *Classification:* Class 7 consists of all Interests.

      b.    *Treatment:* Interests shall be cancelled and released without any Distribution, payments or retention of any property on account of such Interests.

      c.    *Voting:*   Class 7 is Impaired under the Plan. Holders of Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Interests are not entitled to vote to accept or reject the Plan.

**C.**    **Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Claims that are Unimpaired, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims that are Unimpaired. Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under the Plan.

**D.**    **Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code**

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims. The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtors reserve the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to

                        13711145 v2

section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

## E.    Subordinated Claims

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Interests and the respective Distributions, payments and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors and the Plan Administrator reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## F.    Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

## G.    Controversy Concerning Impairment

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.


### ARTICLE IV
### MEANS FOR IMPLEMENTATION OF THE PLAN

## A.    Settlement of Claims and Interests

1.    <u>In General</u>

As discussed in the Disclosure Statement and as otherwise provided in the Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distributions, payments, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute and be deemed a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released,

settled, compromised, or otherwise resolved pursuant to the Plan. The entry of the Confirmation
Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under
section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the
Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the
best interests of the Debtors and their Estates. Subject to Article VI hereof, all Distributions
made to Holders of Allowed Claims and Allowed Interests, as applicable, in any Class are
intended to be and shall be final.

    2.   <u>MGG Settlement</u>

    Except in the event that the MGG Settlement has been approved by an order of the
Bankruptcy Court that has become a Final Order prior to the Confirmation Date, the Plan shall
be deemed a motion to approve the MGG Settlement in accordance with the terms of the MGG
Settlement Agreement, which includes the good-faith compromise and settlement of all potential
claims and Causes of Action of the Debtors and their Estates against MGG, pursuant to
Bankruptcy Rule 9019, except as expressly provided in the MGG Settlement Agreement.
Additionally, the entry of the Confirmation Order shall constitute the Bankruptcy Court's
approval of such compromises and settlements under Bankruptcy Rule 9019, as well as a finding
by the Bankruptcy Court that such compromise and settlement is fair, equitable, reasonable, and
in the best interests of the Debtors and their Estates.

    On the Effective Date, the transactions contemplated by the MGG Settlement Agreement
and Plan, including the receipt by the Debtors or the Wind-Down Trust, as applicable, of the
MGG Settlement Payments as contemplated by the MGG Settlement Agreement, shall be in full
and final settlement of all Causes of Action released or subject to release pursuant to the terms of
the MGG Settlement Agreement and any action or proceeding that has been or may be
commenced with respect to any such Cause of Action shall be deemed dismissed with prejudice.

    Pursuant to the terms of the MGG Settlement Agreement and this Plan, each MGG
Subordinated Claim is an Allowed Class 3 Claim entitled to receive on account thereof its Trust
Ratable Share of the Beneficial Interests, *provided* that, pursuant to the terms of the MGG
Settlement Agreement and this Plan, the Allowed MGG Subordinated Claims are subordinated to
the prior payment in full of all Allowed General Unsecured Claims (but not to GCG Parent
Control Claims).  In furtherance of implementing such subordination of the MGG Subordinated
Claims, each Holder of an Allowed General Unsecured Claim shall receive a turnover of its
GUC Ratable Share of the Beneficial Interests otherwise distributable on account of the Allowed
MGG Subordinated Claims.

**B.**    **Substantive Consolidation**

    This Plan shall serve as a motion of the Debtors seeking entry of a Bankruptcy Court
order approving the Substantive Consolidation of the Debtors and their Estates provided for
herein, as well as any additional consolidation that may be proposed by the Debtors in
connection with Confirmation and Consummation of the Plan. The Debtors reserve the right to
file appropriate alternative pleadings in support of the proposed Substantive Consolidation in
connection with the Confirmation Hearing. Unless an objection to Substantive Consolidation is
made in writing by any creditor affected by the Plan on or before the date and time fixed by the

    13711145 v2

Bankruptcy Court for objections to Confirmation of the Plan, the Substantive Consolidation proposed by the Plan may be approved by the Bankruptcy Court at the Confirmation Hearing.

Subject to the Bankruptcy Court's approval of Substantive Consolidation, the Debtors shall be substantively consolidated for the purposes of Confirmation and Consummation of the Plan, including, without limitation, for purposes of voting, Confirmation and Distributions on Allowed Claims. On and after the Effective Date, pursuant to the Plan and Confirmation Order, (i) all assets and liabilities of the Debtors shall be treated as though they were merged solely for purposes of implementation and consummation of the Plan; (ii) no Distribution or other payments shall be made under the Plan on account of any Intercompany Claims; (iii) for all purposes associated with confirmation of the Plan, including, without limitation, for purposes of tallying votes on the Plan, the Estates of the Debtors shall be deemed to be one consolidated Estate; (iv) each and every Claim filed or to be filed in the Chapter 11 Cases of the Debtors shall be deemed filed against the substantively consolidated Debtors, and shall be Claims against and obligations of the substantively consolidated Debtors; (v) to the extent any holder of a Claim filed substantially similar claims against more than one of the Debtors based upon the same transaction, act or omission, such Creditor shall be deemed to have one (1) Claim against the debtor GCG Opco (Case No. 20-50133) for voting and purposes of implementing Distributions, and duplicative Claims Filed or Scheduled in the Chapter 11 Case of any other Debtor shall be deemed disallowed and expunged from the Claims Register maintained in the Chapter 11 Cases; (vi) to the extent any holder of a Claim filed more than one (1) Claim against one or more of the Debtors based upon different transactions, acts or omissions, such claims shall be aggregated, and such creditor shall be deemed to have only one (1) Claim in the aggregate amount of the filed claims for voting and purposes of implementing Distributions; and (vii) any guaranty by one or more of the Debtors of the obligations of another Debtor will be eliminated and any claim filed against one or more of the Debtors based upon any guaranty shall be deemed disallowed and expunged from the Claims Register maintained in the Chapter 11 Cases. Substantive Consolidation pursuant to this Article IV.B and the Confirmation Order and/or other Final Order of the Bankruptcy Court, shall not affect: (w) the legal and organizational structure of the Debtors; (x) guarantees, liens, and security interests that are required to be maintained (i) under the Bankruptcy Code, or (ii) pursuant to the Plan; (y) distributions from any Insurance Policies or proceeds of such policies; or (z) the dissolution of any of the Debtors after the Effective Date in accordance with the authority and discretion of the Plan Administrator as provided in the Plan and Wind-Down Trust Agreement.

The Debtors reserve the right at any time up to the conclusion of the Confirmation Hearing to withdraw their request for Substantive Consolidation of these Chapter 11 Cases, to seek Confirmation of the Plan as if there were no Substantive Consolidation, and to seek Confirmation of the Plan with respect to one Debtor even if Confirmation with respect to the other Debtors is denied.

**C.    Plan Administrator and the Wind-Down Trust**

1.    <u>Appointment of the Plan Administrator</u>

The Plan Administrator shall be selected by the Debtors, in consultation with the UCC and MGG, and shall be identified by the Debtors in the Plan Supplement. At the Confirmation

13711145 v2

Hearing, the Bankruptcy Court shall consider and, if appropriate, ratify the selection of the Plan Administrator. All compensation for the Plan Administrator shall be paid from the Wind-Down Trust Account in accordance with the terms of the Plan and the Wind-Down Trust Agreement. The approved Person shall serve as the Plan Administrator upon execution of the Wind-Down Trust Agreement on the Effective Date. The Plan Administrator shall not be required to give any bond or surety or other security for the performance of their duties unless otherwise ordered by the Bankruptcy Court. A form of the Wind-Down Trust Agreement shall be provided in the Plan Supplement. On the Effective Date, all Beneficiaries of the Wind-Down Trust shall be deemed to have ratified and become bound by the terms and conditions of the Wind-Down Trust Agreement. In the event that the Plan Administrator resigns or is removed, terminated, or otherwise unable to serve as Plan Administrator, then successors shall be appointed as set forth in the Wind-Down Trust Agreement. Any successor Plan Administrator appointed shall be bound by and comply with the terms of this Plan, the Confirmation Order, and the Wind-Down Trust Agreement.

Following the Effective Date, the Plan Administrator shall also be, and shall enjoy the powers of, the Debtors' authorized representative pursuant to Section 1123 of the Bankruptcy Code and other applicable law for all purposes, including, without limitation, all Retained Causes of Action. No further proof of such power shall be necessary or required.

2.     Creation of Wind-Down Trust

On the Effective Date, the Plan Administrator shall sign the Wind-Down Trust Agreement and, in its capacity as the Plan Administrator, accept all Wind-Down Trust Assets on behalf of the Beneficiaries thereof, and be authorized to obtain, collect, seek the turnover of, liquidate, and collect all of the Wind-Down Trust Assets not in its possession or control and to prosecute the Retained Causes of Action. The Wind-Down Trust will then be created and effective without any further action by the Bankruptcy Court or any Person as of the Effective Date. The Wind-Down Trust shall be established for the primary purpose of prosecuting the Retained Causes of Action, liquidating the Wind-Down Trust Assets and making Distributions in accordance with this Plan and the Wind-Down Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except only in the event and to the extent necessary to, and consistent with, the liquidating purpose of the Wind-Down Trust.

The Plan Administrator shall also receive and administer the Professional Fee Escrow Account, but the Professional Fee Escrow Account and any funds contained in such account shall not be considered Wind-Down Trust Assets, except as otherwise expressly provided in this Plan.  Similarly, and for the avoidance of doubt, except as otherwise expressly provided in this Plan and the MGG Settlement Agreement, the Wind-Down Trust Assets shall not include the MGG Settlement Escrowed Funds.

3.     Beneficiaries of the Wind-Down Trust

The Holders of Allowed Unsecured Claims against the Debtors entitled to Distributions hereunder shall be the Beneficiaries of the Wind-Down Trust. Such Beneficiaries shall be bound by the Wind-Down Trust Agreement. The interests of the Beneficiaries in the Wind-Down Trust

13711145 v2

shall be uncertificated and non-transferrable without the prior written consent of the Plan Administrator.

4.    <u>Vesting and Transfer of Assets to the Wind-Down Trust</u>

Under Section 1141(b) of the Bankruptcy Code, the Wind-Down Trust Assets shall be assigned, transferred, and vested in the Wind-Down Trust upon the Effective Date free and clear of all Claims and Liens; *provided, however,* that the Plan Administrator may abandon or otherwise not accept any assets that the Plan Administrator believes, in good faith, to have no value to, or will be unduly burdensome to, the Wind-Down Trust in accordance with the terms of the Wind-Down Trust Agreement. Any assets that the Plan Administrator so abandons or otherwise does not accept shall not be property of the Wind-Down Trust. As of the Effective Date, all Wind-Down Trust Assets vest in the Wind-Down Trust and all assets dealt with in this Plan shall be free and clear of all Liens, Claims, and Interests except as otherwise specifically provided in this Plan or in the Confirmation Order.

5.    <u>Funding of the Wind-Down Trust</u>

On the Effective Date and thereafter as additional funds become available, the Wind-Down Trust shall be funded with: (a) the remaining portion of the Cash Purchase Price, if any; (b) the MGG Settlement Payments and other Estate Recoveries (as defined in the MGG Settlement Agreement); (c) Cash proceeds from the sale of any of the Debtors' assets that were not Purchased Assets; (d) net Cash proceeds from prosecution or settlement of Causes of Action; (e) Cash on hand; (f) the benefits, rights, interests and proceeds of any Insurance Policies with respect to the Debtors only to the extent (i) payable to the Debtors in accordance with the terms of the Insurance Policies and (ii) not Purchased Assets; and (g) any and all other assets belonging to the Debtors' Estates (subject to the Distribution of such assets in accordance with the terms of the Plan).

To the extent not paid in full in Cash on the Effective Date, reserves for payment of Disputed Claims and Professional Fee Escrow Amount shall be set aside and held by the Plan Administrator until such Claims are approved, Allowed and authorized to be paid, by the Bankruptcy Court.

