UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| OGGUSA, Inc.[1] | § | Case No. 20-50133-GRS |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |
| | § | Honorable Gregory R. Schaaf |

**RESPONSE AND OBJECTION MARIMED, INC. AND
JAMES P. MOON TO DEBTOR'S MOTION FOR ENTRY OF AN
ORDER REQUIRING REIMBURSEMENT OF FEES INCURRED
IN ENFORCING THE AUTOMATIC STAY**

**TO THE HONORABLE GREGORY R. SCHAAF:**

**COMES NOW MARIMED, INC.** ("Marimed"), a party-in-interest, and **JAMES P. MOON,** counsel of record for Marimed (Marimed and Moon are hereafter sometimes collectively referred to as the "MariMed Parties"), in the above-referenced and numbered Chapter 11 case and files this their Response and Objection ("Response") to the Debtors' Motion for Entry of an Order Requiring Reimbursement of Fees Incurred in Enforcing the Automatic Stay (the "Motion"), and, in support hereof would respectfully show the Court as follows:

**JURISDICTION**

1. The Court has jurisdiction of this matter under 28 U.S.C. §157 since this is a response to a motion for damages under 11 U.S.C. §362(k) filed by the Debtors. This contested matter is a core proceeding under 28 U.S.C. §157(b)(2).

---

[1] The Debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): OGGUSA, Inc. (0251); OGG, Inc. (N/A); and Kentucky Hemp, LLC (0816).

1

## REQUEST FOR EVIDENTIARY HEARING

2. The Marimed Parties would show that the Motion cannot be decided by this Court without resolving disputed material issues of fact. As such, pursuant to 11 U.S.C. §102(1) and Rule 9014[2] of the FEDERAL RULES OF BANKRUPTCY PROCEDURE the Marimed Parties hereby request that this matter be sent down for an evidentiary hearing upon reasonable notice to all parties, with allowance for sufficient time to conduct limited discovery in connection with the issues and facts raised in the Motion.

## FACTUAL BACKGROUND

3. MariMed is the largest shareholder of Debtor OGG, Inc. (hereafter referred to as "Debtor Parent"). The Debtors have continually asserted before this Court that their respective bankruptcy estates are administratively solvent. As such, MariMed has standing as a party-in-interest to file this Response.

4. On June 26, 2020, the Debtors filed their Debtors' Motion for Entry of an Order Enforcing the Voting Agreement Governing Constitution of Parent's Board or, in the alternative, (I) Enforcing the Automatic Stay, (II) Voiding Unauthorized Use of Estate Property and (III) Blocking Other Unauthorized Actions to Replace the Debtors' Board Members and Management [Dkt. No. 1011] (the "Enforcement Motion") seeking, among other things, emergency relief in response to actions taken by Marimed, MNF Partners, LLC ("MNF"), and other shareholders of Debtor Parent to reconstitute the Board of Directors and elect new officers of Debtors.

---

[2] See Committee Notes – 2002 Amendment - *Subdivision (d)* is added to clarify that if the motion cannot be decided without resolving a disputed material issue of fact, an evidentiary hearing must be held at which testimony of witnesses is taken in the same manner as testimony is taken in an adversary proceeding or at a trial in a district court civil case.

5. In connection with the Enforcement Motion, the Debtors also filed their Expedited Motion of the Debtors and Debtors in Possession for Entry of an Order Shortening Notice on, and Setting for Hearing on June 29, 2020, the Debtors' Motion for Entry of an Order Enforcing the Voting Agreement Governing Constitution of Parent's Board or, in the Alternative, (I) Enforcing the Automatic Stay, (II) Enjoining Certain Actions to Replace the Debtors' Board Members and Management and (III) Rescinding Unauthorized Use of Estate Property [Dkt. No. 1012] (the "Shortening Motion") seeking a hearing on the Enforcement Motion on less than one (1) business days' notice to the Marimed Parties and other creditors and parties-in- interest.

6. The Debtors offered no authenticated or admissible evidence as required by the FEDERAL RULES OF BANKRUPTCY PROCEDURE in support of either the Enforcement Motion. Further, the Debtors offered no declarations or other admissible evidence supporting the assertions in the Shortening Motion that there was some type of emergency or that sufficient cause existed to shorten the time for the hearing on the Enforcement Motion.

