# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF KENTUCKY
# LEXINGTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| OGGUSA, Inc., *et al.*,[1] | Case No. 20-50133-grs |
| Debtors. | (Jointly Administered) |
| | Honorable Gregory R. Schaaf |

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER APPROVING AND CONFIRMING DEBTORS' SECOND AMENDED JOINT PLAN OF LIQUIDATION (WITH MODIFICATIONS)

OGGUSA, Inc., f/k/a GenCanna Global USA, Inc. ("GCG Opco"), OGG, Inc., f/k/a GenCanna Global, Inc. ("GCG Parent"), and Kentucky Hemp, LLC ("KY Hemp," and collectively with GCG Opco and GCG Parent, the "Debtors"), as debtors-in-possession in the above-captioned cases (collectively, the "Chapter 11 Cases"), having filed the *Debtors' Second Amended Joint Plan of Liquidation (With Modifications),* dated November 6, 2020 [Docket No. 1496], attached hereto as **Exhibit A** (as amended, modified or supplemented, and together with all appendices, exhibits and supplements (including the Plan Supplement), the "Plan");[2] and the Debtors having filed the *Notice of Filing of Plan Supplement* [Docket No. 1453] and a *Notice of Filing of Amendment to Plan Supplement* [Docket No. 1500], to which the materials comprising the Plan Supplement are attached as Exhibits A through E (collectively, the "Plan Supplement"); and this Court, by Orders entered August 30, 2020 [Docket No. 1315], October 2, 2020 [Docket No. 1391], October 8, 2020

---

[1]   The Debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): OGGUSA, Inc. (0251); OGG, Inc. (N/A); and Kentucky Hemp, LLC (0816).

[2]   Capitalized terms not otherwise defined herein have the meanings ascribed to such terms in the Plan.

[Docket No. 1399], and October 10, 2020 [Docket No. 1410] (collectively, the "DS Orders"),

having approved the *Disclosure Statement for the Debtors' Second Amended Joint Plan of
Liquidation* [Docket No. 1406] (as amended, modified or supplemented, together with all

appendices, exhibits and supplements, the "Disclosure Statement") as containing adequate

information pursuant to section 1125 of title 11 of the United States Code (as amended, the

"Bankruptcy Code"), authorized the Debtors to solicit acceptances of the Plan, established certain

voting and tabulation procedures associated with the Plan, and granted certain related relief; and

the Debtors having made certain non-material changes to the Disclosure Statement as permitted

by the DS Orders in connection with undertaking the solicitation of acceptances of the Plan and

having filed a solicitation version of the Disclosure Statement [Docket No. 1414]; and the Court

having established, by the DS Orders, November 9, 2020, at 1:00 p.m. (prevailing Eastern Time)

as the date and time of the hearing pursuant to section 1129 of the Bankruptcy Code to consider

confirmation of the Plan (the "Confirmation Hearing"); and an affidavit of service having been

executed by Epiq Corporate Restructuring, LLC ("Epiq" or the "Balloting Agent") and filed with

the Court [Docket No. 1431] (the "Affidavit of Service") with respect to the mailing of the notice

of the Confirmation Hearing and the other solicitation materials in respect of the Plan in

accordance with the DS Orders; and the Court having considered (a) the witness testimony,

declarations, exhibits and other evidence admitted into the record at the Confirmation Hearing,

including (i) the *Declaration of James Alt in Support of (I) Confirmation of Debtors' Second
Amended Joint Plan of Liquidation [Docket No. 1405] and (II) Approval of First Amended
Settlement Agreement and Release Among the Debtors and MGG Parties [Docket No. 1407]*
[Docket No. 1478] (the "Alt Declaration"), (ii) the *Declaration of Gary M. Broadbent in Support
of (I) Confirmation of Debtors' Second Amended Joint Plan of Liquidation [Docket No. 1405] and*

*(II) Approval of First Amended Settlement Agreement and Release Among the Debtors and MGG Parties [Docket No. 1407]* [Docket No. 1476] (the "Broadbent Declaration"), (iii) the *Declaration of Emily Young of Epiq Corporate Restructuring, LLC Regarding Voting and Tabulation of Ballots Cast on the Debtors' Second Amended Joint Plan of Liquidation* [Docket No. 1477] (the "Voting Declaration"), (b) the arguments of counsel, (c) the additional filings made by the Debtor in support of the Plan, including (i) the Debtors' *Memorandum of Law in Support of Confirmation of the Debtors' Second Amended Joint Plan of Liquidation and Omnibus Reply to Objections to Plan Confirmation* [Docket No. 1479] (the "Confirmation Memorandum"), (ii) the Affidavit of Service and any other affidavits or declarations of service for the Plan, the Disclosure Statement, the Ballots and other solicitation materials (collectively, the "Proof of Service Documents"), (iii) the filed objections, the filed responses and informal comments received in opposition to, or otherwise relating to, the Plan, as well as all resolutions, settlements and/or withdrawals of such objections, responses and comments; the Court being familiar with the Plan, and the relevant facts and circumstances concerning these Chapter 11 Cases; and the Court having taken judicial notice of the entire docket of the Chapter 11 Cases and all pleadings and other documents filed, all orders entered, and evidence and arguments made, proffered, or adduced at the hearings held before the Court during these Chapter 11 Cases; and the Court having found that due and proper notice has been given with respect to the Confirmation Hearing and the deadlines and procedures for voting on the Plan and asserting objections to the Plan consistent with the DS Orders, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the United States Bankruptcy Court for the Eastern District of Kentucky (the "Local Rules"); and the appearance of all interested parties having been duly noted in the record of the

Confirmation Hearing; and upon the record of the Confirmation Hearing, and after due deliberation

thereon, and sufficient cause appearing therefor; this Court hereby makes the following:

### FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.     <u>Findings of Fact and Conclusions of Law</u>. The findings and conclusions set forth

herein and on the record of the Hearing constitute this Court's findings of fact and conclusions of

law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by

Bankruptcy Rules 7052 and 9014. To the extent any of the following findings of fact constitute

conclusions of law, they are adopted as such. To the extent any of the following conclusions of

law constitute findings of fact, they are adopted as such.

B.     <u>Judicial Notice</u>.  The Court takes judicial notice of the docket of the Chapter 11

Cases maintained by the Clerk of the Court, including, without limitation, all pleadings and other

documents filed, all orders entered, and all evidence admitted and arguments made at the hearings

held before the Court during the pendency of the Chapter 11 Cases.

C.     <u>Jurisdiction; Adjudicatory Power; Venue</u>. This Court has jurisdiction and authority

over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 1334(a) and 157(1) and Rule 83.12(a) of the

Joint Local Rules of Civil Practice for the United States District Courts for the Eastern District and

Western District of Kentucky. Venue of these proceedings and the Chapter 11 Cases in this district

is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C.

§157(b)(2) and this Court may enter a final order hereon under Article III of the U.S. Constitution.

D.     <u>Commencement of the Chapter 11 Cases; Order for Relief</u>.  On January 24, 2020,

an involuntary chapter 11 petition was filed against GCG Opco in this Court.  GCG Opco

consented to the petition, and an order for relief was entered with respect to GCG Opco on

February 6, 2020 [Docket No. 94].  On February 5, 2020, Debtors GCG Parent and KY Hemp each

4

filed voluntary chapter 11 petitions in this Court.  By order entered February 7, 2020 [Docket No. 89], this Court directed that the Chapter 11 Cases be jointly administered.

E.    <u>Official Committee of Unsecured Creditors</u>.  On February 18, 2020, the Office of the United States Trustee for the Eastern District of Kentucky appointed an official committee of unsecured creditors in the Chapter 11 Cases (the "<u>UCC</u>").

F.    <u>Eligibility for Relief</u>.  The Debtors are each a proper debtor under section 109 of the Bankruptcy Code.

G.    <u>Notice, Transmittal and Mailing of Solicitation Materials</u>.  As evidenced by the Proof of Service Documents, due, adequate, and sufficient notice of the Plan, and the Confirmation Hearing, together with all deadlines for objecting to and voting to accept or reject the Plan, has been provided as required by the DS Orders, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and other applicable law. No other or further notice is necessary or shall be required.

H.    <u>Solicitation</u>.  Solicitation packages containing the DS Orders, a Ballot appropriate to the Voting Class (as defined herein), a notice of the Confirmation Hearing, the solicitation versions of the Plan and the Disclosure Statement, and a pre-addressed, postage paid return envelope were transmitted and served in compliance with the Bankruptcy Code, the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, and the DS Orders. The form of the Ballots adequately addressed the particular needs of these Chapter 11 Cases and is appropriate to the Holders of the Claims in Class 2 (Other Secured Claims), Class 3 (MGG Subordinated Claims) and Class 4 (General Unsecured Claims) (collectively, the "<u>Voting Classes</u>"), which are impaired under the Plan, and may receive a Distribution under the Plan, and whose votes were, therefore, solicited.

I.      Voting Certification.  All procedures used to tabulate the Ballots were fair and conducted in accordance with the DS Orders, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations. As evidenced by the Voting Declaration and the MariMed Stipulation and Agreed Order (as defined herein), Class 2 (Other Secured Claims), Class 3 (MGG Subordinated Claims) and Class 4 (General Unsecured Claims) each have voted to accept the Plan.

J.      Plan Supplement.  On October 23, 2020, and November 9, 2020, the Debtors filed materials comprising the Plan Supplement, consisting of (1) the Schedule of Retained Causes of Action, (2) the Non-Released Party Schedule, (3) the Identification of Plan Administrator and Term Sheet Summarizing General Compensation Terms, (4) the form of Wind-Down Trust Agreement, and (5) the Joint Designation by Debtors and UCC of Initial Advisory Committee Members.  All information and documents included in the Plan Supplement and the amendments thereto are integral to, part of, and incorporated by reference into the Plan. The Plan Supplement complies with the terms of the Plan, and the filing and notice of such documents provided due, adequate, and sufficient notice in accordance with the DS Orders, the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice is necessary or shall be required. Consistent with the terms of the Plan, the Debtors reserve their rights, in consultation with the UCC and MGG Parties, to alter, amend, update, or modify the Plan Supplement before the Effective Date.

K.      Objections to Confirmation.  The Objection of the MariMed Parties to confirmation of the Plan filed on October 28, 2020 [Docket No. 1464] (the "MariMed Objection"), has been resolved in accordance with the terms of that certain *Stipulation and Agreed Order Resolving Objection of MariMed Parties to Plan Confirmation, modifying Ballot to Vote in Favor of the*

*Plan, allowing Proof of Claim and Addressing Related Matters* (the "MariMed Stipulation and

Agreed Order").  The Objection of the U.S. Trustee filed on October 27, 2020 [Docket No. 1463]

(the "UST Objection") and all other formal or informal objections to confirmation of the Plan that

were not resolved by agreement or order of the Court on or prior to the Confirmation Hearing are

overruled, or are otherwise disposed of, as set forth herein and on the record of the Confirmation

Hearing.

L.      Compromise and Settlement in Connection with the Plan.  All of the settlements

and compromises pursuant to and in connection with the Plan comply with the requirements of

section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019.

M.      Burden of Proof.  The Debtors have satisfied their burden of proving the elements

of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence, which is

the applicable standard.

N.      Good Faith.  The Debtors have not engaged in any collusive or unfair conduct in

connection with the Plan. The Plan was negotiated and conducted at arms-length and without

collusion with any Entity.

O.      The Plan Complies with Section 1129(a) of the Bankruptcy Code.  The evidentiary

record at the Confirmation Hearing, the contents of the Plan, the Confirmation Memorandum, and

the Court's judicial notice of the complete record of the Chapter 11 Cases support the findings of

fact and conclusions of law set forth herein.

P.      Modifications to the Plan.   The Debtors have made certain non-material

modifications to the Plan as set forth in the *Notice of Filing of Debtors' Second Amended Joint

Plan of Liquidation* (With Modifications) [Docket No. 1497]. The modifications made to the Plan

since solicitation (i) complied in all respects with Section 1127 of the Bankruptcy Code and

Bankruptcy Rule 3019, (ii) do not adversely affect the treatment of any Holder of Allowed Claims that have not consented to such modifications, and (iii) do not require re-solicitation of votes with respect to the Plan. The votes cast to accept the Plan are deemed to have been cast with respect to the Plan, as so modified.  The Plan as modified by the modifications shall constitute the Plan submitted to the Court for confirmation.

Q.      Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Plan is dated and identifies the Debtors as plan proponents, thereby satisfying Section 1129(a)(1) of the Bankruptcy Code.

R.      The Debtors' Compliance with the Bankruptcy Code (11 U.SC. § 1129(a)(2)). The Debtors have complied with all applicable provisions of the Bankruptcy Code, satisfying the requirements of Section 1129(a)(2) of the Bankruptcy Code.

S.      Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Plan has been proposed in good faith and not by any means forbidden by law, thereby satisfying Section 1129(a)(3) of the Bankruptcy Code.

T.      Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Any payment made or to be made by the Debtors, or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the Court as reasonable, thereby satisfying Section 1129(a)(4) of the Bankruptcy Code.

U.      Plan Administrator, Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5)). The Debtors have complied with Section 1129(a)(5) of the Bankruptcy Code. The identity, affiliations

and compensation of the Plan Administrator proposed to serve after the Effective Date have been

fully disclosed in the Plan Supplement.

V.    No Rate Changes (11 U.S.C. § 1129(a)(6)). After confirmation of the Plan, the

Debtors' businesses will not involve rates established or approved by, or otherwise subject to, any

governmental regulatory commission. Thus, Section 1129(a)(6) of the Bankruptcy Code is not

applicable.

W.    Best Interest of Creditors (11 U.S.C. § 1129(a)(7)). The Plan satisfies section

1129(a)(7) of the Bankruptcy Code. The Liquidation Analysis provided at Exhibit D to the

Disclosure Statement, and the other evidence proffered or adduced at the Confirmation Hearing

(i) is persuasive and credible, (ii) has not been controverted by other evidence, and (iii) establishes

that each Holder of an impaired Claim or Interest either has accepted the Plan or will receive or

retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective

Date, that is not less than the amount that such Holder would receive or retain if the Debtors were

liquidated under Chapter 7 of the Bankruptcy Code on such date.

X.    Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)). Classes 1 (Other Priority

Claims) is deemed to accept the Plan.  Class 2 (Other Secured Claims), Class 3 (MGG

Subordinated Claims) and Class 4 (General Unsecured Claims), with this Court's approval of the

MariMed Stipulation and Agreed Order have voted to accept the Plan. Class 5 (Intercompany

Claims), Class 6 (Section 510(b) Claims) and Class 7 (Interests) (collectively, the "Deemed

Rejecting Classes") are impaired by the Plan and are not entitled to receive or retain any property

under the Plan and, therefore, are deemed to have rejected the Plan pursuant to section 1126(g) of

the Bankruptcy Code. As found and determined below, pursuant to section 1129(b)(1) of the

Bankruptcy Code, the Plan may be confirmed notwithstanding the fact that the Deemed Rejecting

Classes have rejected or been deemed to have rejected the Plan, as applicable.

      Y.      <u>Administrative Expense Claims and Priority Tax Claims (11 U.S.C. § 1129(a)(9))</u>.

The treatment of Administrative Expense Claims under the Plan satisfies the requirements of

Section 1129(a)(9) of the Bankruptcy Code. The treatment of Priority Tax Claims pursuant to the

Plan satisfies the requirements of Section 1129(a)(9)(C) of the Bankruptcy Code.

      Z.      <u>Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10))</u>. Holders of Claims in

Class 2 (Other Secured Claims), Class 3 (MGG Subordinated Claims) and Class 4 (General

Unsecured Claims) each have voted to accept the Plan, determined without including any

acceptance of the Plan by any insider, thereby satisfying the requirements of section 1129(a)(10)

of the Bankruptcy Code.

      AA.      <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>. The Plan itself calls for liquidation of the

Debtors. Therefore, confirmation of the Plan is not likely to be followed by the need for further

financial reorganization of the Debtors. Further, the evidence proffered or adduced at or prior to

the Confirmation Hearing, including the Alt Declaration establishes that the Plan is feasible and

that there is a reasonable prospect of the Wind-Down Trust being able to meet its financial

obligations under the Plan, thereby satisfying Section 1129(a)(11) of the Bankruptcy Code.

      BB.      <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>. The Plan provides that on the Effective

Date, and thereafter as may be required, the Debtors shall pay all fees payable pursuant to Section

1930 of Title 28 of the United States Code, thereby satisfying Section 1129(a)(12) of the

Bankruptcy Code.

CC.    <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>. The Debtors do not maintain retirement plans or other benefits obligations. Accordingly, Section 1129(a)(13) of the Bankruptcy Code is not applicable to the Plan.

DD.    <u>No Domestic Support Obligations (11 U.S.C. § 1129(a)(14))</u>. The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, Section 1129(a)(14) of the Bankruptcy Code is inapplicable to the Chapter 11 Cases.

EE.    <u>The Debtors are Not Individuals (11 U.S.C. § 1129(a)(15))</u>. The Debtors are not individuals, and accordingly, Section 1129(a)(15) of the Bankruptcy Code is inapplicable to the Chapter 11 Cases.

FF.    <u>No Applicable Non-bankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16))</u>. The Debtors are moneyed, business, and/or commercial corporations, and accordingly, Section 1129(a)(16) of the Bankruptcy Code is inapplicable to the Chapter 11 Cases.

GG.    <u>Fair and Equitable, No Unfair Discrimination (11 U.S.C. § 1129(b))</u>. Holders of Claims and Interests in the Deemed Rejecting Classes are deemed to have not accepted the Plan. Based upon the evidence proffered, adduced, and presented by the Debtors at the Confirmation Hearing, including the Alt Declaration, the Plan does not discriminate unfairly and is fair and equitable with respect to the aforementioned Classes, as required by Sections 1129(b)(1) and (b)(2) of the Bankruptcy Code. Thus, the Plan may be confirmed notwithstanding the deemed rejection of the Plan by the Deemed Rejecting Classes.

HH.    <u>Only One Plan (11 U.S.C. § 1129(c))</u>. The Plan is the only plan filed in the Chapter 11 Cases, and accordingly, Section 1129(c) of the Bankruptcy Code is inapplicable in the Chapter 11 Cases.

II.  <u>Principal Purpose of the Plan (11 U.S.C. §1129(d))</u>. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act, and no governmental unit has objected to the confirmation of the Plan on any such grounds. Therefore, the Plan satisfies the requirements of Section 1129(d) of the Bankruptcy Code.

JJ.  <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>. Based on the record before the Court, the Debtors and their agents, successors, predecessors, control persons, members, officers, directors, employees and agents and their respective attorneys, financial advisors, investment bankers, accountants, and other professionals retained by such persons, in each case, have acted in "good faith" within the meaning of Section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in Section 1125 of the Bankruptcy Code, and therefore are not, and on account of such offer, issuance and solicitation will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan and are entitled to the protections afforded by Section 1125(e) of the Bankruptcy Code and, to the extent such parties are listed therein, the exculpation provisions set forth in Article VIII.E of the Plan.

KK.  <u>Implementation</u>. All documents necessary to implement the Plan, and all other relevant and necessary documents have been developed and negotiated in good faith and at arms-length and shall, upon completion of documentation and execution, and subject to the occurrence of the Effective Date, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

LL.    <u>Deemed Substantive Consolidation of the Debtors' Estates</u>. The Court finds that it is critical and necessary to substantively consolidate the Debtors' Estates in order to implement the Plan.

MM.    <u>Releases</u>. The Court has jurisdiction under Sections 1334(a) and (b) of Title 28 of the United States Code to approve the releases set forth in Article VIII.C and the related injunction in Article VIII.F and elsewhere in the Plan and this Confirmation Order. Section 105(a) of the Bankruptcy Code permits approval of the releases set forth in Article VIII.C, and the related injunction in Article VIII.F, and elsewhere in the Plan and this Confirmation Order, because, as has been established here based upon the evidence presented at the Confirmation Hearing, such provisions (i) were integral to achieving settlement among the various parties in interest and are essential to the formulation and implementation of the Plan as provided in Section 1123 of the Bankruptcy Code and (ii) confer substantial benefits on the Debtors' Estates.

NN.    Pursuant to Section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the exculpation provision and the releases set forth in the Plan and implemented by this Confirmation Order are fair, equitable, reasonable, and in the best interests of the Debtors, and their Estates, Creditors, and Interest Holders. The record of the Confirmation Hearing is sufficient to support the exculpation provision set forth in Article VIII.E and the releases provided for in Article VIII.C, and the related injunction in Article VIII.F of the Plan. Accordingly, based upon the representations of the parties, and/or the evidence proffered, adduced, and/or presented at the Confirmation Hearing, this Court finds that the exculpation provision set forth in Article VIII.E and the releases set forth in Article VIII.C, and the related injunction in Article VIII.F, of the Plan are consistent with the Bankruptcy Code and applicable law.

OO.    Based on the foregoing, the Plan satisfies the requirements for confirmation set forth in Section 1129 of the Bankruptcy Code.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.    <u>Findings of Fact and Conclusions of Law</u>. The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein.

2.    <u>Notice of the Confirmation Hearing</u>. Notice of the Confirmation Hearing complied with the terms of the DS Orders, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

3.    <u>Solicitation</u>. The solicitation of votes on the Plan complied with the DS Orders, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, and applicable non-bankruptcy law.

4.    <u>Confirmation of the Plan</u>. The Plan, attached hereto as **<u>Exhibit A</u>**, is approved and confirmed under Section 1129 of the Bankruptcy Code. The terms of the Plan are an integral part of, this Confirmation Order.

5.    <u>Objections Resolved or Overruled</u>. The MariMed Objection has been resolved as set forth in the MariMed Stipulation and Agreed Order.  The UST Objection and all other objections, responses, statements and comments in opposition to the Plan, other than those withdrawn with prejudice, waived, or settled prior to, or on the record at, the Confirmation Hearing, shall be, and hereby are, overruled in their entirety.