On the Effective Date, the Debtors and the Debtors' Estates shall transfer and be deemed to have transferred the Wind-Down Trust Assets to the Wind-Down Trust and such Wind-Down Trust Assets shall vest in the Wind-Down Trust to be utilized, administered, and distributed by the Plan Administrator in accordance with the terms and conditions of this Plan, the Confirmation Order, and Wind-Down Trust Agreement.

6.    <u>Distributions from the Wind-Down Trust</u>

Distributions from the Wind-Down Trust shall be made in accordance with the Plan and the Wind-Down Trust Agreement. For the avoidance of doubt, the net proceeds of the Retained Causes of Action shall be used to pay any Wind-Down Trust Operating Expenses prior to making any Distributions to Beneficiaries of the Wind-Down Trust.

7.    <u>Advisory Committee</u>

13711145 v2

For the purpose of assisting the Plan Administrator in administering the Wind-Down Trust and otherwise implementing the Plan, the Advisory Committee shall be created on the Effective Date.  The Advisory Committee shall exercise such rights and duties as are set forth herein and in the Wind-Down Trust Agreement.

The Advisory Committee shall be initially comprised of three to five members selected by the Debtors after consultation with the UCC and MGG.  Additionally, at any given time, (a) no more than two members of the Advisory Committee may be former members of the UCC or affiliates thereof, and  (b) no more than two members of the Advisory Committee may be former directors, officers or managers of any Debtor, or Affiliates thereof.  Each member of the Advisory Committee shall serve until the earlier of: (i) his or her death or resignation; (ii) his or her removal pursuant to the Wind-Down Trust Agreement; and (iii) the termination of the Wind-Down Trust.

The Advisory Committee may authorize its own dissolution by filing with the Bankruptcy Court an appropriate notice that its responsibilities hereunder have concluded. Unless earlier dissolved, the Advisory Committee shall be dissolved on the date the last of the Chapter 11 Cases is closed.

8.    <u>Certain Powers and Duties of the Wind-Down Trust and Plan Administrator</u>

a.    *General Powers of the Plan Administrator*

The Plan Administrator shall have, and enjoy the powers of, the Debtors' authorized representative for all purposes and shall have the power and authority to perform the acts described in the Wind-Down Trust Agreement (subject to approval by the Bankruptcy Court where applicable) and the MGG Settlement Agreement, in addition to any powers granted by law or conferred to it by any other provision of this Plan, including without limitation any set forth herein; *provided, however,* that enumeration of the following powers shall not be considered in any way to limit or control the power and authority of the Plan Administrator to act as specifically authorized by any other provision of this Plan, the Wind-Down Trust Agreement, and/or any applicable law, and to act in such manner as the Plan Administrator may deem necessary or appropriate, including, without limitation, to fulfill all obligations assumed by the Plan Administrator or provided herein, to conserve and protect the Wind-Down Trust, the Wind-Down Trust Assets or the Professional Fee Escrow Account, or to confer on the Beneficiaries the benefits intended to be conferred upon them by this Plan. The powers, rights, and responsibilities of the Plan Administrator shall be specified in the Wind-Down Trust Agreement and shall include the authority, power, and responsibility to: (a) receive, manage, invest (after consultation with the Advisory Committee), supervise, and protect Wind-Down Trust Assets and the funds in the Professional Fee Escrow Account; (b) with respect to non-Cash Wind-Down Trust Assets, with or without further order of the Bankruptcy Court, to sell or otherwise dispose of such non-Cash Wind-Down Trust Assets in such a manner and on such terms as the Plan Administrator determines in the exercise of its business judgment are likely maximize the value realizable by the Wind-Down Trust and its Beneficiaries; (c) pay taxes or other obligations incurred by the Wind-Down Trust and issue to employees or other Persons, and/or file with the appropriate Governmental Units, applicable tax and wage returns and forms; (d) retain and compensate, without further order of the Bankruptcy Court, the services of employees, professionals, and

consultants to advise and assist in the administration, prosecution and Distribution of Wind-Down Trust Assets and Estate Recoveries (as applicable); (e) calculate and implement Distributions of Wind-Down Trust Assets; (f) calculate and make payments from the Professional Fee Escrow Account; (g) investigate, prosecute, compromise, and settle (after consultation with the Advisory Committee), in accordance with the specific terms of this Plan and the Wind-Down Trust Agreement and without further order of the Bankruptcy Court, the Retained Causes of Action, as set forth herein and in the Wind-Down Trust Agreement; (h) resolve issues involving Claims and Interests in accordance with this Plan, including the power (after consultation with the Advisory Committee) to object to Claims against the Debtors, and to subordinate and recharacterize Claims by objection, motion, or adversary proceeding against the Debtors without any further notice to or action, order or approval by the Court; (i) undertake all administrative functions of the Chapter 11 Cases, including the payment of fees payable to the U.S. Trustee under Section 1930 of Title 28 of the United States Code that are incurred post-Effective Date with respect to disbursements from the Wind-Down Trust and the ultimate closing of the Chapter 11 Cases and dissolution of the Debtor entities; (j) dissolve the Debtors' employee benefit plans, if any; and (k) take such other action as may be vested in or assumed by the Plan Administrator consistent with this Plan, the Wind-Down Trust Agreement, the Confirmation Order, and any other applicable Orders of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of this Plan.

Except as expressly set forth in this Plan and in the Wind-Down Trust Agreement, the Plan Administrator, on behalf of the Wind-Down Trust, shall have absolute discretion (after consultation with the Advisory Committee) to pursue or not to pursue any Retained Causes of Action as he/she/it determines is in the best interests of the Beneficiaries and consistent with the purposes of the Wind-Down Trust, and shall be indemnified to the fullest extent permitted under applicable law by the Wind-Down Trust for the outcome of his, her, or its decisions, other than those decisions constituting fraud, gross negligence, willful misconduct, bad faith or self-dealing.

The Plan Administrator may incur any reasonable and necessary expenses in liquidating and converting the Wind-Down Trust Assets to Cash. The Plan Administrator shall have standing, authority, power, and right to assert, prosecute, and/or settle the Retained Causes of Action, including, with respect to the Wind-Down Trust, making a claim under Insurance Policies based upon its powers as a bankruptcy-appointed representative of the Debtors' Estates with the same or similar abilities possessed by insolvency trustees, receivers, examiners, conservators, liquidators, rehabilitators, or similar officials. The Retained Causes of Action will vest in the Wind-Down Trust as set forth in this Plan and the Wind-Down Trust Agreement. With respect to the provisions of the Asset Purchase Agreement, and the Sale Documents which survive the Effective Date and Consummation of this Plan, the Plan Administrator shall be deemed a permitted assignee of the Debtors under the Asset Purchase Agreement and shall receive the benefit thereunder.

b.    *Books and Records*

On the Effective Date, the Wind-Down Trust shall: (i) take possession of all Books and Records of the Debtors and the Estates that were not sold and transferred in connection with the Sale Transaction; and (ii) provide for the retention and storage of such Books and Records until

13711145 v2

such time as the Plan Administrator determines in accordance with the Wind-Down Trust Agreement, that retention of same is no longer necessary or beneficial.

### c.    *Investments of Cash*

The Wind-Down Trust may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by Section 345 of the Bankruptcy Code or in other prudent investments; *provided, however,* that such investments are permitted to be made by a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

### d.    *Costs and Expenses of Administration of the Wind-Down Trust*

All Wind-Down Trust Operating Expenses shall be the responsibility of and paid by the Wind-Down Trust in accordance with the Wind-Down Trust Agreement from the Wind-Down Trust Assets.

### e.    *Reporting*

In no event later than thirty (30) Business Days after the end of the first full quarter following the Effective Date and on a quarterly basis thereafter until all Cash in the Wind-Down Trust has been released or paid out in accordance with this Plan and the Wind-Down Trust Agreement, the Plan Administrator shall File reports setting forth the amounts, recipients, and dates of all Distributions through each applicable reporting period.

### 9.    United States Federal Income Tax Treatment of the Wind-Down Trust for the Wind-Down Trust Assets

For federal income tax purposes, it is intended that the Wind-Down Trust be classified as a grantor trust and a liquidating trust under Section 301.7701-4(d) of the Treasury regulations and that the trust be owned by its Beneficiaries.  Accordingly, for federal income tax purposes, it is intended that the Beneficiaries be treated as if there were a deemed transfer of the Wind-Down Trust Assets to the Beneficiaries, followed by a deemed transfer of such Wind-Down Trust Assets by the Beneficiaries to the Wind-Down Trust.  Accordingly, the Wind-Down Trust's Beneficiaries will be treated, for federal income tax purposes, as the grantors and owners of their respective share of the Wind-Down Trust Assets.  The valuation ascribed to the Wind Down Trust Asses shall be used consistently by the Plan Administrator and the Beneficiaries for all federal income tax purposes.

The Plan Administrator shall be responsible for filing all federal, state, and local tax returns for the Wind-Down Trust and for the Debtors. The Wind-Down Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions made by the Wind-Down Trust shall be subject to any such withholding and reporting requirements. The Plan Administrator shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a Distribution, the Holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable, to each Holder. Notwithstanding any other provision of this Plan,

13711145 v2

(a) each Holder of an Allowed Claim that is to receive a Distribution from the Wind-Down Trust shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income and other tax obligations, on account of such Distribution, and (b) no Distribution shall be made to or on behalf of such Holder under this Plan unless and until such Holder has made arrangements satisfactory to the Plan Administrator to allow it to comply with its tax withholding and reporting requirements.

Any property to be distributed by the Wind-Down Trust, shall, pending the implementation of such arrangements, be treated as an undeliverable Distribution, to be held by the Plan Administrator, as the case may be, until such time as the Plan Administrator is satisfied with the Holder's arrangements for any withholding tax obligations.

10.   Term of Wind-Down Trust

The Plan Administrator shall be discharged and the Wind-Down Trust shall be terminated at such time as (a) all Disputed Claims against the Debtors have been resolved, (b) all of the Retained Causes of Action have been prosecuted to completion and the Wind-Down Trust Assets have been collected and liquidated, (c) all duties and obligations of the Plan Administrator under the Wind-Down Trust Agreement have been fulfilled, (d) all Distributions required to be made by the Wind-Down Trust under this Plan and the Wind-Down Trust Agreement have been made, and (e) the Chapter 11 Cases of the Debtors have been closed; *provided, however,* that in no event shall the Wind-Down Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension (not to exceed one (1) year, together with any prior extensions, unless the Wind-Down Trust has procured a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Wind-Down Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Wind-Down Trust Assets.

11.   Limitation of Liability of the Plan Administrator

The Wind-Down Trust shall indemnify its Plan Administrator and its professionals against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that the Plan Administrator or its professionals may incur or sustain by reason of being or having been a Plan Administrator or professionals of the Wind-Down Trust for performing any functions incidental to such service; *provided, however,* the foregoing shall not relieve the Plan Administrator or its professionals from liability for bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, or self-dealing.

**D.    Dissolution of the Debtors; Deemed Resignations**

Immediately after the Effective Date, the Plan Administrator shall be authorized to take, in his, her or its sole and absolute discretion, all actions reasonably necessary to dissolve one or more of the Debtors under applicable laws, including under the laws of the jurisdictions in which

13711145 v2

they may be organized or registered, and to pay all reasonable costs and expenses in connection with such dissolutions, including the costs of preparing or filing any necessary paperwork or documentation. Upon the completion of final Distributions, any Debtors that have not been previously dissolved shall be deemed dissolved for all purposes without the necessity for other or further actions to be taken by or on behalf of the Debtors, and the Plan Administrator shall be authorized to file any certificate of cancellation or other documents as may be necessary or desirable to terminate the legal existence of the Debtors.

Additionally, immediately following the Distribution of all of the Debtors' and the Estates' property under the terms of this Plan, on the Effective Date, the Debtors' members, directors, managers, and officers and any remaining employees shall be deemed to have resigned their respective positions.