7. In response to the Shortening Motion, Marimed filed its Objection and Response of Marimed, Inc. to Expedited Motion of the Debtors and Debtors in Possession for Entry of an Order Shortening Notice on, and Setting for Hearing on June 29, 2020 (the "Shortening Motion"), the Debtors' Motion for Entry of an Order Enforcing the Voting Agreement Governing Constitution of Parent's Board or, in the Alternative, (I) Enforcing the Automatic Stay, (II) Enjoining Certain Actions to Replace the Debtors' Board Members and Management and (III) Rescinding Unauthorized Use of Estate Property

[Dkt. No. 1013] (the "Shortening Objection") objecting to the shortening of time and requesting the court to set the Enforcement Motion down for an evidentiary hearing within a reasonable time, and for sufficient opportunity for discovery to be conducted by the parties on the factual issues raised by the Enforcement Motion and the Shortening Objection, particularly the questionable validity of the Voting Agreement made the basis of the Enforcement Motion and the reasons and justifications for the actions and conduct of Marimed, MNF, and other shareholders in connection with their corporate shareholder action[3].

8. On July 29, 2020, the Court conducted a hearing on the Enforcement Motion and the Shortening Motion. Despite the objections to the shortening of time as requested by the Shortening Motion and the pleas by the Marimed Parties for an evidentiary hearing on these hotly-disputed factual issues, the Court refused to hold or set an evidentiary hearing to allow the Marimed Parties and MNF to present any testimonial or documentary evidence in response and objection to the relief requested by the Debtors in such Motions.

9. On July 2, 2020, the Court entered its Memorandum Opinion and Order [Dkt. No. 1030] (the "Memorandum Order") granting the Enforcement Motion on the grounds that the actions taken by the Violating Shareholders violated the automatic stay, and determined that such actions were therefore void.

---

[3] Had the Court allowed an evidentiary hearing to be conducted in connection with the Enforcement Motion, the Marimed Parties would have presented competent evidence that Marimed and MNF did not act alone, but that the total of approximately 70% of all of the shareholders of the debtor Parrent voted in favor of the action reconstituting the Board of Directors in question.

4

10. On July 16, 2020, Marimed filed its Notice of Appeal [Dkt. No. 1081] (the "BAP Appeal") of the Memorandum Order to the Bankruptcy Appellate Panel for the United States Court of Appeals for the Sixth Circuit.

11. As noted below, the parties are currently set for mediation in the BAP Appeal and no briefing schedule has yet been issued by the BAP for the filing of briefs and or motions by the parties.

## RESPONSE AND OBJECTION

In response and objection to the allegations asserted by the Debtors in the Motion, the Marimed Parties would show the Court as follows:

**A. The Consideration of the Imposition of Sanctions Prior to the Resolution of The BAP Appeal is a Waste of Judicial Resources.**

5. Initially, the Marimed Parties would show that the consideration of the Motion at this time as to whether or not to order the imposition of damages or sanctions against the Marimed Parties is premature and not yet ripe for determination.

6. Although the Debtors' assertions are correct that this Court is entitled to consider in award of damages actually incurred by the Debtors in connection with a violation of the automatic stay, it is equally clear that there should be a final determination that such a violation has indeed occurred.

7. As the Debtors are fully aware, the BAP Appeal is currently pending before the Bankruptcy Appellate Panel for the Sixth Circuit Court of Appeals (the "BAP"). In addition, the parties to the Marimed Appeal were recently notified that the BAP has scheduled for a mandatory mediation session on September 16, 2020.

8. Obviously, with the mediation pending before the BAP, moving forward with the hearing or determination of the Debtors' Motion, especially with the continuing burdens and issues of conducting an evidentiary hearing in the midst of the COVID-19 pandemic, it would not appear to be a productive or efficient use of the Court's time and resources and would result in the incurring of additional unnecessary costs and expenses on the part of the Debtors and the Marimed Parties in the event that they are dispute is settled or resolved by the appellate mediation.

9. Likewise, since the actual BAP appeal still in its early stages[4], it would be entirely premature for the Court to make a determination of whether or not the Debtors are entitled to the damages in the form of an award of attorneys' fees as they have requested in their Motion.

10. In the event that the Court nonetheless chooses to go forward with hearing evidence and ruling on the Motion, the factual basis for such determination, i.e., an actual violation of the automatic stay, could be reversed, thereby mooting any award of damages under Section 362(k)(1).

11. Further, since the Motion constitutes a contested matter in which the Marimed Parties are entitled to an evidentiary hearing, the Marimed Parties will need to conduct limited discovery of the Debtors regarding their factual basis for the damages claimed to have been incurred by reason of the actions of Marimed.

12. Finally, the MariMed Parties would show that the Debtors' attempt to obtain the imposition of sanctions (i.e., attorneys fees, and expenses, for violation of the

---

[4] The reason of the pending mediation on September 16, 2020, the BAP has yet to even issue its briefing schedule for the deadlines and requirements for the filing of the briefs and motions of the Marimed Parties and the Debtors.

automatic stay prior to the resolution of the BAP Appeal is a waste of judicial resources and is not warranted under the unique circumstances of this case.