6.     <u>General Authorizations</u>. The Plan was approved by the officers of the Debtors whose approval was necessary. Pursuant to the appropriate provisions of the corporate or business organizations law of the applicable states or commonwealths of organization of the Debtors, and Section 1142(b) of the Bankruptcy Code, no additional action of the respective directors, members, managers or stockholders of the Debtors shall be required to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan.

7.     <u>Binding Effect</u>. On the date of and following entry of this Confirmation Order and subject to the occurrence of the Effective Date, the provisions of the Plan shall bind the Debtors, all Holders of Claims and Interests (irrespective of whether such Claims or Interests are impaired under the Plan or whether the Holders of such Claims or Interests have accepted the Plan), any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors, any other party in interest in these Chapter 11 Cases, and the respective heirs, executors, administrators, successors, or assigns, if any, of any of the foregoing.

8.     <u>Vesting of Assets</u>. As of the Effective Date, pursuant to the provisions of Section 1141(b) and (c) of the Bankruptcy Code, all assets of the Debtors shall vest in the Wind-Down Trust free and clear of all Claims, liens, encumbrances, charges, membership interests and other interests, except as otherwise expressly provided in the Plan or this Confirmation Order, and subject to the terms and conditions of the Plan and this Confirmation Order.

9.     <u>Implementation of the Plan</u>. The Debtors are hereby authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, and take such other actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan. On the Effective Date, the Plan Administrator shall be authorized to

execute, deliver, file, or record such contracts, instruments, releases, consents, certificates, notices, resolutions, programs, and other agreements, instruments, and/or documents, and take such acts and actions as may be necessary or appropriate to effectuate, implement, substantially consummate, and/or further evidence the terms and conditions of this Plan and any transactions described in or contemplated by this Plan.

10.     <u>Substantive Consolidation of the Debtors</u>. As of the Effective Date, and solely for the purposes of these Chapter 11 Cases and the Plan, the Debtors' Estates shall be substantively consolidated.

11.     <u>Rejection of Executory Contracts and Unexpired Leases</u>. Except as is set forth in the Plan or this Confirmation Order, pursuant to Article V.A of the Plan, as of the Effective Date, each Executory Contract or Unexpired Lease to which any of the Debtors is a party is hereby rejected as of the Effective Date unless previously assumed and/or assigned (including in connection with the Sale Transaction and pursuant to the Sale Order), subject to a pending motion to assume and/or assign, or rejected before the Effective Date.

12.     <u>SOE Agreements</u>. Reference is made to that (i) that certain *Biomass Processing Agreement,* dated January 27, 2020, by and between Specialty Oil Extractors Manufacturer, LLC and GenCanna Global USA, Inc., and (ii) that certain *Binding Letter of Intent,* dated October 13, 2019, by and between Specialty Oil Extractors Manufacturer, LLC and GenCanna Global USA, Inc. (together, as amended from time to time, the "<u>SOE Agreements</u>").  Notwithstanding anything to the contrary in the Sale Order, the Asset Purchase Agreement, the Plan or this Confirmation Order, with respect to the SOE Agreements, (a) the period during which they may be assumed and assigned to the Purchaser or rejected and (b) the "Contract Designation Period" set forth in Section 6.7(f) of the Asset Purchase Agreement each are hereby extended through and including December

31, 2020, without prejudice to such periods being further extended by agreement of SOE and the

Purchaser (acting in their respective sole discretion), subject to the consent of the Debtors or Plan

Administrator, as applicable (such consent by the Debtors or Plan Administrator, as applicable,

not to be unreasonably withheld).

13.    <u>Conditions to Effectiveness</u>. The Plan shall not become effective unless and until

the conditions set forth in Article IX.A of the Plan have been satisfied or waived pursuant to Article

IX.B of the Plan.

14.    <u>Professional Compensation</u>. Except as provided in the Plan, all Professionals

(including any application of members of the UCC for expense reimbursement) shall file with the

Court and serve their respective final applications for allowance of Professional Fee Claims by the

date that is forty-five (45) calendar days after the Effective Date. Upon the Effective Date, any

requirement that Professionals comply with Sections 327 through 331 of the Bankruptcy Code in

seeking retention or compensation for services rendered after such date shall terminate, and

Professionals may be employed and paid in the ordinary course of business without any further

notice to, or action, order, or approval of, the Court. Professional Fee Claims shall be paid in

accordance with Article II.C of the Plan.

15.    <u>Exculpation</u>. To the fullest extent permissible under applicable law and without

affecting or limiting the Debtor Release, no Exculpated Party shall have or incur, and each

Exculpated Party is hereby exculpated from, any Cause of Action for arising from or relating to

any act or omission occurring on or after January 24, 2020, based on the negotiation, execution,

and implementation of any transactions approved by the Bankruptcy Court in the Chapter 11

Cases, including the Asset Purchase Agreement, the DIP Loan Documents, the Disclosure

Statement, the Plan, the Plan Supplement, the Confirmation Order, or any contract, instrument,

17

release, or other agreement or document contemplated by the Plan or the reliance by any
Exculpated Party on the Plan or the Confirmation Order, or created or entered into in connection
with the Asset Purchase Agreement, the DIP Loan Documents, the Disclosure Statement, or the
Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation,
the pursuit of the Sale Transaction, the administration and implementation of the Plan, including
the issuance of any securities pursuant to the Plan or the Distribution or payment of property under
the Plan or any other related agreement, and the implementation of any transaction contemplated
by the Plan (including, for the avoidance of doubt, providing any legal opinion requested by any
Entity regarding any transaction, contract, instrument, document, or other agreement contemplated
by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu
of such legal opinion), or any other postpetition act taken or omitted to be taken in connection with
or in contemplation of the restructuring of the Debtors, except for claims related to any act or
omission that is determined by Final Order to have constituted actual fraud, willful misconduct, or
gross negligence, each solely to the extent as determined by a Final Order of a court of competent
jurisdiction, but in all respects such Entities shall be entitled to reasonably rely upon the advice of
counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated
Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith
and in compliance with the applicable laws with regard to the solicitation of votes on, and
Distribution or payment of consideration pursuant to, the Plan and, therefore, are not, and on
account of such Distributions and payments shall not be, liable at any time for the violation of any
applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the
Plan or such Distributions and other payments made pursuant to the Plan. Notwithstanding
anything to the contrary herein or therein, neither this Paragraph of the Confirmation Order nor

Article VIII.E of the Plan, releases or prevents enforcement of (a) any liabilities or obligations of the Purchaser or any other Entity arising under the Asset Purchase Agreement, the Sale Order, or any other Sale Document, in each case that have survived the Sale Closing, (b) any claim or Cause of Action transferred or assigned to Purchaser under the Asset Purchase Agreement or any other Sale Document, (c) any Retained Cause of Action identified on the Schedule of Retained Causes of Action as against a Person identified therein as the target of such Retained Cause of Action, (d) any liabilities or obligations of any MGG Party under the MGG Settlement Agreement, or (e) any post-Effective Date obligations of any Entity arising under or relating to the Plan, or any document, instrument, or agreement (including any documents set forth in the Plan Supplement, as applicable) executed to implement the Plan.

16.     For the avoidance of doubt, nothing in this Confirmation Order or Article VIII.E of the Plan shall limit the liability of any attorney Professional for the Debtors or the UCC to their respective clients to the extent that allowing such attorney Professional to benefit from the exculpation provided for in the immediately preceding Paragraph of this Confirmation Order or Article VIII.E of the Plan would violate Kentucky Supreme Court Rule 3.130 (1.8(h)(1)) or any comparable rule of professional conduct to which such attorney Professional is or may be subject.

17.     <u>Debtor Release</u>.  Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, including the service of the Released Parties to facilitate the administration of the Chapter 11 Cases, to maximize the value of the Estates and to implement the restructuring and orderly liquidation contemplated by the Plan, the adequacy of which is hereby confirmed, on and after the Effective Date each Released Party is deemed released by each and all of the Debtors, their Estates, and the Wind-Down Trust, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert

any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing

Entities, from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action,

remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on

behalf of any of the Debtors, their Estates, or the Wind-Down Trust, as applicable, whether known

or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise,

that the Debtors, their Estates, or the Wind-Down Trust, or their Affiliates would have been legally

entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder

of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any

manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the

purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events

giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual

arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court

restructuring efforts, intercompany transactions, the Prepetition Loan Documents, the Prepetition

Facility, the Convertible Debenture Financings, the DIP Loan Documents, the Sale Transaction,

entry into the Asset Purchase Agreement, entry into the DIP Loan Documents, the Chapter 11

Cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the

Disclosure Statement, DIP Loan Facility, the Sale Transaction, the Asset Purchase Agreement, the

Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document

created or entered into in connection with the Disclosure Statement, the DIP Loan Facility, or the

Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation,

the pursuit of the Sale Transaction, the administration and implementation of the Plan, including

the issuance or Distribution of securities pursuant to the Plan, or the Distribution or payment of

property under the Plan or any other related agreement (including, for the avoidance of doubt,

providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction. Notwithstanding anything to the contrary herein or therein, neither this Paragraph of the Confirmation Order nor Article VIII.C of the Plan, releases (a) any liabilities or obligations of the Purchaser or any other Entity arising under the Asset Purchase Agreement, the Sale Order, or any other Sale Document, in each case that have survived the Sale Closing, (b) any claim or Cause of Action transferred or assigned to Purchaser under the Asset Purchase Agreement or any other Sale Document, (c) any Retained Cause of Action identified on the Schedule of Retained Causes of Action as against a Person identified therein as the target of such Retained Cause of Action, (d) any liabilities or obligations of the MGG Parties under the MGG Settlement Agreement, (e) any post-Effective Date obligations of any Entity arising under or relating to the Plan, or any document, instrument, or agreement (including any documents set forth in the Plan Supplement, as applicable) executed to implement the Plan, or (f) any Lookback D&O with respect to any Lookback D&O Action that is commenced by the Plan Administrator on or before the Lookback D&O Action Deadline.

18.     For the avoidance of doubt, nothing in this Confirmation Order or Article VIII.C of the Plan shall limit the liability of any attorney Professional for the Debtors or the UCC to their respective clients to the extent that allowing such attorney Professional to benefit from the release

provided for in the immediately preceding Paragraph or in Article VIII.C of the Plan would violate

Kentucky Supreme Court Rule 3.130 (1.8(h)(1)) or any comparable rule of professional

responsibility to which such counsel is or may be subject.

19.    Binding Release Provisions. All release provisions embodied herein and/or in the

Plan, including but not limited to those contained in Article VIII.C of the Plan, are approved and

shall be effective and binding on all persons and entities, to the extent provided therein; *provided,*

*however,* that no provision of the Plan or this Confirmation Order shall be construed to grant a

discharge pursuant to Section 1141(d) of the Bankruptcy Code.

20.    Injunctions Relating to Releases. Except as otherwise specifically provided in the

Plan or this Confirmation Order, from and after the Effective Date, all Persons and Entities who

have held, hold, or may hold Claims or rights giving rise to any equitable relief against the Assets

or any Interests in the Debtors arising prior to the Effective Date are permanently enjoined from

taking any of the following actions against, as applicable, the Debtors, the Wind-Down Trust, the

Exculpated Parties, or the Released Parties: (a) commencing or continuing in any manner any

action or other proceeding of any kind on account of or in connection with or with respect to any

such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or

means any judgment, award, decree, or order against such Entities on account of or in connection

with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any

encumbrance of any kind against such Entities or the property or the estates of such Entities on

account of or in connection with or with respect to any such Claims or Interests; (d) asserting any

right of setoff, subrogation, or recoupment of any kind, against any obligation due from such

Entities or against the property of such Entities on account of or in connection with or with respect

to any such Claims or Interests unless such Holder has Filed a motion requesting the right to

perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim

or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff

pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any

action or other proceeding of any kind on account of or in connection with or with respect to any

such Claims or Interests released or settled pursuant to the Plan; *provided, however,* that such

Persons and Entities shall not be precluded from exercising their rights under and consistent with

the terms of the Plan, this Confirmation Order or the Wind-Down Trust Agreement.

21.    Preservation of Causes of Action. Pursuant to Article IV.J and other applicable

provisions of the Plan, all Retained Causes of Action shall be and are hereby preserved, except as

provided otherwise in the Plan or any Final Order of this Court.

22.    Reservation of Rights. Except as expressly set forth herein, the Plan shall have no

force or effect until the Effective Date. None of the filing of the Plan, any statement or provision

contained therein, or the taking of any action by the Debtors with respect to the Plan shall be or

shall be deemed to be an admission or waiver of any rights of the Debtors, Holders of Claims or

Interests before the Effective Date.

23.    Payment of Statutory Fees. All fees payable pursuant to Section 1930(a) of Title 28

of the United States Code and/or Section 3717 of Title 31 of the United States Code, as determined

by the Court, shall be paid for each quarter (including any fraction thereof) by each and every

Debtor, as applicable, until the earlier of the time that a particular case is converted, dismissed or

closed.

24.    Retention of Jurisdiction. On and after the Effective Date, the Court shall retain

jurisdiction, to the fullest extent permissible under law, over all matters arising in, arising under,

and related to the Chapter 11 Cases, the Plan and the Wind-Down Trust Agreement for, among other things, the purposes and matters set forth in or contemplated by Article XI of the Plan.

25.    <u>Exemption from Transfer Taxes and Recording Fees</u>. Pursuant to Section 1146(a) of the Bankruptcy Code, any transfer of property pursuant to or in connection with the Plan shall not be subject to any document recording tax, stamp tax, sales and use tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee or other similar tax or governmental assessment in the United States. This Confirmation Order hereby directs the appropriate federal, state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any  such tax or governmental assessment.

26.    <u>Stegeman Insurance Reservation of Rights</u>. For the avoidance of doubt, the Plan and this Confirmation Order are without prejudice to the respective rights, if any, of Mr. Mark Stegeman, the Debtors, the Plan Administrator and Wind-Down Trust and other covered Persons, if any, to proceeds or coverage under any potentially applicable insurance policies, including but not limited to the Private Company Management Liability Insurance Policy, number R89500190ASP, on account of Mr. Stegeman's prepetition claims as set forth in his proof of claim filed in these Chapter 11 Cases or otherwise.

27.    <u>Modifications</u>. The modifications to the Plan following solicitation of votes thereon satisfy the requirements of Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and do not adversely affect the treatment of any Claims, and, accordingly, neither require additional disclosure under Section 1125 of the Bankruptcy Code nor re-solicitation of votes on the Plan under Section 1126 of the Bankruptcy Code, nor do they require that Holders of Claims be afforded

an opportunity to change previously cast acceptances or rejections of the solicitation version of the Plan. The Plan may be amended, modified, or supplemented by the Debtors in the manner provided for by Section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to Section 1125 of the Bankruptcy Code, the Plan, and this Confirmation Order. In addition, after the Confirmation Date, the Debtors or the Plan Administrator, as applicable, may institute proceedings in the Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or this Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan. Further, prior to the Effective Date, the Debtors may make appropriate technical adjustments and non-material changes to the Plan without further order or approval of the Court.

28.     Provisions of Plan and Confirmation Order Non-severable and Mutually Dependent. The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are non-severable and mutually dependent.

29.     Governing Law. Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

30.     Applicable Non-bankruptcy Law. Pursuant to Sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan and related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

31.     Documents and Instruments. Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents and instruments

necessary or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Confirmation Order.

32.    <u>Governmental Approvals Not Required</u>. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan.

33.    <u>Notice of Entry of Confirmation Order and Effective Date</u>. The form of notice of Effective Date and entry of this Confirmation Order, attached hereto as **<u>Exhibit B</u>** (the "<u>Effective Date Notice</u>"), provides adequate and reasonable notice and is hereby approved. On or within two (2) Business Days of the Effective Date, the Debtors shall file and serve the Effective Date Notice on the following parties: (i) all parties filing a notice of appearance and request for service pursuant to Bankruptcy Rule 2002 in these Chapter 11 Cases, (ii) state, provincial and local taxing authorities in which the Debtors did business, (iii) the Internal Revenue Service, (iv) the Securities and Exchange Commission, (v) the United States Attorney for the Eastern District of Kentucky, (vi) Holders of Claims or Interests, (vii) all counterparties to Executory Contracts and Unexpired Leases with the Debtors, (viii) the U.S. Trustee and (ix) all persons or entities listed on the Debtors' creditor mailing matrix.

34.    <u>Waiver of Stay</u>. The stay of this Confirmation Order provided by any Bankruptcy Rule (including, without limitation, Bankruptcy Rules 3020(e), 6004(h), and 6006(d)), whether for fourteen (14) days or otherwise, is hereby waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by the Court.

35.     <u>Inconsistency</u>. To the extent of any inconsistency between this Confirmation Order and the Plan, this Confirmation Order shall govern.

36.     <u>No Waiver</u>. The failure to specifically include any particular provision of the Plan in this Confirmation Order shall not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by reference.

Tendered by:

<u>/s/ James R. Irving</u>
James R. Irving
DENTONS BINGHAM GREENEBAUM LLP
3500 PNC Tower
101 S. Fifth Street
Louisville, KY 40202
Telephone:    (502) 587-3606
Facsimile:     (502) 587-3695
E-mail:          james.irving@dentons.com

*Counsel to the Debtors*

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Wednesday, November 11, 2020**
**(grs)**

## EXHIBIT A

### (The Plan)

**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

-------------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| | : | Case No. 20-50133-grs |
| OGGUSA, Inc., *et al.*[1] | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | Honorable Gregory R. Schaaf |

-------------------------------------------------------------- x

## DEBTORS' SECOND AMENDED JOINT PLAN OF LIQUIDATION (WITH MODIFICATIONS)

DENTONS BINGHAM GREENEBAUM LLP

 */s/ James R. Irving*
James R. Irving
April A. Wimberg
Christopher B. Madden
3500 PNC Tower
101 South Fifth Street
Louisville, Kentucky 40202
Telephone: (502) 587-3606
E-mail: james.irving@dentons.com
          april.wimberg@dentons.com
          chris.madden@dentons.com

Michael J. Barrie
William M. Alleman, Jr.
Gregory W. Werkheiser
BENESCH, FRIEDLANDER, COPLAN,
& ARONOFF LLP
1313 North Market Street, Suite 1201
Wilmington, DE 19801
Telephone: (302) 442-7010
E-mail: mbarrie@beneschlaw.com
          walleman@beneschlaw.com
          gwerkheiser@beneschlaw.com

-and-

Elliot M. Smith
BENESCH, FRIEDLANDER, COPLAN,
& ARONOFF LLP
200 Public Square, Suite 2300
Cleveland, OH 44114
Telephone: (216) 363-4500
E-mail: esmith@beneschlaw.com

*Counsel for the Debtors*

Dated: November 6, 2020

---

[1] The Debtors in these chapter 11 bankruptcy cases are (with the last four digits of their federal tax identification numbers in parentheses): OGGUSA, Inc., f/k/a GenCanna Global USA, Inc. (0251); OGG, Inc., f/k/a GenCanna Global, Inc. (N/A); and Hemp Kentucky, LLC (0816).