## E.      Cancellation of Existing Securities and Agreements

Except as otherwise specifically provided for in the Plan, on the Effective Date, the DIP Loan Documents, the Prepetition Loan Documents, and any other certificate, Security, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors or giving rise to any Claim against or Interest in the Debtors, shall be canceled, and the Debtors shall not have any obligations thereunder and shall be released therefrom.

## F.      Corporate Action

Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved in all respects, including selection of the Plan Administrator and all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan or deemed necessary or desirable by the Debtors, before, on, or after the Effective Date involving the corporate structure of the Debtors or the Wind-Down Trust, and any corporate action required by the Debtors or the Wind-Down Trust in connection with the Plan or corporate structure of the Debtors or the Wind-Down Trust shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Plan Administrator. Before, on, or after the Effective Date, the appropriate officers of the Debtors or the Plan Administrator, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Debtors or the Wind-Down Trust, to the extent not previously authorized by the Bankruptcy Court. The authorizations and approvals contemplated by this Article IV.F shall be effective notwithstanding any requirements under non-bankruptcy law.

## G.      Effectuating Documents; Further Transactions

On and after the Effective Date, the Plan Administrator may issue, execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the

terms and conditions of the Plan and the instruments issued pursuant to the Plan in the name of and on behalf of the Wind-Down Trust, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

## H.    Exemptions from Certain Taxes and Fees

Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, any transfers from the Debtors to the Wind-Down Trust or to any other Person, pursuant to, in contemplation of, or in connection with the Plan (including any transfer pursuant to: (a) the distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (b) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, sales and use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local government officials or agents shall, and shall be directed to, forego the collection of any such tax, recordation fee or government assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee or government assessment. The Bankruptcy Court shall retain specific jurisdiction with respect to these matters.

## I.    Privileges as to Certain Causes of Action

Effective as of the Effective Date, all Privileges of the Debtors relating to the Wind-Down Assets shall be deemed transferred, assigned, and delivered to the Wind-Down Trust, without waiver or release, and shall vest with the Wind-Down Trust. The Plan Administrator shall hold and be the beneficiary of all such Privileges and is entitled to assert such Privileges. No such Privilege shall be waived by disclosures to the Plan Administrator of the Debtors' documents, information, or communications subject to attorney-client privileges, work product protections or other immunities (including those related to common interest or joint defense with third parties), or protections from disclosure held by the Debtors. The Debtors' Privileges relating to the Wind-Down Trust Assets will remain subject to the rights of third parties under applicable law, including any rights arising from the common interest doctrine, the joint defense doctrine, joint attorney-client representation, or any agreement. Nothing contained herein or in the Confirmation Order, nor any Professional's compliance herewith and therewith, shall constitute a breach of any Privileges of the Debtors.  Notwithstanding the foregoing and for the avoidance of doubt, the Privileges transferred to the Wind-Down Trust do not include any privileges of the current and former individual directors or officers of the Debtors, and all of the rights of such directors and officers with respect to such privileged materials, including any materials that may be subject to joint privilege with the Debtors, are hereby preserved.

## J.    Preservation of Retained Causes of Action

In accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to Article VIII hereof, the Plan Administrator shall retain and may enforce all rights to commence

and pursue, as appropriate, any and all Retained Causes of Action, whether arising before or after the Petition Date, including, but not limited to, any actions specifically enumerated in the Schedule of Retained Causes of Action and notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.

The Plan Administrator may pursue such Retained Causes of Action, as appropriate, in accordance with the best interests of the Wind-Down Trust. The Plan Administrator shall retain and may exclusively enforce any and all such Retained Causes of Action. The Plan Administrator shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Retained Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

**No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Retained Cause of Action against it as any indication that the Plan Administrator will not pursue any and all available Retained Causes of Action against it, except as otherwise expressly provided in the Plan, including this Article IV and Article VIII of the Plan.** Unless any such Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Final Order, the Plan Administrator expressly reserves all such Retained Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Retained Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

## ARTICLE V
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      **Rejection of Executory Contracts and Unexpired Leases**

Except as otherwise provided herein, all Executory Contracts and Unexpired Leases will be rejected by the Plan on the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code, other than (a) Executory Contracts or Unexpired Leases previously assumed or rejected pursuant to an order of the Bankruptcy Court, (b) Executory Contracts or Unexpired Leases that are the subject of a motion to assume, or for which a notice of assumption has been filed pursuant to the assumption and assignment procedures approved by the Bankruptcy Court in connection with the Sale Transaction and (c) an Executory Contract that is a D&O Policy, in the case of (a) and (b), that is pending on the Effective Date. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejection of such Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code.

B.      **Claims Based on Rejection of Executory Contracts or Unexpired Leases**

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court

13711145 v2

within 30 days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, and forever barred from assertion, and shall not be enforceable against the Debtors, the Estates, the Wind-Down Trust, or the Plan Administrator, or the property of any of the foregoing Entities, without the need for any objection by the Plan Administrator or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as Unsecured Claims and shall be treated in accordance with Article IV.B and may be objected to in accordance with the provisions of Article VII of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

## C.    Modifications, Amendments, Supplements, Restatements and Other Agreements

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is rejected shall include all modifications, amendments, supplements, restatements or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements have been previously rejected or repudiated or are rejected or repudiated under the Plan. Modifications, amendments, supplements and restatements to Prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the Prepetition nature of such Executory Contract or Unexpired Leases or the validity, priority or amount of any Claims that may arise in connection therewith.

## D.    Reservation of Rights; Preservation of Preexisting Obligations to Debtors

Nothing contained in the Plan shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease, or that any Debtor has any liability thereunder.

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Debtors (for themselves and for their successors) expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtors contracting from non-Debtor counterparties to rejected Executory Contracts or Unexpired Leases.

## E.    Insurance Policies

13711145 v2

Notwithstanding anything to the contrary in this Plan or the Confirmation Order, unless any Insurance Policies have been expressly rejected pursuant to a separate order of the Bankruptcy Court (or through the Confirmation Order), any Insurance Policies of any Debtors in which a Debtor is or was an insured party (including all D&O Policies), or any related insurance agreement issued prior to the Petition Date, shall continue in effect after the Effective Date pursuant to the respective terms and conditions. All rights of the Debtor under any Insurance Policies shall automatically become vested in the Wind-Down Trust without necessity for further approvals or orders. To the extent that any Insurance Policies or related insurance agreements are deemed Executory Contracts, then, unless such policies have been rejected pursuant to a separate order of the Bankruptcy Court (or through the Confirmation Order), notwithstanding anything to the contrary in this Plan, this Plan shall constitute a motion to assume, assume and assign, permit "ride through," or ratify such Insurance Policies or insurance agreements. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute both approval of such assumption pursuant to section 365 of the Bankruptcy Code and a finding by the Bankruptcy Court that such assumption is in the best interests of the Estate. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed upon by the parties prior to the Effective Date, no payments shall be required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to any Insurance Policy or insurance agreement assumed, or assumed and assigned, pursuant to this Article V.E.

After the Effective Date, nothing herein shall terminate or otherwise reduce the coverage under any D&O Policy (including, if applicable, any "tail policy") with respect to conduct occurring on or prior to the Effective Date, and nothing herein shall prejudice any officers, directors, managers, and employees of the Debtors who served in such capacity at any time before the Effective Date from being entitled to the full benefits of any such policy for the full term of such policy (including with respect to the purchase of a "tail policy," the full six year term or other applicable term of such policy) in accordance with the terms thereof, following the purchase of such policy, regardless of whether such officers, directors, managers, or employees remain in such positions after the Effective Date.

Each insurance company is prohibited from, and the Confirmation Order shall include an injunction against, denying, refusing, altering or delaying coverage on any basis regarding or related to these Chapter 11 Cases, this Plan, or any provision within this Plan, including the treatment or means of liquidation set out within this Plan for any insured Claims or Causes of Action. Without limiting the generality of the foregoing, D&O Policies in effect as of the Confirmation Date shall be deemed assumed and shall not be rejected.

## ARTICLE VI
## PROVISIONS GOVERNING AND DISTRIBUTIONS

### A.    Timing and Calculation of Amounts to Be Distributed

Unless otherwise provided in the Plan, on the Initial Distribution Date (or if a Claim is not an Allowed Claim or Allowed Interest on the Initial Distribution Date, on the next Quarterly Distribution Date after such Claim or Interest becomes an Allowed Claim or Allowed Interest, or as soon as reasonably practicable thereafter), or as soon as is reasonably practicable thereafter, each Holder of an Allowed Claim entitled to a Distribution under the Plan shall receive the full

amount of the Distribution that the Plan provides for an Allowed Claim in the applicable Class. For the avoidance of doubt, the Initial Distribution Date for an Administrative Claim, a Priority Tax Claim, a Gap Period Claim, an Other Priority Claim or an Other Secured Claim that is an Allowed Claim as of the Effective Date and for which the Holder thereof is otherwise entitled to receive a Distribution on account of such Allowed Claim shall occur on the Effective Date or as soon as practicable thereafter as determined in the reasonable discretion of the Plan Administrator.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, Distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII hereof.  Except as otherwise provided in the Plan, Holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the Distributions provided for in the Plan, regardless of whether such Distributions are delivered on or at any time after the Effective Date.

**B.      Distributions on Account of Obligations to Multiple Debtors**

For all purposes associated with Distributions under the Plan, all guarantees by any Debtor of the obligations of any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor, shall be deemed eliminated so that any obligation that could otherwise be asserted against more than one Debtor shall result in a single Distribution under the Plan, *provided* that Claims held by a single entity at different Debtors that are not based on guarantees or joint and several liability shall be entitled to the applicable Distribution for such Claim at each applicable Debtor. Any such Claims shall be released pursuant to Article VIII of the Plan and shall be subject to all potential objections, defenses, and counterclaims, and to estimation pursuant to section 502(c) of the Bankruptcy Code. For the avoidance of doubt, this shall not affect the obligation of each and every Debtor to pay fees payable pursuant to section 1930(a) of the Judicial Code until such time as a particular Chapter 11 Case is closed, dismissed, or converted, whichever occurs first.

**C.      Distributions Generally**

Except as otherwise provided herein, Distributions under the Plan shall be made by the Disbursing Agent.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Wind-Down Trust.

**D.      Rights and Powers of Disbursing Agent**

1.      <u>Powers of Disbursing Agent</u>

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all Distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing

Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

        2.     <u>Expenses Incurred On or After the Effective Date</u>

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash from the Wind-Down Trust.

**E.     Delivery of Distributions and Undeliverable or Unclaimed Distributions**

        1.     <u>Record Date for Distribution</u>

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making Distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.

        2.     <u>Delivery of Distributions</u>

        a.     *Initial Distribution Date*

Except as otherwise provided herein, on the Initial Distribution Date, the Disbursing Agent shall make Distributions to Holders of Allowed Claims and Interests as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' books and records as of the date of any such Distribution; *provided* that the manner of such Distributions shall be determined at the reasonable discretion of the Disbursing Agent; *provided*, *further*, that the address for each Holder of an Allowed Claim or Interest shall be deemed to be the address set forth in, as applicable, any Proof of Claim or Proof of Interest Filed by such Holder, or, if no Proof of Claim or Proof of Interest has been Filed, the address set forth in the Schedules. If a Holder holds more than one Claim in any one Class, all Claims of the Holder may be aggregated into one Claim and one Distribution may be made with respect to the aggregated Claim.

        b.     *Quarterly Distribution Date*

Except as otherwise determined by the Plan Administrator in its reasonable discretion, on each Quarterly Distribution Date or as soon thereafter as is reasonably practicable, the Disbursing Agent shall make the Distributions required to be made on account of Allowed Claims and Interests under the Plan on such date. Any Distribution that is not made on the Initial Distribution Date or on any other date specified herein because the Claim that would have been entitled to receive that Distribution is not an Allowed Claim or Interest on such date, shall be distributed on the first Quarterly Distribution Date after such Claim or Interest is Allowed. No interest shall accrue or be paid on the unpaid amount of any Distribution paid on a Quarterly Distribution Date in accordance with Article VI.J of the Plan.