13. In reviewing the Motion, it is apparent that the request for damages under Section 362(k) is substantively in the nature of a request for sanctions and should therefore be determined in accordance with the rules and standards applied to sanctions motions under Rule 11 of the Federal Rules of Civil Procedure.

14. As such, the issue of the propriety of requests for sanctions in the form of attorneys' fees and expenses, such as those requested by the Debtors under Section 362(k), have necessarily involved the analysis of whether such requests were a proper and efficient use of judicial resources. See *Moeck v. Pleasant Valley School District*, 844 F.3d 387 (3d Cir. 2016).

15. In *Moeck*, the Third Circuit, in looking at this specific issue of the productive use of judicial resources, noted that these types of requests can often be a waste of judicial resources:

> "The District Court also did not err in noting that Defendants' Rule 11 motions were, essentially, a waste of judicial resources, and that counsel in this case "ha[d] clogged the docket with numerous motions for sanctions, motions for discovery and even a motion to disqualify counsel. While the focus of Rule 11 is on whether a claim is wholly without merit, and is not dictated by whether resources will be expended in deciding the motion, Rule 11 motions should conserve rather than misuse judicial resources. See *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 99 (3d Cir. 1988) ("Rather than misusing scarce resources, [the] timely filing and disposition of Rule 11 motions should conserve judicial energies.")."

844 F.3d 387, 392 at Footnote 9.

16. Such requirements generally required that a court considering a request for sanctions adhere to "stringent" standards because they run the risk of spawning

collateral litigation as well as increasing "tensions" among litigators and between bench and bar. *Moeck*, 844 F.3d 387, 392 at Footnote 7.

17. This is particularly important and true in this instance where the factual discrepancies and disputes raised by the Marimed Parties in their Response to the original Enforcement Motion raise significant "fact-sensitive issues" that need to be addressed on the merits. *Id*.

18. *Moeck* therefore teaches that the trial courts (or in this case, the Bankruptcy Court) should give very careful consideration to the specific facts and circumstances surrounding the basis for a request for sanctions.

19. Such countenance for the productive use of the Court's time and the parties' resources is particularly relevant in this matter, where the pendency of the BAP Appeal and the currently scheduled mediation in that proceeding could easily moot any action taken by this Court in connection with the Motion.

**B.  The Factual Discrepancies and Legal Issues Raised in the Enforcement Response and the Appeal Clearly Indicate That Any Imposition of Sanctions by This Court is Not Supported by the Evidence.**

12. As noted in the Response of MariMed to the original Enforcement Motion, and as has been raised in the Statement of Issues filed in connection with the Appeal, the factual and legal issues surrounding the conduct of the MariMed Parties are complex and dependent upon evidence that such parties were not allowed to properly and adequately present to the Court for its determination.

13. For example, Marimed raised significant factual and legal issues in their Enforcement Response (see Shortening Objection - ¶¶27-43) regarding the validity and

enforceability of the alleged Voting Agreement upon which the Debtors challenge the corporate actions by the MariMed parties and Falcone. As noted in Footnote 5 of the Enforcement Response:

> "All of the pages (including the signature pages) of the draft of the Voting Agreement contained in the Preferred Stock Transaction Documents include a footer with a document identification number (4829-9087-3240.v13) inserted by the law firm who prepared such documents. However, the two signature pages of the copy of the Voting Agreement contained in the Enforcement Motion do not contain such document identification number, thereby raising the question of whether such signature pages were forged or whether they were taken from another document and attached to the copy of the Voting Agreement attached to the Enforcement Motion."

20. In fact, the Marimed Parties pointed out to the Court serious discrepancies regarding the creation and possible forgery of such Voting Agreement and pleaded with the Court for time and an evidentiary hearing to allow it to present evidence from the Board members of the Debtors and Debtors' pre-petition counsel as to the true and correct facts regarding such Voting Agreement and its potentially fraudulent use in connection with the Enforcement Motion.

21. As a result, the nature and importance of the evidentiary and factual issues raised by the Marimed Parties necessarily require that the Court allow sufficient opportunity for discovery and disclosure of testimonial and documentary evidence relevant to the relief requested in the Motion which have not been able to be presented to the Court.

C. **The Debtors' Attempts to Impute Improper Motives or Conduct to the MariMed Parties Based on Prior Conduct of Their Counsel is Inappropriate and Inadmissible.**

22. The Marimed Parties would further show that the Debtors' attempt to

9

support its request for damages/sanctions by raising spurious issues regarding the prior conduct of Moon, in connection with a highly-contested series of events and transaction that occurred approximately 35 years ago[5] is merely an attempt to infer and attribute wrongful conduct to the MariMed Parties based on selective disclosure and information regarding the prior events in which such counsel was involved.