# TABLE OF CONTENTS

Page

ARTICLE I DEFINED TERMS AND RULES OF INTERPRETATION .................................1

    A.    Defined Terms .............................................................................................1

    B.    Rules of Interpretation ................................................................................1

    C.    Computation of Time...................................................................................2

    D.    Governing Law ............................................................................................2

    E.    Reference to Monetary Figures....................................................................2

ARTICLE II UNCLASSIFIED CLAIMS.......................................................................2

    A.    Administrative Claims; Administrative Claim Bar Date ................................2

    B.    DIP Claims..................................................................................................2

    C.    Professional Fee Claims...............................................................................2

    D.    Priority Tax Claims......................................................................................3

    E.    Gap Period Claims .......................................................................................3

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS....................3

    A.    Classification of Claims and Interests..........................................................3

    B.    Treatment and Voting of Claims and Interests .............................................5

    C.    Special Provision Governing Unimpaired Claims .........................................7

    D.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ...............................................................................................................7

    E.    Subordinated Claims....................................................................................8

    F.    Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes ..............8

    G.    Controversy Concerning Impairment ...........................................................8

ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN ..........................................8

    A.    Settlement of Claims and Interests ..............................................................8

    B.    Deemed Substantive Consolidation .............................................................9

    C.    The Plan Administrator and the Wind-Down Trust.....................................10

    D.    Dissolution of the Debtors; Deemed Resignations ......................................17

    E.    Cancellation of Existing Securities and Agreements ...................................18

    F.    Corporate Action.......................................................................................18

    G.    Effectuating Documents; Further Transactions ..........................................18

    H.    Exemptions from Certain Taxes and Fees ..................................................18

    I.    Privileges as to Certain Causes of Action ..................................................19

    J.    Preservation of Retained Causes of Action.................................................19

ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............20

# TABLE OF CONTENTS
(continued)

**Page**

A.    Rejection of Executory Contracts and Unexpired Leases ............................................... 20

B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases .................... 20

C.    Modifications, Amendments, Supplements, Restatements and Other Agreements ........ 20

D.    Reservation of Rights; Preservation of Preexisting Obligations to Debtors ................... 21

E.    Insurance Policies .................................................................................................... 21

ARTICLE VI PROVISIONS GOVERNING AND DISTRIBUTIONS ..................................................... 22

A.    Timing and Calculation of Amounts to Be Distributed ..................................... 22

B.    Distributions on Account of Obligations to Multiple Debtors ........................... 22

C.    Distributions Generally ............................................................................... 22

D.    Rights and Powers of Disbursing Agent ....................................................... 22

E.    Delivery of Distributions and Undeliverable or Unclaimed Distributions ....... 23

F.    Reserves for Disputed Claims ...................................................................... 24

G.    Distributions on Account of Claims or Interests Allowed After the Effective Date ........ 24

H.    Compliance with Tax Requirements ............................................................. 25

I.    Allocations Between Principal and Accrued Interest ...................................... 25

J.    No Postpetition Interest on Claims ............................................................... 25

K.    Foreign Currency Exchange Rate ................................................................. 25

L.    Setoffs and Recoupment .............................................................................. 25

M.    Claims Paid or Payable by Third Parties ...................................................... 26

N.    No Payment Over Full Amount ................................................................... 27

ARTICLE VII PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND
DISPUTED CLAIMS ..................................................................................................... 27

A.    Allowance of Claims .................................................................................. 27

B.    Claims Administration Responsibilities ....................................................... 27

C.    Estimation of Claims .................................................................................. 27

D.    Adjustment to Claims Without Objection ..................................................... 28

E.    Time to File Objections to Claims ............................................................... 28

F.    Disallowance of Claims .............................................................................. 28

G.    Amendments to Claims ............................................................................... 28

H.    No Distribution or Payments Pending Allowance .......................................... 28

I.    Distributions and Payments After Allowance ............................................... 28

ARTICLE VIII SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ............ 29

A.    Settlement, Compromise and Release of Claims and Interests ....................... 29

13947526 v5

**TABLE OF CONTENTS**
(continued)

Page

| | | |
|---|---|---|
| B. | Release of Liens | 29 |
| C. | Debtor Release | 29 |
| D. | [Intentionally Omitted] | 31 |
| E. | Exculpation | 31 |
| F. | Injunction | 32 |
| G. | Protection Against Discriminatory Treatment | 32 |
| H. | Document Retention | 33 |
| I. | Term of Injunction or Stays | 33 |
| J. | Subordination Rights | 33 |

ARTICLE IX CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ........................33

| | | |
|---|---|---|
| A. | Conditions Precedent to the Effective Date | 33 |
| B. | Waiver of Conditions | 34 |
| C. | Substantial Consummation | 34 |
| D. | Effect of Failure of Conditions | 34 |

ARTICLE X MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN ......................34

| | | |
|---|---|---|
| A. | Modifications and Amendments | 34 |
| B. | Effect of Confirmation on Modifications | 35 |
| C. | Revocation or Withdrawal of Plan | 35 |

ARTICLE XI RETENTION OF JURISDICTION ........................35

ARTICLE XII MISCELLANEOUS PROVISIONS ........................37

| | | |
|---|---|---|
| A. | Immediate Binding Effect | 37 |
| B. | Additional Documents | 37 |
| C. | Payment of Statutory Fees | 37 |
| D. | UCC and Cessation of Fee and Expense Payment | 38 |
| E. | Reservation of Rights | 38 |
| F. | Successors and Assigns | 38 |
| G. | Notices | 38 |
| H. | Entire Agreement | 40 |
| I. | Exhibits | 40 |
| J. | Non-Severability of Plan Provisions | 41 |
| K. | Closing of Chapter 11 Cases | 41 |
| L. | Conflicts | 41 |

13947526 v5

**DEBTORS' SECOND AMENDED JOINT PLAN OF LIQUIDATION (WITH MODIFICATIONS)**

OGGUSA, Inc. (f/k/a GenCanna Global USA, Inc.), OGG, Inc. (f/k/a GenCanna Global, Inc.), and Hemp Kentucky, LLC, as debtors and debtors in possession herein, hereby respectfully propose the following second amended joint plan of liquidation under chapter 11 of the Bankruptcy Code.

## ARTICLE I
## DEFINED TERMS AND RULES OF INTERPRETATION

### A.    Defined Terms

All capitalized terms used herein and not otherwise defined have the meanings given to them in the Definitions attached hereto as <u>Appendix 1</u> or, if not defined in <u>Appendix 1</u>, then as defined in the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq*., unless the context clearly requires otherwise.

### B.    Rules of Interpretation

For purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan; (6) unless otherwise specified, all references herein to exhibits are references to exhibits to this Plan or the Plan Supplement, as applicable; (7) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (8) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (13) any effectuating provisions may be interpreted by the Debtors or the Plan Administrator, as applicable, in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall be conclusive; (14) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; (15) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (16) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company laws; and (17) except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors

or the Wind-Down Trust shall mean the Debtors and the Wind-Down Trust, as applicable, to the extent the context requires.

**C.      Computation of Time**

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

**D.      Governing Law**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided, however,* that corporate or limited liability company governance matters relating to those Debtors not incorporated in Delaware shall be governed by the laws of the state of incorporation or formation of the applicable Debtor.

**E.      Reference to Monetary Figures**

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

**ARTICLE II**
**UNCLASSIFIED CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, DIP Claims, Professional Fee Claims, Priority Tax Claims, and Gap Period Claims have not been classified and, thus, are excluded from Classes of Claims and Interests set forth in Article III.

**A.      Administrative Claims; Administrative Claim Bar Date**

1.      Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Plan Administrator, as applicable, to the extent an Allowed Administrative Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Cases, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims) will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of the unpaid portion of such Allowed Administrative Claim in accordance with the following: (a) if such Administrative Claim is Allowed on or prior to the Effective Date, no later than 45 days after the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (b) if such Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (c) at such time and upon such terms as may be agreed upon by the Holder of such Allowed Administrative Claim and the Debtors or the Plan Administrator; or (d) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

13947526 v5

2.      Except for Professional Fee Claims (which are addressed in Article II.C and unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Plan Administrator no later than the Administrative Claim Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order. Objections to such requests must be Filed and served on the Plan Administrator (excluding the Plan Administrator if the objecting party) and the requesting party on or before the Administrative Claim Objection Deadline. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with, an order of the Bankruptcy Court that becomes a Final Order.

3.      Except for Professional Fee Claims, Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not file and serve such a request on or before the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Estates, the Wind-Down Trust, the Plan Administrator, or the property of any of the foregoing, and such Administrative Claims shall be deemed released as of the Effective Date without the need for any objection from the Debtors or the Plan Administrator or any notice to or action, order, or approval of the Bankruptcy Court or any other Entity.

**B.      DIP Claims**

In accordance with the MGG Settlement Agreement, all remaining DIP Claims shall be deemed satisfied, compromised, settled, and released as set forth in this Plan and the MGG Settlement Agreement.

**C.      Professional Fee Claims**

1.      <u>Final Fee Applications and Payment of Professional Fee Claims</u>

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be Filed no later than 45 days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court orders. The Plan Administrator (or the authorized signatories to the Professional Fee Escrow Account, after consultation with the Plan Administrator) shall pay to each Holder of an Allowed Professional Feel Claim the unpaid amount of such Holder's Allowed Professional Fee Claim from funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claim is Allowed by entry of an order of the Bankruptcy Court, which order has not thereafter been vacated, reversed or stayed as to such Professional Fee Claim.

2.      <u>Professional Fee Escrow Account</u>

As soon as is reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the estimated Professional Fee Escrow Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. No Liens, claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way. Funds held in the Professional Fee Escrow Account shall not be considered property of the Estates, the Debtors, the Plan Administrator, or the Wind-Down Trust.

13947526 v5

The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Debtors or the Plan Administrator, as applicable, from the funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by an order of the Bankruptcy Court; provided that the Debtors' and the Plan Administrator's obligations to pay Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Fee Escrow Account and such Allowed Professional Fee Claims shall also be payable from the Wind-Down Trust Assets. When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account shall promptly be paid to the Wind-Down Trust without any further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such funds shall thereafter constitute Wind-Down Trust Assets.

   3. <u>Professional Fee Escrow Amount</u>

   Each Professional shall provide a reasonable and good-faith estimate of such Professional's unpaid fees and expenses incurred and projected to be outstanding as of the Effective Date, and shall deliver such estimate to the Debtors no later than three (3) days before the anticipated Confirmation Hearing; *provided, however,* that such estimate shall not be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims and such Professionals are not bound to any extent by the estimates. If a Professional does not provide an estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional. The total aggregate amount so estimated as of the Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account, provided that the Plan Administrator shall use Cash from the Wind-Down Trust to increase the amount of the Professional Fee Escrow Account to the extent fee applications are Filed after the Effective Date in excess of the amount held in the Professional Fee Escrow Account based on such estimates.

**D.**  **Priority Tax Claims**

   Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

**E.**  **Gap Period Claims**

   Except to the extent that a Holder of an Allowed Gap Period Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, and release of, and in exchange for, each Allowed Gap Period Claim, each Holder of such Allowed Gap Period Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(A) of the Bankruptcy Code.

**ARTICLE III**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

**A.**  **Classification of Claims and Interests**

   Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and Distributions pursuant to the Plan and in accordance with section 1122 and 1123(a)(1) of the Bankruptcy Code. A

13947526 v5

Claim or an Interest is classified in a particular Class only to the extent that such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes. A Claim also is classified in a particular Class for the purpose of receiving Distributions under the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against each Debtor pursuant to the Plan is as set forth in the table immediately below. If Substantive Consolidation is not approved or the Debtors withdraw their request for Substantive Consolation, the Plan shall apply as a separate Plan for each Debtor, and the classification of Claims and Interests set forth herein shall apply separately to each Debtor. Certain of the Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and such Claims shall be treated as set forth in Article III.F hereof.  All of the potential Classes for the Debtors are set forth herein.

If Substantive Consolidation is not approved or the Debtors' request for Substantive Consolidation is withdrawn, then for all purposes under the Plan, each Class will contain sub-Classes for each of the Debtors. Voting tabulations for recording acceptances or rejections of the Plan shall be conducted on a Debtor-by-Debtor basis as set forth above.

As set forth in Article IV.B hereof, the Debtors are requesting that their Estates be deemed substantively consolidated for the purposes of voting, Confirmation, Consummation, and implementation of Distributions pursuant to the Plan.  If the Bankruptcy Court approves the deemed substantive consolidation as part of the Confirmation Order or otherwise, then the sub-Classes identified in the table below shall be disregarded for such purposes.

| Plan Classification Table | | | | |
|---|---|---|---|---|
| Key to sub-Classes: A = OGUSA, Inc. (f/k/a GenCanna Global USA, Inc.); B = OGG, Inc. (f/k/a GenCanna Global, Inc.); and C = Hemp Kentucky, LLC | | | | |
| **Class** | **sub-Classes[2]** | **Claim** | **Status** | **Voting Rights** |
| 1 | A, B & C | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | A, B & C | Other Secured Claims | Impaired | Entitled to Vote |
| 3 | A & B | MGG Subordinated Claims | Impaired | Entitled to Vote |
| 4 | A, B & C | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | A, B & C | Intercompany Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 6 | A, B & C | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 7 | A, B & C | Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

---

[2] Sub-Classes are subject to elimination in the event that deemed substantive consolidation is approved.

13947526 v5

**B.      Treatment and Voting of Claims and Interests**

Subject to Article IV hereof, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, and release of, and in exchange for, such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors and the Holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such Holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

1.      Class 1 (Other Priority Claims)

a.      *Classification:* Class 1 consists of all Allowed Other Priority Claims.

b.      *Treatment:* Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, and release of and in exchange for such Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall receive, at the option of the Debtors or the Plan Administrator, as applicable:

i.      payment in full in Cash of the unpaid portion of its Allowed Other Priority Claim on the  later of the Effective Date and such date such Other Priority Claim becomes an Allowed Other Priority Claim; or

ii.      such other treatment rendering such Holder's Allowed Other Priority Claim Unimpaired.

c.      *Voting:*   Class 1 is Unimpaired under the Plan. Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of an Other Priority Claims are not entitled to vote to accept or reject the Plan.

2.      Class 2 (Other Secured Claims)

a.      *Classification:* Class 2 consists of all Allowed Other Secured Claims.

b.      *Treatment:* Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment or as otherwise ordered by the Bankruptcy Court, in full and final satisfaction, compromise, settlement, and release of and in exchange for such Allowed Other Secured Claim, each Holder of an Allowed Other Secured Claim shall receive, at the option of the Debtors or the Plan Administrator, as applicable:

i.      on the first applicable Distribution Date as determined pursuant to Article VI.A hereof, payment in full in Cash of such Holder's Allowed Other Secured Claim;

ii.      on the first applicable Distribution Date as determined pursuant to Article VI.A hereof, receipt of the collateral securing any such Allowed Other Secured Claim;

13947526 v5

       iii.     in the event that the Debtors or the Plan Administrator, as applicable, sells the property encumbered by the Liens securing such Allowed Other Secured Claim free and clear of such Liens, the Holder of such Allowed Other Secured Claim shall be entitled to receive the net proceeds of the sale of such property until such Allowed Other Secured Claim is paid in full; or

       iv.     such other treatment rendering such Holder's Allowed Other Secured Claim Unimpaired.

c.    *Voting:*  Class 2 is Impaired under the Plan. Holders of Allowed Other Secured Claims are entitled to vote to accept or reject the Plan.

3.    <u>Class 3 (MGG Subordinated Claims)</u>

a.    *Classification:* Class 3 consists of all MGG Subordinated Claims.

b.    *Allowance:* Pursuant to the MGG Settlement Agreement, the MGG Subordinated Claims have been Allowed in the aggregate amount of $27,016,182.27, but are subordinated in rights of payment and priority to all Allowed General Unsecured Claims and all other Allowed Claims that, pursuant to the Plan, are senior in priority to such Allowed General Unsecured Claims.

c.    *Treatment:* On the Effective Date and in accordance with the terms of the MGG Settlement Agreement, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Allowed MGG Subordinated Claim, each Holder of an Allowed MGG Subordinated Claim shall be deemed to receive on account of its Allowed MGG Subordinated Claim its Ratable Share of Subordinated Beneficial Interests.

d.    *Voting:*  Class 3 is Impaired under the Plan. Pursuant to the MGG Settlement Agreement, the Prepetition Agent is deemed the Holder of the MGG Subordinated Claims for purposes of voting on the Plan and is entitled to vote to accept or reject the Plan.

4.    <u>Class 4 (General Unsecured Claims)</u>

a.    *Classification:* Class 4 consists of all Allowed General Unsecured Claims.

b.    *Treatment:* Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, on the first applicable Distribution Date as determined pursuant to Article VI.A hereof, in full and final satisfaction, compromise, settlement, and release of and in exchange for such Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive on account of such Allowed General Unsecured Claim against a Debtor, its Ratable Share of Senior Beneficial Interests in the Wind-Down Trust.

c.    *Voting:*  Class 4 is Impaired under the Plan. Holders of Allowed General Unsecured Claims are entitled to vote to accept or reject the Plan.

5.    <u>Class 5 (Intercompany Claims)</u>

    13947526 v5

a.      *Classification:* Class 5 consists of all Intercompany Claims.

b.      *Treatment:* Holders of Intercompany Claims shall not receive any Distribution or other payments, or retain any property, on account of such Intercompany Claims. On or after the Effective Date, the Plan Administrator may reconcile such Intercompany Claims as may be advisable in order to avoid the incurrence of any past, present, or future tax or similar liabilities by the Debtors.

c.      *Voting:*   Class 5 is Impaired under the Plan. Holders of Intercompany Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan.

6.      <u>Class 6 (Section 510(b) Claims)</u>

a.      *Classification:* Class 6 consists of all Section 510(b) Claims.

b.      *Treatment:* Section 510(b) Claims, if any, shall be cancelled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and holders of Section 510(b) Claims will not receive any Distribution or other payments, or retain any property, on account of such Section 510(b) Claims.

c.      *Voting:*   Class 6 is Impaired under the Plan. Holders of Intercompany Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Section 510(b) Claims are not entitled to vote to accept or reject the Plan.

7.      <u>Class 7 (Interests)</u>

a.      *Classification:* Class 7 consists of all Interests.

b.      *Treatment:* Interests shall be cancelled and released without any Distribution, payments or retention of any property on account of such Interests.

c.      *Voting:*   Class 7 is Impaired under the Plan. Holders of Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Interests are not entitled to vote to accept or reject the Plan.

## C.      **Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Claims that are Unimpaired, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims that are Unimpaired.  Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under the Plan.

## D.      **Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code**

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims. The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims

13947526 v5

or Interests. The Debtors reserve the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

**E.     Subordinated Claims**

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Interests and the respective Distributions, payments and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors and the Plan Administrator, as applicable, reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

**F.     Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes**

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

**G.     Controversy Concerning Impairment**

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**ARTICLE IV**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

**A.     Settlement of Claims and Interests**

1.     <u>Global Settlement</u>

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan incorporates a compromise and settlement of numerous inter-Debtor, Debtor-creditor, and intercreditor issues designed to achieve an economic settlement of Claims against the Debtors and an efficient resolution of these Chapter 11 Cases. This global settlement constitutes a settlement of a number of the potential litigation issues, including issues regarding substantive consolidation, the treatment of Intercompany Claims, the allocation (or lack thereof) of Assets among the Estates, and the nature, amount, secured status and priority of the Claims of MGG, the Purchaser, the Prepetition Secured Parties and the DIP Secured Parties. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the compromises and settlements provided for in the Plan, and the Bankruptcy

13947526 v5

Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, their Estates, their creditors, and other parties-in-interest, and are fair, equitable, and within the range of reasonableness. Each provision of the global settlement shall be deemed non-severable from each other and from the remaining terms of the Plan..

    2.    <u>MGG Settlement</u>

Without prejudice to the Debtors' ability to pursue approval of the MGG Settlement by the separate motion requesting such relief filed by the Debtors on July 30, 2020 [Docket No. 1145], as such motion has been and may be amended from time to time (including such changes as are contemplated by the Mediation Settlement Term Sheet), the Plan shall be deemed a motion to approve the MGG Settlement in accordance with the terms of the MGG Settlement Agreement.  The MGG Settlement Agreement includes the good-faith compromise and settlement of all potential claims and Causes of Action of the Debtors and their Estates against the MGG Parties and certain Related Parties, pursuant to Bankruptcy Rule 9019, except as expressly provided in the MGG Settlement Agreement.  Additionally, unless the Bankruptcy Court enters a separate order providing for the approval of the MGG Settlement Agreement and related relief, the Debtors may request that the entry of the Confirmation Order will constitute the Bankruptcy Court's approval of such compromises and settlements under Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such compromise and settlement is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates.

On the Effective Date, the transactions contemplated by the MGG Settlement Agreement and Plan, including the receipt by the Debtors or the Wind-Down Trust, as applicable, of the MGG Settlement Payment, shall be in full and final settlement of all Causes of Action released or subject to release pursuant to the terms of the MGG Settlement Agreement and any action or proceeding that has been or may be commenced with respect to any such Cause of Action shall be deemed dismissed with prejudice.

Pursuant to the terms of the MGG Settlement Agreement and this Plan, each MGG Subordinated Claim is an Allowed Class 3 Claim entitled to receive on account thereof its Ratable Share of Subordinated Beneficial Interests.

**B.**    **Deemed Substantive Consolidation**

This Plan shall serve as a motion of the Debtors seeking entry of a Bankruptcy Court order approving the deemed substantive consolidation of the Debtors' Estates provided for herein. The Debtors reserve the right to file appropriate alternative pleadings in support of the proposed deemed substantive consolidation in connection with the Confirmation Hearing. If no written objections to the deemed substantive consolidation requested herein are timely filed by the deadline fixed by the Bankruptcy Court for the filing of objections to the Confirmation of the Plan or if such objections are overruled by the Bankruptcy Court, the deemed substantive consolidation proposed by the Plan may be approved by the Bankruptcy Court at the Confirmation Hearing.

Subject to the Bankruptcy Court's approval of the deemed substantive consolidation requested herein, the Debtors' Estates shall be deemed substantively consolidated into a single Estate for certain limited purposes relating to the Plan, including voting, Confirmation and Distribution (but for the avoidance of doubt, without altering the separate Petition Dates for each Debtor).  As a result of the deemed substantive consolidation of the Estates, each Class of Claims and Interests will be treated as against a single consolidated Estate without regard to the separate legal existence of the Debtors. The Plan will not result in the merger or otherwise affect the separate legal existence of each Debtor, other than with respect to voting and Distribution rights under the Plan.  Specifically, on and after the Effective Date, pursuant to the Plan and Confirmation Order, (i) all assets and liabilities of the Debtors shall be

        13947526 v5

treated as though they were merged solely for purposes of Consummation of the Plan; (ii) no Distribution or other payments shall be made under the Plan on account of any Intercompany Claims; (iii) for all purposes associated with Confirmation of the Plan, including, without limitation, for purposes of tallying votes on the Plan, the Estates of the Debtors shall be deemed to be one consolidated Estate; (iv) each and every Claim filed or to be filed in the Chapter 11 Cases of the Debtors shall be deemed filed against the substantively consolidated Estate, and shall be Claims against and obligations of the substantively consolidated Estate; (v) to the extent any holder of a Claim filed substantially similar claims against more than one of the Debtors based upon the same transaction, act or omission, such Creditor shall be deemed to have one (1) Claim against Debtor GCG Opco (Case No. 20-50133) for voting and purposes of implementing Distributions, and duplicative Claims Filed or Scheduled in the Chapter 11 Case of any other Debtor shall be deemed disallowed and expunged from the Claims Register maintained in the Chapter 11 Cases; (vi) to the extent any Holder of a Claim filed more than one (1) Claim against one or more of the Debtors based upon different transactions, acts or omissions, such claims shall be aggregated, and such creditor shall be deemed to have only one (1) Claim in the aggregate amount of the filed claims for voting and purposes of implementing Distributions; and (vii) any guaranty by one or more of the Debtors of the obligations of another Debtor will be eliminated and any Claim filed against one or more of the Debtors based upon any guaranty shall be deemed disallowed and expunged from the Claims Register maintained in the Chapter 11 Cases. Substantive consolidation pursuant to this Article IV.B and the Confirmation Order and/or other Final Order of the Bankruptcy Court, shall not affect: (w) the legal and organizational structure of the Debtors; (x) guarantees, liens, and security interests that are required to be maintained (i) under the Bankruptcy Code, or (ii) pursuant to the Plan; (y) distributions from any Insurance Policies or proceeds of such policies or rights to coverage under any such Insurance Policies; or (z) the dissolution of any of the Debtors after the Effective Date in accordance with the authority and discretion of the Plan Administrator as provided in the Plan and Wind-Down Trust Agreement.