        3.     <u>Minimum Distributions</u>

            13711145 v2

Notwithstanding any other provision of the Plan, the Disbursing Agent will not be required to make Distributions of Cash less than $100 in value (whether cash or otherwise), and each such Claim to which this limitation applies shall be released pursuant to Article VIII and its Holder is forever barred pursuant to Article VIII from asserting such Claim against the Debtors, the Wind-Down Trust, the Plan Administrator, or their property.

### 4.   Undeliverable Distributions and Unclaimed Property

In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such Distribution shall be made to such Holder without interest; *provided*, *however*, that such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Wind-Down Trust automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be released and forever barred.

A Distribution shall be deemed unclaimed if a Holder has not: (a) accepted a particular Distribution or, in the case of Distributions made by check, negotiated such check; (b) given notice to the Plan Administrator of an intent to accept a particular Distribution; (c) responded to the Debtors' or Plan Administrator's requests for information necessary to facilitate a particular Distribution; or (d) taken any other action necessary to facilitate such Distribution.

## F.   Reserves for Disputed Claims

In connection with any Distributions to Holders of Allowed Unsecured Claims, the Plan Administrator shall set aside in one or more Disputed Claims Reserves the amount of Cash that the Plan Administrator, in consultation with the Advisory Committee, determines would likely have been distributed to the Holders of Disputed Claims that are Unsecured Claims. In each instance, the Plan Administrator should establish the amount to be reserved on account of a Disputed Unsecured Claim by determining the amount of Cash equal to the Distributions that would have been made to the holder of such Disputed Claim if it were an Allowed Unsecured Claim in an amount equal to the lesser of (a) the amount of the Disputed Claim, (b) the amount in which the Disputed Claim shall be estimated by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Code for purposes of allowance or distribution, which amount, unless otherwise ordered by the Bankruptcy Court, shall constitute and represent the maximum amount in which such Claim ultimately may become an Allowed Claim, or (c) such other amount as may be agreed upon by the Holder of such Disputed Claim and the Plan Administrator.

## G.   Distributions on Account of Claims or Interests Allowed After the Effective Date

### 1.   Payments and Distributions on Disputed Claims

Distributions made after the Effective Date to Holders of Disputed Claims or Interests that are not Allowed Claims or Interests as of the Effective Date, but which later become Allowed Claims or Interests, as applicable, shall be deemed to have been made on the first

13711145 v2

Quarterly Distribution Date after they have actually been made, unless the Plan Administrator and the applicable Holder of such Claim or Interest agree otherwise. No interest shall accrue or be paid on a Disputed Claim before it becomes an Allowed Claim in accordance with Article VI.J of the Plan.

2.   Special Rules for Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by the Plan Administrator, on the one hand, and the Holder of a Disputed Claim or Interest, on the other hand, no partial payments and no partial Distributions shall be made with respect to any Disputed Claim or Interest until the Disputed Claim or Interest has become an Allowed Claim or Interest, as applicable, or has otherwise been resolved by settlement or Final Order.

**H.    Compliance with Tax Requirements**

In connection with the Plan, to the extent applicable, the Debtors or the Plan Administrator, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of a Distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors and Plan Administrator, as applicable, reserve the right to allocate all Distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

**I.    Allocations Between Principal and Accrued Interest**

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

**J.    No Postpetition Interest on Claims**

Unless otherwise specifically provided for in the Plan, a DIP Order, or the Confirmation Order, or required by applicable bankruptcy and non-bankruptcy law, postpetition interest shall not accrue or be paid on any prepetition Claims against the Debtors, and no Holder of a Prepetition Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such Prepetition Claim.

**K.    Foreign Currency Exchange Rate**

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to

the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal,* National Edition, on the Effective Date.

## L.    Setoffs and Recoupment

Except as expressly provided in this Plan, the Plan Administrator may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Retained Causes of Action that such Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the relevant Debtor(s) and Holder of Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided, however*, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Debtor or its successor of any and all claims, rights, and Retained Causes of Action that such Debtor or its successor may possess against the applicable Holder. In no event shall any Holder of Claims against, or Interests in, the Debtors be entitled to recoup any such Claim or Interest against any claim, right, or Retained Cause of Action of the Debtors or the Plan Administrator, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article XII.G of the Plan on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

Notwithstanding anything to the contrary in this Plan or the Confirmation Order, all rights of counterparties to unexpired leases of nonresidential real property that have been rejected for setoff, recoupment, and subrogation are preserved and shall continue unaffected by Confirmation or the occurrence of the Effective Date.

## M.    Claims Paid or Payable by Third Parties

### 1.    Claims Paid by Third Parties

The Debtors or the Plan Administrator, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor or the Plan Administrator. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not a Debtor or the Plan Administrator on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the Distribution to the applicable Debtor or the Plan Administrator, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the applicable Distribution Date. If the Debtors or the Plan Administrator, as applicable, become aware of any payment of a Claim by a third party, the Debtors or Plan Administrator, as applicable, will send a notice of wrongful payment to the Holder of such Claim requesting the return of any excess payments and advising the recipient of the provisions of the Plan requesting turnover of excess estate funds. The failure of such Holder to timely repay or return such Distribution shall result in the Holder owing the applicable Debtor or the Plan Administrator annualized interest at the

Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

2.      Claims Payable by Third Parties

No Distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' Insurance Policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.      Applicability of Insurance Policies

Except as otherwise provided in the Plan, Distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable Insurance Policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any rights or defenses, including coverage defenses, held by such insurers.

**N.      No Payment Over Full Amount**

In no event shall a Holder of a Claim receive more than the full payment of such Claim. To the extent any Holder has received payment in full with respect to a Claim, such Claim shall be disallowed and expunged without an objection to such Claim having been filed and without any further notice to or action, order or approval of the Bankruptcy Court.

**ARTICLE VII
PROCEDURES FOR RESOLVING CONTINGENT,
UNLIQUIDATED AND DISPUTED CLAIMS**

**A.      Allowance of Claims**

After the Effective Date, the Plan Administrator shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Interest immediately before the Effective Date.

**B.      Claims Administration Responsibilities**

Except as otherwise specifically provided in the Plan, the Plan Administrator shall have the sole authority: (1) to File, withdraw, or litigate to judgment objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

13711145 v2

C.      **Estimation of Claims**

Before or after the Effective Date, the Debtors or the Plan Administrator, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of Distributions), and the relevant Debtor or the Plan Administrator, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate Distribution on account of such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before fourteen days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

D.      **Adjustment to Claims Without Objection**

Any duplicate Claim or Interest or any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, cancelled or otherwise expunged (including pursuant to the Plan), may be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Plan Administrator without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court. Additionally, any Claim or Interest that is duplicative or redundant with another Claim against or Interest in the same Debtor or another Debtor may be adjusted or expunged on the Claims Register by the Plan Administrator without the Plan Administrator having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.      **Time to File Objections to Claims**

Any objections to Claims shall be Filed no later than the Claims Objection Bar Date.

F.      **Disallowance of Claims**

Any Claims or Interests held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer

avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims or Interests may not receive any Distributions on account of such Claims until such time as such Retained Causes of Action against that Entity have been settled or a Final Order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Wind-Down Trust.

**Except as provided herein or otherwise agreed, any and all Proofs of Claim Filed after the Claims Bar Date or the Administrative Claim Bar Date, as appropriate, shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any Distributions on account of such Claims, unless such late Proof of Claim has been deemed timely Filed by a Final Order.**

**G.      Amendments to Claims**

On or after the Claims Bar Date or the Administrative Claim Bar Date, as appropriate, a Claim may not be Filed or amended as to the amount, priority or secured status thereof without the prior authorization of the Bankruptcy Court or the Plan Administrator. Absent such authorization, any new or amended Claim Filed shall be deemed disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court to the maximum extent provided by applicable law.

**H.      No Distribution or Payments Pending Allowance**

If an objection to the amount, validity, priority or classification of a Claim or a portion thereof is Filed or is intended to be filed as contemplated by Article VII or a Claim otherwise remains a Disputed Claim, except as otherwise provided in a Final Order of the Bankruptcy Court, no Distribution provided under the Plan shall be made on account of such Claim or portion thereof, as applicable, unless and until such Disputed Claim becomes an Allowed Claim

**I.      Distributions and Payments After Allowance**

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim, as applicable, in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the Distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim unless required under applicable bankruptcy law.

## ARTICLE VIII
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

**A.      Settlement, Compromise and Release of Claims and Interests**

Pursuant to, and to the maximum extent provided by, section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or

other agreement or document created pursuant to the Plan, the Distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, compromise, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Plan Administrator), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by current or former employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Proof of Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the settlement, compromise, and release of all Claims and Interests subject to the occurrence of the Effective Date.

## B.    Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Wind-Down Trust and its successors and assigns.

## C.    Debtor Release

**Effective as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, including the service of the Released Parties to facilitate the administration of the Chapter 11 Cases, to maximize the value of the Estates and to implement the restructuring and orderly liquidation contemplated by the Plan, the adequacy of which is hereby confirmed, on and after the Effective Date each Released Party is deemed released by each and all of the Debtors, their Estates, and the Wind-Down Trust, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtors, their Estates, or the Wind-Down Trust, as applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, their Estates, or the Wind-Down**

Trust, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Prepetition Loan Documents, the DIP Loan Documents, the Sale Transaction, entry into the Asset Purchase Agreement, entry into the DIP Loan Documents, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, DIP Loan Facility, the Sale Transaction, the Asset Purchase Agreement, the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Loan Facility, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the pursuit of the Sale Transaction, the administration and implementation of the Plan, including the issuance or Distribution of securities pursuant to the Plan, or the Distribution or payment of property under the Plan or any other related agreement (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any liabilities or obligations of the Purchaser or any other Entity arising under the Asset Purchase Agreement, the Sale Order, or any other Sale Document, in each case that have survived the Sale Closing, (2) any claim or Cause of Action transferred or assigned to Purchaser under the Asset Purchase Agreement or any other Sale Document, (3) any Retained Cause of Action, (4) any liabilities or obligations of MGG or the Purchaser under the MGG Settlement Agreement, or (5) any post-Effective Date obligations of any Entity arising under or relating to the Plan, or any document, instrument, or agreement (including any documents set forth in the Plan Supplement, as applicable) executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of such Claims; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, their respective Estates, or the Wind-Down Trust asserting any claim, Cause of Action, or

13711145 v2

liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

D.    **Third-Party Release**

Effective as of the Effective Date, in exchange for good and valuable consideration, including the service of the Released Parties to facilitate the administration of the Chapter 11 Cases, to maximize the value of the Estates and to implement the restructuring and orderly liquidating contemplated by the Plan, the adequacy of which is hereby confirmed, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, on and after the Effective Date each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released each Released Party from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the DIP Loan Documents, the Prepetition Loan Documents, the Sale Transaction, entry into the Asset Purchase Agreement or any other Sale Document, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, the DIP Loan Facility, the Sale Transaction, the Asset Purchase Agreement, any other Sale Document, the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Loan Facility, the Sale Transaction or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the pursuit of the Sale Transaction, the administration and implementation of the Plan, including the issuance or Distribution of securities pursuant to the Plan, or the Distribution or payment of property under the Plan or any other related agreement (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any liabilities or obligations of the Purchaser or any other Entity arising under the Asset Purchase Agreement, the Sale Order, or any other Sale Document, in each case that have survived the Sale Closing, (2) any claim or Cause of Action transferred or assigned to Purchaser under the Asset Purchase Agreement or any other Sale Document, (3) any Retained Cause of Action, (4)

any liabilities or obligations of MGG or the Purchaser under the MGG Settlement Agreement, or (5) any post-Effective Date obligations of any Entity arising under or relating to the Plan, or any document, instrument, or agreement (including any documents set forth in the Plan Supplement, as applicable) executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each Third-Party Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of such Claims; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, their respective Estates, or the Wind-Down Trust asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

E.    <u>Exculpation</u>

Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting either the Debtor Release or the Third-Party Release, and except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby exculpated from, any Cause of Action for any claim related to any act or omission based on the negotiation, execution, and implementation of any transactions approved by the Bankruptcy Court in the Chapter 11 Cases, including the Asset Purchase Agreement, the DIP Loan Documents, the Disclosure Statement, the Plan, the Plan Supplement, the Confirmation Order, or any contract, instrument, release, or other agreement or document contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order, or created or entered into in connection with the Asset Purchase Agreement, the DIP Loan Documents, the Disclosure Statement, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the pursuit of the Sale Transaction, the administration and implementation of the Plan, including the issuance of any securities pursuant to the Plan or the Distribution or payment of property under the Plan or any other related agreement, and the implementation of any transaction contemplated by the Plan (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion), or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, except for claims related to any act or omission that is determined by Final Order to have constituted actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes on, and

Distribution or payment of consideration pursuant to, the Plan and, therefore, are not, and on account of such Distributions and payments shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such Distributions and other payments made pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, this Article VIII.E does not release (1) any liabilities or obligations of the Purchaser or any other Entity arising under the Asset Purchase Agreement, the Sale Order, or any other Sale Document, in each case that have survived the Sale Closing, (2) any claim or Cause of Action transferred or assigned to Purchaser under the Asset Purchase Agreement or any other Sale Document, (3) any Retained Cause of Action, (4) any liabilities or obligations of MGG or the Purchaser under the MGG Settlement Agreement, or (5) any post-Effective Date obligations of any Entity arising under or relating to the Plan, or any document, instrument, or agreement (including any documents set forth in the Plan Supplement, as applicable) executed to implement the Plan.