23. In their Motion, Debtors refer the Court to a single ruling in 1994 in a show cause hearing by a bankruptcy judge in United States District Court for the Southern District of Texas (the "Texas Bankruptcy Court") regarding and initial determination by such Court that Moon's former law firm, Simpson, Dowd & Moon ("SDM"), in representing an unsecured creditors committee (the "GHC Committee") in that proceeding, somehow violated the automatic stay by failing to request permission from the Texas Bankruptcy Court in accordance with applicable law to bring certain actions that the debtor in that case had refused to prosecute.

24. However, the Debtors fail to disclose information and provide the full story and documentation of months-long, lengthy proceedings relating to such actions by SDM, including (a) the uncertain and unsettled law surrounding the case authority upon which the debtor in that proceeding based its claims, _Louisiana World Exposition v. Federal Insurance Co._, 858 F. 2d 233 (5th Cir. 1988); (b) the appeal of the show cause order entered by the Texas bankruptcy court; (c) the lengthy discovery proceedings regarding the true facts surrounding the conduct of SDM and his co-counsel for the GHC Committee; (d)

---

[5] The events made the basis of the Debtors' arguments occurred in connection with a hotly-contested Chapter 11 proceeding, _In Re General Homes Corporation_, Bankruptcy Case Nos, 90-04810-H3-11; 02-00192-H3-11, and Adver. No,. 91-4367, in the United States Bankruptcy Court for the Southern District of Texas.

10

the subsequent resolution of the issues related to the conduct of Moon and STM in connection with the show cause order and the subsequent amendment of the Texas Bankruptcy Court's Memorandum Opinion regarding the show cause proceeding absolving Moon and SDM from any sanctionable action or contact.

25. As such, the allegedly wrongful conduct of Moon in connection with his representation of Marimed and advice/counsel given in connection with the actions taken in their capacities as shareholders of the Debtor Parent cannot legitimately or factually serve as a basis under Section 362(k) or any award of attorneys' fees and expenses to the Debtors.

26. Further, not only are the events and results related to the prior actions involving Moon inaccurately portrayed by the Debtors in an effort to raise an innuendo of wrongful or evil motives by the Marimed Parties, such information is also inadmissible as any type of evidence under Rule 404(a)(1) of the FEDERAL RULES OF EVIDENCE.

27. Under Rule 404(a)(1) relating to character evidence:

> (1) *Prohibited Uses*. Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.

28. As a result, any such prior conduct cannot serve as a factual or legal basis for this Court's determination of whether any damages ed claim to have been suffered by the Debtors was based on willful or wrongful conduct of the MariMed Parties.

## CONCLUSION

Based on the foregoing, the mermaid parties would request that the Court abate any hearing on, or determination of, the Motion until such time as the BAP Appeal has been fully resolved and a final judicial determination has been made that the Marimed

Parties actually violated the automatic stay provisions of Section 362. In addition, upon such final determination by the VIP, the merriment parties would request that the Court set this matter down for an evidentiary hearing and allow them sufficient time and opportunity to prepare and present a meaningful defense and objections to the claims asserted by the Debtors in the Motion.

**WHEREFORE, PREMISES CONSIDERED**, the MariMed Parties hereby request that the Court:

(a) Enter its order abating and or staying any determination on this Motion until the final resolution of the BAP Appeal as requested above

(b) In the event that the Court decides not to abate the Motion, that the Court said this matter down at a future date allowing sufficient time for the Marimed Parties to conduct testimonial discovery regarding the claim for damages, and the attorneys' fees and expenses claimed to have been incurred in connection with the conduct asserted in the enforcement motion; and

(c) Granting to the MariMed Parties such other and further relief, at law or in equity, to which they may show themselves justly entitled.

/
/
/
/
/

Respectfully Submitted,

By: /s/ James P. Moon

**JAMES P. MOON**
Texas State Bar No. 14316300
**KAPLAN & MOON, PLLC**
101 Vintage Drive, Suite 100
Red Oak, Texas 75154
(800) 214-0639
(800) 930-7112 (Fax)
Email: *jpmpllc@gmail.com*

**ATTORNEYS FOR MARIMED, INC.
AND JAMES P. MOON**

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date of the filing of this Response and Objection, this document was served via electronic means to all persons requesting electronic notice in this proceeding under the ECF filing system or, otherwise by electronic mail, or regular, first-class U.S. mail, postage prepaid.

/s/ James P. Moon
JAMES P. MOON