The Debtors reserve the right at any time up to the conclusion of the Confirmation Hearing to withdraw their request for Substantive Consolidation of these Chapter 11 Cases, to seek Confirmation of the Plan as if there were no Substantive Consolidation, and to seek Confirmation of the Plan with respect to one Debtor even if Confirmation with respect to the other Debtors is denied; *provided, however,* that in the event that the Debtors do opt to pursue Confirmation of the Plan for the Debtors and their Estates on a non-consolidated or partially-consolidated basis, all rights of the UCC and other parties in interest that may be adversely affected thereby to object to Confirmation on such terms are fully reserved.

## C.    The Plan Administrator and the Wind-Down Trust

### 1.    Appointment of the Plan Administrator

The Plan Administrator shall be jointly selected by the Debtors and the UCC in accordance with the procedures agreed to by the Mediation Settling Parties in the Mediation Settlement Term Sheet, in which case, the Plan Administrator's identity, affiliation and general compensation terms shall be disclosed in the Plan Supplement; *provided, however,* that absent agreement of the Debtors and the UCC, the Plan Administrator shall be selected by the Bankruptcy Court from among the candidate names submitted by the Debtors and the UCC, with the identity and affiliation of the Plan Administrator to be disclosed at the Confirmation Hearing or as soon thereafter as is practicable.  At the Confirmation Hearing, the Bankruptcy Court shall consider and, if appropriate, ratify the selection of the Plan Administrator. All compensation for the Plan Administrator shall be paid from the Wind-Down Trust Account in accordance with the terms of the Plan and the Wind-Down Trust Agreement. The approved Person shall serve as the Plan Administrator upon execution of the Wind-Down Trust Agreement on the Effective Date. The Plan Administrator shall not be required to give any bond or surety or other security for the performance of their duties unless otherwise ordered by the Bankruptcy Court. In the event that the Plan Administrator resigns or is removed, terminated, or otherwise unable to serve as Plan Administrator,

13947526 v5

then successors shall be appointed  by the Advisory Committee, subject to approval of the Bankruptcy Court. To the extent that the Advisory Committee does not appoint a successor Plan Administrator within the time periods specified in the Wind-Down Trust Agreement, then the Bankruptcy Court, upon the motion of any party-in-interest, including counsel to the Wind-Down Trust, shall approve a successor to serve as the Plan Administrator.  Any successor Plan Administrator shall be bound by and comply with the terms of this Plan, the Confirmation Order, and the Wind-Down Trust Agreement.

Following the Effective Date, the Plan Administrator shall also be, and shall enjoy the powers of, the Debtors' authorized representative pursuant to Section 1123 of the Bankruptcy Code and other applicable law for all purposes, including, without limitation, all Retained Causes of Action. No further proof of such power shall be necessary or required.

      2.    <u>The Wind-Down Trust Agreement</u>

The Wind-Down Trust Agreement shall be in form and substance reasonably acceptable to the UCC and the Debtors and, unless otherwise agreed in writing by each of the Mediation Settling Parties, shall be consistent in all material respects with the terms of the Mediation Settlement Term Sheet. The Wind-Down Trust Agreement may specify certain matters as to which Plan Administrator is required to obtain prior approval of the Advisory Committee or the Bankruptcy Court.  A form of the Wind-Down Trust Agreement shall be provided in the Plan Supplement. On the Effective Date, all Beneficiaries of the Wind-Down Trust shall be deemed to have ratified and become bound by the terms and conditions of the Wind-Down Trust Agreement.

      3.    <u>Creation of Wind-Down Trust</u>

On the Effective Date: (a) the Plan Administrator shall sign the Wind-Down Trust Agreement and, in such capacity, accept all Wind-Down Trust Assets on behalf of the Beneficiaries thereof; (b) the Plan Administrator, subject to the advice of the Advisory Committee, shall be authorized to obtain, collect, seek the turnover of, liquidate, and/or abandon the Wind-Down Trust Assets, including the Retained Causes of Action, in accordance with the terms of this Plan, the Wind-Down Trust Agreement and the Confirmation Order. The Wind-Down Trust will then be created and effective without any further action by the Bankruptcy Court or any Person as of the Effective Date. The Wind-Down Trust shall be established for the primary purpose of prosecuting the Retained Causes of Action, collecting and liquidating the Wind-Down Trust Assets, collecting and monetizing the Estate Recoveries and making Distributions in accordance with this Plan and the Wind-Down Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except only in the event and to the extent necessary to, and consistent with, the liquidating purpose of the Wind-Down Trust.

The Plan Administrator shall also receive and administer the Professional Fee Escrow Account, but the Professional Fee Escrow Account and any funds contained in such account shall not be considered Wind-Down Trust Assets, except as otherwise expressly provided in this Plan.  Similarly, and for the avoidance of doubt, no portion of the MGG Settlement Escrowed Funds shall constitute Wind-Down Trust Assets unless and until such MGG Settlement Escrowed Funds until the reconciliation provided for in Section 7 of the MGG Settlement Agreement has been completed, either by agreement of the Purchaser and the Plan Administrator or by order of the Bankruptcy Court.  Any portion of the MGG Settlement Escrowed Funds that is determined, whether by agreement or by order of the Bankruptcy Court, to be payable to the Debtors or the Wind-Down Trust, as applicable, shall thereafter be a Wind-Down Trust Asset.

      4.    <u>Beneficiaries of the Wind-Down Trust</u>

13947526 v5

The Holders of Allowed General Unsecured Claims entitled to Distributions hereunder shall be the primary Beneficiaries and the Holders of Allowed MGG Subordinated Claims shall be the residual Beneficiaries of the Wind-Down Trust.  Such Beneficiaries shall be bound by the Wind-Down Trust Agreement. The interests of the Beneficiaries in the Wind-Down Trust shall be uncertificated and non-transferrable without the prior written consent of the Plan Administrator.

     5.     <u>Vesting and Transfer of Assets to the Wind-Down Trust</u>

Under Section 1141(b) of the Bankruptcy Code, the Wind-Down Trust Assets shall be assigned, transferred, and vested in the Wind-Down Trust upon the Effective Date free and clear of all Claims and Liens; *provided, however,* that, subject to the terms of this Plan, the Wind-Down Trust Agreement and the Confirmation Order, as applicable, and the advice of the Advisory Committee, the Plan Administrator may abandon or otherwise not accept any assets of the Debtors or their Estates that if accepted into the Wind-Down Trust would be Wind-Down Trust Assets that the Plan Administrator believes, in good faith, to have no value to, or will be unduly burdensome to, the Wind-Down Trust. Any assets that the Plan Administrator so abandons or otherwise does not accept shall not be property of the Wind-Down Trust. As of the Effective Date, all Wind-Down Trust Assets shall vest in the Wind-Down Trust and all assets dealt with in this Plan shall be free and clear of all Liens, Claims, and Interests except as otherwise specifically provided in this Plan or in the Confirmation Order.

     6.     <u>Funding of the Wind-Down Trust</u>

On the Effective Date and thereafter as additional funds become available, the Wind-Down Trust shall be funded with: (a) the remaining portion of the Cash Purchase Price, if any; (b) the MGG Settlement Payment and other Estate Recoveries; (c) Cash proceeds from the sale of any of the Debtors' assets that were not Purchased Assets; (d) Cash proceeds from prosecution or settlement of Causes of Action (and, following the Effective Date, Retained Causes of Action); (e) Cash on hand; (f) the benefits, rights, interests and proceeds of any Insurance Policies with respect to the Debtors only to the extent (i) payable to the Debtors in accordance with the terms of the Insurance Policies and (ii) not Purchased Assets; (g) all rights of the Debtors under the terms of the MGG Settlement Agreement; (h) all rights of the Debtors under the Sale Documents; and (i) any and all other assets belonging to the Debtors' Estates.

 On the Effective Date, the Debtors and the Debtors' Estates shall transfer and be deemed to have transferred the Wind-Down Trust Assets to the Wind-Down Trust and such Wind-Down Trust Assets shall vest in the Wind-Down Trust to be utilized, administered, and distributed by the Plan Administrator in accordance with the terms and conditions of this Plan, the Confirmation Order, and Wind-Down Trust Agreement.

Further, on the Effective Date, the Wind-Down Trust Account, the Professional Fee Escrow Account and the Disputed Claims Reserve each shall be established and funded in accordance with the terms of this Plan and the Wind-Down Trust Agreement.

     7.     <u>Distributions from the Wind-Down Trust</u>

Distributions from the Wind-Down Trust shall be made in accordance with the Plan and the Wind-Down Trust Agreement. For the avoidance of doubt, the net proceeds of the Retained Causes of Action and Estate Recoveries shall be used to pay any Wind-Down Trust Operating Expenses prior to making any Distributions to Beneficiaries of the Wind-Down Trust.

     8.     <u>Wind-Down Trust Committees</u>

a.    *The Advisory Committee*

For the purpose of assisting the Plan Administrator in administering the Wind-Down Trust and otherwise implementing the Plan, the an advisory committee (the "Advisory Committee") shall be created on the Effective Date.  The Advisory Committee shall exercise such rights and duties as are set forth herein and in the Wind-Down Trust Agreement.

The Advisory Committee initially shall be comprised of three (3) members, each of whom shall be a Holder of a General Unsecured Claim.  The Members shall be selected as follows: (a) one (1) member shall be selected by the Debtors; (b) one (1) member shall be selected by the UCC; and (c) one (1) member shall be selected by agreement of the Debtors and the UCC; *provided, however,* that if the Debtors and the UCC are unable to agree upon the selection of the final initial member of the Advisory Committee, the Debtors and the UCC each may submit up to three (3) candidates for consideration to the Bankruptcy Court and the Bankruptcy Court will select the final member of the Advisory Committee from the names supplied.  None of the following Persons shall be eligible to serve on the Advisory Committee without the prior written consent of both the Debtors and the UCC: (a) any Person that has been retained as an attorney or other professional for the Debtors, the UCC or any member thereof at any time during the Chapter 11 Cases; or (b) any Person that currently serves or has served as an officer or director of any Debtor or any Affiliate of such Person.

Each member of the Advisory Committee shall serve until the earlier of: (i) his or her death or resignation; (ii) his or her removal pursuant to the Wind-Down Trust Agreement; and (iii) the termination of the Wind-Down Trust.  Advisory Committee members shall not be entitled to compensation for serving on the Advisory Committee, but shall be entitled to reimbursement of their reasonable and documented expenses incurred therewith (excluding fees and expenses to a member's attorneys or other professionals) in accordance with the terms of this Plan and the Wind-Down Trust Agreement.

The Advisory Committee may authorize its own dissolution by filing with the  Bankruptcy Court an appropriate notice that its responsibilities hereunder have concluded. Unless earlier dissolved, the Advisory Committee shall be dissolved on the date the last of the Chapter 11 Cases is closed.

b.    *The Oversight Committee*

As contemplated by the MGG Settlement Agreement, the Oversight Committee will be appointed as of the Effective Date to provide direction to the Plan Administrator and the LM Professionals in connection with the Litigation Matters (other than any Excluded LM Cause of Action).  The Oversight Committee shall have three (3) initial members, two (2) of which will be appointed by the Purchaser and one (1) of which will be the Plan Administrator or the Plan Administrator's designee. Upon the Effective Date, subject to the pre-approval of the Oversight Committee, the Plan Administrator shall engage the LM Professionals on behalf of the Wind-Down Trust (without prejudice to the ability of the Purchaser to also engage the LM Professionals with respect to the Litigation Matters) to provide the services relating to the Litigation Matters contemplated by the MGG Settlement Agreement.  In connection with the Litigation Matters (other than any Excluded LM Cause of Action), the Plan Administrator and the LM Professionals shall report to and take direction from the Oversight Committee, including with respect to the prosecution (including decisions on strategy, settlement or any determination not to prosecute) of the Litigation Matters.  For the avoidance of doubt, notwithstanding that the Plan Administrator on behalf of the Wind-Down Trust will be engaging the LM Professionals, payment of the fees and expenses of the LM Professionals (other than those relating to any LM Professional's provision of services to the Wind-Down Trust in connection with any Excluded LM Cause of Action) shall be the responsibility of the Purchaser in accordance with the terms of,  and to the extent provided in, the MGG Settlement Agreement.

13947526 v5

9.      Certain Powers and Duties of the Wind-Down Trust and Plan Administrator

        a.      *General Powers of the Plan Administrator*

The Plan Administrator shall have, and enjoy the powers of, the Debtors' exclusive authorized representative for all purposes in connection with the Wind-Down Trust and the Wind-Down Trust Assets. The Plan Administrator, subject to advice by the Advisory Committee, in accordance with the terms of the Plan, the Wind-Down Trust Agreement and the Confirmation Order, shall have the power and authority to perform the acts described in the Wind-Down Trust Agreement (subject to approval by the Bankruptcy Court where applicable), in addition to any powers granted by law or conferred to it by any other provision of this Plan or the Confirmation Order.  The powers, rights, and responsibilities of the Plan Administrator shall be specified in the Wind-Down Trust Agreement and shall include, subject to advice by the Advisory Committee in accordance with the terms of the Plan and the Wind-Down Trust Agreement, the authority, power, and responsibility to: (a) receive, manage, invest, supervise, and protect the Wind-Down Trust Assets; (b) with respect to non-Cash Wind-Down Trust Assets, with or without further order of the Bankruptcy Court, to sell or otherwise dispose of such non-Cash Wind-Down Trust Assets in such a manner and on such terms as the Plan Administrator determines in the exercise of its business judgment are likely maximize the value realizable by the Wind-Down Trust and its Beneficiaries; (c) pay taxes or other obligations incurred by the Wind-Down Trust and issue to employees or other Persons, and/or file with the appropriate Governmental Units, applicable tax and wage returns and forms; (d) retain and compensate, without further order of the Bankruptcy Court, (i) with respect to the Litigation Matters, the LM Professionals in accordance with the terms of the MGG Settlement Agreement and this Plan, and (ii) with respect to all other matters, subject to the limitations set forth in Article IV.C.9.b hereof, the services of attorneys and other professionals, employees and consultants to advise and assist in the recovery, administration, prosecution, monetization of, and Distribution of Wind-Down Trust Assets; (e) calculate and implement Distributions of the Wind-Down Trust Assets and the MGG Settlement Escrowed Funds paid to the Debtors or the Wind-Down Trust, as applicable, following the reconciliation provided for in Section 7 of the MGG Settlement Agreement; (f) calculate and make payments from the Professional Fee Escrow Account; (g) investigate, prosecute, compromise, and settle, in accordance with the specific terms of this Plan and the Wind-Down Trust Agreement and without further order of the Bankruptcy Court, the Retained Causes of Action; (h) resolve issues involving Claims and Interests in accordance with this Plan, including the power to object to Claims against the Debtors, and to subordinate and recharacterize Claims by objection, motion, or adversary proceeding against the Debtors without any further notice to or action, order or approval by the Court; (i) undertake all administrative functions of the Chapter 11 Cases, including the payment of fees payable to the U.S. Trustee under Section 1930 of Title 28 of the United States Code that are incurred post-Effective Date with respect to disbursements from the Wind-Down Trust and the ultimate closing of the Chapter 11 Cases and dissolution of the Debtor entities; (j) dissolve the Debtors' employee benefit plans, if any; and (k) take such other action as may be vested in or assumed by the Plan Administrator consistent with this Plan, the Wind-Down Trust Agreement, the Confirmation Order, and any other applicable Orders of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of this Plan.

Except as expressly set forth in this Plan, the Wind-Down Trust Agreement and the Confirmation Order, and subject to advice from the Advisory Committee, the Plan Administrator, on behalf of the Wind-Down Trust, shall have absolute discretion to pursue or not to pursue any Retained Causes of Action as  the Plan Administrator, subject to advice from the Advisory Committee in accordance with the Plan and the Wind-Down Trust Agreement, determines is in the best interests of the Beneficiaries and consistent with the purposes of the Wind-Down Trust, and shall be indemnified to the fullest extent permitted under applicable law by the Wind-Down Trust for the outcome of the Plan Administrator's decisions, other than those decisions constituting fraud, gross negligence, willful misconduct, bad faith or self-dealing.

13947526 v5

Subject to direction from the Advisory Committee in accordance with the Plan and the Wind-Down Trust Agreement, the Plan Administrator may incur any reasonable and necessary expenses in liquidating and converting the Wind-Down Trust Assets to Cash. The Plan Administrator shall have standing, authority, power, and right to assert, prosecute, and/or settle the Retained Causes of Action, including, with respect to the Wind-Down Trust, making a claim under Insurance Policies based upon its powers as a bankruptcy-appointed representative of the Debtors' Estates with the same or similar abilities possessed by insolvency trustees, receivers, examiners, conservators, liquidators, rehabilitators, or similar officials. The Retained Causes of Action will vest in the Wind-Down Trust as set forth in this Plan and the Wind-Down Trust Agreement. With respect to the provisions of the Asset Purchase Agreement, and the Sale Documents which survive the Effective Date and Consummation of this Plan, the Plan Administrator on behalf of the Wind-Down Trust shall be deemed a permitted assignee of the Debtors under the Asset Purchase Agreement and shall receive the benefit thereunder.

b.      *Limitations on Plan Administrator's Retention of Attorneys and Other Professionals*

The Plan Administrator shall not retain, employ or compensate (in respect of services to be provided on or after the Effective Date) any attorney or other professional that, in connection with the Chapter 11 Cases or the Debtors, (a) currently serves or previously has served as an attorney or other professional for any of (i) the Debtors, (ii) the UCC, (iii) any current or former member of the UCC, (iv) MGG, (v) the Purchaser, or (b) otherwise holds or represents an adverse interest with respect to the matter for which such attorney or other professional is to be retained.

Without limiting the foregoing, any attorneys or law firms engaged by the Plan Administrator to commence and/or prosecute a Lookback D&O Action or Lookback D&O Actions shall not be the same attorney or law firm as the Plan Administrator has retained for any other purpose in connection with the Chapter 11 Cases.

On the Effective Date, that certain Transition Agreement, dated July 8, 2020 (the "GB Service Agreement"), between Gary Broadbent and the Debtors shall be deemed assumed and assigned to the Wind-Down Trust. For the avoidance of doubt, the assumption and assignment of the GB Service Agreement to the Wind-Down Trust shall be without prejudice to the ability of either the Plan Administrator or Mr. Broadbent to terminate the GB Service Agreement in accordance with its terms.

c.      *Books and Records*

On the Effective Date, the Wind-Down Trust shall: (i) take possession of all Books and Records of the Debtors and the Estates that were not sold and transferred in connection with the Sale Transaction; and (ii) provide for the retention and storage of such Books and Records until such time as the Plan Administrator determines in accordance with the Wind-Down Trust Agreement, that retention of same is no longer necessary or beneficial.

d.      *Investments of Cash*

The Wind-Down Trust may invest Cash (including any earnings thereon or proceeds therefrom) as permitted by Section 345 of the Bankruptcy Code or in other prudent investments; *provided, however,* that such investments are permitted to be made by a liquidating trust within the meaning of Treasury Regulation Section 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings, or other controlling authorities.

e.      *Costs and Expenses of Administration of the Wind-Down Trust*

13947526 v5

Except as otherwise provided herein or in the MGG Settlement Agreement for expenses (including fees payable to attorneys and other professionals retained in connection with the Litigation Matters other than any Excluded LM Causes of Action), all Wind-Down Trust Operating Expenses shall be the responsibility of and paid by the Wind-Down Trust in accordance with the Wind-Down Trust Agreement from the Wind-Down Trust Assets. In connection with the establishment and funding of the Wind-Down Trust, the Debtors and UCC will confer and agree upon an initial budget to be funded to the Wind Down Trust Account for anticipated Wind-Down Trust Operating Expenses during the initial six months of the Wind-Down Trust. For the avoidance of doubt, notwithstanding that the Plan Administrator on behalf of the Wind-Down Trust will be engaging the LM Professionals, payment of the fees and expenses of the LM Professionals (other than those relating to any LM Professional's provision of services to the Wind-Down Trust in connection with any Excluded LM Cause of Action) shall be the responsibility of the Purchaser in accordance with the terms of, and to the extent provided in, the MGG Settlement Agreement.

The amounts funded to the Wind-Down Trust Account for Wind-Down Operating Expenses may be adjusted from time to time as determined by the Plan Administrator in its reasonable discretion, subject to advice from the Advisory Committee.

      f.    *Reporting*

In no event later than thirty (30) Business Days after the end of the first full quarter following the Effective Date and on a quarterly basis thereafter until all Cash in the Wind-Down Trust has been released or paid out in accordance with this Plan and the Wind-Down Trust Agreement, the Plan Administrator shall File reports setting forth the amounts, recipients, and dates of all Distributions through each applicable reporting period.

      10.    United States Federal Income Tax Treatment of the Wind-Down Trust for the Wind-Down Trust Assets

For federal income tax purposes, it is intended that the Wind-Down Trust be classified as a grantor trust and a liquidating trust under Section 301.7701-4(d) of the Treasury regulations and that the trust be owned by its Beneficiaries. Accordingly, for federal income tax purposes, it is intended that the Beneficiaries be treated as if there were a deemed transfer of the Wind-Down Trust Assets to the Beneficiaries, followed by a deemed transfer of such Wind-Down Trust Assets by the Beneficiaries to the Wind-Down Trust. Accordingly, the Wind-Down Trust's Beneficiaries will be treated, for federal income tax purposes, as the grantors and owners of their respective share of the Wind-Down Trust Assets. The valuation ascribed to the Wind Down Trust Asses shall be used consistently by the Plan Administrator and the Beneficiaries for all federal income tax purposes.