F.    **Injunction**

Effective as of the Effective Date, to the fullest extent permissible under sections 524 and 1141 of the Bankruptcy Code and other applicable law, and except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released pursuant to Article VIII.A of the Plan, released pursuant to the Debtor Release, the Third-Party Release, or another provision of the Plan (including the release of liens pursuant to Article VIII.B of the Plan), or are subject to exculpation pursuant to Article VIII.E of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Wind-Down Trust, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind, against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the

**implementation or Consummation of the Plan. Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, Distributions under or pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article VIII.F of the Plan.**

### G.    Protection Against Discriminatory Treatment

To the maximum extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Debtors, the Wind-Down Trust or Plan Administrator, as applicable, or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Debtors, the Wind-Down Trust or the Plan Administrator, as applicable, or another Entity with whom the Debtors, the Wind-Down Trust or the Plan Administrator, as applicable, has been associated, solely because a Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is subject to compromise or administration in the Chapter 11 Cases.

### H.    Document Retention

On and after the Effective Date, the Plan Administrator may maintain documents in accordance with the Debtors' standard document retention policy, as may be altered, amended, modified, or supplemented by the Plan Administrator.

### I.    Term of Injunction or Stays

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect on and following the Effective Date in accordance with their terms.

### J.    Subordination Rights

The classification and manner of satisfying all Claims and Interests under the Plan take into consideration all subordination rights, whether arising under general principles of equitable subordination, contract, section 510(c) of the Bankruptcy Code, or otherwise, that a Holder of a Claim or Interest may have against other Claim or Interest Holders with respect to any Distribution made pursuant to the Plan. Except as provided in the Plan, all subordination rights that a Holder of a Claim may have with respect to any Distribution to be made pursuant to the Plan shall be terminated, and all actions related to the enforcement of such subordination rights shall be permanently enjoined.

Pursuant to Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith

13711145 v2

compromise and settlement of all claims or controversies relating to the subordination rights that a Holder of a Claim may have with respect to any Allowed Claim or any Distribution to be made pursuant to the Plan on account of any Allowed Claim. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best  interests of the Debtors, the Estates, their respective property, and Holders of Claims and Interests and is fair, equitable, and reasonable.

## ARTICLE IX
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

**A.     Conditions Precedent to the Effective Date**

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B hereof:

1.     The Bankruptcy Court shall have entered the Confirmation Order, and such order shall not have been stayed, modified, or vacated on appeal;

2.     The Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

3.     The Professional Fee Escrow Account shall have been established and funded with the Professional Fee Escrow Amount;

4.     Except for the occurrence of the Effective Date itself, all actions necessary to the appointment of the Plan Administrator and the establishment of the Wind-Down Trust shall have occurred; and

5.     The MGG Settlement shall have been approved by Final Order.

**B.     Waiver of Conditions**

The conditions to Consummation set forth in Article IX.A above may be waived as follows: (i) the conditions to Consummation set forth in Articles IX.A.1 through IX.A.4 above, may be waived by the Debtors; and (ii) the condition to Consummation set forth in Article IX.A.5 above, may be waived by the Debtors with the consent of MGG.  Such waivers of the conditions to Consummation shall be effective without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

**C.     Substantial Consummation**

The "substantial consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, with respect to any of the Debtors, shall be deemed to occur on the Effective Date.

**D.     Effect of Failure of Conditions**

13711145 v2

If the Effective Date of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtors, any Holders, or any other Entity; (2) prejudice in any manner the rights of the Debtors, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect.

## ARTICLE X
## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

### A.    Modifications and Amendments

Except as otherwise specifically provided in the Plan, the Debtors reserve the right to modify the Plan, whether such modification is material or immaterial, seek Confirmation consistent with the Bankruptcy Code, and, as appropriate, not re-solicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Debtors expressly reserve their respective rights to revoke or withdraw, to alter, amend, or modify the Plan with respect to each Debtor, one or more times, before or after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

### B.    Effect of Confirmation on Modifications

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

### C.    Revocation or Withdrawal of Plan

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent plans. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests), assumption, assumption and assignment, or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims, Causes of Action, or Interests; (b) prejudice in any manner the rights of such Debtor, any Holder, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor, any Holder, or any other Entity.

## ARTICLE XI
## RETENTION OF JURISDICTION

13711145 v2

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, to the extent legally permissible, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.        allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.        decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals (including Professional Fee Claims) authorized pursuant to the Bankruptcy Code or the Plan;

3.        resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed (or assumed and assigned); (c) the Plan Administrator amending, modifying or supplementing, after the Effective Date, pursuant to Article V, the Executory Contracts and Unexpired Leases to be assumed (or assumed and assigned) or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory, expired, or terminated;

4.        ensure that Distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

5.        adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.        adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.        enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement, the Disclosure Statement, or the Confirmation Order;

8.        enter and enforce any order for the sale or transfer of property pursuant to sections 363, 1123, 1141, or 1146(a) of the Bankruptcy Code;

9.        resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with Consummation, including interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

13711145 v2

10.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.     hear and determine all cases, controversies, suits, disputes or Causes of Action with respect to the releases, injunctions and other provisions contained in Article VIII, and enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;

12.     resolve any cases, controversies, suits, disputes or Causes of Action with respect to the repayment or return of Distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid in accordance with the Plan;

13.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.     hear and determine all cases, controversies, suits, disputes or Causes of Action arising out of, relating to, or contemplated by the MGG Settlement, including, without limitation, cases, controversies, suits, disputes or Causes of Action that the Debtors or the Plan Administrator, as applicable, may prosecute or settle pursuant to Section 5 of the MGG Settlement Agreement;

15.     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or, subject to any applicable forum selection clauses, any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

16.     enter an order or Final Decree concluding or closing any of the Chapter 11 Cases;

17.     adjudicate any and all disputes arising from or relating to Distributions under the Plan;

18.     consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

19.     determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

20.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order or any Entity's obligations incurred in connection with the Plan, including, subject to any applicable forum selection clauses, disputes arising under agreements, documents, or instruments executed in connection with the Plan;

21.     adjudicate, decide, and resolve any cases, controversies, suits, or disputes related to (and/or arising under, as applicable) the Sale Transaction, the Asset Purchase Agreement or any other Sale Document; *provided*, *however*, that the Bankruptcy Court's jurisdiction shall not be exclusive;

13711145 v2

22.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

23.     enforce all orders previously entered by the Bankruptcy Court; and

24.     hear any other matter not inconsistent with the Bankruptcy Code.

# ARTICLE XII
## MISCELLANEOUS PROVISIONS

**A.     Immediate Binding Effect**

Subject to Article IX.A and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Wind-Down Trust, the Plan Administrator, and any and all Holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

**B.     Additional Documents**

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Plan Administrator, as applicable, and all Holders receiving Distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**C.     Payment of Statutory Fees**

All fees due and payable pursuant to section 1930(a) of the Judicial Code prior to the Effective Date, including fees and expenses payable to the U.S. Trustee, shall be paid by the Debtors on the Effective Date. After the Effective Date, the Disbursing Agent or the Plan Administrator, as applicable, shall pay any and all such fees for each quarter (including any fraction thereof), and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each and every one of the Debtors shall remain obligated to pay quarterly fees to the Office of the U.S. Trustee and file quarterly reports until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

**D.     UCC and Cessation of Fee and Expense Payment**

On the Effective Date, except to the extent that the UCC remains in existence for the limited purpose of prosecuting requests for payment of Professional Fee Claims for services and reimbursement of expenses incurred prior to the Effective Date by the UCC and its

Professionals, the UCC shall dissolve automatically and the members thereof shall be relieved of all rights, duties, responsibilities, and liabilities arising on or prior to the Effective Date, from, or related to, the Chapter 11 Cases and under the Bankruptcy Code; *provided, however,* nothing in this Article XII.D relieves any current or former UCC member or any current or former UCC Professional of any confidentiality obligation that such Person may owe to the Debtors or their Estates.  Neither the Debtors nor the Wind-Down Trust shall be responsible for paying any fees or expenses incurred by the members of or advisors to the UCC after the Effective Date.

## E.     Reservation of Rights

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders unless and until the Effective Date has occurred.

## F.     Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity

## G.     Notices

To be effective, all notices, requests, and demands to or upon the Debtors shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered by courier or registered or certified mail (return receipt requested) or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed to the following:

    1.     <u>If to the Debtors, to</u>:

    OGGUSA, Inc., *et al.*
    4274 Colby Rd
    Winchester, KY 40391
    Attn:   Gary M. Broadbent,
          Chief Wind-Down Officer
          General Counsel and Secretary
    e-mail: gary.broadbent@gencanna.com

    *with copies (which shall not constitute notice) to:*

    Benesch, Friedlander, Coplan, & Aronoff LLP
    1313 North Market Street, Suite 1201
    Wilmington, DE 19801

Attn:   Michael J. Barrie
        Gregory W. Werkheiser
e-mail: mbarrie@beneschlaw.com
        gwerkheiser@beneschlaw.com

-and-

Benesch, Friedlander, Coplan, & Aronoff LLP
200 Public Square, Suite 2300
Cleveland, OH 44114
Attn:   Elliot M. Smith
e-mail: esmith@beneschlaw.com

-and-

DENTONS BINGHAM GREENEBAUM LLP
3500 PNC Tower
101 South Fifth Street
Louisville, Kentucky 40202
Attn:   James R. Irving
e-mail: james.irving@dentons.com

2.      If to the DIP Agent or Prepetition Agent, to:

MGG Investment Group LP
One Penn Plaza, 53rd Floor
New York, New York 10119
Attn:   Mustafa Tayeb and Mier Wang
e-mail: creditagreementnotices@mgginv.com

*with copies (which shall not constitute notice) to:*

Schulte Roth & Zabel LLP
919 Third Avenue
New York, New York 10022
Attn:   Adam Harris
Email: adam.harris@srz.com

3.      If to the Purchaser, to:

GenCanna Acquisition Corp.
c/o MGG Investment Group LP
One Penn Plaza, 53rd Floor
New York, NY 10119
Attn:   Patrick Flynn and Mier Wang
Email: pflynn@mgginv.com

13711145 v2

mwang@mgginv.com

*with copies (which shall not constitute notice) to:*

Schulte Roth & Zabel LLP (per contact information listed above)

4.      <u>If to the UCC, to</u>:

Foley & Lardner LLP
321 N. Clark Street, Suite 2800
Chicago, IL 60654
Attn:   Geoffrey S. Goodman
e-mail: ggoodman@foley.com

-and-

DelCotto Law Group PLLC
200 North Upper Street
Lexington, KY 40507
Attn:   Laura Day DelCotto
e-mail: ldelcotto@dlgfirm.com

After the Effective Date, the Plan Administrator may notify Entities that, to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Plan Administrator is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

**H.      Entire Agreement**

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan. If the Effective Date does not occur, nothing herein shall be construed as a waiver by any party in interest of any or all of such party's rights, remedies, claims, and defenses, and such parties expressly reserve any and all of their respective rights, remedies, claims and, defenses. This Plan and the documents comprising the Plan Supplement, including any drafts thereof (and any discussions, correspondence, or negotiations regarding any of the foregoing) shall in no event be construed as, or be deemed to be, evidence of an admission or concession on the part of any party in interest of any claim or fault or liability or damages whatsoever. Pursuant to Federal Rule of Evidence 408 and any applicable state rules of evidence, all negotiations, discussions, agreements, settlements, and compromises reflected in or related to Plan and the documents comprising the Plan Supplement is part of a proposed settlement of matters that could otherwise be the subject of litigation among various parties in interest, and such negotiations, discussions, agreements, settlements, and compromises shall not be admissible into evidence in any

proceeding other than a proceeding to enforce the terms of the Plan and the documents comprising the Plan Supplement.