The Plan Administrator shall be responsible for filing all federal, state, and local tax returns for the Wind-Down Trust and for the Debtors. The Wind-Down Trust shall comply with all withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions made by the Wind-Down Trust shall be subject to any such withholding and reporting requirements. The Plan Administrator shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements including, without limitation, requiring that, as a condition to the receipt of a Distribution, the Holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable, to each Holder. Notwithstanding any other provision of this Plan, (a) each Holder of an Allowed Claim that is to receive a Distribution from the Wind-Down Trust shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed on such Holder by any Governmental Unit, including income and other tax obligations, on account of such Distribution, and (b) no Distribution shall be made to or on behalf of such Holder under

this Plan unless and until such Holder has made arrangements satisfactory to the Plan Administrator to allow it to comply with its tax withholding and reporting requirements.

Any property to be distributed by the Wind-Down Trust, shall, pending the implementation of such arrangements, be treated as an undeliverable Distribution, to be held by the Plan Administrator, as the case may be, until such time as the Plan Administrator is satisfied with the Holder's arrangements for any withholding tax obligations.

11.     Term of Wind-Down Trust

The Plan Administrator shall be discharged and the Wind-Down Trust shall be terminated at such time as (a) all Disputed Claims against the Debtors have been resolved, (b) all of the Retained Causes of Action have been prosecuted to completion and the Wind-Down Trust Assets have been collected and liquidated, (c) all duties and obligations of the Plan Administrator under the Wind-Down Trust Agreement have been fulfilled, (d) all Distributions required to be made by the Wind-Down Trust under this Plan and the Wind-Down Trust Agreement have been made, and (e) the Chapter 11 Cases of the Debtors have been closed; *provided, however,* that in no event shall the Wind-Down Trust be dissolved later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion within the six-month period prior to the fifth anniversary (or the end of any extension period approved by the Bankruptcy Court), determines that a fixed period extension (not to exceed one (1) year, together with any prior extensions, unless the Wind-Down Trust has procured a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Wind-Down Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Wind-Down Trust Assets.

12.     Limitation of Liability of the Plan Administrator

The Wind-Down Trust shall indemnify the Plan Administrator and its professionals against any losses, liabilities, expenses (including attorneys' fees and disbursements), damages, taxes, suits, or claims that the Plan Administrator or its professionals may incur or sustain by reason of being or having been the Plan Administrator or professionals of the Wind-Down Trust for performing any functions incidental to such service; *provided, however,* the foregoing shall not relieve any Plan Administrator or its professionals from liability for bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, or self-dealing.

**D.     Dissolution of the Debtors; Deemed Resignations**

Immediately after the Effective Date, the Plan Administrator shall be authorized to take, in his, her or its sole and absolute discretion, all actions reasonably necessary to dissolve one or more of the Debtors under applicable laws, including under the laws of the jurisdictions in which they may be organized or registered, and to pay all reasonable costs and expenses in connection with such dissolutions, including the costs of preparing or filing any necessary paperwork or documentation. Upon the completion of final Distributions, any Debtors that have not been previously dissolved shall be deemed dissolved for all purposes without the necessity for other or further actions to be taken by or on behalf of the Debtors, and the Plan Administrator shall be authorized to file any certificate of cancellation or other documents as may be necessary or desirable to terminate the legal existence of the Debtors.

Additionally, immediately following the Distribution of all of the Debtors' and the Estates' property under the terms of this Plan, on the Effective Date, the Debtors' members, directors, managers, and officers and any remaining employees shall be deemed to have resigned their respective positions.

13947526 v5

### E.    Cancellation of Existing Securities and Agreements

Except as otherwise specifically provided for in the Plan, on the Effective Date, the DIP Loan Documents, the Prepetition Loan Documents, and any other certificate, Security, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors or giving rise to any Claim against or Interest in the Debtors, shall be canceled, and the Debtors shall not have any obligations thereunder and shall be released therefrom.

### F.    Corporate Action

Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved in all respects, including selection of the Plan Administrator, and all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan or deemed necessary or desirable by the Debtors, before, on, or after the Effective Date involving the corporate structure of the Debtors or the Wind-Down Trust, and any corporate action required by the Debtors or the Wind-Down Trust in connection with the Plan or corporate structure of the Debtors or the Wind-Down Trust shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Plan Administrator. Before, on, or after the Effective Date, the appropriate officers of the Debtors, the Plan Administrator shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Debtors or the Wind-Down Trust, to the extent not previously authorized by the Bankruptcy Court. The authorizations and approvals contemplated by this Article IV.F shall be effective notwithstanding any requirements under non-bankruptcy law.

### G.    Effectuating Documents; Further Transactions

Subject to the terms of this Plan, the Wind-Down Trust Agreement and the Confirmation Order, on and after the Effective Date, the Plan Administrator may issue, execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the instruments issued pursuant to the Plan in the name of and on behalf of the Wind-Down Trust, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

### H.    Exemptions from Certain Taxes and Fees

Pursuant to, and to the fullest extent permitted by, section 1146(a) of the Bankruptcy Code, any transfers from the Debtors to the Wind-Down Trust or to any other Person, pursuant to, in contemplation of, or in connection with the Plan (including any transfer pursuant to: (a) the distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; or (b) the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, sales and use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local government officials or agents shall, and shall be directed to, forego the collection of any such tax, recordation fee or government assessment and to accept for filing and

13947526 v5

recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee or government assessment. The Bankruptcy Court shall retain specific jurisdiction with respect to these matters.

**I.      Privileges as to Certain Causes of Action**

Effective as of the Effective Date, all Privileges of the Debtors relating to the Wind-Down Assets shall be deemed transferred, assigned, and delivered to the Wind-Down Trust, without waiver or release, and shall vest with the Wind-Down Trust. The Plan Administrator shall hold and be the beneficiary of all such Privileges and is entitled to assert such Privileges. No such Privilege shall be waived by disclosures to the Plan Administrator of the Debtors' documents, information, or communications subject to attorney-client privileges, work product protections or other immunities (including those related to common interest or joint defense with third parties), or protections from disclosure held by the Debtors. The Debtors' Privileges relating to the Wind-Down Trust Assets will remain subject to the rights of third parties under applicable law, including any rights arising from the common interest doctrine, the joint defense doctrine, joint attorney-client representation, or any agreement. Nothing contained herein or in the Confirmation Order, nor any Professional's compliance herewith and therewith, shall constitute a breach of any Privileges of the Debtors.  Notwithstanding the foregoing and for the avoidance of doubt, the Privileges transferred to the Wind-Down Trust do not include any privileges of the current and former individual directors or officers of the Debtors, and all of the rights of such directors and officers with respect to such privileged materials, including any materials that may be subject to joint privilege with the Debtors, are hereby preserved.

**J.      Preservation of Retained Causes of Action**

In accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to Article VIII hereof, the Plan Administrator shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Retained Causes of Action, in each case whether arising before or after the Petition Date, including, but not limited to, any actions specifically enumerated in the Schedule of Retained Causes of Action and notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.

Subject only to the limitations to the authority as between the Plan Administrator set forth herein (including, specifically, those contained in Article IV.C.9 of the Plan) and in the Wind-Down Trust Agreement, the Plan Administrator (i) may pursue Retained Causes of Action, as appropriate, in accordance with the best interests of the Wind-Down Trust, (ii) shall retain and may exclusively enforce any and all Retained Causes of Action, and (iii) shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Retained Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

**No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Retained Cause of Action against it as any indication that the Plan Administrator will not pursue any and all available Retained Causes of Action against it, except as otherwise expressly provided in the Plan, including this Article IV and Article VIII of the Plan.** Unless any such Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Final Order, the Plan Administrator expressly reserves all such Retained Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel

13947526 v5

(judicial, equitable, or otherwise), or laches, shall apply to such Retained Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

## ARTICLE V
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    Rejection of Executory Contracts and Unexpired Leases

Except as otherwise provided herein, all Executory Contracts and Unexpired Leases will be rejected by the Plan on the Effective Date pursuant to sections 365 and 1123 of the Bankruptcy Code, other than (a) Executory Contracts or Unexpired Leases previously assumed or rejected pursuant to an order of the Bankruptcy Court, (b) Executory Contracts or Unexpired Leases that are the subject of a motion to assume, or for which a notice of assumption has been filed pursuant to the assumption and assignment procedures approved by the Bankruptcy Court in connection with the Sale Transaction and (c) an Executory Contract that is a D&O Policy, in the case of (a) and (b), that is pending on the Effective Date. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejection of such Executory Contracts and Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code.

### B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within 30 days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, and forever barred from assertion, and shall not be enforceable against the Debtors, the Estates, the Wind-Down Trust, or the Plan Administrator, or the property of any of the foregoing Entities, without the need for any objection by the Plan Administrator or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article IV.B and may be objected to in accordance with the provisions of Article VII of the Plan and the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

### C.    Modifications, Amendments, Supplements, Restatements and Other Agreements

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is rejected shall include all modifications, amendments, supplements, restatements or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements have been previously rejected or repudiated or are rejected or repudiated under the Plan. Modifications, amendments, supplements and restatements to Prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the Prepetition nature of such Executory Contract or Unexpired Lease or the validity, priority or amount of any Claims that may arise in connection therewith.

13947526 v5

**D.      Reservation of Rights; Preservation of Preexisting Obligations to Debtors**

Nothing contained in the Plan shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease, or that any Debtor has any liability thereunder.

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Debtors (for themselves and for their successors) expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtors contracting from non-Debtor counterparties to rejected Executory Contracts or Unexpired Leases.

**E.      Insurance Policies**

Notwithstanding anything to the contrary in this Plan or the Confirmation Order, unless any Insurance Policies have been expressly rejected pursuant to a separate order of the Bankruptcy Court (or through the Confirmation Order), any Insurance Policies of any Debtors in which a Debtor is or was an insured party (including all D&O Policies), or any related insurance agreement issued prior to the Petition Date, shall continue in effect after the Effective Date pursuant to the respective terms and conditions. All rights of the Debtor under any Insurance Policies shall automatically become vested in the Wind-Down Trust without necessity for further approvals or orders. To the extent that any Insurance Policies or related insurance agreements are deemed Executory Contracts, then, unless such policies have been rejected pursuant to a separate order of the Bankruptcy Court (or through the Confirmation Order), notwithstanding anything to the contrary in this Plan, this Plan shall constitute a motion to assume, assume and assign, permit "ride through," or ratify such Insurance Policies or insurance agreements. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute both approval of such assumption pursuant to section 365 of the Bankruptcy Code and a finding by the Bankruptcy Court that such assumption is in the best interests of the Estate. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed upon by the parties prior to the Effective Date, no payments shall be required to cure any defaults of the Debtors existing as of the Confirmation Date with respect to any Insurance Policy or insurance agreement assumed, or assumed and assigned, pursuant to this Article V.E.

After the Effective Date, nothing herein shall terminate or otherwise reduce the coverage under any D&O Policy (including, if applicable, any "tail policy") with respect to conduct occurring on or prior to the Effective Date, and nothing herein shall prejudice any officers, directors, managers, and employees of the Debtors who served in such capacity at any time before the Effective Date from being entitled to the full benefits of any such policy for the full term of such policy (including with respect to the purchase of a "tail policy," the full six year term or other applicable term of such policy) in accordance with the terms thereof, following the purchase of such policy, regardless of whether such officers, directors, managers, or employees remain in such positions after the Effective Date.

Each insurance company is prohibited from, and the Confirmation Order shall include an injunction against, denying, refusing, altering or delaying coverage on any basis regarding or related to these Chapter 11 Cases, this Plan, or any provision within this Plan, including the treatment or means of liquidation set out within this Plan for any insured Claims or Causes of Action. Without limiting the generality of the foregoing, D&O Policies in effect as of the Confirmation Date shall be deemed assumed and shall not be rejected.

13947526 v5

## ARTICLE VI
## PROVISIONS GOVERNING AND DISTRIBUTIONS

### A.      Timing and Calculation of Amounts to Be Distributed

Unless otherwise provided in the Plan, on the Initial Distribution Date (or if a Claim is not an Allowed Claim or Allowed Interest on the Initial Distribution Date, on the next Quarterly Distribution Date after such Claim or Interest becomes an Allowed Claim or Allowed Interest, or as soon as reasonably practicable thereafter), or as soon as is reasonably practicable thereafter, each Holder of an Allowed Claim entitled to a Distribution under the Plan shall receive the full amount of the Distribution that the Plan provides for an Allowed Claim in the applicable Class. For the avoidance of doubt, the Initial Distribution Date for an Administrative Claim, a Priority Tax Claim, a Gap Period Claim, an Other Priority Claim or an Other Secured Claim that is an Allowed Claim as of the Effective Date and for which the Holder thereof is otherwise entitled to receive a Distribution on account of such Allowed Claim shall occur on the Effective Date or as soon as practicable thereafter as determined in the reasonable discretion of the Plan Administrator.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, Distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII hereof.  Except as otherwise provided in the Plan, Holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the Distributions provided for in the Plan, regardless of whether such Distributions are delivered on or at any time after the Effective Date.

### B.      Distributions on Account of Obligations to Multiple Debtors

For all purposes associated with Distributions under the Plan, all guarantees by any Debtor of the obligations of any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor, shall be deemed eliminated so that any obligation that could otherwise be asserted against more than one Debtor shall result in a single Distribution under the Plan, *provided* that Claims held by a single entity at different Debtors that are not based on guarantees or joint and several liability shall be entitled to the applicable Distribution for such Claim at each applicable Debtor. Any such Claims shall be released pursuant to the Plan and shall be subject to all potential objections, defenses, and counterclaims, and to estimation pursuant to section 502(c) of the Bankruptcy Code. For the avoidance of doubt, this shall not affect the obligation of each and every Debtor to pay fees payable pursuant to section 1930(a) of the Judicial Code until such time as a particular Chapter 11 Case is closed, dismissed, or converted, whichever occurs first.

### C.      Distributions Generally

Except as otherwise provided herein, Distributions under the Plan shall be made by the Disbursing Agent.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Wind-Down Trust.

### D.      Rights and Powers of Disbursing Agent

1.      Powers of Disbursing Agent

13947526 v5

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all Distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

> 2.     Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash from the Wind-Down Trust.

**E.     Delivery of Distributions and Undeliverable or Unclaimed Distributions**

> 1.     Record Date for Distribution

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making Distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.

> 2.     Delivery of Distributions

> > a.     *Initial Distribution Date*

Except as otherwise provided herein, on the Initial Distribution Date, the Disbursing Agent shall make Distributions to Holders of Allowed Claims and Interests as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' books and records as of the date of any such Distribution; *provided* that the manner of such Distributions shall be determined at the reasonable discretion of the Disbursing Agent; *provided, further*, that the address for each Holder of an Allowed Claim or Interest shall be deemed to be the address set forth in, as applicable, any Proof of Claim or Proof of Interest Filed by such Holder, or, if no Proof of Claim or Proof of Interest has been Filed, the address set forth in the Schedules. If a Holder holds more than one Claim in any one Class, all Claims of the Holder may be aggregated into one Claim and one Distribution may be made with respect to the aggregated Claim.

> > b.     *Quarterly Distribution Date*

Except as otherwise determined by the Plan Administrator in its reasonable discretion, on each Quarterly Distribution Date or as soon thereafter as is reasonably practicable, the Disbursing Agent shall make the Distributions required to be made on account of Allowed Claims and Interests under the Plan on such date. Any Distribution that is not made on the Initial Distribution Date or on any other date specified herein because the Claim that would have been entitled to receive that Distribution is not an Allowed Claim or Interest on such date, shall be distributed on the first Quarterly Distribution Date after such Claim or Interest is Allowed. No interest shall accrue or be paid on the unpaid amount of any Distribution paid on a Quarterly Distribution Date in accordance with Article VI.J of the Plan.

> 3.     Minimum Distributions

Notwithstanding any other provision of the Plan, the Disbursing Agent will not be required to make Distributions of Cash less than $100 in value (whether cash or otherwise), and each such Claim to which this limitation applies shall be released pursuant to Article VIII and its Holder is forever barred pursuant to Article VIII from asserting such Claim against the Debtors, the Wind-Down Trust, the Plan Administrator, or their property.

      4.      <u>Undeliverable Distributions and Unclaimed Property</u>

In the event that any Distribution to any Holder is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such Distribution shall be made to such Holder without interest; *provided*, *however*, that such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Wind-Down Trust automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be released and forever barred.

A Distribution shall be deemed unclaimed if a Holder has not: (a) accepted a particular Distribution or, in the case of Distributions made by check, negotiated such check; (b) given notice to the Plan Administrator of an intent to accept a particular Distribution; (c) responded to the Debtors' or Plan Administrator's requests for information necessary to facilitate a particular Distribution; or (d) taken any other action necessary to facilitate such Distribution.

**F.**      **Reserves for Disputed Claims**

In connection with any Distributions to Holders of Allowed General Unsecured Claims, the Plan Administrator shall set aside in one or more Disputed Claims Reserves the amount of Cash that the Plan Administrator determines would likely have been distributed to the Holders of Disputed Claims that are General Unsecured Claims. In each instance, the Plan Administrator should establish the amount to be reserved on account of a Disputed General Unsecured Claim by determining the amount of Cash equal to the Distributions that would have been made to the holder of such Disputed Claim if it were an Allowed General Unsecured Claim in an amount equal to the lesser of (a) the amount of the Disputed Claim, (b) the amount in which the Disputed Claim shall be estimated by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Code for purposes of allowance or distribution, which amount, unless otherwise ordered by the Bankruptcy Court, shall constitute and represent the maximum amount in which such Claim ultimately may become an Allowed Claim, or (c) such other amount as may be agreed upon by the Holder of such Disputed Claim and the Plan Administrator.

**G.**      **Distributions on Account of Claims or Interests Allowed After the Effective Date**

      1.      <u>Payments and Distributions on Disputed Claims</u>

Distributions made after the Effective Date to Holders of Disputed Claims or Interests that are not Allowed Claims or Interests as of the Effective Date, but which later become Allowed Claims or Interests, as applicable, shall be deemed to have been made on the first Quarterly Distribution Date after they have actually been made, unless the Plan Administrator and the applicable Holder of such Claim or Interest agree otherwise. No interest shall accrue or be paid on a Disputed Claim before it becomes an Allowed Claim in accordance with Article VI.J of the Plan.

      2.      <u>Special Rules for Distributions to Holders of Disputed Claims</u>

      13947526 v5

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by the Plan Administrator, on the one hand, and the Holder of a Disputed Claim or Interest, on the other hand, no partial payments and no partial Distributions shall be made with respect to any Disputed Claim or Interest until the Disputed Claim or Interest has become an Allowed Claim or Interest, as applicable, or has otherwise been resolved by settlement or Final Order.

## H.    Compliance with Tax Requirements

In connection with the Plan, to the extent applicable, the Debtors or the Plan Administrator, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of a Distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding Distributions pending receipt of information necessary to facilitate such Distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors and Plan Administrator, as applicable, reserve the right to allocate all Distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

## I.    Allocations Between Principal and Accrued Interest

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

## J.    No Postpetition Interest on Claims

Unless otherwise specifically provided for in the Plan, a DIP Order, or the Confirmation Order, or required by applicable bankruptcy and non-bankruptcy law, postpetition interest shall not accrue or be paid on any prepetition Claims against the Debtors, and no Holder of a Prepetition Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such Prepetition Claim.

## K.    Foreign Currency Exchange Rate

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal,* National Edition, on the Effective Date.

## L.    Setoffs and Recoupment

Except as expressly provided in this Plan, the Plan Administrator may, pursuant to section 553 of the Bankruptcy Code, set off and/or recoup against any Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that such Debtor, an Estate or the Wind-Down Trust may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the relevant Debtor(s), Estate, Plan Administrator, and/or Wind-Down Trust, as applicable, and the Holder of an Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction. Neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by a Debtor, any Estate, the Plan Administrator or the Wind-Down Trust, as applicable, of any and all claims, rights,

and Causes of Action that any Debtor, any Estate, the Plan Administrator and/or the Wind-Down Trust, as applicable, may possess against the applicable Holder. In no event shall any Holder of Claims against, or Interests in, the Debtors be entitled to recoup any such Claim or Interest against any claim, right, or Cause of Action of the Debtors or the Plan Administrator, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article XII.G of the Plan on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment. Notwithstanding the Debtor Release terms or anything else to the contrary in this Plan and without limiting the foregoing, as to any Claim or Claims held by any Lookback D&O, the rights of setoff and recoupment described in this Article VI.L shall be fully reserved and preserved for the benefit of the Plan Administrator and the Wind-Down Trust with respect to all Causes of Action in which the Debtors or their Estates held or had an interest in immediately prior to the Effective Date, regardless of whether such Causes of Action are released pursuant to Debtor Release on or after the Effective Date.

**M.    Claims Paid or Payable by Third Parties**

1.    <u>Claims Paid by Third Parties</u>

The Debtors or the Plan Administrator as applicable, may reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor or the Plan Administrator. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not a Debtor or the Plan Administrator on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the Distribution to the applicable Debtor or the Plan Administrator, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the applicable Distribution Date. If the Debtors or the Plan Administrator, as applicable, become aware of any payment of a Claim by a third party, the Debtors or Plan Administrator, as applicable, will send a notice of wrongful payment to the Holder of such Claim requesting the return of any excess payments and advising the recipient of the provisions of the Plan requesting turnover of excess estate funds. The failure of such Holder to timely repay or return such Distribution shall result in the Holder owing the applicable Debtor or the Plan Administrator annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

2.    <u>Claims Payable by Third Parties</u>

No Distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' Insurance Policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy. To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.    <u>Applicability of Insurance Policies</u>

Except as otherwise provided in the Plan, Distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable Insurance Policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein

constitute or be deemed a waiver by such insurers of any rights or defenses, including coverage defenses, held by such insurers.