## I.      Exhibits

All exhibits, schedules and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits, schedules and documents shall be available upon written request to the Debtors' counsel at the address set forth in Article XII.G of the Plan or by downloading such exhibits and documents from the website of the Notice and Claims Agent at http://dm.epiq11.com/gencanna or (for a fee) the Bankruptcy Court's website at https://ecf.kyeb.uscourts.gov.  To the extent any exhibit, schedule or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control. The documents contained in the Plan Supplement are an integral part of the Plan and shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

## J.      Non-Severability of Plan Provisions

The provisions of the Plan, including its release, injunction, exculpation, and compromise provisions, are mutually dependent and non-severable. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors, consistent with the terms set forth herein; and (3) non-severable and mutually dependent.

## K.      Closing of Chapter 11 Cases

The Plan Administrator shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order necessary to close the Chapter 11 Cases.

## L.      Conflicts

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control. In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.


[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

13711145 v2

Respectfully submitted, as of the date first set forth above,

**OGGUSA, INC.**
**f/k/a GENCANNA GLOBAL USA, INC.**

By:  */s/ James Alt*
     Name: James Alt
     Title: Chief Transformation Officer

**OGG, INC.**
**f/k/a GENCANNA GLOBAL, INC.**

By:  */s/ James Alt*
     Name: James Alt
     Title: Chief Transformation Officer

**HEMP KENTUCKY, LLC**

By:  */s/ James Alt*
     Name: James Alt
     Title: Chief Transformation Officer

| | |
|---|---|
| DENTONS BINGHAM GREENEBAUM LLP | Michael J. Barrie |
| | William M. Alleman, Jr. |
| */s/ James R. Irving* | Gregory W. Werkheiser |
| James R. Irving | BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP |
| April A. Wimberg | 1313 North Market Street, Suite 1201 |
| Christopher B. Madden | Wilmington, DE 19801 |
| 3500 PNC Tower | Telephone: (302) 442-7010 |
| 101 South Fifth Street | E-mail: mbarrie@beneschlaw.com |
| Louisville, Kentucky 40202 | walleman@beneschlaw.com |
| Telephone: (502) 587-3606 | gwerkheiser@beneschlaw.com |
| E-mail: james.irving@dentons.com | -and- |
| april.wimberg@dentons.com | Elliot M. Smith |
| chris.madden@dentons.com | BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP |
| | 200 Public Square, Suite 2300 |
| | Cleveland, OH 44114 |
| | Telephone: (216) 363-4500 |
| | E-mail: esmith@beneschlaw.com |

*Counsel for the Debtors*

# APPENDIX 1

## PLAN DEFINITIONS

1.     *"Administrative Claim"* means a Claim for the costs and expenses of administration of the Estates under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date through and including the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Allowed Professional Fee Claims in the Chapter 11 Cases; and (c) amounts owing pursuant to a DIP Order.

2.     *"Administrative Claim Objection Deadline"* means the deadline for filing objections to requests for payment of Administrative Claims (other than requests for payment of Professional Fee Claims), which shall be the later of (a) 60 days after the Effective Date and (b) 60 days after the Filing of the applicable request for payment of the Administrative Claims; *provided* that the Administrative Claim Objection Bar Date may be extended by the Bankruptcy Court after notice and a hearing.

3.     *"Administrative Claim Bar Dates"* means the deadline for filing requests for payment of Administrative Claims (other than (x) Professional Fee Claims, or (z) Claims arising pursuant to section 503(b)(9) of the Bankruptcy Code, which were required to be filed in accordance with the Bar Date Order), which shall be 30 days after the Effective Date.

4.     *"Advisory Committee"* means the committee created pursuant to the Wind-Down Trust Agreement, which shall provide advice and consultation to the Plan Administrator and have such other duties as set forth herein and in the Wind-Down Trust Agreement.

5.     *"Affiliate"* has the meaning set forth in section 101(2) of the Bankruptcy Code. With respect to any Person that is not a Debtor, the term "Affiliate" shall apply to such Person as if the Person were a Debtor.

6.     *"Allowed"* means, with respect to any Claim, except as otherwise provided in the Plan: (a) a Claim that is evidenced by a Proof of Claim Filed by the Claims Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or pursuant to a Final Order a Proof of Claim is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; *provided* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim, as applicable, shall have been Allowed by a Final Order. Except as otherwise specified in the Plan or any Final Order, and except for any Claim that is Secured by property of a value in excess of the principal amount of such Claims, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold

13711145 v2

against the Holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed (where such Proof of Claim is required to be filed), is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. For the avoidance of doubt: (x) a Proof of Claim Filed after the Claims Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim; and (y) the Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law. "Allow" and "Allowing" shall have correlative meanings.

7.      *"Asset Purchase Agreement"* means that certain *Asset Purchase Agreement,* dated as of May 29, 2020, as the same may be amended, modified or supplemented from time to time in accordance with the terms thereof or the Sale Order, by and among the Purchaser, as Purchaser, and the Debtors, as Sellers.

8.      *"Ballot"* means the form distributed to each holder of an Impaired Claim that is entitled to vote to accept or reject the Plan on which is to be indicated an acceptance or rejection of the Plan.

9.      *"Balloting Agent"* means Epiq Corporate Restructuring, LLC, or any successor thereto, in its capacity as the Balloting Agent (as defined in the Disclosure Statement Order) appointed by the Bankruptcy Court.

10.      *"Bankruptcy Code"* means section 101, et seq. of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code, as in effect as of the Petition Date.

11.      *"Bankruptcy Court"* means the United States Bankruptcy Court for the Eastern District of Kentucky, having jurisdiction over the Chapter 11 Cases and, to the extent of the withdrawal of reference under section 157 of the Judicial Code or otherwise pursuant to section 151 of the Judicial Code, the United States District Court for the Eastern District of Kentucky.

12.      *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure, promulgated under section 2075 of title 23 of the United States Code, the Local Rules of the United States Bankruptcy Court for the Eastern District of Kentucky, and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Case and as amended from time to time.

13.      *"Bar Date Order"* means the Order Granting Motion of the Debtors and Debtors in Possession for Entry of an Order (A) Establishing Bar Dates for Filing Proofs of Claim and Section 503(b)(9) Claim Requests, and (B) Approving the Form and Manner of Notice Thereof [Docket No. 740], entered by the Bankruptcy Court in the Chapter 11 Cases.

14.      *"Beneficial Interests"* means the beneficial interests in the Wind-Down Trust to be received by the Holders of Allowed Unsecured Claims in Class 4 pursuant to the terms of the Plan and the Wind-Down Trust Agreement, which beneficial interests shall have the attributes set forth in this Plan and the Wind-Down Trust Agreement.

13711145 v2

15. *"Beneficiary"* means a Holder of Beneficial Interests in the Wind-Down Trust under the terms of the Plan and the Wind-Down Trust Agreement.

16. *"Books and Records"* means all books and records of the Debtors, including, without limitation, all documents and communications of any kind, whether physical or electronic.

17. *"Business Day"* means any day, other than a Saturday, Sunday or "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)).

18. *"Cash"* means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

19. *"Cash Purchase Price"* has the meaning ascribed to such term in the Asset Purchase Agreement.

20. *"Causes of Action"* means any actions, claims, cross claims, third-party claims, interests, damages, controversies, remedies, causes of action, debts, judgments, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable directly or derivatively, matured or unmatured, suspected or unsuspected, disputed or undisputed, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law or otherwise. For the avoidance of doubt, "Causes of Action" include: (a) any rights of setoff, counterclaim, or recoupment and any claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claims or defenses, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

21. *"Chapter 11 Cases"* means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code and (b) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

22. *"Claim"* means any claim, as such term is defined in section 101(5) of the Bankruptcy Code against a Debtor or an Estate.

23. *"Claims Bar Date"* means the dates established by the Bankruptcy Court by which Proofs of Claim must have been Filed with respect to such Claims (other than Claims required to be Filed by the Administrative Claims Bar Date), pursuant to (a) the Bar Date Order, (b) a Final Order of the Bankruptcy Court, or (c) the Plan.

24. *"Claims Objection Bar Date"* means the later of: (a) the first Business Day following 180 days after the Effective Date; and (b) such later date as may be fixed by the Bankruptcy Court, after notice and an opportunity for a hearing.

25.　　*"Claims Register"* means the official register of Claims maintained by the Notice and Claims Agent.

26.　　*"Class"* means a category of Claims or Interests as set forth herein pursuant to section 1122(a) of the Bankruptcy Code.

27.　　*"Confirmation"* means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases.

28.　　*"Confirmation Date"* means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

29.　　*"Confirmation Hearing"* means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to sections 1128 and 1129 of the Bankruptcy Code, including any adjournments thereof.

30.　　*"Confirmation Order"* means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which Order must be acceptable to the Debtors.

31.　　*"Consummation"* means the occurrence of the Effective Date.

32.　　*"Creditor"* means a "creditor" as that term is defined in section 101(10) of the Bankruptcy Code.

33.　　*"D&O Policies"* means all applicable Insurance Policies (including any excess liability or "tail policy") of any of the Debtors that cover current or former directors', managers', officers', or employees' liability.

34.　　*"Debtor"* means one or more of the Debtors, as debtors and debtors in possession, each in its respective individual capacity as a debtor and debtor in possession in the Chapter 11 Cases.

35.　　*"Debtor Related Potentially Released Party"* or *"Debtor Related Potentially Released Parties"* means, individually and collectively: (a) the Debtors; and (b) with respect to each Debtor, such Debtor's current and former officers, directors, managers, employees, and Professionals, in each instance only if such Person served in such capacity on or after January 24, 2020.

36.　　*"Debtor Release"* means the release given on behalf of the Debtors and their Estates to the Released Parties as set forth in Article VIII.C of the Plan.

37.　　*"Debtors"* means, collectively: (a) GCG Opco; (b) GCG Parent; and (c) Hemp Kentucky, LLC.

38.　　*"DIP Agent"* means MGG or any permitted successor thereto as administrative agent under the DIP Loan Agreement, solely in its capacity as such.

13711145 v2

39.     *"DIP Claims"* means all Claims of the DIP Agent and DIP Lenders arising under, derived from, secured by, or based on the DIP Loan Agreement, any DIP Order, or any other DIP Loan Documents, including Claims for all principal amounts outstanding, interest, fees, expenses, costs, and other charges arising under or related to the DIP Loan Facility.

40.     *"DIP Lenders"* means the banks, financial institutions and other various lenders party to the DIP Loan Agreement from time to time, each solely in its capacity as such.