**N.**     **No Payment Over Full Amount**

In no event shall a Holder of a Claim receive more than the full payment of such Claim. To the extent any Holder has received payment in full with respect to a Claim, such Claim shall be disallowed and expunged without an objection to such Claim having been filed and without any further notice to or action, order or approval of the Bankruptcy Court.

**ARTICLE VII**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED AND DISPUTED CLAIMS**

**A.**     **Allowance of Claims**

After the Effective Date, the Plan Administrator shall have and retain any and all rights and defenses the applicable Debtor had with respect to any Claim or Interest immediately before the Effective Date.

**B.**     **Claims Administration Responsibilities**

The Plan Administrator shall have the sole authority: (1) to File, withdraw, or litigate to judgment objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

**C.**     **Estimation of Claims**

Before or after the Effective Date, the Debtors or the Plan Administrator, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Claim that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of Distributions), and the relevant Debtor or the Plan Administrator, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate Distribution on account of such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before fourteen days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

13947526 v5

**D.**     **Adjustment to Claims Without Objection**

Any duplicate Claim or Interest or any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, cancelled or otherwise expunged (including pursuant to the Plan), may be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Plan Administrator without a Claims objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court. Additionally, any Claim or Interest that is duplicative or redundant with another Claim against or Interest in the same Debtor or another Debtor may be adjusted or expunged on the Claims Register by the Plan Administrator without such Plan Administrator having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

**E.**     **Time to File Objections to Claims**

Any objections to Claims shall be Filed no later than the Claims Objection Bar Date.

**F.**     **Disallowance of Claims**

Any Claims or Interests held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims or Interests may not receive any Distributions on account of such Claims until such time as such Retained Causes of Action against that Entity have been settled or a Final Order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Wind-Down Trust.

**Except as provided herein or otherwise agreed, any and all Proofs of Claim Filed after the Claims Bar Date or the Administrative Claim Bar Date, as appropriate, shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any Distributions on account of such Claims, unless such late Proof of Claim has been deemed timely Filed by a Final Order.**

**G.**     **Amendments to Claims**

On or after the Claims Bar Date or the Administrative Claim Bar Date, as appropriate, a Claim may not be Filed or amended as to the amount, priority or secured status thereof without the prior authorization of the Bankruptcy Court or the Plan Administrator. Absent such authorization, any new or amended Claim Filed shall be deemed disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court to the maximum extent provided by applicable law.

**H.**     **No Distribution or Payments Pending Allowance**

If an objection to the amount, validity, priority or classification of a Claim or a portion thereof is Filed or is intended to be filed as contemplated by Article VII or a Claim otherwise remains a Disputed Claim, except as otherwise provided in a Final Order of the Bankruptcy Court, no Distribution provided under the Plan shall be made on account of such Claim or portion thereof, as applicable, unless and until such Disputed Claim becomes an Allowed Claim

**I.**     **Distributions and Payments After Allowance**

13947526 v5

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim, as applicable, in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the Distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim unless required under applicable bankruptcy law.

## ARTICLE VIII
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

### A.      Settlement, Compromise and Release of Claims and Interests

Pursuant to, and to the maximum extent provided by, section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the Distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, compromise, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims or Claims against multiple Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by current or former employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Proof of Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the settlement, compromise, and release of all Claims and Interests subject to the occurrence of the Effective Date.

### B.      Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against any property of the Estates shall be fully released, and all of the rights, title and interest of any Holder of such mortgages, deeds of trust, Liens, pledges or other security interests shall revert to the Wind-Down Trust and its successors and assigns.

### C.      <u>Debtor Release</u>

**Effective as of the Effective Date, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, including the service of the Released Parties to facilitate the administration of the Chapter 11 Cases, to maximize the value of the Estates and to implement the restructuring and orderly liquidation contemplated by the Plan, the adequacy of which is hereby confirmed, on and after the Effective Date each Released Party is deemed released by each and all of the Debtors, their Estates, and the Wind-Down Trust, in each case on behalf of themselves and**

their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtors, their Estates, or the Wind-Down Trust, as applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, their Estates, or the Wind-Down Trust, or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Prepetition Loan Documents, the Prepetition Facility, the Convertible Debenture Financings, the DIP Loan Documents, the Sale Transaction, entry into the Asset Purchase Agreement, entry into the DIP Loan Documents, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, filing, or consummation of the Disclosure Statement, DIP Loan Facility, the Sale Transaction, the Asset Purchase Agreement, the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Loan Facility, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the pursuit of the Sale Transaction, the administration and implementation of the Plan, including the issuance or Distribution of securities pursuant to the Plan, or the Distribution or payment of property under the Plan or any other related agreement (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any liabilities or obligations of the Purchaser or any other Entity arising under the Asset Purchase Agreement, the Sale Order, or any other Sale Document, in each case that have survived the Sale Closing, (2) any claim or Cause of Action transferred or assigned to Purchaser under the Asset Purchase Agreement or any other Sale Document, (3) any Retained Cause of Action identified on the Schedule of Retained Causes of Action as against a Person identified therein as the target of such Retained Cause of Action, (4) any liabilities or obligations of the MGG Parties under the MGG Settlement Agreement, (5) any post-Effective Date obligations of any Entity arising under or relating to the Plan, or any document, instrument, or agreement (including any documents set forth in the Plan Supplement, as applicable) executed to implement the Plan, or (6) any Lookback D&O with respect to any Lookback D&O Action that is commenced by the Plan Administrator on or before the Lookback D&O Action Deadline.

For the avoidance of doubt, nothing in this Article VIII.C of the Plan shall limit the liability of any attorney Professional for the Debtors or the UCC to their respective clients to the extent that allowing such attorney Professional to benefit from the Debtor Release would violate Kentucky Supreme Court Rule 3.130 (1.8(h)(1)) or any comparable rule of professional conduct to which such attorney Professional is or may be subject.

13947526 v5

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each Debtor Release is: (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of such Claims; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, their respective Estates, or the Wind-Down Trust asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

D.      [Intentionally Omitted]

E.      <u>Exculpation</u>

Effective as of the Effective Date, to the fullest extent permissible under applicable law and without affecting or limiting the Debtor Release, and except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby exculpated from, any Cause of Action for arising from or relating to any act or omission occurring on or after January 24, 2020, based on the negotiation, execution, and implementation of any transactions approved by the Bankruptcy Court in the Chapter 11 Cases, including the Asset Purchase Agreement, the DIP Loan Documents, the Disclosure Statement, the Plan, the Plan Supplement, the Confirmation Order, or any contract, instrument, release, or other agreement or document contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order, or created or entered into in connection with the Asset Purchase Agreement, the DIP Loan Documents, the Disclosure Statement, or the Plan, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the pursuit of the Sale Transaction, the administration and implementation of the Plan, including the issuance of any securities pursuant to the Plan or the Distribution or payment of property under the Plan or any other related agreement, and the implementation of any transaction contemplated by the Plan (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion), or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, except for claims related to any act or omission that is determined by Final Order to have constituted actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes on, and Distribution or payment of consideration pursuant to, the Plan and, therefore, are not, and on account of such Distributions and payments shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such Distributions and other payments made pursuant to the Plan. Notwithstanding anything to the contrary in the foregoing, this Article VIII.E does not release (1) any liabilities or obligations of the Purchaser or any other Entity arising under the Asset Purchase Agreement, the Sale Order, or any other Sale Document, in each case that have survived the Sale Closing, (2) any claim or Cause of Action transferred or assigned to Purchaser under the Asset Purchase Agreement or any other Sale Document, (3) any Retained Cause of Action identified on the Schedule of Retained Causes of Action as against a Person identified therein as the target of such Retained Cause of Action, (4) any

13947526 v5

liabilities or obligations of any MGG Party under the MGG Settlement Agreement, or (5) any post-Effective Date obligations of any Entity arising under or relating to the Plan, or any document, instrument, or agreement (including any documents set forth in the Plan Supplement, as applicable) executed to implement the Plan.

For the avoidance of doubt, nothing in this Article VIII.E of the Plan shall limit the liability of any attorney Professional for the Debtors or the UCC to their respective clients to the extent that allowing such attorney Professional to benefit from the exculpation provided for in this Article VIII.E would violate Kentucky Supreme Court Rule 3.130 (1.8(h)(1)) or any comparable rule of professional conduct to which such attorney Professional is or may be subject.

F.    **Injunction**

Effective as of the Effective Date, to the fullest extent permissible under sections 524 and 1141 of the Bankruptcy Code and other applicable law, and except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released pursuant to Article VIII.A of the Plan, released pursuant to the Debtor Release or another provision of the Plan (including the release of liens pursuant to Article VIII.B of the Plan), or are subject to exculpation pursuant to Article VIII.E of the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Wind-Down Trust, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind, against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, Distributions under or pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article VIII.F of the Plan.

G.    **Protection Against Discriminatory Treatment**

To the maximum extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Debtors, the Wind-Down Trust or Plan Administrator, as applicable, or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to,

13947526 v5

discriminate with respect to such a grant against, the Debtors, the Wind-Down Trust or the Plan Administrator, as applicable, or another Entity with whom the Debtors, the Wind-Down Trust or the Plan Administrator, as applicable, has been associated, solely because a Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is subject to compromise or administration in the Chapter 11 Cases.

**H.      Document Retention**

On and after the Effective Date, the Plan Administrator may maintain documents in accordance with the Debtors' standard document retention policy, as may be altered, amended, modified, or supplemented by the Plan Administrator.

**I.      Term of Injunction or Stays**

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect on and following the Effective Date in accordance with their terms.

**J.      Subordination Rights**

The classification and manner of satisfying all Claims and Interests under the Plan take into consideration all subordination rights, whether arising under general principles of equitable subordination, contract, section 510(c) of the Bankruptcy Code, or otherwise, that a Holder of a Claim or Interest may have against other Claim or Interest Holders with respect to any Distribution made pursuant to the Plan. Except as provided in the Plan, all subordination rights that a Holder of a Claim may have with respect to any Distribution to be made pursuant to the Plan shall be terminated, and all actions related to the enforcement of such subordination rights shall be permanently enjoined.

Pursuant to Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all claims or controversies relating to the subordination rights that a Holder of a Claim may have with respect to any Allowed Claim or any Distribution to be made pursuant to the Plan on account of any Allowed Claim. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best  interests of the Debtors, the Estates, their respective property, and Holders of Claims and Interests and is fair, equitable, and reasonable.

**ARTICLE IX**
**CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN**

**A.      Conditions Precedent to the Effective Date**

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B hereof:

13947526 v5

1.      The Bankruptcy Court shall have entered the Confirmation Order, and such order shall be a Final Order;

2.      The Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

3.      The Professional Fee Escrow Account shall have been established and funded with the Professional Fee Escrow Amount;

4.      Except for the occurrence of the Effective Date itself, all actions necessary to the appointment of the Plan Administrator and the establishment of the Wind-Down Trust shall have occurred; and

5.      The MGG Settlement shall have been approved by Final Order.

## B.    Waiver of Conditions

The conditions to Consummation set forth in Article IX.A above may be waived as follows: (i) the condition to Consummation set forth in Article IX.A.1 may be waived by the Debtors, after consultation with the UCC, but only if the condition to Consummation set forth in Article IX.A.5 hereof also has been satisfied or waived as provided herein; (ii) the conditions to Consummation set forth in Articles IX.A.2 through IX.A.4 above, may be waived by the Debtors, after consultation with the UCC; and (iii) the condition to Consummation set forth in Article IX.A.5 above, may be waived by the Debtors after consultation with the UCC, but only with the consent of MGG.  Such waivers of the conditions to Consummation shall be effective without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

## C.    Substantial Consummation

The "substantial consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, with respect to any of the Debtors, shall be deemed to occur on the Effective Date.

## D.    Effect of Failure of Conditions

If the Effective Date of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall: (1) constitute a waiver or release of any Claims by the Debtors, any Holders, or any other Entity; (2) prejudice in any manner the rights of the Debtors, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect.

## ARTICLE X
## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

## A.    Modifications and Amendments

Except as otherwise specifically provided in the Plan, the Debtors reserve the right to modify the Plan, whether such modification is material or immaterial, seek Confirmation consistent with the Bankruptcy Code, and, as appropriate, not re-solicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Debtors expressly reserve their respective rights to revoke or withdraw, to alter, amend, or modify the Plan with respect to each Debtor,

one or more times, before or after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

**B.      Effect of Confirmation on Modifications**

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

**C.      Revocation or Withdrawal of Plan**

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent plans. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests), assumption, assumption and assignment, or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims, Causes of Action, or Interests; (b) prejudice in any manner the rights of such Debtor, any Holder, or any other Entity; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor, any Holder, or any other Entity.

**ARTICLE XI**
**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, to the extent legally permissible, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals (including Professional Fee Claims) authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to: (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed (or assumed and assigned); (c) the Plan Administrator amending, modifying or supplementing, after the Effective Date, pursuant to Article V, the Executory Contracts and Unexpired Leases to be assumed (or assumed and assigned) or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory, expired, or terminated;

4.      ensure that Distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement, the Disclosure Statement, or the Confirmation Order;

8.      enter and enforce any order for the sale or transfer of property pursuant to sections 363, 1123, 1141, or 1146(a) of the Bankruptcy Code;

9.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with Consummation, including interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.      hear and determine all cases, controversies, suits, disputes or Causes of Action with respect to the releases, injunctions and other provisions contained in Article VIII, and enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;

12.      resolve any cases, controversies, suits, disputes or Causes of Action with respect to the repayment or return of Distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid in accordance with the Plan;

13.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.      hear and determine all cases, controversies, suits, disputes or Causes of Action arising out of, relating to, or contemplated by the MGG Settlement, including, without limitation, cases, controversies, suits, disputes or Causes of Action that may be prosecuted or settled pursuant to Section 5 of the MGG Settlement Agreement;

15.      determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or, subject to any applicable forum selection clauses, any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

16.      enter an order or Final Decree concluding or closing any of the Chapter 11 Cases;

17.      adjudicate any and all disputes arising from or relating to Distributions under the Plan;

18.     consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

19.     determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

20.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order or any Entity's obligations incurred in connection with the Plan, including, subject to any applicable forum selection clauses, disputes arising under agreements, documents, or instruments executed in connection with the Plan;

21.     adjudicate, decide, and resolve any cases, controversies, suits, or disputes related to (and/or arising under, as applicable) the Sale Transaction, the Asset Purchase Agreement or any other Sale Document; *provided*, *however*, that the Bankruptcy Court's jurisdiction shall not be exclusive;

22.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

23.     enforce all orders previously entered by the Bankruptcy Court; and

24.     hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

### A.     Immediate Binding Effect

Subject to Article IX.A and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Wind-Down Trust, the Plan Administrator, and any and all Holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

### B.     Additional Documents

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or the Plan Administrator, as applicable, and all Holders receiving Distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### C.     Payment of Statutory Fees

All fees due and payable pursuant to section 1930(a) of the Judicial Code prior to the Effective Date, including fees and expenses payable to the U.S. Trustee, shall be paid by the Debtors on the Effective Date. After the Effective Date, the Disbursing Agent or the Plan Administrator, as applicable, shall pay any and all such fees for each quarter (including any fraction thereof), and shall file with the

13947526 v5

Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each and every one of the Debtors shall remain obligated to pay quarterly fees to the Office of the U.S. Trustee and file quarterly reports until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.

**D.      UCC and Cessation of Fee and Expense Payment**

On the Effective Date, except to the extent that the UCC remains in existence for the limited purpose of prosecuting requests for payment of Professional Fee Claims for services and reimbursement of expenses incurred prior to the Effective Date by the UCC and its Professionals, the UCC shall dissolve automatically and the members thereof shall be relieved of all rights, duties, responsibilities, and liabilities arising on or prior to the Effective Date, from, or related to, the Chapter 11 Cases and under the Bankruptcy Code; *provided, however,* nothing in this Article XII.D relieves any current or former UCC member or any current or former UCC Professional of any confidentiality obligation that such Person may owe to the Debtors or their Estates.  Neither the Debtors nor the Wind-Down Trust shall be responsible for paying any fees or expenses incurred by the members of or advisors to the UCC after the Effective Date.

**E.      Reservation of Rights**

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders unless and until the Effective Date has occurred.

**F.      Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity

**G.      Notices**

To be effective, all notices, requests, and demands to or upon the Debtors shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered by courier or registered or certified mail (return receipt requested) or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed to the following:

1.      <u>If to the Debtors, to</u>:

OGGUSA, Inc., *et al.*
4274 Colby Rd
Winchester, KY 40391
Attn:   Gary Broadbent
        Chief Wind-Down Officer
        General Counsel and Secretary
e-mail: garymbroadbent@gmamil.com

13947526 v5

*with copies (which shall not constitute notice) to:*

Benesch, Friedlander, Coplan, & Aronoff LLP
1313 North Market Street, Suite 1201
Wilmington, DE 19801
Attn:   Michael J. Barrie
        Gregory W. Werkheiser
e-mail:  mbarrie@beneschlaw.com
         gwerkheiser@beneschlaw.com

-and-

Benesch, Friedlander, Coplan, & Aronoff LLP
200 Public Square, Suite 2300
Cleveland, OH 44114
Attn:   Elliot M. Smith
e-mail:  esmith@beneschlaw.com

-and-

DENTONS BINGHAM GREENEBAUM LLP
3500 PNC Tower
101 South Fifth Street
Louisville, Kentucky 40202
Attn:   James R. Irving
e-mail: james.irving@dentons.com

2.     If to the DIP Agent or Prepetition Agent, to:

MGG Investment Group LP
One Penn Plaza, 53rd Floor
New York, New York 10119
Attn:   Mustafa Tayeb and Mier Wang
e-mail: creditagreementnotices@mgginv.com

*with copies (which shall not constitute notice) to:*

Schulte Roth & Zabel LLP
919 Third Avenue
New York, New York 10022
Attn:   Adam Harris
Email: adam.harris@srz.com

3.     If to the Purchaser, to:

GenCanna Acquisition Corp.
c/o MGG Investment Group LP
One Penn Plaza, 53rd Floor
New York, NY 10119

13947526 v5

Attn:    Patrick Flynn and Mier Wang
Email:    pflynn@mgginv.com
            mwang@mgginv.com

*with copies (which shall not constitute notice) to:*

Schulte Roth & Zabel LLP (per contact information listed above)

4.        <u>If to the UCC, to:</u>

Foley & Lardner LLP
321 N. Clark Street, Suite 2800
Chicago, IL 60654
Attn:    Geoffrey S. Goodman
e-mail: ggoodman@foley.com

-and-

DelCotto Law Group PLLC
200 North Upper Street
Lexington, KY 40507
Attn:    Laura Day DelCotto
e-mail: ldelcotto@dlgfirm.com

After the Effective Date, the Plan Administrator may notify Entities that, to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Plan Administrator is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

**H.        Entire Agreement**

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan. For the avoidance of doubt, this Article XII.H is without prejudice to the right of any Mediation Settling Party to rely upon or enforce the professional fee budgets set forth in the Mediation Settlement Term Sheet with respect to Professional Fee Claims incurred during the periods specified therein.

**I.        Exhibits**

All exhibits, schedules and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits, schedules and documents shall be available upon written request to the Debtors' counsel at the address set forth in Article XII.G of the Plan or by downloading such exhibits and documents from the website of the Notice and Claims Agent at http://dm.epiq11.com/gencanna or (for a fee) the Bankruptcy Court's website at https://ecf.kyeb.uscourts.gov.  To the extent any exhibit, schedule or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control. The documents contained in the Plan

13947526 v5

Supplement are an integral part of the Plan and shall be deemed approved by the Bankruptcy Court pursuant to the Confirmation Order.

**J.        Non-Severability of Plan Provisions**

The provisions of the Plan, including its release, injunction, exculpation, and compromise provisions, are mutually dependent and non-severable. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors, consistent with the terms set forth herein; and (3) non-severable and mutually dependent.

**K.        Closing of Chapter 11 Cases**

The Plan Administrator shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order necessary to close the Chapter 11 Cases.

**L.        Conflicts**

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control. In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

13947526 v5

Respectfully submitted, as of the date first set forth above,

OGGUSA, INC.
f/k/a GENCANNA GLOBAL USA, INC.


By: _/s/ James Alt_____
      Name: James Alt
      Title: Chief Transformation Officer


By: _/s/ Gary Broadbent_____
      Name: Gary Broadbent
      Title:  Chief Wind-Down Officer,
           General Counsel and Secretary


OGG, INC.
f/k/a GENCANNA GLOBAL, INC.


By: _/s/ James Alt_____
      Name: James Alt
      Title: Chief Transformation Officer


By: _/s/ Gary Broadbent_____
      Name: Gary Broadbent
      Title:  Chief Wind-Down Officer,
           General Counsel and Secretary


HEMP KENTUCKY, LLC


By: _/s/ James Alt_____
      Name: James Alt
      Title: Chief Transformation Officer


By: _/s/ Gary Broadbent_____
      Name: Gary Broadbent
      Title:  Chief Wind-Down Officer,
           General Counsel and Secretary

Dentons Bingham Greenebaum LLP

_/s/ James R. Irving_____
James R. Irving
April A. Wimberg
Christopher B. Madden
3500 PNC Tower
101 South Fifth Street
Louisville, Kentucky 40202
Telephone: (502) 587-3606
E-mail: james.irving@dentons.com
        april.wimberg@dentons.com
        chris.madden@dentons.com

Michael J. Barrie
William M. Alleman, Jr.
Gregory W. Werkheiser
Benesch, Friedlander, Coplan & Aronoff LLP
1313 North Market Street, Suite 1201
Wilmington, DE 19801
Telephone: (302) 442-7010
E-mail: mbarrie@beneschlaw.com
        walleman@beneschlaw.com
        gwerkheiser@beneschlaw.com

-and-

Elliot M. Smith
Benesch, Friedlander, Coplan & Aronoff LLP
200 Public Square, Suite 2300
Cleveland, OH 44114
Telephone: (216) 363-4500
E-mail: esmith@beneschlaw.com

*Counsel for the Debtors*

13947526 v5

## APPENDIX 1

## PLAN DEFINITIONS

1.       "*Administrative Claim*" means a Claim for the costs and expenses of administration of the Estates under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date through and including the Effective Date of preserving the Estates and operating the businesses of the Debtors; (b) Allowed Professional Fee Claims in the Chapter 11 Cases; and (c) amounts owing pursuant to a DIP Order.