41.     *"DIP Loan Agreement"* means that certain Debtor In Possession Secured Multi-Draw Term Promissory Note, as amended, restated, modified, or supplemented from time to time in accordance with its terms, by  and among, GCG Opco, as Borrower, GCG Parent and Kentucky Hemp, LLC, as Guarantors, MGG, as Agent, and the Lenders from time to time party thereto.

42.     *"DIP Loan Documents"* means the DIP Loan Agreement and all other DIP Documents (as defined in the DIP Loan Agreement).

43.     *"DIP Loan Facility"* means the debtor-in-possession financing facility provided for under the DIP Loan Agreement.

44.     *"DIP Orders"* means, collectively, the interim and final orders entered by the Bankruptcy Court authorizing the Debtors to enter into the DIP Loan Agreement and incur postpetition obligations thereunder, as such orders may be amended, supplemented, or modified from time to time [Docket Nos. 82, 207, 306, 360 & 474]

45.     *"DIP Secured Party"* or *"DIP Secured Parties"* has the meaning ascribed to such term in the Final DIP Order.

46.     *"Disbursing Agent"* means the Plan Administrator or his designee.

47.     *"Disclosure Statement"* means the *Disclosure Statement for Debtors' Amended Joint Plan of Liquidation,* dated as of July 31, 2020, as may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law and approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

48.     *"Disclosure Statement Order"* means the order of the Bankruptcy Court approving, among other things, the adequacy of the Disclosure Statement and establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan and with respect to "opt outs" for the Plan's Third Party Releases [Docket No. ___], entered by the Bankruptcy Court in the Chapter 11 Cases.

49.     *"Disputed"* means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed.

13711145 v2

50. *"Disputed Claims Reserve"* means amounts in a bank account or accounts reserved for Disputed Claims in accordance with the terms of Article VI.F of this Plan and the Wind-Down Trust Agreement.

51. *"Distribution"* means Cash, property, interests in property (including Beneficial Interests) or other value distributed to Holders of Allowed Claims, or their designated agents, or Beneficiaries, as applicable, under this Plan and/or the Wind-Down Trust Agreement.

52. *"Distribution Date"* means the Initial Distribution Date or a Quarterly Distribution Date, as appropriate to context.

53. *"Distribution Record Date"* means the record date for determining which Holders of Allowed Claims or Allowed Interests are eligible to receive Distributions under the Plan, which date shall be the Effective Date or such other date prior to the Effective Date as is designated by the Debtors.

54. *"Effective Date"* means the date that is the first Business Day after the Confirmation Date on which (a) the conditions to the occurrence of the Effective Date have been satisfied or waived pursuant to Article IX.A and Article IX.B of the Plan and (b) no stay of the Confirmation Order is in effect, which shall be the day Consummation occurs.

55. *"Entity"* means an "entity" as that term is defined in section 101(15) of the Bankruptcy Code.

56. *"Estate"* means, as to each Debtor, the estate created on the Petition Date for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code and all property (as defined in section 541 of the Bankruptcy Code) acquired by the Debtors after the Petition Date through the Effective Date.

57. *"Exculpated Party"* means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the UCC and each of the members thereof (solely in their respective capacities as members of the UCC); (c) James Alt, in his capacity as the Debtors' Chief Transformation Officer; (d) Marc Passalacqua, in his capacity as the Debtors Deputy Chief Transformation Officer; (e) Huron Consulting Group LLC; (f) the Debtors' respective directors, officers and managers who served in such capacity on or after January 24, 2020; (g) the Professionals; (h) MGG; (i) the Purchaser; (j) the Prepetition Secured Parties, in their respective capacities as such; (k) the DIP Secured Parties, in their respective capacities as such; and (l) with respect to the Persons identified in clauses (a) through (k), each of their respective Related Persons. Notwithstanding anything to the contrary herein, no Non-Released Party shall be an Exculpated Party

58. *"Executory Contract"* means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

59. *"Federal Judgment Rate"* means the federal judgment interest rate in effect as of a given Debtor's Petition Date, calculated as set forth in section 1961 of the Judicial Code.

13711145 v2

60.     "*File,*" "*Filed,*" or "*Filing*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases, or, with respect to the filing of a Proof of Claim or Proof of Interest, the Notice and Claims Agent.

61.     "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

62.     "*Final DIP Order*" means the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, And 507 (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims And (B) Adequate Protection to Prepetition Lenders; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* [Docket No. 474], as amended, modified or supplemented from time to time.

63.     "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal, petition for certiorari, or move for reargument, reconsideration, or rehearing has expired and no appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing has been timely taken or filed, or as to which any appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided*, *however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or any comparable rule of the Bankruptcy Rules may be Filed relating to such order shall not cause such order to not be a Final Order.

64.     "*Gap Period Claim*" means any Claim, to the extent such Claim has not already been paid during the Chapter 11 Cases, entitled to priority in right of payment under section 507(a)(3) of the Bankruptcy Code.

65.     "*GCG Opco*" means OGGUSA, Inc., f/k/a GenCanna Global USA, Inc., one of the Debtors.

66.     "*GCG Parent*" means OGG, Inc., f/k/a GenCanna Global, Inc., one of the Debtors and the parent of GCG Opco.

67.     "*GCG Parent Control Claim*" means a Claim against any Debtor held by a GCG Parent Control Party.

68.     "*GCG Parent Control Party*" means a Peron that, at any time prior to the Confirmation Date, was (a) a member of the board of directors of GCG Parent or any Affiliate of such board member, or (b) a Holder, directly or indirectly, of twenty percent (20%) or more of the Interests in GCG Parent or an Affiliate of such Holder.

69.     "*General Unsecured Claim*" means any Unsecured Claim that is not a GCG Parent Control Claim.

13711145 v2

70.     "*Governmental Unit*" means a "governmental unit" as that term is defined in section 101(27) of the Bankruptcy Code.

71.     "*GUC Ratable Share*" means, as of a Distribution Date, the ratio (expressed as a percentage) of the amount of (a) an Allowed General Unsecured Claim to (b) the aggregate amount of (i) all Allowed General Unsecured Claims *plus* (ii) all Disputed General Unsecured Claims, determined in accordance with Article VI.F hereof.

72.     "*Holder*" means an Entity holding a Claim against, or an Interest in, any Debtor.

73.     "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

74.     "*Initial Distribution Date*" means the date on which the Disbursing Agent shall make initial Distributions to Holders of Allowed Claims pursuant to the Plan, which shall be as soon as reasonably practicable after the Effective Date.  For the avoidance of doubt, the Initial Distribution Date for an Administrative Claim, a Priority Tax Claim, a Gap Period Claim, an Other Priority Claim or an Other Secured Claim that is an Allowed Claim as of the Effective Date and for which the Holder thereof is otherwise entitled to receive a Distribution on account of such Allowed Claim shall occur on the Effective Date or as soon as practicable thereafter as determined in the reasonable discretion of the Disbursing Agent.

75.     "*Insurance Policies*" means all insurance policies that have been issued at any time or provide coverage, benefits or proceeds to any of the Debtors (or their predecessors) and all agreements, documents or instruments relating thereto.

76.     "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor arising before the Petition Date.

77.     "*Interest*" means any equity security in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable, or exchangeable securities, or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor whether or not arising under or in connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security, including any Claims against any Debtor subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

78.     "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

79.     "*Lien*" shall mean a "lien" as that term is defined in section 101(37) of the Bankruptcy Code, including, without limitation, a deed of trust, mortgage, charge, security interest, pledge or other encumbrance against or interest in property to secure payment or performance of a claim, debt or litigation.

13711145 v2

80.     *"MGG"* means MGG Investment Group LP.

81.     *"MGG Settlement"* means the compromise and settlement among the Debtors, MGG, for itself and as agent for all other Prepetition Secured Parties, and the Purchaser, as memorialized in the MGG Settlement Agreement.

82.     *"MGG Settlement Agreement"* means that certain Settlement Agreement and Release, dated July 30, 2020, by and among the Debtors, MGG, for itself and as agent for all other Prepetition Secured Parties, and the Purchaser, as such agreement may be amended, modified or supplemented from time to time prior to the Confirmation Date in accordance with the terms thereof.

83.     *"MGG Settlement Escrowed Funds"* means the "Cash Proceeds," as such term is defined in Section 7 of the MGG Settlement Agreement, which are to be initially received and held in escrow by Debtors' bankruptcy counsel, Benesch Friedlander Coplan & Aronoff LLP, in accordance with the terms of the MGG Settlement Agreement.  For the avoidance of doubt, the MGG Settlement Escrowed Funds, shall not be treated as the Debtors' assets or Wind-Down Trust Assets unless and until such MGG Settlement Escrowed Funds have been allocated to the Debtors or the Wind-Down Trust, as applicable, upon completion of the consensual or Bankruptcy Court ordered reconciliation contemplated by Section 7 of the MGG Settlement Agreement.

84.     *"MGG Settlement Payments"* means the Cash payments from MGG to the Debtors or the Wind-Down Trust, as applicable, in the aggregate amount of $1,000,000, to be paid in accordance with the terms of the MGG Settlement Agreement.

85.     *"MGG Subordinated Claims"* means the Claims in the aggregate amount of $27,016,182.27 Allowed to MGG and the other Prepetition Secured Parties pursuant to the MGG Settlement Agreement, which Allowed Claims, pursuant to the terms of the MGG Settlement Agreement and this Plan, are subordinated in right of payment to all Allowed General Unsecured Claims (but, for the avoidance of doubt, not GCG Parent Control Claims).

86.     *"Non-Debtor Potentially Released Party"* or *"Non-Debtor Potentially Released Parties"* means, individually and collectively: (a) MGG; (b) the Prepetition Secured Parties; (c) the DIP Secured Parties; (d) the Purchaser; (e) with respect to each of the foregoing clauses (a) through (d), such Person's current and former Affiliates, excluding any Affiliate that is a Debtor Related Potentially Released Party; and (f) with respect to each of the foregoing clauses (a) through (e), each such Person's respective Related Persons, excluding in each instance any Person who is a Debtor Related Potentially Released Party.

87.     *"Non-Released Party"* means each Entity set forth on the Non-Released Party Schedule.

88.     *"Non-Released Party Schedule"* means a schedule that sets forth the identities of each Non-Released Party and is Filed with the Bankruptcy Court as part of the Plan Supplement.

89.     *"Notice and Claims Agent"* means Epiq Corporate Restructuring, LLC, in its capacity as notice and claims agent for the Chapter 11 Cases.

90. "*Other Priority Claim*" means any Claim, to the extent such Claim has not already been paid during the Chapter 11 Cases, other than an Administrative Claim, a Gap Period Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

91. "*Other Secured Claim*" means any Secured Claim that is not a DIP Claim.

92. "*Person*" means a "person" as that term is defined in section 101(41) of the Bankruptcy Code, including, without limitation, any individual or Entity.

93. "*Petition Date*" means: (a) for GCG Opco, January 24, 2020; and (b) for GCG Parent and Hemp Kentucky, LLC, February 5, 2020.

94. "*Plan*" means this *Debtors' Amended Joint Plan of Liquidation*, as may be altered, amended, modified, or supplemented from time to time in accordance with Article X hereof, including the Plan Supplement (as modified, amended or supplemented from time to time), which is incorporated herein by reference and made part of the Plan as if set forth herein.

95. "*Plan Administrator*" means a Person designated by the Debtors, after consultation with the UCC and MGG, or any successor thereto designated by the Advisory Committee in accordance with the terms of the Wind-Down Trust Agreement, subject to the approval of the Bankruptcy Court. The Plan Administrator, whose identity will be disclosed in the Plan Supplement, will serve as the trustee and administrator for the Wind-Down Trust, with all power and authorities as set forth in Article IV.C and elsewhere in the Plan and the Wind-Down Trust Agreement.

96. "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan, the initial draft of certain of such documents shall be Filed by the Debtors seven calendar days before the Voting Deadline, and additional documents Filed with the Bankruptcy Court prior to the Effective Date, as may be amended, supplemented, altered, or modified from time to time in accordance with the terms hereof, the Bankruptcy Code, and the Bankruptcy Rules, including: (a) the Schedule of Retained Causes of Action; (b) the Non-Released Party Schedule; (c) the identity and terms of compensation of the Plan Administrator; and (d) the Wind-Down Trust Agreement.