2.       "*Administrative Claim Objection Deadline*" means the deadline for filing objections to requests for payment of Administrative Claims (other than requests for payment of Professional Fee Claims), which shall be the later of (a) 60 days after the Effective Date and (b) 60 days after the Filing of the applicable request for payment of the Administrative Claims; *provided* that the Administrative Claim Objection Bar Date may be extended by the Bankruptcy Court after notice and a hearing.

3.       "*Administrative Claim Bar Dates*" means the deadline for filing requests for payment of Administrative Claims (other than (x) Professional Fee Claims, or (z) Claims arising pursuant to section 503(b)(9) of the Bankruptcy Code, which were required to be filed in accordance with the Bar Date Order), which shall be 30 days after the Effective Date.

4.       "*Advisory Committee*" has the meaning ascribed to such term in Article IV.C.8 of the Plan.

5.       "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.  With respect to any Person that is not a Debtor, the term "Affiliate" shall apply to such Person as if the Person were a Debtor.

6.       "*Allowed*" means, with respect to any Claim, except as otherwise provided in the Plan: (a) a Claim that is evidenced by a Proof of Claim Filed by the Claims Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or pursuant to a Final Order a Proof of Claim is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; *provided* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that, with respect to such Claim, no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim, as applicable, shall have been Allowed by a Final Order. Except as otherwise specified in the Plan or any Final Order, and except for any Claim that is Secured by property of a value in excess of the principal amount of such Claims, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold against the Holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed (where such Proof of Claim is required to be filed), is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. For the avoidance of doubt: (x) a Proof of Claim Filed after the Claims Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-filed Claim; and (y) the Debtors may affirmatively determine to

13947526 v5

deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law. "Allow" and "Allowing" shall have correlative meanings.

7.      *"Asset Purchase Agreement"* means that certain *Asset Purchase Agreement,* dated as of May 29, 2020, as the same may be amended, modified or supplemented from time to time in accordance with the terms thereof or the Sale Order, by and among the Purchaser, as Purchaser, and the Debtors, as Sellers.

8.      *"Ballot"* means the form distributed to each holder of an Impaired Claim that is entitled to vote to accept or reject the Plan on which is to be indicated an acceptance or rejection of the Plan.

9.      *"Balloting Agent"* means Epiq Corporate Restructuring, LLC, or any successor thereto, in its capacity as the "Balloting Agent" (as defined in the Disclosure Statement Motion) appointed by the Bankruptcy Court.

10.     *"Bankruptcy Code"* means section 101, et seq. of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code, as in effect as of the Petition Date.

11.     *"Bankruptcy Court"* means the United States Bankruptcy Court for the Eastern District of Kentucky, Lexington Division, having jurisdiction over the Chapter 11 Cases and, to the extent of the withdrawal of reference under section 157 of the Judicial Code or otherwise pursuant to section 151 of the Judicial Code, the United States District Court for the Eastern District of Kentucky.

12.     *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure, promulgated under section 2075 of title 23 of the United States Code, the Local Rules of the United States Bankruptcy Court for the Eastern District of Kentucky, and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Case and as amended from time to time.

13.     *"Bar Date Order"* means the Order Granting Motion of the Debtors and Debtors in Possession for Entry of an Order (A) Establishing Bar Dates for Filing Proofs of Claim and Section 503(b)(9) Claim Requests, and (B) Approving the Form and Manner of Notice Thereof [Docket No. 740], entered by the Bankruptcy Court in the Chapter 11 Cases.

14.     *"Beneficial Interests"* means the beneficial interests in the Wind-Down Trust consisting of the Senior Beneficial Interests and the Subordinated Beneficial Interests.

15.     *"Beneficiary"* means a Holder of Beneficial Interests in the Wind-Down Trust under the terms of the Plan and the Wind-Down Trust Agreement.

16.     *"Books and Records"* means all books and records of the Debtors, including, without limitation, all documents and communications of any kind, whether physical or electronic.

17.     *"Business Day"* means any day, other than a Saturday, Sunday or "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)).

18.     *"Cash"* means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

19.     *"Cash Purchase Price"* has the meaning ascribed to such term in the Asset Purchase Agreement.

13947526 v5

20.     "*Causes of Action*" means any actions, claims, cross claims, third-party claims, interests, damages, controversies, remedies, causes of action, debts, judgments, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable directly or derivatively, matured or unmatured, suspected or unsuspected, disputed or undisputed, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law or otherwise. For the avoidance of doubt, "Causes of Action" include: (a) any rights of setoff, counterclaim, or recoupment and any claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claims or defenses, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

21.     "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code and (b) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

22.     "*Claim*" means any claim, as such term is defined in section 101(5) of the Bankruptcy Code against a Debtor or an Estate.

23.     "*Claims Bar Date*" means the dates established by the Bankruptcy Court by which Proofs of Claim must have been Filed with respect to such Claims (other than Claims required to be Filed by the Administrative Claims Bar Date), pursuant to (a) the Bar Date Order, (b) a Final Order of the Bankruptcy Court, or (c) the Plan.

24.     "*Claims Objection Bar Date*" means the later of: (a) the first Business Day following 180 days after the Effective Date; and (b) such later date as may be fixed by the Bankruptcy Court, after notice and an opportunity for a hearing.

25.     "*Claims Register*" means the official register of Claims maintained by the Notice and Claims Agent.

26.     "*Class*" means a category of Claims or Interests as set forth herein pursuant to section 1122(a) of the Bankruptcy Code.

27.     "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases.

28.     "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

29.     "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to sections 1128 and 1129 of the Bankruptcy Code, including any adjournments thereof.

30.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which Order must be acceptable to the Debtors.

31.     "*Consummation*" means the occurrence of the Effective Date.

13947526 v5

32.    *"Convertible Debenture Financings"* means, collectively, (a) the Subscription
Agreement for Convertible Debentures issued to MariMed, Inc., dated as of November 7, 2018, the
Security and Pledge Agreement made and given by GenCanna Global, Inc. to MariMed, Inc., dated as of
November 7, 2018, each of the Subordinated Secured Convertible Debentures issued to MariMed, Inc.
(including those issued on September 10, 2018, September 18, 2018, September 21, 2018, October 22,
2018, October 26, 2018, November 8, 2018, in the aggregate principal amount of $30,000,000), together
with any and all related or ancillary agreements and documents, each as amended, restated, modified, or
supplemented from time to time in accordance with their terms; (b) the Convertible Debentures
Conversion Agreement, dated as of February 1, 2019, by and between GCG Parent and MariMed, Inc.,
together with any and all related or ancillary agreements and documents, each as amended, restated,
modified, or supplemented from time to time in accordance with their terms; and (c) the transactions, acts,
omissions, and representations in connection with any of the foregoing agreements and documents.

33.    *"Creditor"* means a "creditor" as that term is defined in section 101(10) of the
Bankruptcy Code.

34.    *"D&O Policies"* means all applicable Insurance Policies (including any excess liability
or "tail policy") of any of the Debtors that cover current or former directors', managers', officers', or
employees' liability.

35.    *"Debtor"* means one or more of the Debtors, as debtors and debtors in possession, each in
its respective individual capacity as a debtor and debtor in possession in the Chapter 11 Cases.

36.    *"Debtor Related Potentially Released Party"* or *"Debtor Related Potentially Released
Parties"* means, individually and collectively: (a) the Debtors; (b) Gary Broadbent, in his capacity as the
Chief Wind-Down Officer, General Counsel and Secretary for the Debtors; (c) James Alt, in his capacity
as the Debtors' Chief Transformation Officer; (d) Marc Passalacqua, in his capacity as the Debtors
Deputy Chief Transformation Officer; and (e) with respect to each Debtor, such Debtor's current and
former officers, directors, managers, employees, and Professionals (excluding attorney Professionals), in
each instance only if such Person served in such capacity on or after January 24, 2020.

37.    *"Debtor Release"* means the release given on behalf of the Debtors and their Estates to
the Released Parties as set forth in Article VIII.C of the Plan.

38.    *"Debtors"* means, collectively: (a) GCG Opco; (b) GCG Parent; and (c) Hemp Kentucky,
LLC.

39.    *"DIP Agent"* means MGG or any permitted successor thereto as administrative agent
under the DIP Loan Agreement, solely in its capacity as such.

40.    *"DIP Claims"* means all Claims of the DIP Agent and DIP Lenders arising under,
derived from, secured by, or based on the DIP Loan Agreement, any DIP Order, or any other DIP Loan
Documents, including Claims for all principal amounts outstanding, interest, fees, expenses, costs, and
other charges arising under or related to the DIP Loan Facility.

41.    *"DIP Lenders"* means the banks, financial institutions and other various lenders party to
the DIP Loan Agreement from time to time, each solely in its capacity as such.

42.    *"DIP Loan Agreement"* means that certain Debtor In Possession Secured Multi-Draw
Term Promissory Note, as amended, restated, modified, or supplemented from time to time in accordance

with its terms, by and among, GCG Opco, as Borrower, GCG Parent and Kentucky Hemp, LLC, as Guarantors, MGG, as Agent, and the Lenders from time to time party thereto.

43.    *"DIP Loan Documents"* means the DIP Loan Agreement and all other DIP Documents (as defined in the DIP Loan Agreement).

44.    *"DIP Loan Facility"* means the debtor-in-possession financing facility provided for under the DIP Loan Agreement.

45.    *"DIP Orders"* means, collectively, the interim and final orders entered by the Bankruptcy Court authorizing the Debtors to enter into the DIP Loan Agreement and incur postpetition obligations thereunder, as such orders may be amended, supplemented, or modified from time to time [Docket Nos. 82, 207, 306, 360 & 474]

46.    *"DIP Secured Party"* or *"DIP Secured Parties"* has the meaning ascribed to such term in the Final DIP Order.

47.    *"Disbursing Agent"* means the Plan Administrator or its designee.

48.    *"Disclosure Statement"* means the *Disclosure Statement for Debtors' Amended Joint Plan of Liquidation,* dated as of July 31, 2020, as may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law and approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

49.    *"Disclosure Statement Orders"* means the *Order Approving Disclosure Statement,* entered August 31, 2020 [Docket No. 1315], as modified by the *Order Continuing Confirmation Hearing,* entered October 2, 2020 [Docket No. 1391], as further modified by the *Agreed Order Modifying Deadline to File and Serve Amended Plan, Disclosure Statement and Related Documents,* entered October 8, 2020 [Docket No. 1399], and the *Agreed Supplemental Order Approving Revisions to Disclosure Statement and Granting Related Relief,* entered October 10, 2020 [Docket No. 1413], which shall control in the event of any conflict between such order and the earlier orders entered by the Bankrutpcy Court.

50.    *"Disputed"* means, with respect to any Claim or Interest, any Claim or Interest that is not yet Allowed.

51.    *"Disputed Claims Reserve"* means amounts in a bank account or accounts reserved for Disputed Claims in accordance with the terms of Article VI.F of this Plan and the Wind-Down Trust Agreement.

52.    *"Distribution"* means Cash, property, interests in property (including Beneficial Interests) or other value distributed to Holders of Allowed Claims, or their designated agents, or Beneficiaries, as applicable, under this Plan and/or the Wind-Down Trust Agreement.

53.    *"Distribution Date"* means the Initial Distribution Date or a Quarterly Distribution Date, as appropriate to context.

54.    *"Distribution Record Date"* means the record date for determining which Holders of Allowed Claims or Allowed Interests are eligible to receive Distributions under the Plan, which date shall be the Effective Date or such other date prior to the Effective Date as is designated by the Debtors.

55.     "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which (a) the conditions to the occurrence of the Effective Date have been satisfied or waived pursuant to Article IX.A and Article IX.B of the Plan and (b) no stay of the Confirmation Order is in effect, which shall be the day Consummation occurs.

56.     "*Entity*" means an "entity" as that term is defined in section 101(15) of the Bankruptcy Code.

57.     "*Estate*" means, as to each Debtor, the estate created on the Petition Date for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code and all property (as defined in section 541 of the Bankruptcy Code) acquired by the Debtors after the Petition Date through the Effective Date.

58.     "*Estate Recoveries*" has the meaning ascribed to such term in the MGG Settlement Agreement.

59.     "*Excluded LM Causes of Action*" means any and all Causes of Action against Mr. Michael Falcone, Southern Tier Hemp, LLC, or any Related Party that, as permitted by the MGG Settlement Agreement (including Section 5.a and fn.2 thereof), the Debtors or the Plan Administrator, as applicable, elects to pursue independently of Causes of Action included in the Falcone Litigation (as defined in the MGG Settlement) that were acquired by the Purchaser in the Sale Transaction).

60.     "*Exculpated Party*" means, collectively, and in each case in its capacity as such: (a) the Debtors; (b) the UCC and each of the members thereof (solely in their respective capacities as members of the UCC); (c) Gary Broadbent, in his capacity as the Debtors' Chief Wind-Down Officer, General Counsel and Secretary; (d) James Alt, in his capacity as the Debtors' Chief Transformation Officer; (d) Marc Passalacqua, in his capacity as the Debtors Deputy Chief Transformation Officer; (e) the Debtors' respective directors, officers and managers who served in such capacity on or after January 24, 2020; (f) the Professionals; and (g) with respect to the Persons identified in clauses (a) through (f), each of their respective Related Persons to the extent that such Related Persons served as fiduciaries for the Estates. Notwithstanding anything to the contrary herein, no Person that qualifies Non-Released Party pursuant to clause (a) or (b) of the definition of "Non-Released Party" shall be an Exculpated Party.

61.     "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

62.     "*Federal Judgment Rate*" means the federal judgment interest rate in effect as of a given Debtor's Petition Date, calculated as set forth in section 1961 of the Judicial Code.

63.     "*File,*" "*Filed,*" or "*Filing*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases, or, with respect to the filing of a Proof of Claim or Proof of Interest, the Notice and Claims Agent.

64.     "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

65.     "*Final DIP Order*" means the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364, 503, And 507 (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting (A) Liens and Superpriority Administrative Expense Claims And (B) Adequate Protection to Prepetition Lenders; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; and (V) Granting Related Relief* [Docket No. 474], as amended, modified or supplemented from time to time.

13947526 v5

66.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal, petition for certiorari, or move for reargument, reconsideration, or rehearing has expired and no appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing has been timely taken or filed, or as to which any appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided*, *however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or any comparable rule of the Bankruptcy Rules may be Filed relating to such order shall not cause such order to not be a Final Order.

67.    "*Gap Period Claim*" means any Claim, to the extent such Claim has not already been paid during the Chapter 11 Cases, entitled to priority in right of payment under section 507(a)(3) of the Bankruptcy Code.

68.    "*GCG Opco*" means OGGUSA, Inc., f/k/a GenCanna Global USA, Inc., one of the Debtors.

69.    "*GCG Parent*" means OGG, Inc., f/k/a GenCanna Global, Inc., one of the Debtors and the parent of GCG Opco.

70.    "*General Unsecured Claim*" means any Claim that is not Secured and is not (a) an Administrative Claims (including, for the avoidance of doubt, a Professional Fee Claim), (b) a Priority Tax Claim, (c) a Gap Period Claim, (d) a DIP Claim, (e) an Other Priority Claim, (f) a MGG Subordinated Claim, (g) an Intercompany Claim or (h) a Section 510(b) Claim.

71.    "*Governmental Unit*" means a "governmental unit" as that term is defined in section 101(27) of the Bankruptcy Code.

72.    "*Holder*" means an Entity holding a Claim against, or an Interest in, any Debtor.

73.    "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

74.    "*Initial Distribution Date*" means the date on which the Disbursing Agent shall make initial Distributions to Holders of Allowed Claims pursuant to the Plan, which shall be as soon as reasonably practicable after the Effective Date.  For the avoidance of doubt, the Initial Distribution Date for an Administrative Claim, a Priority Tax Claim, a Gap Period Claim, an Other Priority Claim or an Other Secured Claim that is an Allowed Claim as of the Effective Date and for which the Holder thereof is otherwise entitled to receive a Distribution on account of such Allowed Claim shall occur on the Effective Date or as soon as practicable thereafter as determined in the reasonable discretion of the Disbursing Agent.

75.    "*Insurance Policies*" means all insurance policies that have been issued at any time or provide coverage, benefits or proceeds to any of the Debtors (or their predecessors) and all agreements, documents or instruments relating thereto.

76.    "*Intercompany Claim*" means any Claim held by a Debtor against another Debtor arising before the Petition Date.

13947526 v5

77.    *"Interest"* means any equity security in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, repurchase rights, convertible, exercisable, or exchangeable securities, or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor whether or not arising under or in connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security, including any Claims against any Debtor subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

78.    *"Judicial Code"* means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

79.    *"Lien"* shall mean a "lien" as that term is defined in section 101(37) of the Bankruptcy Code, including, without limitation, a deed of trust, mortgage, charge, security interest, pledge or other encumbrance against or interest in property to secure payment or performance of a claim, debt or litigation.

80.    *"Litigation Matters"* has the meaning ascribed to term is defined in the MGG Settlement Agreement.

81.    *"LM Professionals"* means the law firms required to be retained in connection with the Litigation Matters as set forth in Section 6 of the MGG Settlement Agreement and such additional attorneys and other professionals as may be retained in connection with the Litigation Matters.

82.    *"Lookback D&O"* means with respect to each Debtor, such Debtor's current and former officers, directors and/or managers, as applicable, in each instance only if such Person served in such capacity on or after January 24, 2020, but excluding those individuals identified by the MGG Parties in the Mediation Settlement Term Sheet. For the avoidance of doubt, the Lookback D&Os include, without limitation, Gary Broadbent, James Alt, and Marc Passalacqua.

83.    *"Lookback D&O Action"* means a Retained Cause of Action brought or capable of being brought by the Debtors or the Plan Administrator on behalf of the Estates or Wind-Down Trust, as applicable, against any Lookback D&O arising out of or relating to such Lookback D&O's transactions, transfers, acts or omissions occurring prior to January 24, 2020.

84.    *"Lookback D&O Action Deadline"* means the date that is 120 days after the Effective Date or the next Business Day if such date is not a Business Day; *provided, however,* that the Lookback D&O Action Deadline may be extended on one or more occasions as to a specific Lookback D&O by written agreement of the Plan Administrator and such Lookback D&O.  In the event that (x) an Entity is a Non-Released Party by reason of appearing on the Non-Released Party Schedule *and* (y) such Entity also is a Lookback D&O, the Lookback D&O Action Deadline shall not apply to such Entity.

85.    *"Mediation"* means the mediation by and among the Mediation Settling Parties conducted before the Mediator on and after September 11, 2020, pursuant to the Bankruptcy Court's order, entered August 20, 2020 [Docket No. 1285] and the Mediator's order, entered August 21, 2020 [Docket No. 1287].

13947526 v5

86.     *"Mediation Settlement Term Sheet"* means that certain *Mediation Term Sheet,* executed by and among the Mediation Settling Parties, originally prepared in connection with the Mediation on September 11, 2020, and thereafter updated and finalized on September 25, 2020.

87.     *"Mediation Settling Parties"* means the Debtors, the MGG Parties and the UCC.

88.     *"Mediator"* means the Honorable Tracey N. Wise, United States Bankruptcy Judge for the Eastern District of Kentucky, Lexington Division, in her capacity as the mediator for the Mediation.

89.     *"MGG"* means MGG Investment Group LP.

90.     *"MGG Parties"* means MGG, the Purchaser, the Prepetition Secured Parties and the DIP Secured Parties.

91.     *"MGG Settlement"* means the compromise and settlement among the Debtors, MGG, for itself and as agent for all other Prepetition Secured Parties, and the Purchaser, as memorialized in the MGG Settlement Agreement.

92.     *"MGG Settlement Agreement"* means that certain *First Amended Settlement Agreement and Release,* dated October [__], 2020, by and among the Debtors, MGG, for itself and as agent for all other Prepetition Secured Parties, and the Purchaser, as such agreement may be amended, modified or supplemented from time to time prior to the Confirmation Date in accordance with the terms thereof.

93.     *"MGG Settlement Escrowed Funds"* means the "Cash Proceeds," as such term is defined in Section 7 of the MGG Settlement Agreement, which are to be initially received and held in escrow by Debtors' bankruptcy counsel, Benesch Friedlander Coplan & Aronoff LLP, in accordance with the terms of the MGG Settlement Agreement. For the avoidance of doubt, the MGG Settlement Escrowed Funds, shall not be treated as the Debtors' assets or Wind-Down Trust Assets unless and until such MGG Settlement Escrowed Funds have been allocated to the Debtors or the Wind-Down Trust, as applicable, upon completion of the consensual or Bankruptcy Court ordered reconciliation contemplated by Section 7 of the MGG Settlement Agreement.

94.     *"MGG Settlement Payment"* means the Cash payment from MGG to the Debtors or the Wind-Down Trust, as applicable, in the aggregate amount of $1,100,000, to be paid in accordance with the terms of the MGG Settlement Agreement.