97. "*Prepetition*" means, with respect to each Debtor, prior to the Petition Date for such Debtor.

98. "*Prepetition Credit Agreement*" means that certain Financing Agreement, dated as of June 24, 2019, as amended, restated, modified, or supplemented from time to time in accordance with its terms, by and among GCG Opco, as Borrower, GCG Parent, as Guarantor, MGG, as Collateral Agent and as Administrative Agent, and the Lenders from time to time party thereto.

99. "*Prepetition Obligations*" has the meaning ascribed to such term in the Final DIP Order.

13711145 v2

100.    *"Prepetition Agent"* or *"Prepetition Agents"* has the meaning ascribed to such term in the Final DIP Order.

101.    *"Prepetition Lenders"* has the meaning ascribed to such term in the Final DIP Order.

102.    *"Prepetition Loan Documents"* has the meaning ascribed to such term in the Final DIP Order.

103.    *"Prepetition Secured Party"* or *"Prepetition Secured Parties"* has the meaning ascribed to such term in the Final DIP Order.

104.    *"Priority Tax Claim"* means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

105.    *"Privilege"* means  the attorney client privilege, work product protections or other immunities (including without limitation those related to common interests or joint defenses with other parties), or protections from disclosure of any kind held by the Debtors or their Estates.

106.    *"Professional"* means an Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with section 327, 328, 363 and/or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date pursuant to section 327, 328, 329, 330, 331 or 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

107.    *"Professional Fee Claims"* mean all Claims for fees and expenses (including transaction and success fees) incurred by a Professional on or after the Petition Date through and including the Confirmation Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court and regardless of whether a monthly fee statement or interim fee application has been Filed for such fees and expenses. To the extent a Bankruptcy Court or higher court of competent jurisdiction denies or reduces by a Final Order any amount of a Professional's fees or expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

108.    *"Professional Fee Escrow Account"* means an interest-bearing escrow account to be funded by the Debtors with Cash on the Effective Date in an amount equal to the Professional Fee Escrow Amount, *provided* that the Professional Fee Escrow Account shall be increased with Cash held or by the Wind-Down Trust to the extent applications are filed after the Effective Date in excess of the amount of Cash funded into the escrow as of the Effective Date.

109.    *"Professional Fee Escrow Amount"* means the total amount of Professional Fee Claims estimated in consultation with MGG and the UCC pursuant to Article II.B.3 of the Plan.

110.    *"Proof of Claim"* means a written proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

13711145 v2

111.    *"Purchased Assets"* has the meaning ascribed to such term in the Asset Purchase Agreement.

112.    *"Purchaser"* means GenCanna Acquisition Corp. and any permitted assignee of such Entity's rights and obligations under the Asset Purchase Agreement.

113.    *"Quarterly Distribution Date"* means first Business Day after the end of each quarterly calendar period (i.e., March 31, June 30, September 30, and December 31 of each calendar year) occurring after the Effective Date, or as soon thereafter as is reasonably practicable.

114.    *"Related Person"* or *"Related Persons"* means, individually or collectively, with respect to any Person, such Person's predecessors, successors, assigns and present and former shareholders, affiliates (whether by operation of law or otherwise), subsidiaries, principals, employees, agents, officers, directors, managers, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants, and any Person claiming by or through them, each in their capacities as such.

115.    *"Released Party"* or *"Released Parties"* means, individually and collectively: (a) the Debtors Related Potentially Released Parties; and (b) the Non-Debtor Potentially Released Parties; *provided* that any of the foregoing Persons that opts out of the Third Party Releases pursuant to the procedures approved in the Disclosure Statement Order shall not be a "Released Party"; *provided further* that notwithstanding anything to the contrary herein, no Non-Released Party shall be a Released Party.

116.    *"Releasing Parties"* means, collectively, each of the following: (a) the Debtors; (b) the Prepetition Lenders; (c) the DIP Lenders; (d) the Prepetition Agent; (e) the DIP Agent; (f) MGG; (g) the Purchaser; (h) all Holders of Claims that vote to accept the Plan; (i) all Holders of Claims that are deemed to accept the Plan but do not affirmatively elect to "opt out" of the Third-Party Release pursuant to the procedures approved in the Disclosure Statement Order; (j) all Holders of Claims that vote to reject the Plan or do not vote to accept or reject the Plan but, in either case, do not affirmatively elect to "opt out" of the Third-Party Release pursuant to the "opt out" procedures approved in the Disclosure Statement Order; (k) all Holders of Claims or Interests that are deemed to reject the Plan that do not affirmatively elect to "opt out" of the Third-Party Release pursuant to the "opt out procedures approved in the Disclosure Statement Order; and (l) with respect to each of the Debtors and each of the foregoing Entities in clauses (a) through (k), each such Entity and its respective Related Persons, each in their capacity as such, individually and collectively.

117.    *"Retained Causes of Action"* means any and all Causes of Action of, or relating to, any Debtor, any Estate, or a creditor of any Debtor, which shall be assigned, transferred and vest in the Wind-Down Trust upon the Effective Date in accordance with the terms of the Plan, including, but not limited to, those Causes of Action identified on the Schedule of Retained Causes of Action; *provided, however,* that Retained Causes of Action exclude Causes of Action that are (a) Purchased Assets, (b) released by the Debtors pursuant to the releases and exculpations contained in Article VIII of the Plan or the Confirmation Order, which shall be

13711145 v2

deemed released and waived by the Debtors, the Estates, and the Wind-Down Trust as of the Effective Date, or (c) otherwise released pursuant to a Final Order of the Bankruptcy Court.

118.     *"Sale Documents"* means the Asset Purchase Agreement, the Transition Services Agreement (as defined in the Asset Purchase Agreement), the Interim Permit Operating Agreement (as defined in the Asset Purchase Agreement), and each other document, agreement or instrument executed and delivered in connection with any of the foregoing.

119.     "*Sale Transaction*" means the sale of certain of the Debtors' assets to the Purchaser pursuant to the Asset Purchase Agreement, the other Sale Documents and the Sale Order.

120.     *"Sale Closing"* means the "Closing", as defined in the Asset Purchase Agreement.

121.     "*Sale Order*" means the *Order (I) Approving The Sale Of Certain The Debtors' Assets Free And Clear Of All Liens, Claims, Encumbrances And Interests Other Than Permitted Liens, (II) Authorizing The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases In Connection Therewith And (III) Granting Related Relief* [Docket No. 850] entered by the Bankruptcy Court in the Chapter 11 Cases.

122.     *"Schedule of Retained Causes of Action"* means that certain schedule filed with the Plan Supplement containing a non-exclusive listing of certain Causes of Action of the Debtors and/or the Estates that are not released, waived, or transferred pursuant to the Plan, as such schedule may be amended, modified, or supplemented from time to time by the Debtors, which shall be acceptable to the Debtors, MGG and the Purchaser.

123.     "*Schedules*" mean, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, as such schedules may be amended, modified, or supplemented from time to time.

124.     *"Section 510(b) Claim"* means any Claim subject to subordination under section 510(b) of the Bankruptcy Code; *provided* that a Section 510(b) Claim shall not include any Claim subject to subordination under section 510(b) of the Bankruptcy Code arising from or related to an Interest.

125.     *"Secured"* means when referring to a Claim: (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, which value shall be determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed pursuant to the Plan as a Secured Claim.

126.     *"Security"* means a security as defined in section 2(a)(1) of the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

13711145 v2

127.      *"Third-Party Release"* means the release given by each of the Releasing Parties to the Released Parties as set forth in Article VIII.D of the Plan.

128.      *"Trust Ratable Share"* means the proportion that (a) an Allowed MGG Subordinated Claim or an Allowed Unsecured Claim, as applicable, bears to (b) the aggregate amount of all Allowed MGG Subordinated Claims and all Unsecured Claims, whether such Unsecured Claims are Allowed or Disputed.

129.      *"U.S. Trustee"* means the United States Trustee appointed under Article 591 of title 28 of the United States Code to serve in Region 8, including the Eastern District of Kentucky.

130.      *"UCC"* means the statutory committee of unsecured creditors of the Debtors, appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the U.S. Trustee on February 18, 2020, pursuant to the *Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 135], as such committee may be reconstituted by the U.S. Trustee from time to time prior to the Confirmation Date.

131.      *"Unexpired Lease"* means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 or section 1123 of the Bankruptcy Code.

132.      *"Unimpaired"* means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

133.      *"Unsecured Claim"* means any Claim that is not Secured and is not (a) an Administrative Claims (including, for the avoidance of doubt, a Professional Fee Claim), (b) a Priority Tax Claim, (c) a Gap Period Claim, (d) a DIP Claim, (e) an Other Priority Claim, (f) a MGG Subordinated Claim, (g) an Intercompany Claim or (h) a Section 510(b) Claim.

134.      *"Voting Deadline"* means the deadline of [__:00 _.m.] (Eastern Standard Time) on [_____], 2020, which date may be extended by the Debtors.

135.      *"Wind-Down Budget"* means a budget for the reasonable activities and expenses to be incurred in winding down the Estates and completing the administration of the Chapter 11 Cases. The Wind-Down Budget shall include line item estimates for, among other things, post-Effective Date professional fees.

136.      *"Wind-Down Distributable Proceeds"* means, as of a Distribution Date, the excess, if any, of (a) any Cash proceeds of the Wind-Down Trust Assets, over (b) amounts necessary (i) to satisfy or reserve for all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, and Allowed Other Secured Claims in full in Cash (unless such Claims receive such other treatment that leaves such Claims Unimpaired or otherwise complies with the terms of the Plan), (ii) to fund the Disputed Claims Reserves  for Disputed Administrative Claims, Disputed Priority Tax Claims, Disputed Other Priority Claims, and Disputed Other Secured Claims in accordance with the terms of the Plan and the Wind-

Down Trust Agreement, and (iii) to pay or reserve for in full all Wind-Down Trust Operating Expenses.

137.   *"Wind-Down Trust"* means that certain trust to be created on the Effective Date, as described in Article IV.C.2 of the Plan.

138.   *"Wind-Down Trust Account"* means the bank account or accounts used to fund all expenses and payments required to be made by the Plan Administrator, which shall be established by the Plan Administrator on or after the Effective Date.

139.   *"Wind-Down Trust Agreement"* means that certain agreement establishing the Wind-Down Trust, which shall be acceptable to the Debtors, and the form of which shall be included in the Plan Supplement.

140.   *"Wind-Down Trust Assets"* means all of the assets of the Debtors' Estates existing immediately before the occurrence of the Effective Date, which assets shall be treated as transferred to and beneficially owned by the Wind-Down Trust as of the Effective Date.  For the avoidance of doubt, except as otherwise expressly provided in this Plan or the MGG Settlement Agreement in the case of the MGG Settlement Escrowed Funds, the Wind-Down Trust Assets do not include the funds in the Professional Fee Escrow Account or the MGG Settlement Escrowed Funds.

141.   *"Wind-Down Trust Operating Expenses"* means the overhead and other operational expenses of the Wind-Down Trust including, but not limited to, (a) reasonable compensation for the Plan Administrator and members of the Advisory Committee (which expenses shall not include professional fees of such members) in accordance with the Wind-Down Trust Agreement, (b) costs and expenses incurred by the Plan Administrator in administering the Wind-Down Trust, (c) fees payable to the U.S. Trustee under Section 1930 of Title 28 of the United States Code incurred after the Effective Date, and (d) any fees and expenses payable to the firm(s) or individual(s) retained by the Plan Administrator in accordance with the terms of the Wind-Down Trust Agreement to serve as legal counsel for the Wind-Down Trust or to provide other professional services for the Wind-Down Trust in connection with the performance of the Plan Administrator's duties and responsibilities under this Plan and the Wind-Down Trust Agreement.

13711145 v2