95.     *"MGG Subordinated Claims"* means the Claims in the aggregate amount of $27,016,182.27 Allowed to MGG and the other Prepetition Secured Parties pursuant to the MGG Settlement Agreement, which Allowed Claims, pursuant to the terms of the MGG Settlement Agreement and this Plan, are subordinated in right of payment to all Allowed General Unsecured Claims.

96.     *"Non-Debtor Potentially Released Party"* or *"Non-Debtor Potentially Released Parties"* means, individually and collectively: (a) MGG; (b) the Prepetition Secured Parties; (c) the DIP Secured Parties; (d) the Purchaser; (e) with respect to each of the foregoing clauses (a) through (d), such Person's current and former Affiliates, excluding any Affiliate that is a Debtor Related Potentially Released Party; and (f) with respect to each of the foregoing clauses (a) through (e), each such Person's respective Related Persons, excluding in each instance any Person who is a Debtor Related Potentially Released Party.

97.     *"Non-Released Party"* means (a) each Entity set forth on the Non-Released Party Schedule, (b) with respect to a Cause of Action listed on the Schedule of Retained Causes of Action, each Entity identified therein as the target of such Retained Cause of Action (but solely with respect to the

13947526 v5

Cause of Action listed on the Schedule of Retained Causes of Action for which such Entity is identified
as a target, unless such Entity also is listed on the Non-Released Party Schedule), and (c) each Lookback
D&O as to which a Lookback D&O Action is commenced on or before the Lookback D&O Action
Deadline (but solely with respect to the Retained Causes of Action timely asserted through such
Lookback D&O Action, unless such Lookback D&O also is listed on the Non-Released Party Schedule).
For the avoidance of doubt, in the event that (x) an Entity is a Non-Released Party by reason of appearing
on the Non-Released Party Schedule *and* (y) such Entity also is a Lookback D&O, the Lookback D&O
Action Deadline shall not apply to such Entity.

98.     *"Non-Released Party Schedule"* means the schedule that sets forth the identities of those
Entities that the Debtors have designated as Non-Released Parties, which has been Filed with the
Bankruptcy Court as Exhibit B to the Plan Supplement [Docket No. 1453].  For the avoidance of doubt, if
an Entity is listed on the Non-Released Party but also is a Lookback D&O, the listing of such Entity on
the Non-Released Party Schedule shall control.

99.     *"Notice and Claims Agent"* means Epiq Corporate Restructuring, LLC, in its capacity as
notice and claims agent for the Chapter 11 Cases.

100.     *"Other Priority Claim"* means any Claim, to the extent such Claim has not already been
paid during the Chapter 11 Cases, other than an Administrative Claim, a Gap Period Claim or a Priority
Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

101.     *"Other Secured Claim"* means any Secured Claim that is not a DIP Claim.

102.     *"Oversight Committee"* has the meaning ascribed to such term in the MGG Settlement
Agreement.

103.     *"Person"* means a "person" as that term is defined in section 101(41) of the Bankruptcy
Code, including, without limitation, any individual or Entity.

104.     *"Petition Date"* means: (a) for GCG Opco, January 24, 2020; and (b) for GCG Parent and
Hemp Kentucky, LLC, February 5, 2020.

105.     *"Plan"* means this *Debtors' Second Amended Joint Plan of Liquidation (With
Modifications)*, as may be altered, amended, modified, or supplemented from time to time in accordance
with Article X hereof, including the Plan Supplement (as modified, amended or supplemented from time
to time), which is incorporated herein by reference and made part of the Plan as if set forth herein.

106.     *"Plan Administrator"* means a Person to be jointly selected by the Debtors and the UCC
in accordance with the procedures agreed to by the Mediation Settling Parties through the Mediation or,
absent agreement of the Debtors and the UCC, the Plan Administrator shall be selected by the Bankruptcy
Court from among the candidate names submitted by the Debtors and the UCC, or any successor thereto
designated in accordance with the terms of the Wind-Down Trust Agreement, subject to the approval of
the Bankruptcy Court. The Plan Administrator, whose identity will be disclosed in the Plan Supplement
(or at the Confirmation Hearing or as soon as practicable thereafter if selected by the Bankruptcy Court),
will serve as the trustee, estate representative and administrator for the Wind-Down Trust, with all power
and authorities as set forth in Article IV.C and elsewhere in the Plan and the Wind-Down Trust
Agreement.

107.     *"Plan Supplement"* means the compilation of documents and forms of documents,
agreements, schedules, and exhibits to the Plan, the initial draft of certain of such documents shall be

Filed by the Debtors seven calendar days before the Voting Deadline, and additional documents Filed with the Bankruptcy Court prior to the Effective Date, as may be amended, supplemented, altered, or modified from time to time in accordance with the terms hereof, the Bankruptcy Code, and the Bankruptcy Rules, including: (a) the Schedule of Retained Causes of Action; (b) the Non-Released Party Schedule; (c) the identity and terms of compensation of the Plan Administrator; and (d) the Wind-Down Trust Agreement.

108.    *"Prepetition"* means, with respect to each Debtor, prior to the Petition Date for such Debtor.

109.    *"Prepetition Credit Agreement"* means that certain Financing Agreement, dated as of June 24, 2019, as amended, restated, modified, or supplemented from time to time in accordance with its terms, by and among GCG Opco, as Borrower, GCG Parent, as Guarantor, MGG, as Collateral Agent and as Administrative Agent, and the Lenders from time to time party thereto.

110.    *"Prepetition Obligations"* has the meaning ascribed to such term in the Final DIP Order.

111.    *"Prepetition Agent"* or *"Prepetition Agents"* has the meaning ascribed to such term in the Final DIP Order.

112.    *"Prepetition Facility"* has the meaning ascribed to such term in the Final DIP Order.

113.    *"Prepetition Lenders"* has the meaning ascribed to such term in the Final DIP Order.

114.    *"Prepetition Loan Documents"* has the meaning ascribed to such term in the Final DIP Order.

115.    *"Prepetition Secured Party"* or *"Prepetition Secured Parties"* has the meaning ascribed to such term in the Final DIP Order.

116.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

117.    *"Privilege"* means  the attorney client privilege, work product protections or other immunities (including without limitation those related to common interests or joint defenses with other parties), or protections from disclosure of any kind held by the Debtors or their Estates.

118.    "*Professional*" means an Entity: (a) employed pursuant to a Bankruptcy Court order in accordance with section 327, 328, 363 and/or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date pursuant to section 327, 328, 329, 330, 331 or 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

119.    *"Professional Fee Claims"* mean all Claims for fees and expenses (including transaction and success fees) incurred by a Professional on or after the Petition Date through and including the Effective Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court and regardless of whether a monthly fee statement or interim fee application has been Filed for such fees and expenses. To the extent a Bankruptcy Court or higher court of competent jurisdiction denies or reduces by a Final Order any amount of a Professional's fees or expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

13947526 v5

120.    *"Professional Fee Escrow Account"* means an interest-bearing escrow account to be funded by the Debtors with Cash on or before the Effective Date in an amount equal to the Professional Fee Escrow Amount, *provided* that the Professional Fee Escrow Account shall be increased with Cash held or by the Wind-Down Trust to the extent applications are filed after the Effective Date in excess of the amount of Cash funded into the escrow as of the Effective Date.

121.    *"Professional Fee Escrow Amount"* means the total amount of Professional Fee Claims estimated in consultation with MGG and the UCC pursuant to Article II.B.3 of the Plan.

122.    *"Proof of Claim"* means a written proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

123.    *"Purchased Assets"* has the meaning ascribed to such term in the Asset Purchase Agreement.

124.    *"Purchaser"* means GenCanna Acquisition Corp. and any permitted assignee of such Entity's rights and obligations under the Asset Purchase Agreement.

125.    *"Quarterly Distribution Date"* means first Business Day after the end of each quarterly calendar period (i.e., March 31, June 30, September 30, and December 31 of each calendar year) occurring after the Effective Date, or as soon thereafter as is reasonably practicable.

126.    *"Ratable Share"* means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

127.    *"Related Person"* or *"Related Persons"* means, individually or collectively, with respect to any Person, such Person's predecessors, successors, assigns and present and former shareholders, affiliates (whether by operation of law or otherwise), subsidiaries, principals, employees, agents, officers, directors, managers, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants, and any Person claiming by or through them, each in their capacities as such.

128.    *"Released Party"* or *"Released Parties"* means, individually and collectively: (a) the Debtor Related Potentially Released Parties; and (b) the Non-Debtor Potentially Released Parties; *provided* that notwithstanding anything to the contrary herein, no Non-Released Party shall be a Released Party.

129.    [Intentionally Omitted].

130.    *"Retained Causes of Action"* means any and all Causes of Action of, or relating to, any Debtor, any Estate, or a creditor of any Debtor, which shall be assigned, transferred and vest in the Wind-Down Trust upon the Effective Date in accordance with the terms of the Plan, including, but not limited to, those Causes of Action identified on the Schedule of Retained Causes of Action; *provided, however,* that Retained Causes of Action exclude Causes of Action that are (a) Purchased Assets, (b) released by the Debtors pursuant to the releases and exculpations contained in Article VIII of the Plan or the Confirmation Order, which shall be deemed released and waived by the Debtors, the Estates, and the Wind-Down Trust as of the Effective Date (or in the case of any Lookback D&O Action, the Lookback D&O Action Deadline if a Lookback D&O is not commenced by the Plan Administrator on or before such date), or (c) otherwise released pursuant to a Final Order of the Bankruptcy Court.

13947526 v5

131.     "*Sale Documents*" means the Asset Purchase Agreement, the Transition Services Agreement (as defined in the Asset Purchase Agreement), the Interim Permit Operating Agreement (as defined in the Asset Purchase Agreement), and each other document, agreement or instrument executed and delivered in connection with any of the foregoing.

132.     "*Sale Transaction*" means the sale of certain of the Debtors' assets to the Purchaser pursuant to the Asset Purchase Agreement, the other Sale Documents and the Sale Order.

133.     "*Sale Closing*" means the "Closing", as defined in the Asset Purchase Agreement.

134.     "*Sale Order*" means the *Order (I) Approving The Sale Of Certain The Debtors' Assets Free And Clear Of All Liens, Claims, Encumbrances And Interests Other Than Permitted Liens, (II) Authorizing The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases In Connection Therewith And (III) Granting Related Relief* [Docket No. 850] entered by the Bankruptcy Court in the Chapter 11 Cases.

135.     "*Schedule of Retained Causes of Action*" means that certain schedule filed with the Plan Supplement containing a non-exclusive listing of certain Causes of Action of the Debtors and/or the Estates that are not released, waived, or transferred pursuant to the Plan, as such schedule may be amended, modified, or supplemented from time to time by the Debtors, which shall be acceptable to the Debtors, the UCC and the Purchaser.  The Debtors shall consult with the UCC and the Purchaser in the preparation of the Schedule of Retained Causes of Action.

136.     "*Schedules*" mean, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, as such schedules may be amended, modified, or supplemented from time to time.

137.     "*Section 510(b) Claim*" means any Claim subject to subordination under section 510(b) of the Bankruptcy Code; *provided* that a Section 510(b) Claim shall not include any Claim subject to subordination under section 510(b) of the Bankruptcy Code arising from or related to an Interest.

138.     "*Secured*" means when referring to a Claim: (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, which value shall be determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed pursuant to the Plan as a Secured Claim.

139.     "*Security*" means a security as defined in section 2(a)(1) of the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

140.     "*Senior Beneficial Interests*" means the beneficial interests in the Wind-Down Trust to be received by the Holders of Allowed General Unsecured Claims in Class 4 pursuant to the terms of the Plan and the Wind-Down Trust Agreement, which beneficial interests (a) shall be senior in right of payment and priority to the Subordinated Beneficial Interests and (b) shall have the additional attributes set forth in this Plan and the Wind-Down Trust Agreement.

141.    *"Subordinated Beneficial Interests"* means the beneficial interests in the Wind-Down Trust to be received by the Holders of Allowed MGG Subordinated Claims in Class 3 pursuant to the terms of the Plan and the Wind-Down Trust Agreement, which beneficial interests (a) shall be junior in right of payment and priority to the Senior Beneficial Interests and (b) shall have the additional attributes set forth in this Plan and the Wind-Down Trust Agreement. For the avoidance of doubt, the Holders of Subordinated Beneficial Interests will not be entitled to receive or retain any Distributions from the Wind-Down Trust unless and until all Holders of Senior Beneficial Interests entitled to Distributions from the Wind-Down Trust have received Distributions from the Wind-Down Trust in amounts sufficient to repay in full the Allowed amounts of their respected Allowed General Unsecured Claims.

142.    [Intentionally Omitted].

143.    *"U.S. Trustee"* means the United States Trustee appointed under Article 591 of title 28 of the United States Code to serve in Region 8, including the Eastern District of Kentucky.

144.    "*UCC*" means the statutory committee of unsecured creditors of the Debtors, appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the U.S. Trustee on February 18, 2020, pursuant to the *Notice of Appointment of Committee of Unsecured Creditors* [Docket No. 135], as such committee may be reconstituted by the U.S. Trustee from time to time prior to the Confirmation Date.

145.    *"Unexpired Lease"* means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 or section 1123 of the Bankruptcy Code.

146.    *"Unimpaired"* means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

147.    *"Voting Deadline"* means the deadline of October 30, 2020, which date may be extended by the Debtors.

148.    *"Wind-Down Budget"* means a budget for the reasonable activities and expenses to be incurred in winding down the Estates and completing the administration of the Chapter 11 Cases. The Wind-Down Budget shall include line item estimates for, among other things, post-Effective Date professional fees.

149.    *"Wind-Down Distributable Proceeds"* means, as of a Distribution Date, the excess, if any, of (a) any Cash proceeds of the Wind-Down Trust Assets, over (b) amounts necessary (i) to satisfy or reserve for all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Other Priority Claims, and Allowed Other Secured Claims in full in Cash (unless such Claims receive such other treatment that leaves such Claims Unimpaired or otherwise complies with the terms of the Plan), (ii) to fund the Disputed Claims Reserves  for Disputed Administrative Claims, Disputed Priority Tax Claims, Disputed Other Priority Claims, and Disputed Other Secured Claims in accordance with the terms of the Plan and the Wind-Down Trust Agreement, and (iii) to pay or reserve for in full all Wind-Down Trust Operating Expenses.

150.    *"Wind-Down Trust"* means that certain trust to be created on the Effective Date, as described in Article IV.C.2 of the Plan.

151.    *"Wind-Down Trust Account"* means the bank account or accounts used to fund all Wind-Down Trust Operating Expenses, which shall be established and funded by the Debtors from Wind-Down Trust Assets on the Effective Date in an amount determined by the Debtors, in consultation with the

13947526 v5

UCC, and which may be replenished by the Plan Administrator, subject to the advice of the Advisory Committee, from the Wind-Down Trust Assets from time to time after the Effective Date.

152.    *"Wind-Down Trust Agreement"* means that certain agreement establishing the Wind-Down Trust, which shall be acceptable to the Debtors, and the form of which shall be included in the Plan Supplement.

153.    *"Wind-Down Trust Assets"* means all of the assets of the Debtors' Estates existing immediately before the occurrence of the Effective Date, which assets shall be treated as transferred to and beneficially owned by the Wind-Down Trust as of the Effective Date.  For the avoidance of doubt, except as otherwise expressly provided in this Plan or the MGG Settlement Agreement in the case of the MGG Settlement Escrowed Funds, the Wind-Down Trust Assets do not include the funds in the Professional Fee Escrow Account or the MGG Settlement Escrowed Funds.

154.    *"Wind-Down Trust Operating Expenses"* means the overhead and other operational expenses of the Wind-Down Trust including, but not limited to, (a) reasonable compensation for the Plan Administrator in accordance with the Wind-Down Trust Agreement, (b) costs and expenses incurred by the Plan Administrator in  administering the Wind-Down Trust, (c) fees payable to the U.S. Trustee under Section 1930 of Title 28 of the United States Code incurred after the Effective Date, and (d) any fees and expenses payable to the firm(s) or individual(s) retained by the Plan Administrator in accordance with the terms of the Wind-Down Trust Agreement to serve as legal counsel for, or provide other professional services to, the Wind-Down Trust  in connection with the performance of the Plan Administrator's duties and responsibilities under this Plan and the Wind-Down Trust Agreement.

13947526 v5

## <u>EXHIBIT B</u>

**(Notice of Effective Date)**

**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

|  |  |
|---|---|
| In re:<br><br>OGGUSA, Inc., *et al*.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-50133-grs<br>(Jointly Administered)<br><br>Honorable Gregory R. Schaaf |

**NOTICE OF (A) ENTRY OF FINDINGS OF FACT, CONCLUSIONS OF LAW AND
ORDER APPROVING AND CONFIRMING DEBTORS' SECOND AMENDED JOINT
PLAN OF LIQUIDATION (WITH MODIFICATIONS) AND (B) EFFECTIVE DATE**

　　**PLEASE TAKE NOTICE** that the Honorable Gregory R. Schaaf, United States Bankruptcy Judge for the Eastern District of Kentucky, Lexington Division (the "Bankruptcy Court"), on November [__], 2020, entered an order [Docket No. ____] (the "Confirmation Order") confirming and approving the *Debtors' Second Amended Joint Plan of Liquidation (With Modifications)* [Docket No. 1496] (including all exhibits thereto and as the same may be amended, modified or supplemented from time to time, the "Plan").[2]

　　**PLEASE TAKE FURTHER NOTICE** that all conditions precedent to effectiveness pursuant to Article IX.A of the Plan have been satisfied or waived. Therefore, today, [_____, 2020], is the Effective Date of the Plan.

　　**PLEASE TAKE FURTHER NOTICE** that the Plan and its provisions are binding on, among others, the Debtors, all holders of Claims and Interests (irrespective of whether such Claims or Interests are Impaired under the Plan or whether the Holders of such Claims or Interests have accepted the Plan), and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors, as provided in the Plan.

　　**PLEASE TAKE FURTHER NOTICE** that any Holder of a Claim arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan must submit a Proof of Claim on account of such Claim by no later than **[_____], 2020** (the "Rejection Claim Deadline") to the Notice and Claims Agent, Epiq Corporate Restructuring, LLC. Proofs of Claim must be either (i) submitted electronically via the Notice and Claims Agent's claims filing website, https://dm.epiq11.com/GenCanna, or (ii) sent via first-class United States Mail, overnight courier  or hand delivery as follows:

| **If by first-class U.S. Mail:** | **If by overnight courier or hand delivery:** |
|---|---|
| GenCanna Global USA, Inc. | GenCanna Global USA, Inc. |
| Claims Processing Center | Claims Processing Center |
| c/o Epiq Corporate Restructuring, LLC | c/o Epiq Corporate Restructuring, LLC |
| P.O. Box 4419 | 10300 SW Allen Blvd. |

---

[1]  The Debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): OGGUSA, Inc. (0251); OGG, Inc. (N/A); and Kentucky Hemp, LLC (0816).

[2]  Capitalized terms not otherwise defined herein have the meanings ascribed to such terms in the Plan.

Beaverton, OR 97076-4419                     Beaverton, OR 97005

**Proofs of Claim will be timely submitted only if actually received by the Notice and Claims Agent, on or before the Rejection Claim Deadlines.** Proofs of Claim may not be delivered by facsimile, telecopy or electronic mail transmission.

**PLEASE TAKE FURTHER NOTICE** that the Administrative Claim Bar Date is **[_____], 2020**. Unless otherwise ordered by the Bankruptcy Court, Holders of Administrative Claims (other than the Holders of Professional Fee Claims and the Claims of Governmental Units arising under Section 503(b)(1)(B), (C), or (D) of the Bankruptcy Code) that do not file requests for allowance and payment thereof on or before the Administrative Claim Bar Date shall forever be barred from asserting such Administrative Claims against the Debtors, their Estates, the Wind-Down Trust, the Wind-Down Trust Assets or the Plan Administrator.

**PLEASE TAKE FURTHER NOTICE** that all requests for compensation or reimbursement of Professionals retained in these Chapter 11 Cases for services performed and expenses incurred prior to the Effective Date shall be filed and served on (a) the Plan Administrator, (b) each of the parties identified in Article XII.G of the Plan, (c) the Office U.S. Trustee for the Eastern District of Kentucky, 100 E. Vine St., Suite 500, Lexington, KY 40507 (Attn: Bradley M. Nerderman, Trial Attorney), and (d) such other entities who are designated by the Bankruptcy Rules, the Local Rules of the Bankruptcy Court or Order of the Bankruptcy Court, by no later than **[_____], 2020**.

**PLEASE TAKE FURTHER NOTICE** that, after the Effective Date, all notices previously provided to the Debtors shall be addressed to the Plan Administrator at the following address:

[Name] [Title]
[Address1]
[Address2]

**PLEASE TAKE FURTHER NOTICE** that the copies of the Confirmation Order, the Plan, the Plan Supplement and other documents filed in these Chapter 11 Cases, may be obtained for a nominal fee from the Court's website, https://ecf.kyeb.uscourts.gov/, or obtained free of charge by accessing the website of the Notice and Claims Agent at https://dm.epiq11.com/gencanna.

James R. Irving
April A. Wimberg
Christopher B. Madden
DENTONS BINGHAM GREENEBAUM LLP
3500 PNC Tower
101 South Fifth Street
Louisville, Kentucky 40202
Telephone: (502) 587-3606
E-mail: james.irving@dentons.com
        april.wimberg@dentons.com
        chris.madden@dentons.com

Michael J. Barrie
William M. Alleman, Jr.
Gregory W. Werkheiser
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
1313 North Market Street, Suite 1201
Wilmington, DE 19801
Telephone: (302) 442-7010
E-mail: mbarrie@beneschlaw.com
        walleman@beneschlaw.com
        gwerkheiser@beneschlaw.com

            -and-

Elliot M. Smith
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
200 Public Square, Suite 2300
Cleveland, OH 44114
Telephone: (216) 363-4500
E-mail: esmith@beneschlaw.com

2